Kamille R. Dean, Esq. (State Bar No. 234468)
      *kamille@kamilledean.com*
LAW OFFICES OF KAMILLE DEAN, PLC
4545 North 36th Street, Suite 202
Phoenix, Arizona 85018
Tel. (602) 252-5601

Attorneys for Defendant
JULIAN OMIDI

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 17-00661(A)-DMG |
| Plaintiff, | [*Assigned to Hon. Dolly M. Gee, District Court Judge*] |
| *vs*. | |
| JULIAN OMIDI, INDEPENDENT MEDICAL SERVICES, INC., SURGERY CENTER MANAGEMENT, LLC, and MIRALI ZARRABI, M.D., | **DEFENDANT JULIAN OMIDI'S MEMORANDUM RE: ABSENCE OF CONFLICTS REGARDING ATTORNEY KAMILLE DEAN IN OPPOSITION TO GOVERNMENT'S REQUEST FOR INQUIRY (Dkt 121)** |
| Defendants. | |
| | Dept.:        Courtroom 8C |
| | Location:    350 West 1st Street, 8th Floor Los Angeles, CA 90012 |
| | Trial:         October 9, 2018 at 8:30 a.m. |

///

///

///

## I.    INTRODUCTION

Defendant, Mr. Julian Omidi, submits this Memorandum in Opposition to the government Motion for Inquiry filed on March 30, 2018. (Dkt 127). This Memorandum will address the absence of any conflicts of interest regarding Attorney Kamille Dean, who is not an attorney of record in this case for neither Independent Medical Services, Inc. ("IMS") nor Surgery Center Management ("SCM"), due to Attorney Dean's limited notice of appearance for the Arraignment only on behalf of these entities. (See, Dkt. 151 of Attorney Dean's Motion to Withdraw and Request to Clarify Criminal Arraignment Minutes). As stated in Attorney Dean's Motion to Withdraw and Request to Clarify Criminal Arraignment minutes, AUSA Kristen Williams lacks candor to the Court. She knew full-well that Attorney Dean entered a limited notice of appearance for "today's hearing only" for the arraignment after AUSA Kristen Williams informed Attorney Dean she was likely conflicted from representing all parties. While Attorney Dean believed her conflict waiver and the prior conflict waivers allowed her to represent all three co-defendants, in an abundance of caution, Attorney Dean informed SCM and IMS to seek other counsel. Because the record is clear that Attorney Dean does not represent SCM and IMS based on the filed documents for SCM and IMS for the arraignment and the Honorable Paul Abrams' acceptance of such limited notice, in addition to AUSA Williams waiving any alleged conflict for purposes of the arraignment only, this Court should issue sanctions against AUSA Williams for her lack of candor to the Court. This Memo will address this issue, in addition to Ms. Dean's conflict waivers and the lack of any violations of the rules of this Court, which allow for her continued representation of Defendant Julian Omidi as co-counsel with Attorney Roger Jon Diamond.

Mr. Omidi's Opposition to the government's Request for Inquiry regarding Attorney Kamille Dean is based on:

(1) The Court Ordered a limited appearance for Ms. Dean on March 20, 2018, for IMS and SCM for the purpose of the Arraignment and "today only," and Ms. Dean has not and does not represent IMS or SCM in this proceeding;

(2)  IMS and SCM have waived all potential conflicts for Ms. Dean and Mr. Omidi, and Ms. Dean has obtained a separate Conflicts Waiver which is specific, detailed, and acknowledges Ms. Dean has received no confidential information except conveyed under a Joint Defense Agreement ("JDA") thereby eliminating all potential or actual conflicts;

(3)  The January 19, 2012, Joint Defense Agreement waives all conflicts between Mr. Omidi, IMS, SCM, and their attorneys, and the government has known of the JDA since January 15, 2015, rendering its feigned ignorance of the JDA a material misstatement before this Court.

## II.    THE COURT APPROVED MS. DEAN'S LIMITED APPEARANCE FOR IMS AND SCM

### A.    Mr. Omidi is not Represented by the Same Counsel as Co-Defendants

The government claims:

"Defendants OMIDI, IMS, and SCM are currently represented by the same counsel, Kamille Dean."  (Motion, p. 1, lines 13-14).

However, Mr. Omidi is not represented by the same counsel as the co-defendants, and the government has violated the Court's explicit Order and the representations the government made to the Court that Ms. Dean could represent the co-defendants IMS and SCM for the one-day purpose of their arraignment hearings on March 20, 2018, until they could obtain independent counsel.  IMS and SCM retained separate counsel on April 3, 2018, when Mr. George Paukert appeared for IMS and SCM as counsel. (Dkt 113).  When Ms. Dean appeared for these co-defendants at the Arraignment Hearings on March 20, 2018, it was with the express Order from the Court and agreement from the US Attorney that her appearance was for the purpose of arraignment only for "today" only.

Ms. Dean's appearance was limited with the government waiving any right to seek disqualification for potential conflicts.  *United States v. Ferreboeuf*, 632 F.2d 832, 836 (9th Cir. 1980) (stipulations "entered into the record in open court in the presence of the defendant, and is agreed to by defendant's acknowledged counsel" are binding on the parties).  *See also United States v. Victorio*, 621 F. App'x 422, 423 (9th Cir. 2015)

(stipulations entered into by the parties in open court are binding on the parties and the Court).  SCM and IMS also consented to this limited notice by Ms. Dean upon signing the Designation and Notice of Appearance of Counsel which indicated for "arraignment purposes only."  *United States v. Coupez*, 603 F.2d 1347, 1351 (9th Cir. 1979) (court has discretion to appoint counsel for limited purposes to give advice and counsel to a defendant).  (Dkt. 96 & 100).

The Transcript of the hearing on March 20, 2018 demonstrates that with the Court's approval (Magistrate Judge Abrams) Ms. Dean stated she was making a limited appearance, that her Notices of Appearance (Dkt 96 & 100), were only for the Arraignment hearings, and that the government's attorney AUSA Williams agreed Ms. Dean could make a limited appearance for Arraignment only.  The Transcript shows Ms. Dean stated:

> "I DID MY DESIGNATION APPEARANCE OF COUNSEL SAYING IT'S ONLY FOR TODAY. BECAUSE MS. WILLIAMS FOR THE -- AUSA WILLIAMS HAS SAID THAT I HAVE A CONFLICT. I ALREADY REPRESENT MR. OMIDI. SO, I'M ONLY HELPING FOR TODAY TO DO THIS HEARING SO WE CAN GET OTHER COUNSEL LATER.
>
> "THE COURT: OKAY. SO -- I'M SORRY. ARE YOU ASKING TO APPEAR ON BEHALF OF BOTH DEFENDANTS TODAY AND AS TO BOTH ONLY FOR TODAY?
>
> "MS. DEAN: ONLY FOR TODAY. AND I DON'T WANT TODAY TO CAUSE ANY CONFLICTS BECAUSE I REPRESENT MR. OMIDI, JULIAN OMIDI.
>
> "THE COURT: -- SO, LET ME --
>
> "MS. DEAN: AND, SO, I'M OTHERWISE WITHDRAWING.
>
> "THE COURT: I JUST WANT TO MAKE SURE I'M TOTALLY CLEAR ON THIS.
>
> "MS. DEAN: OKAY.
>
> "THE COURT: HOLD ON A SECOND.
>
> "(PAUSE IN PROCEEDINGS.)
>
> "THE COURT: ALL RIGHT. MAYBE JUST TO CHECK.   MS. WILLIAMS, SO IT'S MY UNDERSTANDING THAT -- AT LEAST IT'S YOUR UNDERSTANDING THAT SINCE MS. DEAN IS REPRESENTING --

1    "IS IT MR.?

2    "MS. DEAN: MR. OMIDI, YES.

3    "THE COURT: OMIDI --

4    "MS. DEAN: JULIAN OMIDI.

5    "THE COURT: -- THAT COUNSEL MS. DEAN SHOULD NOT BE
6    REPRESENTING EITHER INDEPENDENT MEDICAL SERVICES OR
     SURGERY CENTER MANAGEMENT.

7    "MS. WILLIAMS: YES, YOUR HONOR. WE'VE ADVISED HER WE
     THINK THERE'S A POTENTIAL CONFLICT IN THAT -- THAT JOINT
8    REPRESENTATION THAT WE WOULD LIKE TO ADDRESS WITH THE
9    COURT AT ITS STATUS CONFERENCE. BUT THAT WE WERE FINE FOR
     THIS – PURPOSES OF THIS HEARING SINCE IT'S NOT A SUBSTANTIVE."
10   (Tr., p. 5, line 2, to p. 6, line 10).

11   The Hearing Transcript continued:

12   "MS. DEAN: AND, YOUR HONOR, IF I MAY, IT'S MY
13   UNDERSTANDING -- I WANTED TO CONFIRM WITH MS. WILLIAMS
     SHE'S NOT GOING TO BE ARGUING FOR ANY TERMS OF CONDITIONS
14   OF RELEASE. AND THAT SHE DOESN'T BELIEVE ME APPEARING
     TODAY IS GOING TO CONFLICT WITH MR. OMIDI. IT'S JUST FOR
15   TODAY, JUST TO GET THIS CASE STARTED FOR THE TWO ENTITIES.

16   THE COURT: I BELIEVE SHE ALREADY SAID THAT, AS TO THE SECOND
17   PART OF THAT.

18   "MS. WILLIAMS: YES. THAT'S CORRECT, YOUR HONOR.

19   "MS. DEAN: OKAY. YES.

20   "THE COURT: AND I ASSUME THAT THERE ARE NO CONDITIONS

21   "MS. DEAN: YES.

22   "THE COURT: -- OF RELEASE THAT YOU'RE LOOKING FOR.

23   "MS. WILLIAMS: NO, I'M NOT SURE WHAT THE MECHANISM FOR
     THAT WOULD BE AT THIS STAGE --

24   "THE COURT: YEAH.  (Tr., p. 10, line 24, to p. 11, line 15).

25       There is no question but that with the Court's approval AUSA Williams agreed Ms.

26   Dean's limited appearance for IMS and SCM was for March 20, 2018, only, and that Ms.

27   Williams was not going to claim a conflict.  In fact, Ms. Dean repeated that "me appearing

28   today is going to conflict with Mr. Omidi.  It's just for today, just to get this case started

for the two entities." Nevertheless, without justification, and without informing the Court of the promises Ms. Williams made before Judge Abrams, Ms. Williams then filed only ten (10) days later a Motion for Inquiry on March 30, 2018, doing the very thing she promised and stipulated before Judge Abrams that she would not do. *United States v. Christensen*, 705 F. App'x 599, 599-600 (9th Cir. 2017) (stimulations by the parties made before the Court are binding on all parties)

### B.     Ms. Dean Made a Limited Appearance with Court Approval

On March 20, 2018, the Court exercised it discretion to permit Ms. Dean to make a limited appearance for "today only" to permit the arraignment of the corporate defendants, and the government agreed it would not later claim there was a conflict of interest regarding such an appearance. On April 3, 2018, Attorney George Paukert appeared as counsel of record for co-defendants SCM and IMS. (Dkt 113). There is no conflict of interest created by the limited appearance which the Court not only encouraged and Ordered, but also which the government expressly agreed to as not creating any conflict of interest on Ms. Dean's part.

The Supreme Court has recognized that in criminal matters the Court has the discretion to permit counsel to appear for limited purposes. *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) (court may limit counsel's appearance to permit attorney to act as stand-by counsel to criminal defendant). *See also United States v. Martin-Trigona*, 684 F.2d 485, 491 n.7 (7th Cir. 1982) (stating that "an attorney may make a limited appearance" to represent a criminal defendant). The Court has discretion "to appoint a "standby" counsel to merely advise or to give the accused meaningful technical assistance in presentation of the defense and the saving of the record for appeal." *United States v. Coupez*, 603 F.2d 1347, 1351 (9th Cir. 1979); *In re City of Philadelphia Litig*., 1987 WL 5281, at *2 (E.D. Pa. Jan. 9, 1987) (court has discretion to appoint counsel for limited purposes to give advice and counsel to a defendant).

In *TFFI Corp. v. Williams*, 2013 WL 6062385, at *3 (D. Md. Nov. 15, 2013), the Court stated:

DEFENDANT JULIAN OMIDI'S MEMORANDUM IN OPPOSITION TO MOTION FOR
INQUIRY RE: ABSENCE OF KAMILLE DEAN'S CONFLICTS

> "In both the criminal and civil context, courts are clear that the decision whether to allow counsel to enter a limited appearance on behalf of a pro se litigant is within the trial court's sound discretion. *United States v. Gellis*, Nos. 89-5025, 89-5084, 1990 WL 139341, at *6 (4th Cir. Sep. 25, 1990) ('Just as the appointment of standby counsel is solely within the discretion of the district court, the subsequent extent of standby counsel's participation is also a matter of discretion.'); *United States v. Mosely*, 810 F.2d 93, 97–98 (6th Cir. 1987) (citing cases) ('[W]hether to allow a defendant to participate in his own defense along with counsel in 'hybrid representation' is a matter committed to the sound discretion of the trial court.'); *Urciolo*, 449 A.2d at 290. This rule fits with the broad discretion trial courts enjoy in other matters concerning the appointment or withdrawal of counsel. *See, e.g., United States v. Mullen*, 32 F.3d 891, 895 (4th Cir.1994) (holding that the decision whether to allow substitute counsel in a criminal case rests in the trial court's sound discretion); *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1143 (4th Cir. 1990) (citing cases) (the decision whether to grant or deny counsel's motion to withdraw in a civil case "lies within the sound discretion of the trial judge"); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 n.5 (4th Cir. 1985) (citation omitted) ('[The] appointment of counsel in pro se cases is a matter for the discretion of the district court.')."

Whether or not the government agreed with the Court's exercise of its sound discretion in permitting Ms. Dean a limited appearance for "today only" on the part of SCM and IMS, Ms. Dean relied upon the Court's Order and appointment of her for the limited purpose of the arraignment.  The Court stated there would be no conflict thereby created, and the government agreed because the appearance was not "substantive."  The government's claim in its March 30, 2018, Motion for Inquire=y is a direct contradiction of the knowing representations it made to the Court on March 20, 2018, and a materially misstatement of the facts because in its Motion for Inquiry it concealed from this Court its agreement and representations to Judge Abrams.

## C.    The Government Concealed Judge Abrams' Approval of the Stipulation

The March 20, 2018, Transcript is unambiguous that the government agreed to Ms. Dean's limited appearance and the Court exercised its discretion in Ordering the limited appearance.  The government has literally lulled Ms. Dean to make a limited appearance pursuant to its agreement only to then accuse Ms. Dean of a conflict of interest the government unambiguously waived on March 20, 2018, as non-substantive.   A government attorney has a duty to seek justice.  *Berger v. United States*, 295 U.S. 78, 88

7

1  (1935); *United States v. Shaygan*, 661 F. Supp. 2d 1289, 1313 (S.D. Fla. 2009) ("A

2  prosecutor has a responsibility to strive for fairness and justice in the criminal justice

3  system."). "In representing the United States, a federal prosecutor has a special duty not

4  to impede the truth." *United States v. Reyes*, 577 F.3d 1069, 1077 (9th Cir. 2009).  *See*

5  *United States v. Kojayan*, 8 F.3d 1315, 1323 (9th Cir.1993) ("[L]awyers representing the

6  government ... serve truth and justice first."); *United States v. Associated Convalescent*

7  *Enters., Inc.*, 766 F.2d 1342, 1346 (9th Cir.1985) (an attorney is an officer of the court,

8  and as such, has a "duty of good faith and candor in dealing with the judiciary"); *Williams*

9  *v. Superior Court*, 46 Cal.App.4th 320, 330 (1996) ("Honesty in dealing with the courts is

10 of paramount importance, and misleading a judge is, regardless of motives, a serious

11 offense.").[1]

12      In *Texas v. United States*, 2016 WL 3211803, at *7 (S.D. Tex. May 19, 2016), the

13 Court stated:

14      "Whether it was one person or one hundred thousand persons, the magnitude
        does not change a lawyer's ethical obligations. The duties of a Government
15      lawyer, and in fact of any lawyer, are threefold: (1) tell the truth; (2) do not
        mislead the Court; and (3) do not allow the Court to be misled. See Model
16      Rules of Prof'l Conduct r. 3.3 cmts. 2 & 3 (AM. BAR ASS'N 2013). The
        Government's lawyers failed on all three fronts. The actions of the DHS
17      should have been brought to the attention of the opposing counsel and the
18

19 [1]  The Rules of Professional Conduct impose upon government attorneys' duty of
20 trustfulness and candor to the Court.   See California Rule of Professional Conduct 5-
   200(B) (A lawyer "[s]hall not seek to mislead the judge, judicial officer or jury by an
21 artifice or false statement of fact or law"); California Business and Professions Code
22 Section 6068(d) (it is the duty of an attorney to "employ, for the purpose of maintaining
   the causes confided to him or her, those means only as are consistent with truth, and never
23 to seek to mislead the judge or any judicial officer by an artifice or false statement of fact
24 or law.").

25      ABA Model Rule of Professional Conduct Rule 8.4(c) contains a general
26 prohibition on dishonest conduct, declaring that it is professional misconduct for a lawyer
   to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."  Model
27 Rules of Prof'l Conduct, Rule 8.4(c) (2008). Rule 8.4(c) is sweeping in its scope insofar
   as A lawyer has the duty to of honesty and candor toward the tribunal. See Model Rules
28 of Prof'l Conduct, Rule  3.3 (2002) (describing lawyer's duty of candor to tribunals)

DEFENDANT JULIAN OMIDI'S MEMORANDUM IN OPPOSITION TO MOTION FOR
INQUIRY RE: ABSENCE OF KAMILLE DEAN'S CONFLICTS

Court as early as December 19, 2014. The failure of counsel to do that constituted more than mere inadvertent omissions—it was intentionally deceptive. There is no de minimis rule that applies to a lawyer's ethical obligation to tell the truth."

In this case, the government had an obligation to tell the Court that the government agreed that her appearance for SCM and IMS was for "today only" and that the Magistrate Judge Abrams Ordered the appearance was for "today only." The government engaged in a material concealment from this Court when it hid Judge Abrams' exercise of discretion to permit Ms. Dean a limited appearance for the Arraignment only. The government's Motion for Inquiry is a sham and a material concealment in violation of its duty of candor.

## III. CO-DEFENDANTS HAVE WAIVED ANY POTENTIAL CONFLICTS FOR MS. DEAN

### A. Ms. Dean Obtained a Conflicts Waiver

Ms. Dean does not represent any of the co-defendants either in this proceeding or any other proceeding. She previously represented IMS and SCM in the case of *Almont Ambulatory Surgery Center, LLC. vs. United Health Care Group, Inc*., USDC Central District of California 14 CV 03053. However, on February 9, 2018, prior to Mr. Omidi's arraignment on February 28, 2018, Ms. Dean filed a Motion to Be Relieved as Counsel in that case, and on April 10, 2018, that Motion was granted.

Before she commenced her representation of IMS and SCM, Ms. Dean obtain a signed Conflicts of Interest Waiver and Disclosure from IMS and SCM. The Waiver and Disclosure contained a waiver of all past, present, or future potential conflicts of interest between Mr. Omidi, IMS and SCM. An advance waiver of potential conflicts of interest is valid and enforceable, and the waiver need not anticipate all future potential conflicts to be effective. *Zador Corp v Kwan*, 31 Cal. App. 4th 1285, 1301 (1995); *Maxwell v Superior Court of Los Angeles*, 30 Cal. 3d 606, 622 (1982), *overruled on other grounds by People v Doolin*, 45 Cal 4th 390 (2009). See  Cal. State Bar Formal Ethics Op.1989–115 IIA–315, IIA–315 (1989) ("Maxwell stands for the general proposition that an advance waiver of both conflict of interest and confidentiality protections is not, per se, invalid");

*Zador*, 31 Cal.App.4th at 1301 (in a situation involving a prospective waiver, "California law does not require that every possible consequence of a conflict be disclosed for a consent to be valid.").

> "Enforceability of prospective waiver: A law firm may require new clients to agree that in the event a future conflict arises with another of the firm's clients, the firm may discontinue representation of the new client and continue to represent the other. Such an agreement may prevent disqualification of the firm if a conflict later arises. [Zador Corp., N.V. v. Kwan (1995) 31 CA4th 1285, 1301, 37 CR2d 754, 763; Visa U.S.A., Inc. v. First Data Corp. (ND CA 2003) 241 F.Supp.2d 1100, 1105 (applying Calif. law)]." 1 P. Vapnek, N. Tuft, E. Peck & H. Wiener, California Practice Guide - Professional Responsibility ¶ 4.84, at 4-24.12 (2016).

In *All Am. Semiconductor, Inc. v. Hynix Semiconductor, Inc.*, 2008 WL 5484552 (N.D. Cal. Dec. 18, 2008),  the Court found that seven (7) factors should be examined to determine whether a waiver is informed on the part of the client:

> "(1) the waiver's breadth; (2) its temporal scope ...; (3) the quality of the conflict discussion between attorney and client; (4) the specificity of the waiver; (5) the nature of the actual conflict ... (6) the sophistication of the client; and (7) the interests of justice."; *see also Visa*, 241 F Supp. 2d at 1106." *Id*. at *10.

Ms. Dean's conflicts waiver specifically identified the criminal investigation in this case, was done prior to her undertaking representation of the clients, involved extensive disclosures between the attorney and the client, was specific as to the claims involved, involved no financial conflicts of any kind, was with clients represented by other attorneys, and was in the interests of justice.  The waiver was coupled with the fact that each of the clients were members of a Joint Defense Agreement dated January 19, 2012, where each client waived all conflicts of interest for attorneys representing the clients, and agreed that between them there would be no confidential information because of their joint interests.  The JDA made specific waivers with each client represented by counsel and has been in effect for more than six (6) years while Mr. Omidi, IMS, and SCM have all been represented by several different attorneys.   Restatement (Third) of the Law Governing Lawyers § 122 (2000) (defining "informed consent" as "requir[ing] that the

client or former client have reasonably adequate information about the material risks of such representation to that client or former client").

### B.   Ms. Dean's Conflicts Waiver is Specific and Detailed

Ms. Dean's Conflicts Waiver and Disclosure contains a detailed discussion of the issues involved in this criminal and accompanying civil proceeding, and it identifies each of the allegations which had been made regarding Mr. Omidi, IMS, and SCM.  The disclosures identified potential adverse disputes between the parties and the likely claims which the parties could make regarding one another.  With the full disclosure having been made, Mr. Omidi, IMS, and SCM all waived past, present, and future conflicts with the assistance of independent counsel.

Ms. Dean has submitted a copy of her Conflicts Waver to the Court in camera because it is a confidential and privileged attorney-client communication. That Conflicts Waiver states that IMS & SCM each waiver any conflict of interest which might arise by virtue of Ms. Dean's participation in this criminal proceeding, and it recites extensive information about the potential conflicts which have or may arise.  It recites the existence of the Joint Defense Agreement previously entered into between the parties on January 19, 2012, which Ms. Dean has also submitted to the Court in camera because it too is a confidential and privileged Attorney-Client communication.

Ms. Dean's Conflicts Waiver is extensive, refers to the Joint Defense Agreement of January 19, 2012, which had been in effect for almost five (5) years, and was more detailed and specific than waivers of a like nature which have been approved by the Courts.  *In re Sheppard Memory Graphics, LLC*., 659 F. 3d 1336 (Fed. Cir. 2011); *General Cigar Holdings, Inc. v. Altadis, S.A.*, 144 F. Supp. 2d 1334, 1336 (S.D. Fla. 2001).  The Conflicts Waiver was approved by independent attorneys for the clients, including Mr. Omidi, IMS, and SCM, and each of the clients having been represented in these matters by counsel for several years.  *Visa U.S.A., Inc. v. First Data Corp*., 241 F. Supp. 2d 1100, 1109-10 (N.D. Cal. 2003).  This is a case of successive representation, not concurrent representation, and conflicts waiver for successive representation are regularly

upheld by the Court.  *See Estate of Hogarth v. Edgar Rice Burroughs, Inc.*, 2001 WL 515205, at *5-6 (S.D.N.Y. May 15, 2001).

## C.   The Government's Claims of Ms. Dean's Conflicts is Without Merit

The government's claim that Ms. Dean has received confidential information, will have to cross-examine former clients who imparted confidential information to her, and that she has not disclosed her conflicts is without merit.  Discussed below is the fact that the January 19, 2012 Joint Defense Agreement, which contains extensive conflicts waivers between Mr. Omidi, IMS, and SCM, was known by the government since January 15, 2015.  Ms. Dean has no confidential information from any past client because of the Conflicts Waiver, and she is not precluded from participation of this proceeding on Mr. Omidi's behalf because of any past or potential conflict.

In *Visa U.S.A., Inc. V. First Data Corp.*, 241 F. Supp. 2d 1100, 1107 (N.D. Cal. 2003), the Court found that

> "'the closer the lawyer who seeks a prospective waiver can get to circumstances where not only the actual adverse client but also the actual potential future dispute are identified,' the more likely the prospective waiver is ethically permissible)." (Quoting ABA Formal Op. 93–372 at 1001:177 (1993)).

In *Visa U.S.A.,* the Court denied disqualification of an attorney where advanced disclosures were made regarding potential conflicts of interest and knowing waivers obtained from the client.  The Court stated:

> "Most significantly, the waiver letter itself demonstrates that Heller fully explained to First Data the nature of the conflict waiver at issue. When First Data first approached Heller to represent it in the patent litigation, Heller explained to First Data that, even though there were no present conflicts between Visa and First Data, there was a significant risk of future adversity because Visa and First Data were major competitors in the processing side of the credit card business. Haslam Decl. ¶ 4. Heller thus informed First Data that it would not be able to take the matter unless First Data would waive any conflicts that might arise out of Heller's ongoing work for Visa in matters up to and including possible future litigation. *Id.* ¶ 3. This understanding was confirmed in the written waiver letter." *Id.* at 1107.

Ms. Dean's Conflicts of Interest Disclosure and Waiver not only follows the disclosures identified in *Visa U.S.A.*, but also identified specific possibilities of conflicts

and obtained specific waivers regarding future potential conflicts.  The language used in the Conflicts of Interest Disclosure and Waiver are more explicit than blanket waivers that have been upheld in similar situations not only in the *Visa U.S.A.* case, but also by other courts.  *Visa U.S.A., Inc. v. First Data Corp*., 241 F. Supp. 2d 1100, 1107 (N.D. Cal. 2003); *Zador Corp. v. Kwan*, 31 Cal. App. 4th 1285, 1301 (1995) (a waiver of conflict with named client "notwithstanding any adversity that may develop" sufficient to bar disqualification in subsequent litigation); *General Cigar Holdings, Inc. v. Altadis, S.A.*, 144 F. Supp. 2d 1334, 1336 (S.D. Fla. 2001) (a waiver of conflict with named client "in any matter not substantially related to this representation" sufficient to bar disqualification in subsequent litigation).

## IV.   THE JANUARY 19, 2012 JOINT DEFENSE AGREEMENT WAIVED CONFLICTS[1]

### A.   SCM, IMS and Julian Omidi were Parties to the JDA

The government argues that Ms. Dean "appears to share a common defense" with Brian Oxman, who the government claims has assisted other companies and the co-defendants.  (Motion, p. 1, lines 13-15).  However, Ms. Dean has never employed Mr. Oxman, and Mr. Oxman is not Ms. Dean's agent, representative, or contractor.  (See Dean Declaration).  Instead, Mr. Oxman is a party to a Joint Defense Agreement dated January 18, 2012, where Mr. Omidi, IMS, SCM, and several others are also parties, and that JDA, which is in full force and effect, renders the government claim that Ms. Dean has received confidential information from IMS or SCM without foundation.  In the JDA, each party, including Mr. Omidi, SCM, and IMS waived any confidentiality among themselves and as to information they exchanged or came into possession.

The existence of the Joint Defense Agreement or passage of confidential information under that Agreement provides no basis to for an ethical inquiry of Ms. Dean, Mr. Oxman, Ms. Jaroscak, or any other attorney because "[t]he Ninth Circuit has long

---

[1] Defendants have previously asserted the JDA privilege to the government.

recognized that the joint defense privilege is 'an extension of the attorney-client privilege.'" *United States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012), *quoting United States v. Henke*, 222 F.3d 633, 637 (9th Cir. 2000); *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583 (9th Cir. 1987) (citations omitted).   "The common interest privilege [is] frequently referred to as the joint defense privilege," *United States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003).  "[N]o written agreement is required, and . . . a [joint defense agreement] may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who are or potentially may be codefendants or have common interests in litigation," *United States v. Gonzalez*, 669 F.3d 974, 979 (9th Cir. 2012).  "In order for the joint defense theory to apply, there need not be actual litigation."  *Narog v. City of Redwood City*, 2014 U.S. Dist. LEXIS 36193, at *12 (N.D. Cal. Mar. 17, 2014), citing *Gonzalez*, 669 F.3d t 980 ("[A]s parties in separate actions might nonetheless have reasons to work together toward a common objective, and there is no requirement that actual litigation even be in progress.").

> "The [joint defense] privilege [as] . . . is a valuable and an important right for the protection of any client at any stage of his dealings with counsel. It is a vital and important part of the client's right to representation by counsel. We think that to make the limitations on this right sought to be urged by the United States would tend in substantial measure to destroy the privilege." *Cont'l Oil Co. v. United States*, 330 F.2d 347, 350 (9th Cir. 1964).

In *United States v. Stepney*, 246 F. Supp. 2d 1069, 1074–75 (N.D. Cal. 2003), the Court stated:

> "The joint defense privilege initially arose as an extension of the attorney-client privilege against court-ordered disclosure against confidential communications. Ordinarily, the attorney-client privilege  will be deemed waived where a client discloses the contents of an otherwise privileged communication to a third party or where the communication occurs in the presence of third parties. *United States v. Gann*, 732 F.2d 714, 723 (9th Cir.), *cert. denied*, 469 U.S. 1034, 105 S.Ct. 505, 83 L.Ed.2d 397 (1984) (privilege waived when communication made in presence of third party); *Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 24 (9th Cir.1981) (subsequent disclosure of content of communication waives privilege). The joint defense privilege was adopted as an exception to this waiver rule, under which communications between a client and his own lawyer remain protected by the attorney-client privilege when disclosed to co-defendants or their counsel for purposes of a common defense. *Hunydee v.*

*United States*, 355 F.2d 183, 185 (9th Cir.1965); *Continental Oil Co. v. United States*, 330 F.2d 347, 350 (9th Cir.1964); *Chahoon v. Virginia*, 62 Va. 822 (1871); *see also Waller*, 828 F.2d at 583 n. 7."

There is no conflict between the co-defendants in this case, and Mr. Omidi, IMS, and SCM have all waived any claim of confidentiality or disclosure of confidential information among themselves.  Everything which was communicated to Ms. Dean was part of the Joint Defense Agreement.  These communications were consensual, with full knowledge of the terms of the Joint Defense Agreement, and as a privilege that was co-held by each of the parties to that Agreement.  All parties in advance waived any confidentiality of joint defense communications as to one another, and there is no conflicts of interest or infringement on confidential attorney client communications involved in this proceeding.

## B.     The government has known of the JDA since January 15, 2015

Since January 15, 2015, the government has known that Mr. Omidi, IMS, and SCM, along with several other individuals and companies, were in a Joint Defense Agreement which provided they would communicate with one another regarding the government's investigation, and that such communications were part of their common defense.  That notice and knowledge was imparted to them in innumerable emails in their possession which state Joint Defense from the parties in this case, and from the Privilege Log of Attorney Konrad Trope dated January 15, 2015.  (See Dean Declaration).  Any communication which IMS, SCM, or Mr. Omidi  had with one another was part of that joint defense relationship, and Mr. Oxman's activities as a litigation coordinator conveying communications between the parties was also expressly covered by the JDA.  The fact that any of the parties to the JDA might have gathered confidential information from one of the co-defendants was agreed to and waived by the co-defendants.  (See 1-19-12 joint Defense Agreement submitted in camera).

Joint Defense Agreement need not be in writing, and the Ninth Circuit has determined that the privilege contained in a JDA are governed by principles of attorney-client privilege.  *United States v. Gonzalez*, 669 F.3d 974, 979 (9th Cir. 2012) ("no written

agreement is required, and . . . a [joint defense agreement] may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who are or potentially may be codefendants or have common interests in litigation.").  The waiver of confidentiality among the parties to the Joint Defense Agreement, which include all parties before the Court in this case, precludes any claims of conflicts because the common interest privilege "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel."  *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir.1989).  Over the years, the concept of a common interest privilege has expanded to cover parties who are not yet engaged in litigation but coordinate efforts to avoid litigation even before litigation is foreseeable.  *In re Regents of Univ. of California*, 101 F.3d 1386, 1391 (Fed. Cir. 1996). The common interest privilege applies to communications made with respect to "actual" or "reasonably anticipated" litigation.  *See, e.g., Polycast Tech. Corp. v. Uniroyal, Inc.*, 125 F.R.D. 47, 50 (S.D.N.Y.1989) ("[a]ctual or potential litigation is a necessary prerequisite for application of the joint defense privilege"); *Stenovich v. Wachtell, Lipton, Rosen & Katz*, 195 Misc.2d 99, 108 (N.Y. Sup. Ct. 2003) (joint defense doctrine can be applied to communications consisting of "legal advice in [both] pending or reasonably anticipated litigation").

 In *In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*, 902 F.2d 244, 249 (4th Cir. 1990), the Court stated:

> "Whether an action is ongoing or contemplated, whether the jointly interested persons are defendants or plaintiffs, and whether the litigation or potential litigation is civil or criminal, the rationale for the joint defense rule remains unchanged: persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims."

In *In re Shared Memory Graphics LLC*, 659 F.3d 1336 (Fed. Cir. 2011), a patentee brought infringement action against several toy manufacturers claiming violation of its patents.  One of alleged infringer defendants moved to disqualify the law firm

DEFENDANT JULIAN OMIDI'S MEMORANDUM IN OPPOSITION TO MOTION FOR
INQUIRY RE: ABSENCE OF KAMILLE DEAN'S CONFLICTS

representing plaintiff from continued representation of patentee because one of the
attorneys in the firm representing plaintiff had worked on the patent in litigation against
Advanced Micro Devices and Nintendo, who were defendants in the instant proceeding.
The District Court granted the motion, and the Plaintiff petitioned for writ of mandamus
to vacate disqualification orders.  The Federal Circuit issued the writ finding that the case
was governed by California law.  The Court found that the Joint Defense Agreement
between the parties constituted a waiver of both potential conflicts of interest and
disclosures of confidential communications between the parties and the law firm.  *Id.* at
1340.  The Joint Defense Agreements provided that the parties could not utilize joint
communications or claims of conflict to disqualify the respective counsel in any future
litigation.  *Id.*   Advanced waivers of conflicts of interest among parties to a joint defense
agreement are valid and enforceable.  *Id.* at 1341, citing Restatement (Third) Law
Governing Lawyers § 122 cmt. D (2000).  Under California law courts have recognized
"advanced waivers of potential conflicts, even if the waiver does not specifically state the
exact nature of the future conflict." *Id., citing VISA USA, Inc., v. First Data Corp*., 241 F.
Supp. 1100, 1105 (N.D. Cal. 2003).  Were a counsel to the Joint Defense Agreement fail
to abide by the agreement, the Court would be able to disqualify that counsel form
representing any of the parties to the agreement.  *Id.* 1342 n.

Mr. Omidi, IMS, and SCM are all parties to the January 19, 2012 JDA which
remains in full force and effect as of today.  That agreement waived any conflicts of
interests between the parties and stated that any disclosures between the parties were not a
basis to assert conflicts or seek disqualification of parties or counsel.  The effect of the
JDA is an advanced waiver of confidential communications, and the government's efforts
to suggest that Ms. Dean has confidential information as to one or another of the co-
defendants in this proceeding is without merit because of the advanced waiver of any
confidentiality or conflicts.

## C.   IMS and SCM waived use of Joint Defense information

The government argues:

DEFENDANT JULIAN OMIDI'S MEMORANDUM IN OPPOSITION TO MOTION FOR
INQUIRY RE: ABSENCE OF KAMILLE DEAN'S CONFLICTS

"The second category of conflicts arises from Dean and Jaroscak's continued representation of defendant OMIDI, where that representation will likely require that they cross-examine former officers and managers for defendants SCM and IMS, from whom certain members of defendant OMIDI's current defense team (namely, Oxman and Jaroscak) may have received confidential information during the course of the investigation.  (Motion, p. 2, lines 14-20).

However, since at least January 15, 2015, the government has known that SCM and IMS are both signatories to the JDA which prevents them from making any claim of such a conflict or that other members of the JDA, including Mr. Omidi, IMS, and SCM might have obtained confidential information.  The fact that Dean, Oxman, or Jaroscak have confidential information is waived by the JDA for all co-defendants.  The government is making a claim it knows is precluded by the express waivers in the JDA.

The JDA which Ms. Dean has submitted to the Court in camera expressly provides one party may use information disclosed as part of the JDA arrangement to cross-examine another party.  Between the parties to a joint defense agreement there is no confidentiality and each party waives the other party's use of such information because the communications are only privileged as to third parties and not the members of the joint defense.  *United States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012).  The communications between attorneys and clients who are in a joint defense arrangement are freely exchanged among themselves and are not subject to any conflicts of interest or confidential information precautions among the parties who freely exchange the information.  *Hunydee v. United States*, 355 F.2d 183, 185 (9th Cir. 1965) ("When former co-clients sue one another, the default rule is that all communications made in the course of the joint representation are discoverable.");  *In re Teleglobe Commc'ns Co.*, 493 F.3d 345, 366 (3d Cir.2007).  *See also FDIC v. Ogden Corp.*, 202 F.3d 454, 461 (1st Cir.2000) (attorney client privilege and confidentiality "inapplicable to disputes between joint clients").

Each party to the JDA in this case agreed that they may be cross-examined regarding any information exchanged as part of the JDA.  There is no conflict of interest or confidentiality as to the parties among themselves.  The government's claim that a

conflict would exist should an attorney for one party cross-examine another party to the JDA is without merit and a deliberate effort to ignore the waiver contained in the JDA.

### D.    The government's claimed ignorance of the JDA is without merit

The government argues:

> "Those ambiguities [involving for whom Mr. Oxman and Ms. Jaroscak worked], combined with the fact that Oxman and Jaroscak appear to have had discussions regarding confidential information with government witnesses and/or co-defendants who were also targets of the government's investigation, make an inquiry by the Court necessary here."  (Motion, p. 3, lines 7-11).

The government has submitted a Motion for Inquiry to this Court which conceals its prior knowledge of the JDA. In what can only be characterized as discourse of improper accusations, the government has sought to pretend the JDA doesn't exist and that attorneys, including Ms. Dean, have involved themselves in conflicts that no reasonable attorney would undertake in the absence of a JDA.  The government's lack of candor to the court and concealment of its knowledge of the JDA is unacceptable.[2]

The government's feigned ignorance of the JDA is improper because they have known of the JDA since January 15, 2015.  "[N]o written agreement is required, and . . . a [joint defense agreement] may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who are or potentially may be codefendants or have common interests in litigation."  *United States v. Gonzalez*, 669 F.3d 974, 979 (9th Cir. 2012).  "I]n order for the joint defense theory to apply, there need not

---

[2] The serious nature of the government concealment cannot be overemphasized.  See pp.7-8 *supra*.   "In representing the United States, a federal prosecutor has a special duty not to impede the truth." *United States v. Reyes*, 577 F.3d 1069, 1077 (9th Cir. 2009).  *See United States v. Kojayan*, 8 F.3d 1315, 1323 (9th Cir.1993) ("[L]awyers representing the government ... serve truth and justice first."); *United States v. Associated Convalescent Enters., Inc*., 766 F.2d 1342, 1346 (9th Cir.1985) (an attorney is an officer of the court, and as such, has a "duty of good faith and candor in dealing with the judiciary"); *Williams v. Superior Court*, 46 Cal.App.4th 320, 330 (1996) ("Honesty in dealing with the courts is of paramount importance, and misleading a judge is, regardless of motives, a serious offense.").

be actual litigation." *Narog v. City of Redwood City*, 2014 U.S. Dist. LEXIS 36193, at \*12 (N.D. Cal. Mar. 17, 2014), *citing Gonzalez*, 669 F.3d t 980 ("[A]s parties in separate actions might nonetheless have reasons to work together toward a common objective, and there is no requirement that actual litigation even be in progress.").

In *Cont'l Oil Co. v. United States*, 330 F.2d 347, 350 (9th Cir. 1964), the Ninth Circuit stated:

> "The [joint defense] privilege [as] . . . is a valuable and an important right for the protection of any client at any stage of his dealings with counsel.  It is a vital and important part of the client's right to representation by counsel.  We think that to make the limitations on this right sought to be urged by the United States would tend in substantial measure to destroy the privilege."

There is no basis in this case to make the inquiries the government has requested.  The government's feigned ignorance of the JDA followed by its unbridled speculation about witnesses is without foundation.  The government's request for an inquiry is based on pretending the JDA does not exist when the government knows it exists, and Ms. Dean has not engaged in any ethical violation.

## V.   BRIAN OXMAN'S ALLEGED CONFLICTS ARE NOT IMPUTED TO ATTORNEY DEAN.

To the extent the government is attempting to impute Brian Oxman's alleged conflicts in this matter onto Attorney Dean, this Court should not consider the government's allegations.  Attorney Dean started representing SCM, IMS and Julian Omidi in September 2017.  Brian Oxman is the litigation coordinator for SCM and IMS and other related companies and has been for many years prior to Attorney Dean commencing her representation.  Attorney Dean has not learned of any secret or privileged information from Brian Oxman that she could or would use against SCM and/or IMS.  As previously stated, Attorney Dean obtained waivers of conflict from SCM and IMS and they have approved Attorney Dean's continued representation of Defendant Julian Omidi.

## VI.   ATTORNEY DEAN HAS NEVER MET OR SPOKEN TO ALLEGED CO-CONSPIRATORS SHERWIN HONG AND CHARLES KLASKY.

To the extent, the government claims Attorney Dean is conflicted with SCM and IMS due to Sherwin Hong and Charles Klasky, this Court should not consider said absurd allegations.  Attorney Dean has never met or spoken with either Sherwin Hong or Charles Klasky and therefore learned of no secret or privileged information from either of them. Anything Attorney Dean knows regarding Hong or Klasky is also known to the government, specifically AUSA Kristen Williams, who has been around for the entire investigation, who is more conflicted than any other attorney in this matter[2]. The Defendants presented information to the USA on multiple occasions to prevent this indictment.

## VII.   THE REQUEST FOR INQUIRY APPEARS TO BE AN ATTEMPT TO INTERFERE WITH JULIAN OMIDI'S SIXTH AMENDMENT RIGHT TO COUNSEL

Defendant Julian Omidi has a Sixth Amendment Right to Counsel.  The Sixth Amendment right to counsel is an individual right, held by each and every defendant. Julian Omidi retained Attorney Dean in August 2017.  AUSA Williams is fully aware of this representation, as early in September 2017, Attorney Dean made contact with AUSA Williams regarding the underlying investigation of this matter.   By requesting this Court look into Attorney Dean's alleged conflicts, the inquiry by AUSA Williams is a blatant attempt to interfere with Julian Omidi's Sixth Amendment Right to Counsel.

## VIII.  THE USA HAS KNOWN OF THESE ALLEGED CONFLICTS AND WAIVED ANY ALLEGED INQUIRY.

The USA has known of Attorney Dean's simultaneous representation of SCM, IMS and Julian Omidi both in the underlying criminal investigation of this matter, in addition to other related civil matters, including Almont v. United Healthcare, 14-cv-03053 since

---

[2]It appears AUSA Williams is attempting to deflect from her own conflicts by filing this frivolous request for this court to inquire into Attorney Dean's representation.

September 2017 (pre-indictment to even the original Indictment in this matter).  At no time previously did AUSA Williams, or any other attorney for the government, inform Attorney Dean that she may have a conflict with representing IMS, SCM and Julian Omidi. In fact, AUSA Williams has corresponded with Attorney Dean via writing on numerous occasions confirming Attorney Dean's representation of all three. At no time previous to the arrest of Julian Omidi did AUSA Williams indicate to Attorney Dean there was a potential conflict.

AUSA Williams' actions are further egregious in that Attorney Dean initially intended to represent all three defendants. On March 20, 2018, Attorney Dean made clear on the record and to Ms. Williams prior to the Court hearing for SCM and IMS that she would only represent Defendant Julian Omidi.  Attorney Dean believed in good faith this put the conflict issue to rest due to her successive conflict waivers, yet, AUSA Williams and the USA is still seeking to conflict Attorney Dean off this matter.  This Court should not entertain the AUSA's request for inquiry.  This Court should undoubtedly allow Attorney Dean to continue representation of Defendant Julian Omidi.

## IX. CONCLUSION

For the foregoing reasons, Defendant Mr. Julian Omidi requests the government's Request for Inquiry filed March 30, 2018, be denied.

Dated:  April 17, 2018                    Law Offices of Kamille Dean, PLC


By: /s/ Kamille Dean
     Kamille Dean
     *Attorneys for Defendant*
     JULIAN OMIDI

22

1

2

## DECLARATION OF KAMILLE DEAN

3

I, Kamille Dean, declare and say:

4

1.  I am an attorney at law and counsel of record for Defendant, Julian Omidi.

5

2.  I represent Julian Omidi in this proceeding and only Julian Omidi.  I do not

6

represent Independent Medical Services, Inc. ("IMS") or Surgery Center Management,

7

LLC. ("SCM").  While I made a limited appearance for purposes of the arraignment of

8

IMS and SCM on March 20, 2018, for "today only," that limited appearance was with the

9

Court's express approval and Order after the government entered into a stipulation in open

10

Court that it would not create a conflict of interest nor be the basis for any government

11

motion to disqualify me as counsel.  Under no conditions would I have accommodated the

12

Court's need to move the case forward with an arraignment of IMS and SCM in the

13

absence of the government's stipulation that the appearance was limited, for today only,

14

and would not form the basis of any request for disqualification based on a conflict.

15

3.  The government has failed to inform the Court that Magistrate Judge Abrams

16

approved the stipulation of the parties in open court that my appearance was a limited

17

appearance for today only and for purposes of the arraignment only.

18

IMS and SCM retained separate counsel on April 3, 2018, when Mr. George Paukert

19

appeared for IMS and SCM as counsel.  (Dkt 113).  When I appeared for these co-

20

defendants at the Arraignment Hearings on March 20, 2018, it was with the express Order

21

from the Court and agreement from the US Attorney that her appearance was for the

22

purpose of arraignment only for "today" only.

23

4.  Attached as Exhibit "A" is a copy of the Transcript of the hearing on March 20,

24

2018, which demonstrates that with the Court's approval (Magistrate Judge Abrams) I

25

stated I was making a limited appearance, that my Notices of Appearance (Dkt 96 & 100),

26

were only for the Arraignment hearings and so stated, and that the government's attorney

27

AUSA Williams agreed Ms. Dean could make a limited appearance for Arraignment only.

28

There is no question but that with the Court's approval AUSA Williams agreed my

DEFENDANT JULIAN OMIDI'S MEMORANDUM IN OPPOSITION TO MOTION FOR
INQUIRY RE: ABSENCE OF KAMILLE DEAN'S CONFLICTS

1   limited appearance for IMS and SCM was for March 20, 2018, only, and that Ms.

2   Williams was not going to claim a conflict.  Nevertheless, without justification, and

3   without informing the Court of the promises Ms. Williams made before Judge Abrams,

4   Ms. Williams then filed on March 30, 2018, only ten (10) days later, a Motion for Inquiry

5   into my so-called conflicts from appearing for IMS and SCM, doing the very thing she

6   promised and stipulated before Judge Abrams that she would not do.

7       5.   The government's claim in its March 30, 2018, Motion for Inquiry is a direct

8   contradiction of the knowing representations the government made to the Court on March

9   20, 2018.  The Motion for Inquiry is a materially misstatement of the facts because in its

10  Motion for Inquiry the government concealed from this Court its agreement and

11  representations to Judge Abrams.  The government has literally lulled me to make a

12  limited appearance pursuant to its agreement and the Court's Order only to then accuse

13  me of a conflict of interest the government unambiguously waived on March 20, 2018, as

14  non-substantive.

15      6.   I previously represented IMS and SCM in the case of *Almont Ambulatory*

16  *Surgery Center, LLC. vs. United Health Care Group, Inc*., USDC Central District of

17  California 14 CV 03053.  However, on February 9, 2018, prior to Mr. Omidi's

18  arraignment on February 28, 2018, I filed a Motion to Be Relieved as Counsel in that

19  case, and on April 10, 2018, that Motion was granted.

20      7.   Before I commenced representation of IMS and SCM, I obtain a signed

21  Conflicts of Interest Waiver and Disclosure from IMS and SCM.  The Waiver and

22  Disclosure contained a waiver of all past, present, or future potential conflicts of interest

23  between Mr. Omidi, IMS and SCM.  The Conflicts Waiver specifically identified this

24  criminal case and the criminal investigation surrounding it, was done prior to my

25  undertaking representation of the client, involved extensive disclosures between the

26  attorney and the client, was specific as to the claims involved, involved no financial

27  conflicts of any kind, was with clients represented by other attorneys, and was in the

28  interests of justice.

DEFENDANT JULIAN OMIDI'S MEMORANDUM IN OPPOSITION TO MOTION FOR
INQUIRY RE: ABSENCE OF KAMILLE DEAN'S CONFLICTS

8.  My Conflicts Waiver contains a detailed discussion of the issues involved in this criminal and accompanying civil proceeding.  It identifies each of the allegations which had been made regarding Mr. Omidi, IMS, and SCM.  The disclosures identified potential adverse disputes between the parties and the likely claims which the parties could make regarding one another.  With the full disclosure having been made, Mr. Omidi, IMS, and SCM all waived past, present, and future conflicts with the assistance of independent counsel.

9.  I have submitted a copy of my Conflicts Waver to the Court in camera because it is a confidential and privileged attorney-client communication. That Conflicts Waiver states that IMS & SCM each waiver any conflict of interest which might arise by virtue of my participation in this criminal proceeding, and it deceits extensive information about the potential conflicts which have or may arise.  It recites the existence of the Joint Defense Agreement previously entered into between the parties on January 19, 2012, which Ms. Dean has also submitted to the Court in camera because it too is a confidential and privileged Attorney-Client communication.

10.  The waiver was coupled with the fact that each of the clients was a member of a Joint Defense Agreement dated January 19, 2012, where each client waived all conflicts of interest for attorneys representing the clients.  I have submitted a copy of the JDA to the Court in camera because it is a privileged and confidential Attorney-Client communication.  In the JDA each client agreed that between them there would be no confidential information because of their joint interests.  The JDA made specific waivers with each client represented by counsel and has been in effect for more than six (6) years while Mr. Omidi, IMS, and SCM have all been represented by several different attorneys.

11.  Since January 15, 2015, the government has known that Mr. Omidi, IMS, and SCM, along with several other individuals and companies, were in a Joint Defense Agreement which provided they would communicate with one another regarding the government's investigation, and that such communications were part of their common defense.  That notice and knowledge was imparted to them in innumerable emails in their

possession which state Joint Defense from the parties in this case, and from the Privilege Log of Attorney Konrad Trope dated January 15, 2015.  (See Exhibit "B").  Any communication which IMS, SCM, or Mr. Omidi had with one another was part of that joint defense relationship, and Mr. Oxman's activities as a litigation coordinator conveying communications between the parties was also expressly covered by the JDA. The fact that any of the parties to the JDA might have gathered confidential information from one of the co-defendants was agreed to and waived by the co-defendants.

12.  Everything which was communicated to me from my former clients was part of the Joint Defense Agreement.  These communications were consensual, with full knowledge of the terms of the Joint Defense Agreement, and as a privilege that was co-held by each of the parties to that Agreement.  All parties in advance waived any confidentiality of joint defense communications as to one another, and there are no conflicts of interest or infringement on confidential attorney client communications involved in this proceeding.

13.  The government has claimed that because of a common defense arrangement involving Mr. Brian Oxman and Ms. Maureen Jaroscak, that I have conflicts of interest. The claim is without merit.  My Conflicts Waiver and the JDA, of which the government is fully aware, preclude any such claim.  I have not received any confidential information from any party or client because the Conflicts Waiver waives all such confidentiality as does the JDA.

14.  I have never employed Mr. Oxman or associated with him professionally.  Mr. Oxman is not my agent, representative, or contractor.  Mr. Oxman is a litigation coordinator for my client who conveys information to me from my clients.  I have not assisted Mr. Oxman to provide any legal consultation with a client, appear on behalf of a client, represent a client, transact any matter on or for a client, handle client funds, or engaged in the practice of law.  I have not paid Mr. Oxman for any services rendered to me or any other attorney.

DEFENDANT JULIAN OMIDI'S MEMORANDUM IN OPPOSITION TO MOTION FOR
INQUIRY RE: ABSENCE OF KAMILLE DEAN'S CONFLICTS

15.  I have provided Mr. Oxman payments from various clients which were made from funds in my attorney trust account for his litigation coordinator activities.  Those payments were in my capacity as a Trustee for my clients and were not made me personally.  I did not employ, assist, direct, control, or otherwise engage the services of Mr. Oxman as a contractor or consultant.  Mr. Oxman is a litigation coordinator for one of my clients, Golden State Practice Management, and payments which Golden State Practice Management or any of my clients from funds held in my trust account does not constitute a payment from me because I cannot direct, control, or otherwise instruct Mr. Oxman on what to do or how he is to perform his services as a litigation coordinator for my clients.

16.  Mr. Oxman is also a party to a Joint Defense Agreement dated January 19, 2012, where Mr. Omidi, IMS, SCM, and several others are also parties.  The existence of the JDA, which is in full force and effect, renders the government claim that I have received confidential information from IMS, SCM, or Mr. Oxman without foundation.  In the JDA, each party, including Mr. Omidi, SCM, and IMS waived any confidentiality among themselves and as to information they exchanged or came into possession.

I declare under penalty of perjury under the laws of the United States of America the foregoing is true and correct.  Executed this 17th day of April, 2018, at Los Angeles, California.


                              s/ Kamille Dean
                         _____
                              Kamille Dean

DEFENDANT JULIAN OMIDI'S MEMORANDUM IN OPPOSITION TO MOTION FOR
INQUIRY RE: ABSENCE OF KAMILLE DEAN'S CONFLICTS

# CERTIFICATE OF SERVICE

I hereby certify that, on April 17, 2018, I electronically filed the following document(s) with the Clerk of the Court for the United States District Court for the Central District of California, by using the district court's CM/ECF system:

**DEFENDANT JULIAN OMIDI'S MEMORANDUM RE: ABSENCE OF CONFLICTS REGARDING ATTORNEY KAMILLE DEAN IN OPPOSITION TO GOVERNMENT'S REQUEST FOR INQUIRY (Dkt 127)**

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the district court's CM/ECF system.

s/ Kamille Dean
_____
Kamille Dean