Roger Jon Diamond, Esq. (State Bar No. 40146)
   *rogdiamond@aol.com*
Law Offices of Roger Jon Diamond
1717 Fourth Street, Third Floor
Santa Monica, California 90401
Tel. (310) 452-6643

Kamille R. Dean, Esq.  (State Bar No. 234468)
   *kamille@kamilledean.com*
Law Offices Of Kamille Dean, PLC
4545 North 36th Street, Suite 202
Phoenix, Arizona 85018
Tel. (602) 252-5601

*Attorneys for Defendant*
JULIAN OMIDI

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br>      *vs*.<br><br><br>JULIAN OMIDI, INDEPENDENT MEDICAL SERVICES, INC., SURGERY CENTER MANAGEMENT, LLC, and MIRALI ZARRABI, M.D.,<br><br>                    Defendants. | Case No. CR 17-00661(A)-DMG<br><br>[*Hon. Dolly M. Gee, District Court Judge*]<br><br>**DEFENDANT JULIAN OMIDI'S NOTICE OF MOTION AND MOTION FOR BILL OF PARTICULARS**<br><br>[MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF]<br><br>Date:          Wednesday May, 23, 2018<br>Time:          2:00 p.m.<br>Dept.:          Courtroom 8C<br>Location:    350 West 1st Street, 8th Floor<br>                    Los Angeles, CA 90012<br>Trial:           October 9, 2018 at 8:30 a.m. |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Wednesday May 23, 2018, at 2:00 p.m. or, as soon as this matter may be heard in Courtroom 8C, within this Court, located at 350 West 1st Street, 8th Floor, Los Angeles, California, 90012, Defendant Julian Omidi ("Defendant"), by and through his counsel of record, Roger Jon Diamond, Esq., of the Law Offices of Roger Jon Diamond, Kamille Dean, of Law Offices of Kamille Dean, PLC , hereby move this Honorable Court for an order for the Government to produce a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure.  Defendant seeks a bill of particulars so that, among other things, he may adequately prepare his defense and avoid prejudicial surprise at trial.

The particulars sought include but are not limited to the following:

| Paragraph in Indictment | Vague Allegations | Specific Information needed for Julian to defend himself |
|---|---|---|
| 10 | Insurance company "*typically*" required that the Lap-Band surgery be pre-approved…<br><br>At least one co-morbidity, such as obstructive sleep apnea ("OSA"), "*typically*" diagnosed through a sleep study | What insurance company?<br><br>Which insurance companies did not typically require this?<br><br>How often diagnosed with a different co-morbidity?<br>Are all allegations in here co-morbidity? |
| 11 | …the medical provider "*typically*" submitted a pre-authorization request | What medical provider? |
| 16 | "*Most*" insurance companies required a diagnosis  moderate or severe OSA… | Which insurance companies did require this? |
| 34, 35, 36 | If TriCare and the Insurance Companies had known any of the following, they "*might"* have denied the claims or subjected them to additional scrutiny | The allegation of  "might" does not amount to a crime.<br><br>Who are the victims? Who are the insurance companies? |
| 34b | That the sleep study was not medically necessary | Who are the victims? Who are the patients? |
| 34d, 35d | That employees had received commissions for the scheduling or completion of sleep studies. | Who are the employees? |

| 37 | Together with C.K., S.J., and CC-2 and others "known and unknown to the …" | Who are the other known co-conspirators?<br><br>Why are the other co-conspirators "unknown"? |
|---|---|---|
| 38c | "Some" of those "Assignment of Benefits "forms notified patients that defendant J. Omidi was an owner….. | Which AOBs?<br><br>For which patients? |
| 38d | "even though some of the patients has insurance that likely would not cover LapBand surgery under any circumstances" and even though there was often little medical need for the sleep study documented …."On some occasions, the check-box for "Polysomnography" was not checked | Which patients had no coverage under any circumstances?<br><br>Which patients did not have polysomnography checked but sleep study was ordered? |
| 38e | Policies set by defendant J. Omidi "and others"<br><br>At the time defendant J. Omidi "and others" set these policies | What policies?<br><br>Who are the others? |
| 38f | "other GET THIN employees… also received commissions relating to procedures… | Who are the employees? |
| 38g | As defendant J.Omidi and co-conspirator C.K. knew, defendant Zarrabi permitted his electronic signature …. Has been altered by co-conspirator C.K. and "others" | Who are the others? |
| 38h | Defendant J. Omidi authorized "other" GET THIN SSP employees… | Who are the other employees? |
| 38k | Bore forged or Unauthorized signatures of "dieticians contracted with GET THIN" | Who are the dieticians?<br><br>Which signatures were forged?<br><br>Which signatures were unauthorized?<br><br>Who forged these signatures or made the signatures without authority? |
| 38k1 | J. Omidi at times directed GET THIN "employees" to revise the LOMNs…the individuals writing and revising the | Who are the individuals without medical professional licenses that Julian Omidi allegedly directed? |

DEFENDANT JULIAN OMIDI'S NOTICE OF MOTION AND MOTION FOR BILL OF
PARTICULARS

|  |  | LOMNS were not medical professionals |  |
|---|---|---|---|
|  | 38l | Defendant J. Omidi "*typically*" approved the LOMNs before they were submitted to TriCare and the Insurance Companies. | Which LOMNs did Omidi not approve?<br><br>Which Insurance companies? |
|  |  | reviewed by "physicians" ... those physicians had often never seen or examined the patients | What are name of these physicians?<br><br>What are name of these patients not examined? |
|  | 39 | GET THIN Providers, including defendant IMS, billed…. "at least approximately $240,000,000 for Lap-Band surgeries…." TriCare and Insurance Companies paid more than approximately $38,000,000 on those claims… | What claims add up to be $38 Million?<br><br>What claims were billed for approximately $240 million? |
|  | 40 | "millions in payments…" | What claims? |
|  | 41 | "patients" | What are names of patients and dates of services? |
|  |  |  |  |

| **Paragraph in Indictment** | **Vague COUNTS** | **Specific Information needed for Julian to defend himself** |
|---|---|---|
| Count 1 | Claim form…for "D.S." | 1) Full name of D.S;<br>2) who/where/when/how for the mailing of said claim form;<br>3) alleged fraudulent statement(s) contained on said claim form;<br>4) the who/where/when/ of said alleged fraudulent statement(s) |
| Count 2 | Check provided mailed to "DME Provider 1" for "J.J." | 1) Full name of J.J.;<br>2) Full name of DME Provider 1;<br>3) who/where/when/how for the mailing of said check;<br>4) alleged fraudulent statement(s) contained on said |

| | | |
|---|---|---|
| | | underlying claim;<br>5) who/where/when of said alleged fraudulent statement(s);<br>6) who/where/when/how of said approval of alleged fraudulent claim |
| Count 3 | Check mailed to "DME Provider 1" for "A.F." | 1) Full name of A.F.;<br>2) Full name of DME Provider 1;<br>3) who/where/when/how for the mailing of said check;<br>4) alleged fraudulent statement(s) contained on said underlying claim;<br>5) who/where/when of said alleged fraudulent statement(s);<br>6) who/where/when/how of said approval of alleged fraudulent claim |
| Count 4 | Check mailed to "DME Provider 1" or "L.M." | 1) Full name of L.M.;<br>2) Full name of DME Provider 1;<br>3) who/where/when/how for the mailing of said check;<br>4) alleged fraudulent statement(s) contained on said underlying claim;<br>5) who/where/when of said alleged fraudulent statement(s);<br>6) who/where/when/how of said approval of alleged fraudulent claim |
| Count 5 | Check mailed to "DME Provider 1" for "J.C." | 1) Full name of J.C.;<br>2) Full name of DME Provider 1;<br>3) who/where/when/how for the mailing of said check;<br>4) alleged fraudulent |

| | | |
|---|---|---|
| | | statement(s) contained on said underlying claim; 5) who/where/when of said alleged fraudulent statement(s); 6) who/where/when/how of said approval of alleged fraudulent claim |
| Count 6 | Check mailed to "DME Provider 1" for "E.J." | 1) Full name of E.J.; 2) Full name of DME Provider 1; 3) who/where/when/how for the mailing of said check; 4) alleged fraudulent statement(s) contained on said underlying claim; 5) who/where/when of said alleged fraudulent statement(s); 6) who/where/when/how of said approval of alleged fraudulent claim |
| Count 7 | Check mailed to "DME Provider 1" for "M.B." | 1) Full name of M.B.; 2) Full name of DME Provider 1; 3) who/where/when/how for the mailing of said check; 4) alleged fraudulent statement(s) contained on said underlying claim; 5) who/where/when of said alleged fraudulent statement(s); 6) who/where/when/how of said approval of alleged fraudulent claim |
| Count 8 | Check mailed to "DME Provider 1" for "L.W." | 1) Full name of L.W.; 2) Full name of DME Provider 1; 3) who/where/when/how for the mailing of said check; |

| | | |
|---|---|---|
| | | 4) alleged fraudulent statement(s) contained on said underlying claim;<br>5) who/where/when of said alleged fraudulent statement(s);<br>6) who/where/when/how of said approval of alleged fraudulent claim |
| Count 9 | Check mailed to "DME Provider 1" for "T.L." | 1) Full name of T.L.;<br>2) Full name of DME Provider 1;<br>3) who/where/when/how for the mailing of said check;<br>4) alleged fraudulent statement(s) contained on said underlying claim;<br>5) who/where/when of said alleged fraudulent statement(s);<br>6) who/where/when/how of said approval of alleged fraudulent claim |
| Count 10 | Check mailed to "DME Provider 1" for "T.S." | 1) Full name of T.S.;<br>2) Full name of DME Provider 1;<br>3) who/where/when/how for the mailing of said check;<br>4) alleged fraudulent statement(s) contained on said underlying claim;<br>5) who/where/when of said alleged fraudulent statement(s);<br>6) who/where/when/how of said approval of alleged fraudulent claim |
| Count 11 | Claim form mailed for "V.C." | 1) Full name of V.C.;<br>2) who/where/when/how for the mailing of said claim form;<br>3) alleged fraudulent statement(s) |

| | | |
|---|---|---|
| | | contained on said claim form;<br>4) the who/where/when/ of said alleged fraudulent statement(s) |
| Count 12 | Check issued by "GEHA" for "S.G." | 1)  Full name of S.G.;<br>2)  Full name of GEHA;<br>3)  who/where/when/how for the mailing of said check;<br>4) alleged fraudulent statement(s) contained on   said underlying claim;<br>5)  who/where/when of said alleged fraudulent statement(s);<br>6)  who/where/when/how of said approval of alleged fraudulent claim |
| Count 13 | Claim form mailed to "GEHA" for "A.A." | 1)  Full name of A.A.;<br>2)  Full name of GEHA<br>3)  who/where/when/how  for the mailing of said claim form;<br>4)  alleged fraudulent statement(s) contained on said claim form;<br>5) the who/where/when/ of said alleged fraudulent statement(s) |
| Count 14 | Check mailed for "K.R." | 1)  Full name of K.R.;<br>2)  who/where/when/how for the mailing of said check;<br>3) alleged fraudulent statement(s) contained on   said underlying claim;<br>4)  who/where/when of said alleged fraudulent statement(s);<br>5)  who/where/when/how of said approval of alleged fraudulent claim |
| Count 15 | Check mailed for "S.K." | 1)  Full name of S.K.;<br>2)  who/where/when/how for the mailing of said check;<br>3)  alleged fraudulent |

| | | | |
|---|---|---|---|
| | | | statement(s) contained on said underlying claim;<br>4) who/where/when of said alleged fraudulent statement(s);<br>5) who/where/when/how of said approval of alleged fraudulent claim |
| Count 16 | Check mailed for "P.R." | | 1) Full name of P.R.;<br>2) who/where/when/how for the mailing of said check;<br>3) alleged fraudulent statement(s) contained on said underlying claim;<br>4) who/where/when of said alleged fraudulent statement(s);<br>5) who/where/when/how of said approval of alleged fraudulent claim |
| Count 17 | Check mailed for "P.R." | | 1) Full name of P.R.;<br>2) who/where/when/how for the mailing of said check;<br>3) alleged fraudulent statement(s) contained on said underlying claim;<br>4) who/where/when of said alleged fraudulent statement(s);<br>5) who/where/when/how of said approval of alleged fraudulent claim |
| Count 18 | Check mailed to "DME Provider 1: for "C.R." | | 1) Full name of C.R.;<br>2) Full name of DME Provider 1<br>3) who/where/when/how for the mailing of said check;<br>4) alleged fraudulent statement(s) contained on said underlying claim;<br>5) who/where/when of said |

DEFENDANT JULIAN OMIDI'S NOTICE OF MOTION AND MOTION FOR BILL OF PARTICULARS

| | | |
|---|---|---|
| | | alleged fraudulent statement(s);<br>6) who/where/when/how of said approval of alleged fraudulent claim |
| Count 19 | Check mailed to "DME Provider 1" for "N.A." | 1) Full name of N.A.;<br>2) Full name of DME Provider 1<br>3) who/where/when/how for the mailing of said check;<br>4) alleged fraudulent statement(s) contained on said underlying claim;<br>5) who/where/when of said alleged fraudulent statement(s);<br>6) who/where/when/how of said approval of alleged fraudulent claim |
| Count 20 | Check mailed for "S.Z." | 1) Full name of S.Z.;<br>2) who/where/when/how for the mailing of said check;<br>3) alleged fraudulent statement(s) contained on said underlying claim;<br>4) who/where/when of said alleged fraudulent statement(s);<br>5) who/where/when/how of said approval of alleged fraudulent claim |
| Count 21 | Check mailed to "T.M." for "F.M." | 1) Full name of T.M.;<br>2) Full name of F.M.<br>3) who/where/when/how for the mailing of said check;<br>4) alleged fraudulent statement(s) contained on said underlying claim;<br>5) who/where/when of said alleged fraudulent statement(s); |

DEFENDANT JULIAN OMIDI'S NOTICE OF MOTION AND MOTION FOR BILL OF PARTICULARS

| | | |
|---|---|---|
| | | 6)   who/where/when/how of said approval of alleged fraudulent claim |
| Count 22 | Check mailed for "S.N." | 1)      Full name of S.N.; 2)      who/where/when/how for the mailing of said check; 3)   alleged fraudulent statement(s) contained on   said underlying claim; 4)   who/where/when of said alleged fraudulent statement(s); 5)   who/where/when/how of said approval of alleged fraudulent claim |
| Count 23 | Check mailed for "A.W." | 1)      Full name of A.W.; 2)      who/where/when/how for the mailing of said check; 3)   alleged fraudulent statement(s) contained on   said underlying claim; 4)   who/where/when of said alleged fraudulent statement(s); 5)   who/where/when/how of said approval of alleged fraudulent claim |
| Count 24 | Check mailed for "S.Z." | 1) Full name of S.Z.; 2)      who/where/when/how for the mailing of said check; 3)   alleged fraudulent statement(s) contained on   said underlying claim; 4)   who/where/when of said alleged fraudulent statement(s); 5)   who/where/when/how of said approval of alleged fraudulent claim |
| Count 25 | Check mailed for "T.R." | 1)      Full name of T.R.; |

| | | |
|---|---|---|
| | | 2) who/where/when/how for the mailing of said check;<br>3) alleged fraudulent statement(s) contained on said underlying claim;<br>4) who/where/when of said alleged fraudulent statement(s);<br>5) who/where/when/how of said approval of alleged fraudulent claim |
| Count 26 | Check mailed for "S.N." | 1) Full name of S.N.;<br>2) who/where/when/how for the mailing of said check;<br>3) alleged fraudulent statement(s) contained on said underlying claim;<br>4) who/where/when of said alleged fraudulent statement(s);<br>5) who/where/when/how of said approval of alleged fraudulent claim |
| Count 27 | Check mailed for "S.N." | 1) Full name of S.N.;<br>2) who/where/when/how for the mailing of said check;<br>3) alleged fraudulent statement(s) contained on said underlying claim;<br>4) who/where/when of said alleged fraudulent statement(s);<br>5) who/where/when/how of said approval of alleged fraudulent claim |
| Count 28 | Check mailed for "K.M." | 1) Full name of K.M.;<br>2) who/where/when/how for the mailing of said check;<br>3) alleged fraudulent statement(s) contained on said underlying claim; |

DEFENDANT JULIAN OMIDI'S NOTICE OF MOTION AND MOTION FOR BILL OF PARTICULARS

| | | |
|---|---|---|
| | | 4)  who/where/when of said alleged fraudulent statement(s);<br>5)  who/where/when/how of said approval of alleged fraudulent claim |
| Count 29 | Facsimile for K.H. | 1)  Full name of K.H.;<br>2)  who/where/when/how for the facsimile;<br>3)  alleged fraudulent statement(s) contained on said facsimile documents;<br>4)  who/where/when of said alleged fraudulent statement(s) on said facsimile documents;<br>5)  who/where/when/how of said approval(s) of alleged fraudulent document(s) |
| Count 30 | Facsimile for K.H. | 1)  Full name of K.H.;<br>2)  who/where/when/how for the facsimile of said check;<br>3)  alleged fraudulent statement(s) contained on said underlying claim;<br>4)  who/where/when of said alleged fraudulent statement(s);<br>5)  who/where/when/how of said approval(s) of alleged fraudulent claim |
| Count 31 | Facsimile for V.G. | 1)  Full name of V.G.;<br>2)  who/where/when/how for the facsimile of said check;<br>3)  alleged fraudulent statement(s) contained on said underlying claim;<br>4)  who/where/when of said alleged fraudulent statement(s);<br>5)  who/where/when/how of said approval(s) of |

DEFENDANT JULIAN OMIDI'S NOTICE OF MOTION AND MOTION FOR BILL OF PARTICULARS

| | | |
|---|---|---|
| | | alleged fraudulent claim |
| Count 32 | ¶47 J. Omidi aided and abetted by others "known and unknown" to the Grand Jury | 1)   Who are others known? Count 21: <br> 2)   Full name of T.M.; <br> 3)   Full name of F.M. <br> 4)   who/where/when/how for the mailing of said check; <br> 5)   alleged fraudulent statement(s) contained on   said underlying claim; <br> 6)   who/where/when of said alleged fraudulent statement(s); <br> 7)   who/where/when/how of said approval of alleged fraudulent claim |
| Count 33 | ¶49 J. Omidi and Zarrabi, together with…. "others known and unknown" Letter of medical necessity for "J.R." | 1)   Who are others known? <br> 2)   Full name of J.R.; <br> 3)   who/where/when/how for the mailing of said fax; <br> 4)   alleged fraudulent statement(s) contained on   said medical necessity and supporting documentation; <br> 5)   who/where/when of said alleged fraudulent statement(s); <br> 6)   who/where/when/how of said approval(s) of alleged fraudulent claim |
| Count 34 | ¶49 J. Omidi and Zarrabi, together with…. "others known and unknown" Letter of medical necessity for "S.N." | 1)   Who are others known? <br> 2)   Full name of S.N.; <br> 3)   who/where/when/how for the mailing of said fax; <br> 4)   alleged fraudulent statement(s) contained on   said medical necessity and supporting documentation; <br> 5)   who/where/when of said alleged fraudulent statement(s); |

| | | 6) who/where/when/how of said approval(s) of alleged fraudulent claim |
|---|---|---|
| Count 35 | ¶54a "individuals engaged in promoting GET Thin's sleep study fraud<br><br>¶54b C.K. would hire individuals to complete these tasks<br><br>¶<br><br><br>Overt Act 1 | 1) Who are individuals promoting?<br><br><br>2) Who are the individuals completing the tasks?<br><br><br>**For Each Overt Act:**<br><br>3) What specifically was the payment for?<br><br>**For each payment:**<br><br>4) Full name of patients related to said invoice for payment or commission;<br>5) who/where/when/how for the alleged fraud underlying said invoiced payment or commission;<br>8) alleged fraudulent statement(s) contained on said SSR, ESS, medical necessity, medical services sleep study and any other supporting documentation underlying said payment of invoice or commission;<br>9) who/where/when of said alleged fraudulent statement(s);<br>10) who/where/when/how of said approval(s) of alleged fraudulent claim(s) |

| | | |
|---|---|---|
| Count 36 and 37 | ¶57 "others known and unknown" | 1) Who are others known?<br><br>**For Each Overt Act:**<br><br>2) What specifically was the payment for?<br><br>**For each payment:**<br><br>3) Full name of patients related to said invoice for payment or commission;<br>4) who/where/when/how for the alleged fraud underlying said invoiced payment or commission;<br>8) alleged fraudulent statement(s) contained on said SSR, ESS, medical necessity, medical services sleep study and any other supporting documentation underlying said payment of invoice or commission;<br>9) who/where/when of said alleged fraudulent statement(s);<br>10) who/where/when/how of said approval(s) of alleged fraudulent claim(s)<br>11) Name of Defendant Zarrabi's medical corporation |
| Forfeiture Allegation One | ¶1a and b | 1) what property, real or personal, is alleged to constitute or be derived from proceeds? |

DEFENDANT JULIAN OMIDI'S NOTICE OF MOTION AND MOTION FOR BILL OF PARTICULARS

| | | |
|---|---|---|
| | | 2) What amount of money is at issue for Count 30?<br>3) What amount of money is at issue for Count 31? |
| | ¶2 | 4) What is alleged substitute property? |
| Forfeiture Allegation Two | ¶1a, b, and c | 1) what property, real or personal, is alleged to constitute or be derived from proceeds? |
| | ¶2 | 2) What is alleged substitute property? |
| Forfeiture Allegation Three | ¶1a and b | 1) what property, real or personal, is alleged to constitute or be derived from proceeds?<br>2) What amount of money is at issue for Count 33?<br>3) What amount of money is at issue for Count 34? |
| | ¶2 | 4) What is alleged substitute property? |
| Forfeiture Allegation Four | ¶1a and b | 1) what property, real or personal, is alleged to constitute or be derived from proceeds? |
| | ¶2 | 2) What is alleged substitute property? |

DEFENDANT JULIAN OMIDI'S NOTICE OF MOTION AND MOTION FOR BILL OF PARTICULARS

1    This Motion is based on this Notice, the accompanying Memorandum of Points and

2    Authorities, all matters which the court must or may judicially notice, and the documents

3    and pleadings filed with this court

4

5    Dated:  April 25, 2018                    Law Offices of Kamille Dean, PLC
                                              Law Offices of Roger Jon Diamond
6

7                                             By: /s/ Kamille Dean
8                                                 Kamille Dean
                                                  Roger Jon Diamond
9                                                 *Attorneys for Defendant*
                                                  JULIAN OMIDI
10

1

2

# **TABLE OF CONTENTS**

<u>Page(s)</u>

3

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

4

I.      NATURE OF INDICTMENT ................................................................................ 1

5

ARGUMENT ..................................................................................................................... 3

6

7

II.     A BILL OF PARTICULARS SHOULD BE GRANTED WHEN THE
        INDICTMENT FAILS TO PROVIDE FACTUAL INFORMATION
        REQUIRED BY THE DEFENSE ......................................................................... 3

8

9

III.    PARTICULARS SHOULD BE PROVIDED IN THIS CASE ................................ 5

10

        A.    The Government Should Provide Particulars Regarding Alleged Co-
              Conspirators .............................................................................................. 5

11

12

        B.    The Government Should Provide Particulars Regarding Alleged False
              Statements ................................................................................................. 7

13

14

        C.    The Government Should Provide Particulars Regarding Alleged
              Omissions ................................................................................................ 10

15

16

        D.    The Government Should Provide Particulars Regarding Money or
              Property Allegedly Obtained by Fraud .................................................. 11

17

        E.    The Government Should Provide Particulars Regarding Alleged
              Money Laundering Charges ................................................................... 12

18

IV.     CONCLUSION .................................................................................................... 14

19

CERTIFICATE OF SERVICE ........................................................................................ 15

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## <u>Cases</u>

*In re Advanta Corp. Sec. Litig.*,
  180 F.3d 525 (3d Cir. 1999) ........................................................................ 2

*In re CDNOW, Inc. Sec. Litig.*,
  138 F. Supp. 2d 624 (E.D. Pa. 2001) ........................................................... 2

*United States v. Addonizio*,
  451 F.2d 49 (3d Cir. 1971) .......................................................................... 3

*United States v. Barnes*,
  158 F.3d 662  (2d Cir. 1998) ....................................................................... 4

*United States v. Bortnovsky*,
  820 F.2d 572 (2d Cir. 1987) ........................................................... 4, 5, 9, 13

*United States v. Buckley*,
  689 F.2d 893 (9th Cir. 1982) ....................................................................... 8

*United States v. Cafaro*,
  26 F.R.D. 170 (S.D.N.Y. 1960) ................................................................. 10

*United States v. Carona*,
  No. SA CR 06-224, 2008 WL 1970199  (C.D. Cal. May 2, 2008) ............... 9

*United States v. Chen*,
  No. C 05-375, 2006 WL 3898177 (N.D. Cal. Nov. 9, 2006) ....................... 4

*United States v. Crippen*,
  579 F.2d 340 (5th Cir. 1978) ....................................................................... 9

*United States v. Crisona*,
  271 F. Supp. 150 (S.D.N.Y. 1967) ............................................................ 10

*United States v. Cutolo*,
  861 F. Supp. 1142 (E.D.N.Y. 1994) ........................................................... 6

*United States v. DeGroote*,
  122 F.R.D. 131 (W.D.N.Y. 1988) ............................................................... 6

*United States v. Dempsey*,
  733 F.2d 392 (6th Cir. 1984) ....................................................................... 5

*United States v. Dicesare*,
  765 F.2d 890 (9th Cir. 1985) ....................................................................... 6

**TABLE OF AUTHORITIES**: (continued)                                    Page(s)

*United States v. Fassoulis*,
   49 F.R.D. 43 (S.D.N.Y. 1969) ................................................................. 10

*United States v. Gatto*,
   746 F. Supp. 432 (D.N.J. 1990) ................................................................. 6

*United States v. Greater Syracuse Bd. of Realtors*,
   438 F. Supp. 376 (N.D.N.Y. 1977) ........................................................... 4

*United States v. Holman*,
   490 F. Supp. 755 (E.D. Pa. 1980) ............................................................. 6

*United States v. Hughes*,
   817 F.2d 268 (5th Cir. 1987) ..................................................................... 5

*United States v. Konefal*,
   566 F. Supp. 698  (N.D.N.Y. 1983) ...................................................... 9, 10

*United States v. Long*,
   706 F.2d 1044 (9th Cir. 1983) ................................................................... 3

*United States v. Mariani*,
   90 F. Supp. 2d 574 (M.D. Pa. 2000) ......................................................... 5

*United States v. McCoy*,
   492 F. Supp. 540  (M.D. Fla. 1980) ........................................................... 9

*United States v. McGuinness*,
   764 F. Supp. 888 (S.D.N.Y. 1991) ....................................................... 6, 11

*United States v. North*,
   No. Crim. 88-0080-02, 1988 WL 126241 (D.D.C. Nov. 15, 1988) ............ 6

*United States v. Oakar*,
   924 F. Supp. 232 (D.D.C. 1996) ............................................................... 6

*United States v. Oberski*,
   734 F.2d 1034 (5th Cir. 1984) ................................................................... 9

*United States v. Recognition Equip., Inc.*,
   711 F. Supp. 1 (D.D.C. 1989) ........................................................... 6, 9, 10

*United States v. Resko*,
   3 F.3d 684 (3d Cir. 1993) .......................................................................... 6

*United States v. Risk*,
   672 F. Supp. 346 (S.D. Ind. 1987) ............................................................ 9

*United States v. Rogers*,
   617 F. Supp. 1024  (D. Colo. 1985) .................................................... 3, 5, 9

**TABLE OF AUTHORITIES**: (continued)                                    Page(s)

*United States v. Rosa*,
   891 F.2d 1063 (3d Cir. 1989) ....................................................... 3

*United States v. Salko*,
   No. 1:07-CR-0286, 2008 WL 4006747 (M.D. Pa. Aug. 26, 2008)............... 11

*United States v. Smith*,
   65 F.R.D. 464 (N.D. Ga. 1974) ..................................................... 3

*United States v. Spur Knitting Mills, Inc.*,
   187 F. Supp. 653 (S.D.N.Y. 1960) ................................................. 4

*United States v. Taylor*,
   707 F. Supp. 696 (S.D.N.Y. 1989) ................................................. 6

*United States v. Thevis*,
   474 F. Supp. 117 (N.D. Ga. 1979).............................................. 3, 6

*United States v. Trie*,
   21 F. Supp. 2d 7 (D.D.C. 1998)................................................... 11

*United States v. Trumpower*,
   546 F. Supp. 2d 849 (E.D. Cal. 2008) ....................................... 8, 13

*United States v. Upton*,
   856 F. Supp. 727 (E.D.N.Y. 1994) ................................................ 9

*United States v. Williams*,
   504 U.S. 36 (1992)................................................................... 6

*Wong Tai v. United States*,
   273 U.S. 77 (1927) .................................................................. 3

**Statutes**

18 U.S.C. § 1028A(a)(1)........................................................... 1

18 U.S.C. § 1341 ................................................................... 1

18 U.S.C. § 1343 ................................................................... 1

18 U.S.C. § 1956 (a)(1)(A) ........................................................ 1

18 U.S.C. § 1956(h) ................................................................ 1

Fed. R. Civ. P. 9(b) ............................................................... 8

Fed. R. Crim. P. 7(f)............................................................... 3

**TABLE OF AUTHORITIES: (continued)**                                    **Page(s)**

**Other Authorities**

1 Charles Alan Wright & Andrew D. Leipold,
  *Federal Practice and Procedure: Criminal* § 130 (4th ed. 2008)...................................4

**Rules**

Fed. R. Evid. 801(d)(2)(E) ...................................................................................... 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    NATURE OF INDICTMENT

The indictment in this case fails to set forth critical information regarding the offenses charged. It alleges a wide-ranging and complex conspiracy between Defendant Julian Omidi ("Omidi"), along with Defendants Independent Medical Services, Inc., ("IMS") Surgery Center Management, LLC, ("SCM"), and Mirali Zarrabi, M.D., ("Zarrabi"), with: thirty-one (31) counts of mail fraud (18 U.S.C. § 1341), (Dkt. 12, ¶43); two (2) counts of wire fraud (18 U.S.C. § 1343), (*id*., ¶45); one (1) count of aggravated identity theft (18 U.S.C. § 1028A(a)(1)), (*id*., ¶47); two (2) counts of false statements relating to health care matters (18 U.S.C. § 1035), (*id*., ¶49); one (1) count of conspiracy to commit promotional money laundering (18 U.S.C. § 1956(h), (*id*., ¶¶51-55); two (2) counts of promotional money laundering (18 U.S.C. § 1956 (a)(1)(A)), (*id*., ¶57); and seeks four (4) counts of forfeiture.

According to the Superseding Indictment, Mr. Omidi was part of a long running scheme to defraud TriCare and the Insurance Companies (defined at ¶27 of Dkt. 12), through procurement of patients for the Lap-Band surgery, through the advertising campaign known as 1-800-GET-THIN, by allegedly falsifying sleep study reports to obtain coverage for patients who would not otherwise qualify for the Lap-Band surgery, as explained below. (See, Dkt. 12, ¶¶8-36.) Although verbose, the Superseding Indictment's allegations are extremely vague and contain excessive unanswered questions to the extent Mr. Omidi cannot prepare his defense. (See, *supra* Notice of Motion and Motion.). For example, the Superseding Indictment does not allege: (1) the name of the patient (just initials) at issue; (2) who ultimately made the alleged fraudulent statement and to whom said alleged fraudulent statement was made; (3) the name of the physician(s) involved; (4) the name of the individual who mailed or wired the alleged fraudulent document; and (5) on whose behalf (name of provider) said person was acting when they mailed or wired said document. In essence, the Superseding Indictment leaves out the "who, what, when, where, and how: the first paragraph of any newspaper story." *In re*

1    *CDNOW, Inc. Sec. Litig.*, 138 F. Supp. 2d 624, 640 (E.D. Pa. 2001) (quoting *In re*

2    *Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999)) (internal quotations omitted).

3         The Superseding Indictment also withholds key names and references initials for

4    confidential informants, patients, and "others known and unknown." While two

5    confidential informants have been identified and disclosed, there are still other names that

6    are left undisclosed and are simply referred to as CC-2 and "others known." Some

7    allegations contain "other individuals." Mr. Omidi cannot properly defend himself

8    without knowing the particular patients at issue, his accusers, or the alleged persons

9    involved in said fraud. The accusers who are working with the government also must be

10   cross-examined as to motive and bias. Mr. Omidi must also have sufficient information to

11   gather exculpatory evidence to defend all of these charges and provide the government,

12   Honorable Court, and/or the jury with said information, especially as to the lack of

13   credibility of the confidential informants and "others." The absence of this critical

14   information makes it especially difficult for the defendants to prepare a defense and avoid

15   unfair surprise at trial.

16        As currently written, justice requires the Court order the government to file a bill of

17   particulars so that Mr. Omidi knows the nature of the charges and accusations against him

18   with sufficient particularity to defend himself. Otherwise, Mr. Omidi is not able to prepare

19   for trial, and is not on notice of the charges against him in order to properly and

20   effectively defend himself against these egregious, false charges. The current Indictment

21   leaves many unanswered questions, resulting in Mr. Omidi being constantly surprised.

22        Julian Omidi cannot properly defend himself without knowing the particular

23   patients at issue or the alleged persons involved in said alleged fraud he assisted.  Julian

24   Omidi must have sufficient information to gather exculpatory evidence to defend all of

25   these charges and provide said information to the government and Honorable Court for

26   pre-trial dismissal consideration and/or Jury. These shortcomings are not mitigated by the

27   availability of discovery. Courts across the country have been clear that the government

28   cannot avoid its duty to advise a defendant of the charges against him, particularly in a

complex case like this one, by requiring the defendant to search through a mountain of documents, here in excess of five million documents provided so far in discovery. Because the indictment lacks critical information about the charged offenses, Mr. Omidi moves for a bill of particulars.

## ARGUMENT

## II. A BILL OF PARTICULARS SHOULD BE GRANTED WHEN THE INDICTMENT FAILS TO PROVIDE FACTUAL INFORMATION REQUIRED BY THE DEFENSE

Under Rule 7(f) of the Federal Rules of Criminal Procedure, a district court has broad discretion to order the government to provide a bill of particulars. See *Wong Tai v. United States*, 273 U.S. 77, 82, 47 S. Ct. 300, 302, 71 L. Ed. 545, 548 (1927); *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). The 1966 amendment to Rule 7(f), which eliminated the requirement that cause be shown before a court will order a bill of particulars, was "designed to encourage a more liberal attitude by the courts toward bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases." Fed. R. Crim. P. 7(f) advisory committee's note; *see United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir. 1971); *United States v. Smith*, 65 F.R.D. 464, 468 (N.D. Ga. 1974). In accordance with the spirit of the 1966 amendment, defendants should "be given the benefit of the doubt in gray areas." *United States v. Thevis*, 474 F. Supp. 117, 124 (N.D. Ga. 1979), *aff'd*, 665 F.2d 616 (5th Cir. 1982); *accord United States v. Rogers*, 617 F. Supp. 1024, 1028 (D. Colo. 1985).

A bill of particulars is designed "to apprise the defendant of the specific charges being presented to minimize danger of surprise at trial, to aid in preparation [of his defense] and to protect against double jeopardy." *Long*, 706 F.2d at 1054. "[T]he case law now recognizes that motions for a bill of particulars should be granted whenever an indictment's failure to provide factual or legal information significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989). Where a bill of particulars is "necessary to give the defendant enough information about the charge to

1   prepare his defense, it will be required even if the effect is disclosure of evidence or of

2   theories." *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998) (internal quotations

3   omitted).

4         When a bill of particulars serves one or more of the aforementioned purposes, "it is

5   no answer to an otherwise proper demand . . . that the particulars sought are evidentiary,

6   or involve the naming of potential witnesses at trial." *United States v. Greater Syracuse*

7   *Bd. of Realtors*, 438 F. Supp. 376, 379 (N.D.N.Y. 1977). "Similarly, it is no answer that

8   the defendant should know the facts demanded, for the defendant is presumed to be

9   innocent; in any event, the Bill of Particulars is aimed at the facts as alleged by the

10  Government, rather than as they actually exist." *Id.*; *United States v. Spur Knitting Mills,*

11  *Inc.*, 187 F. Supp. 653, 654 (S.D.N.Y. 1960) (stating that the issue is not what the

12  defendant knows, but "what the Government intends to prove"); *United States v. Smith*,

13  16 F.R.D. 372, 375 (W.D. Mo. 1954) ("Being presumed to be innocent, it must be

14  assumed that he is ignorant of the facts on which the pleader founds his charges . . . ."

15  (internal quotations omitted)); 1 Charles Alan Wright & Andrew D. Leipold, *Federal*

16  *Practice and Procedure: Criminal* § 130, at 668 (4th ed. 2008) ("Since the defendant is

17  presumed to be innocent . . . of the charge, he also should be presumed ignorant of the

18  facts on which the charges are based.").

19        In addition, voluminous discovery does not obviate the need for a bill of particulars.

20  "Given the breadth and complexity of this case, requiring defendant to search through a

21  mountain of discovery does not satisfy the obligation to adequately advise defendant of

22  the charges against him." *United States v. Chen*, No. C 05-375, 2006 WL 3898177, at *3

23  (N.D. Cal. Nov. 9, 2006); see also *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir.

24  1987) ("The Government did not fulfill its obligation merely by providing mountains of

25  documents to defense counsel who were left unguided as to which documents would be

26  proven falsified or which of some fifteen burglaries would be demonstrated to be

27  staged.").

28

Mr. Omidi seeks "clarification [of the Superseding Indictment] in order to prepare a defense," *Long*, 706 F.2d at 1054. The purpose of a Bill of Particulars is clear: Rule 7(f) of the Federal Rules of Criminal Procedure permits Mr. Omidi to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling Mr. Omidi to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense. (*United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987); *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988).)

In both *Bortnovsky* and *Davidoff*, the Court of Appeals reversed convictions on the basis that it was error to deny a bill of particulars where the information sought was critical to the defendant's preparation of a defense and where the bill would have prevented the government's elusive approach to the prosecution of the case. There is a similar critical need for the information requested here.

## III. PARTICULARS SHOULD BE PROVIDED IN THIS CASE

The indictment in this case does not contain information critical to the preparation of a defense and necessary to prevent prejudicial surprise at trial. Accordingly, the defendant respectfully request that the Court grant the particulars set forth below in addition to each requested particular in the Chart above.

### A. The Government Should Provide Particulars Regarding Alleged Co-Conspirators

The superseding indictment alleges a wide conspiracy. However, "the government must identify undisclosed and unidentified coconspirators, aiders and abettors, and other individuals involved in the criminal acts charged." *Rogers*, 617 F. Supp. at 1028 (collecting cases); see also *United States v. Hughes*, 817 F.2d 268, 272 (5th Cir. 1987); *United States v. Dempsey*, 733 F.2d 392, 394 (6th Cir. 1984); *United States v. Mariani*, 90 F. Supp. 2d 574, 592 (M.D. Pa. 2000) (holding that, where defendants cannot know with certainty who the government contends was involved in the allegedly fraudulent scheme, "disclosure of co-conspirators and other participants in alleged offenses [is] required");

1  *United States v. Oakar*, 924 F. Supp. 232, 246 (D.D.C. 1996), *aff'd in part, rev'd in part*

2  *on other grounds*, 111 F.3d 146 (D.C. Cir. 1997); *United States v. Cutolo*, 861 F. Supp.

3  1142, 1149 (E.D.N.Y. 1994); *United States v. McGuinness*, 764 F. Supp. 888, 894

4  (S.D.N.Y. 1991); *United States v. Gatto*, 746 F. Supp. 432, 477 (D.N.J. 1990), *rev'd on*

5  *other grounds*, 924 F.2d 491 (3d Cir. 1991); *United States v. Recognition Equip., Inc.*, 711

6  F. Supp. 1, 10 (D.D.C. 1989), *overruled in part on other grounds*, *United States v.*

7  *Williams*, 504 U.S. 36 (1992); *United States v. Taylor*, 707 F. Supp. 696, 700 (S.D.N.Y.

8  1989); *United States v. North*, No. Crim. 88-0080-02, 1988 WL 126241, at *2 (D.D.C.

9  Nov. 15, 1988); *United States v. DeGroote*, 122 F.R.D. 131, 137 (W.D.N.Y. 1988);

10  *United States v. Holman*, 490 F. Supp. 755, 762 (E.D. Pa. 1980).[1]

11      A failure to require the government to disclose the identities of all alleged

12  coconspirators would virtually "guarantee prejudicial surprise to the defendant" at trial.

13  *Thevis*, 474 F. Supp. at 125. Moreover, this information is necessary to the preparation of

14  a defense. In certain circumstances, acts of co-conspirators performed in furtherance of an

15  alleged conspiracy are attributable to all coconspirators. See, e.g., *United States v. Resko*,

16  3 F.3d 684, 696 (3d Cir. 1993). Similarly, statements of alleged co-conspirators may, in

17  some circumstances, be admitted against the defendants as their own statements. See Fed.

18  R. Evid. 801(d)(2)(E). Thus, at trial, the government may attempt to attribute to the

19  defendants the alleged acts and statements of now unidentified alleged coconspirators.

20  The defendants cannot prepare to rebut such allegations when they do not even know who

21  all of the alleged co-conspirators are claimed to be.

22

23  _____

[1] Although the Ninth Circuit in *United States v. Dicesare*, 765 F.2d 890 (9th Cir. 1985),

24  determined that a district court had not abused its discretion by refusing to order a bill of

25  particulars identifying "the names of any *unknown* coconspirators" because the defendants

26  had not identified "any prejudice or surprise resulting from the denial of the bill," it is still

   within this Court's discretion to order the government to provide such particulars when, as

27  here, the circumstances justify it. See *id*. at 897-98 (emphasis added). In addition,

   *Dicesare* certainly does not support the proposition that the government should not have

28  to identify alleged coconspirators who are *known*.

Accordingly, the defendant requests the following particulars:

1. Identify all alleged co-conspirators and "others" with whom the defendant purportedly conspired identified in the following but not limited to Paragraphs: Paragraph 23 ("Co-Conspirator 2) ("CC-2"); 37 (CC-2 and "others known and unknown to the Grand Jury"); 38e (Julian Omidi and "others"); 38g (co-conspirator C.K. and "other"); 38h ("other GET THIN SSP employees"); 38l (Julian Omidi at time directed "GET THIN employees"); 38m (co-conspirators C.K. and S.H. and "other") 38p (co-conspirator "C.K. and others"); 49 (co-conspirators C.K. and S.H., and "others known and unknown to the grand jury"); 53 (co-conspirators C.K., S.H., and CC-2, defendant ZARRABI, and "others knowns and unknown to the Grand Jury"); 54b (co-conspirators S.H. and CC-2) , 54e ("CC-2"); 54h (CC-2), 54i (CC-2), 55 (CC-2 and co-conspirators and "others knowns and unknown to the Grand Jury"), Overt Act 1-3 (CC-2), 57 (together with "others known and unknown to the Grand Jury" and "willfully caused "others"").

## B.  The Government Should Provide Particulars Regarding Alleged False Statements

It is virtually impossible for Mr. Omidi to defend against the Superseding Indictment as framed. The government fails to make a definitive statement as to what the nature of the false statement is that it contends was made to "defraud, devise, participate in, and execute a scheme" to defraud TriCare and the Insurance Companies as to "material matters," and "to obtain money and property from TriCare and the Insurance Companies by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts. An indictment charging such offenses must identify both the alleged false statements at issue and in what manner they are claimed to be false.

In addition, Mr. Omidi is seeking a statement from the government as to the nature of the "false statement."  In order to prepare a defense, Mr. Omidi, is seeking to know if it is the government's position that the false statements were made by Mr. Omidi himself or with his knowledge and/or direction, or if the government is contending that Mr. Omidi committed said crimes based on association due to vicarious liability for overseeing the

operations of any said provider.  If the statements were not made by Mr. Omidi then Mr. Omidi requests the identity of the person or persons that made the false statements, when the statements were made, to who the statements were made, and proof that said statements are in fact false.  Mr. Omidi does not even know the names of the patients at issue in this indictment, as only patients' initials are indicated.

"It is generally sufficient that an indictment set forth the offense in the words of the statute itself *as long as those* words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished". (Emphasis added).  *United States v. Trumpower*, 546 F. Supp. 2d 849, 850-52 (E.D. Cal. 2008).  Additionally, the *Trumpower* court indicated that two corollary purposes of an indictment are: (1) to ensure that the defendant is being prosecuted on the basis of the facts presented to the grand jury, and (2) to allow the court to determine the sufficiency of the indictment. *United States v. Buckley,* 689 F.2d 893, 896 (9th Cir. 1982).  Here, it is questionable what Defendant Julian Omidi is being prosecuted for.  While Defendant Julian Omidi raises this issue in good faith, he also has sincere concerns that the USA will further retaliate against him for making this request.

The indictment's failure to identify these allegedly false statements and the manner in which they are claimed to be false significantly impairs the defendants' ability to prepare a defense, and ensures they will be surprised when confronted for the first time with this information at trial.

Federal courts have recognized repeatedly the significance of such information, and routinely require the government to provide it in a bill of particulars. As one court has explained:

> [T]he government must provide particularization of allegedly false statements made by defendants. General allegations of false statements . . . are not sufficient. This criminal case should not differ from any civil matter where allegations of fraud and misrepresentations must be pleaded with particularity under Fed. R. Civ. P. 9(b). In fact, application of this rule in criminal cases is even more compelling than in civil matters because defendants' liberty interests are at stake. . . . The government must reveal the

1  substance, date, time, and place of each false statement or concealment and

2  the persons involved.

3  *Rogers*, 617 F. Supp. at 1029 (citations omitted); see also *Bortnovsky*, 820 F.2d at

4  574-75 (2d Cir. 1987) (reversing convictions based on district court's refusal to order

5  particulars regarding specific insurance claims and invoices alleged to be fraudulent);

6  *United States v. Oberski*, 734 F.2d 1034, 1035 (5th Cir. 1984) (factual details concerning

7  manner in which statement is alleged to be perjurious "if essential to the defense, can be

8  obtained in a motion for a bill of particulars"); *United States v. Crippen*, 579 F.2d 340,

9  342 (5th Cir. 1978) (factual details concerning manner in which perjurious statement is

10  alleged to be material "if essential to the defense, can be obtained by a motion for a bill of

11  particulars, and failure to grant such a motion may be reversible error" (citation omitted));

12  *United States v. Carona*, No. SA CR 06-224, 2008 WL 1970199, at *3 (C.D. Cal. May 2,

13  2008) (holding that "[i]f the Grand Jury understood Count Six as alleging that Michael

14  Carona made false and misleading statements," it would "reconsider Defendants'

15  arguments for a bill of particulars" identifying such statements and the respect in which

16  they are false);

17  *United States v. Upton*, 856 F. Supp. 727, 753 (E.D.N.Y. 1994) (requiring government to

18  identify documents it intends to prove are false, even though indictment detailed "33

19  specific instances of falsification of records"); *Recognition Equip., Inc.*, 711 F. Supp. at

20  10 (ordering the government to identify "the statements, concealment, and

21  misrepresentations, . . . as well as when and to whom these alleged statements,

22  concealments, and misrepresentations were made"); *United States v. Risk*, 672 F. Supp.

23  346, 360 (S.D. Ind. 1987) (ordering government "to disclose to the defendant the specific

24  portions, segments, or sentences" of bank report government alleged to be

25  false), *aff'd*, 843 F.2d 1059 (7th Cir. 1988); *United States v. Konefal*, 566 F. Supp. 698,

26  703 (N.D.N.Y. 1983) (requiring government to disclose "what statements it contends are

27  false"); *United States v. McCoy*, 492 F. Supp. 540, 545 (M.D. Fla. 1980) ("The defendant

28  is entitled to a bill of particulars setting forth each false and fraudulent pretense and

representation described generally in the indictment."); *United States v. Fassoulis*, 49 F.R.D. 43, 45 (S.D.N.Y. 1969) (ordering disclosure of "false statements alleged and a summary of the respects in which it is claimed that the statements were false"); *United States v. Crisona*, 271 F. Supp. 150, 157 (S.D.N.Y. 1967) (ordering disclosure of "the substance of any false representations"); *United States v. Cafaro*, 26 F.R.D. 170, 172 (S.D.N.Y. 1960) (ordering disclosure of manner in which statements were claimed to be false).

Accordingly, the defendant requests the following particulars:

1. Identify all details of the who/what/where/when of any and all alleged false statements identified in the following, but not limited to, allegations in: Counts 1-31, 33-34.

## C. The Government Should Provide Particulars Regarding Alleged Omissions

Similarly, the government should provide details of alleged omissions. The failure to provide sufficient details about these alleged omissions hinders the preparation of a defense and increases the chance of a surprise at trial. Courts have frequently required the government to provide this information in a bill of particulars. See *Recognition Equip., Inc.*, 711 F. Supp. at 10 (ordering the government to identify "the statements, concealment, and misrepresentations, . . . as well as when and to whom these alleged statements, concealments, and misrepresentations were made"); *Rogers*, 617 F. Supp. at 1029 ("The government must reveal the substance, date, time, and place of each . . . concealment and the persons involved."); *United States v. Konefal*, 566 F. Supp. 698, 703 (N.D.N.Y. 1983) (ordering the government to disclose "the material facts which it contends the defendants concealed").

The government alleges that sleep studies were done without an approval of a qualified physician, or that appropriate health information was altered or left out of medical records.  Mr. Omidi does not know the identity of said physicians other than co-

1  defendant Dr. Zarrabi.  Mr. Omidi also does not know the patients' names, provider,  or

2  dates of services for a majority of the allegations in this Indictment.

3        Accordingly, the defendant requests the following particulars:

4        1. Identify all details of the who/what/where/when of any and all alleged omissions

5  identified in the following, but not limited to, the allegations in: Counts 1-31, 33-34.

6    **D.    The Government Should Provide Particulars Regarding Money or Property Allegedly Obtained by Fraud**

7        The superseding indictment generally alleges a scheme and knowing intent to

8  defraud. However, the superseding indictment does not identify what specific money and

9  property was allegedly obtained, and by specifically by whom. Absent this information,

10 the defendant is left to speculate about what money or property the government alleges he

11 fraudulently obtained, unnecessarily hindering the preparation of a defense. See *United*

12 *States v. Trie*, 21 F. Supp. 2d 7, 22 (D.D.C. 1998) (ordering a bill of particulars to disclose

13 "specific details about the property that [defendant] allegedly obtained . . . in connection

14 with the alleged scheme to defraud"); *McGuinness*, 764 F. Supp. at 894 (ordering a bill of

15 particulars disclosing "[t]he approximate amount and date of each payment referred to in

16 [certain] overt acts . . . as well as the name of the person making the payment"); *United*

17 *States v. Salko*, No. 1:07-CR-0286, 2008 WL 4006747, at *11 (M.D. Pa. Aug. 26, 2008)

18 (ordering a bill of particulars to disclose information without which defendant claimed he

19 "is forced to rely solely on conjecture as to what compensation or money he obtained"

20 fraudulently (quotations omitted)).

21       Accordingly, the defendant requests the following particulars:

22       1. Identify all details of the property allegedly obtained via fraud, including the

23 particular identification of the property, real or personal, alleged to constitute or be

24 derived from fraudulent proceeds, including but not limited to who received the money,

25 proof the money was received, and the amount of currency at issue for Counts where

26 money is not identified, including but not limited to, Counts 30-31 and 33-34.

### E.   The Government Should Provide Particulars Regarding Alleged Money Laundering Charges

Further, the money laundering counts are not plead with any particularity for

Defendant Julian Omidi to defend himself.  Like in *Trumpower*:

> The indictment does plead a factual background describing a fraudulent scheme allegedly carried out for more than *852 3 years, but only in completely generic terms.

> The government argues that they have sufficiently pleaded specific money laundering offenses involving funds criminally derived from crimes of mail and wire fraud and that they are not required to plead the factual circumstances of the specific crimes of mail and wire fraud which have produced the criminal proceeds involved. The Court observes, however, that it is a core function of an indictment to provide adequate notice of the charges to a defendant. *Hamling,* 418 U.S. at 118, 94 S.Ct. 2887. A defense cannot be marshaled unless the defendant knows both the statute allegedly violated and the conduct which allegedly violates the statute. The indictment does plead the elements of a money laundering charge and the kind of crime which produced the laundered funds. But the government must ultimately prove that the specific funds can be related to a specific crime. Without any pleading as to the factual context for that specific crime, the Court is concerned that a serious question as to adequate notice has been raised.

> The Court finds that Trumpower is correct that without more information he is unable to adequately prepare for trial and there is an undue risk of surprise. Under these circumstances, a bill of particulars is necessary. *See Giese,* 597 F.2d at 1180.

> Trumpower previously filed a motion for a bill of particulars and in response the government filed such a bill. That response provided specific descriptions of the type of misrepresentations Trumpower had used to carry out his fraudulent scheme. The response, however, did not contain any specifics: the identification of the names of victims, the time of the events, the circumstances describing the misrepresentations themselves and their materiality, or the circumstances establishing the use of the mails or wire in furtherance of the fraudulent scheme. Logic compels the conclusion that this alleged long-term scheme involved a great many persons, and an even greater number of transactions. In this mass of historical facts, there is no way for Trumpower to divine how the government intends to prove the specific criminal conduct that produced the criminal proceeds said to be the subject of the money laundering charges. Accordingly the Court orders that the government must file a supplemental bill of particulars. This bill of

particulars must identify (1) the circumstances of the crime or crimes from which the laundered money was derived, including how and when those crimes were accomplished; (2) in the case of mail or wire fraud, the particular false material representations and particular mailings or wire transactions; (3) who committed the crimes; (4) who were the victims of the crimes; and (5) in Count Two, how the allegedly laundered money can be identified as the proceeds of criminal conduct to the extent that it was ever commingled with legitimately derived funds.

*Trumpower*, 546 F. Supp. 2d at 851–52.

Here, Julian Omidi is faced with the same predicament. Julian Omidi does not know the particular false representations and particular mailings or wire transactions. Likewise, Julian Omidi does not know who his accusers or who the victims are of his alleged crimes.  Further, the government has given no allegations that amount to $38,000,000.00, let alone $240,000,000.00.  How can Julian Omidi defend himself against general allegations of "$240,000,000.00" in healthcare fraud and "38,000,000.00" and "tens of millions of dollars" in alleged fraud related to sleep studies?  (¶39-40 of the Superseding Indictment).   Counts 30-31, 33-34 are void of any alleged damages or loss of monetary value related to the alleged fraud.  The alleged "Overt Acts" 25-26" for Count 35 are void of any monetary value related to the alleged fraud. All of the alleged wrong-doings together do not even add up to a half of a million dollars.

Further, as noted above, the fact that the government has made available to defense counsel the voluminous documentary evidence accumulated in connection with this case does not obviate the need for a bill of particulars. Mr. Omid's Motion does seek to determine "how" the government intends to prove its case, but rather "what" the government intends to prove. Indeed, it is the very extensive nature of the discovery provided that gives rise to the Julian Omidi's [defendant's] need for a more specific statement of the charges. See *Bartnovsky*, 820 F.2d at 575 ("The government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified…."); *Davidoff*, 845 F.2d at 1155 (Jencks and discovery material may not be automatically relied on by the

government as an adequate substitute for a bill of particulars).

Accordingly, the defendant requests the following particulars:

1. Identify all details of the property being sought in any of the Forfeiture allegations, including but not limited to, the particular identification of the property, real or personal, alleged to constitute or be derived from proceeds, the person or company that received the property, the amount of currency at issue for Counts where money is not identified, including but not limited to Counts 30-31 and 33-34, in addition to the government's alleged tracing of said "proceeds" and the identified alleged substitute property.

## IV.   CONCLUSION

For the above reasons, Julian Omidi respectfully requests that the Court enter an order requiring the government to provide a bill of particulars.


Dated:  April 25, 2018              Law Offices of Kamille Dean, PLC
                                    Law Offices of Roger Jon Diamond


                                    By: /s/ Kamille Dean
                                        Kamille Dean
                                        Roger Jon Diamond
                                        *Attorneys for Defendant*
                                        JULIAN OMIDI

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 25, 2018, I electronically filed the following document(s) with the Clerk of the Court for the United States District Court for the Central District of California, by using the district court's CM/ECF system:

**DEFENDANT JULIAN OMIDI'S MOTION FOR BILL OF PARTICULARS**

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the district court's CM/ECF system.

s/ Kamille R. Dean

Kamille R. Dean, Esq.