Michael S. Schachter** (NY 3910205)
Randall W. Jackson** (NY 5274048)
Casey E. Donnelly** (NY4936803)
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8102; Fax: (728) 728-8111
Email: *mschachter@willkie.com*

Simona Agnolucci (SBN 246943)
**WILLKIE FARR & GALLAGHER LLP**
One Front Street
San Francisco, CA 94111
Tel: (415) 858-7447, Fax: (415) 858-7599
Email: *sagnolucci@willkie.com*

Bruce H. Searby* (SBN 183267)
Edmund W. Searby** (OH 067455)
**SEARBY LLP**
1627 Connecticut Ave, NW, Suite 4
Washington, D.C. 20009
Tel: (202) 750-6106, Fax: (202) 849-2122
Email: *bsearby@searby.law*

*Appearing specially ** Appearing pro hac vice*

*Counsel for Defendant Julian Omidi*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>Julian Omidi, *et al.*,<br>　　　　　　　　Defendants. | Case No. CR No. 17-00661 (A) – DMG<br><br>**DEFENDANT JULIAN OMIDI'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION OF MOSS LAW GROUP TO QUASH SUBPOENA**<br><br>Courtroom of the Hon. Dolly M. Gee |

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................ ii

I. INTRODUCTION ................................................................... 1

II. FACTUAL BACKGROUND ................................................... 4

III. ARGUMENT............................................................................ 7

    A.    The Materials Sought In the Subpoenas Are Not Protected From Disclosure By The Attorney-Client Privilege............................................. 7

        1.    The Movants And Mr. Klasky Waived His Attorney-Client Privilege With Respect To The Subject Of The Subpoena .......... 8

        2.    The Movants And Mr. Klasky May Not Selectively Disclose Privileged Materials........................................................................ 11

    B.    The Subpoena Complies With Rule 17 And Nixon.............................. 13

        1.    The Subpoena Seeks Materials That Are Relevant .................... 14

        2.    The Subpoena Seeks Materials That Are Admissible, Sufficiently Specific, And Not Easily Obtainable From Other Sources ........ 17

    C.    Mr. Omidi Is Entitled To The Materials Sought In The Subpoena Pursuant To Brady.................................................................................. 19

IV. CONCLUSION ......................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

Case                                                                                          Pages)

*Brady v. Maryland,*
  373 U.S. 83 (1963)..................................................................................3, 19, 21

*Carriger v. Stewart,*
  132 F.3d 463 (9th Cir. 1997) ........................................................ 19, 20

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.,*
  259 F.3d 1186 (9th Cir. 2001) ............................................................ 12

*Crane v. Kentucky,*
  476 U.S. 683 (1986)............................................................................ 13

*In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.),*
  357 F.3d 900 (9th Cir. 2004) ....................................................... 10, 11

*Kyles v. Whitley,*
  514 U.S. 419 (1995)......................................................................20, 22

*In re Martin Marietta Corp.,*
  856 F.2d 619 (4th Cir. 1988) .............................................................. 13

*McMorgan & Co. v. First Cal. Mortg.,*
  931 F. Supp. 703 (N.D. Cal. 1996)..................................................... 10

*Milke v. Ryan,*
  711 F.3d 998 (9th Cir. 2013) .............................................................. 19

*In re Pacific Pictures Corp.,*
  679 F.3d 1121 (9th Cir. 2012) ............................................................ 11

*Tennenbaum v. Deloitte & Touche,*
  77 F.3d 337 (9th Cir. 1996) ................................................................ 12

*United States v. Barton,*
  995 F.2d 931 (9th Cir. 1993) .............................................................. 21

*United States v. Bergonzi,*
  216 F.R.D. 487 (N.D. Cal. 2003) ....................................................... 10

*United States v. Bruce,*
  984 F.3d 884 (9th Cir. 2021) .............................................................. 20

*United States v. Bundy,*
   968 F.3d 1019 (9th Cir. 2020) ........................................................................20

*United States v. Goldman*,
   439 F. Supp. 337 (S.D.N.Y. 1977) ..................................................................11

*United States v. Hussain,*
   No. 16-CR-00462-CRB-1, 2018 WL 1091083 (N.D. Cal. Feb. 28, 2018).......17

*United States v. Johnson,*
   No. 14-CR-00412-TEH-1, 2014 WL 5077299 (N.D. Cal. Oct. 9, 2014)...........20

*United States v. King,*
   194 F.R.D. 569 (E.D. Va. 2000).................................................................16, 20

*United States v. Llanez-Garcia,*
   735 F.3d 483 (6th Cir. 2013) ..........................................................................21

*United States v. MacKey,*
   647 F.2d 898 (9th Cir. Cal. 1981)....................................................................15

*United States v. Nixon,*
   418 U.S. 683 (1974).................................................................................13, 16

*United States v. Origel,*
   No. CR 09-2688-TUC-FRZ, 2010 WL 1654134 (D. Ariz. Apr. 20, 2010) .......21

*United States v. Pac. Gas & Elec. Co.,*
   No. 14-cr-00175-THE, 2016 WL 3365754
   (N.D. Cal. June 17, 2016) ....................................................................14, 16, 18

*United States v. Perez,*
   No. CR 13-00087-(A)-VAP, 2014 WL 12697319 (C.D. Cal. May 14, 2014)...14

*United States v. Plache,*
   913 F.2d 1375 (9th Cir. 1990) .......................................................................7, 8

*United States v. Prantil,*
   764 F.2d 548 (9th Cir. 1985) ..........................................................................13

*United States v. R. Enters.,*
   498 U.S. 292 (1991)........................................................................................16

*United States v. Richey,*
   632 F.3d 559 (9th Cir. 2011) ................................................................. 8

*United States v. Ruehle,*
   583 F.3d 600 (9th Cir. 2009) ................................................................. 9

*United States v. Sanmina Corp.,*
   968 F.3d 1107 ....................................................................................... 8

*United States v. Sedaghaty,*
   728 F.3d 885 (9th Cir. 2013) ............................................................... 21

*United States v. Silva,*
   No. 15-cr-00158-JCM-CWH, 2015 WL 5895837 (D. Nev. Oct. 8, 2015) .. 14, 18

*United States v. Stein,*
   488 F. Supp. 2d 350 (S.D.N.Y. 2007) ................................................. 21

*United States v. Young,*
   No. 03-20400 BV, 2004 WL 784840 (W.D. Tenn. Mar. 4, 2004).................... 17

*United States v. Zhiqiang Zhang,*
   10-cr-00827 LHK, 2012 WL 195509 (N.D. Cal. Jan.23, 2012) ....................... 15

*Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.,*
   647 F.2d 18 (9th Cir. 1981) ........................................................... *passim*

**Other Authorities**

Fed. R. Evid. 106 .................................................................................. 18

Order of the Supreme Court, 207 F.R.D. 89 (2002) ............................... 17

MR. OMIDI'S OPPOSITION TO MOTION OF MOSS LAW GROUP TO QUASH SUBPOENA
Case No.  CR No. 17-00661 (A) - DMG

Defendant Julian Omidi, by and through his counsel of record, Willkie Farr and Gallagher LLP and Searby LLP, respectfully submits this memorandum of points and authorities in opposition to the motion to quash (the "Motion") a subpoena (the "Subpoena," attached as Ex. A) that was issued to Moss Law Group, Richard A. Moss, Esq., and William C. Fleming, Jr., Esq. (collectively, the "Movants").

## I.  **INTRODUCTION**

The Court should deny the Motion because the Movants cannot come close to demonstrating either that the material in question is privileged or that this is information that is outside of the appropriate reach of a Rule 17 subpoena.  On February 10, 2021, Mr. Omidi served the Subpoena on the Movants, who are attorneys for Charles Klasky, the Government's principal cooperating witness in this case.  The Subpoena includes two requests: one for communications between Mr. Klasky and the Movants regarding this case and the Government's underlying investigation, and one for communications between the Movants and the Government regarding the same topics.  As set forth in more detail below, Mr. Klasky and the Movants expressly waived his attorney-client privilege with respect to the former category of documents, and both categories are highly relevant to this action and properly requested by Mr. Omidi.  By nevertheless opposing the Subpoena, the Movants are seeking to assist the Government in using Mr. Klasky's attorney-client privilege as both a sword and a shield.  The Government extracted a privilege waiver from Mr. Klasky in order to obtain a 27-page memorandum describing in detail his involvement with Mr. Omidi, and the Government has confirmed it intends to introduce this memo at trial.  Now, after expressly waiving the attorney-client privilege, Mr. Klasky and the Movants seek to help the Government shield the remainder of his communications with his counsel on the same subject matter on the grounds of attorney-client privilege.  The law does not permit this concealment.

Mr. Klasky, who for years managed the sleep study program at 1-800-Get-Thin, LLC and its affiliated entities (collectively, "Get-Thin"), began cooperating

with the Government in March 2016.  Since that time, Mr. Klasky secretly recorded conversations with Mr. Omidi for the Government, participated in multiple lengthy interviews with the Government, and testified before the Grand Jury.  The charges against the Defendants in this case are based in large part on Mr. Klasky's cooperation, as the First Superseding Indictment repeatedly references him.  The Government has produced tens of thousands of documents that were obtained from Mr. Klasky, and he is expected to testify at the trial in this case.

In light of Mr. Klasky's importance to the Government's case, Mr. Omidi now seeks documents and communications relating to the Movants' representation of Mr. Klasky in connection with Get-Thin, the Government's investigation of Get-Thin (the "Get-Thin Investigations"), and Mr. Omidi, as well as the Movants' communications with the Government regarding the same.  The Movants now seek to avoid compliance with the Subpoena by claiming that the materials Mr. Omidi requested are protected by the attorney-client privilege and that the Subpoena does not comply with Rule 17's requirements of relevance, admissibility, and specificity.  Each of these objections misconstrues applicable law and ignores key facts.

First, the materials sought in the Subpoena are not protected by the attorney-client privilege because Mr. Klasky and the Movants waived this privilege with respect to the subject matter of the Subpoena.  The Movants expressly and unambiguously waived Mr. Klasky's attorney-client privilege when they voluntarily provided the Government a lengthy memorandum that Mr. Klasky had written to his prior counsel regarding the entire scope of their representation of him for purposes of obtaining legal advice in connection with the Get-Thin Investigations.  This memo discusses Mr. Klasky's defense strategy with respect to a broad range of topics, including each of the specific topics about which Mr. Omidi now seeks documents and communications in the Subpoena.  Mr. Klasky's counsel also provided additional privileged materials to the Government.  Under well-established Ninth Circuit precedent, Mr. Klasky's express waiver of his attorney-client privilege and voluntary

disclosure of privileged communications constitutes a waiver of the privilege with respect to all other communications regarding these topics.  Mr. Klasky also broadly consented to the Government's complete search of his personal emails.  As a matter of law, Mr. Klasky and the Movants cannot selectively disclose privileged materials to the Government while retaining the option to withhold other attorney-client communications.  As such, the Subpoena cannot be quashed on this basis.

Second, the Subpoena complies with Rule 17 because it consists of two sufficiently specific requests for relevant and admissible information.  Given that the Government intends to use at trial communications between Mr. Klasky and his attorneys, it is critical that the defense have access to the complete picture of these communications and not selected portions which Mr. Klasky has curated to correspond with the Government's trial themes. Moreover, the veracity of Mr. Klasky's allegations and Mr. Klasky's credibility are of critical significance.  Indeed, given the Government's affirmative reliance on Mr. Klasky's memo to his attorneys, there can be no serious question as to the relevance of Mr. Klasky's communications with his attorneys.  Mr. Omidi is entitled to the full scope of these communications, not merely those that Mr. Klasky and the Movants choose to disclose.  All of these materials are relevant and admissible, including to the extent they may be used to impeach Mr. Klasky's testimony.  The Motion ignores Mr. Klasky's importance to the case, instead relying on conclusory assertions that the Subpoena does not seek relevant and admissible documents, as well as false characterizations of applicable law.

Third, the Subpoena seeks materials to which Mr. Omidi is potentially entitled under *Brady v. Maryland*, 373 U.S. 83 (1963).  As set forth below, the actions of the Government, Mr. Klasky, and the Movants to selectively withhold documents from Mr. Omidi raises the prospect of a *Brady* violation, and Mr. Omidi properly seeks to obtain relevant materials, which are potentially exculpatory.

MR. OMIDI'S OPPOSITION TO MOTION OF MOSS LAW GROUP TO QUASH SUBPOENA
Case No.  CR No. 17-00661 (A) - DMG

The Subpoena includes targeted requests for highly relevant information regarding the Government's primary cooperator, who has attempted to selectively disclose materials to the Government.   The Court should not countenance the Movants' request to deprive Mr. Omidi of this important information.  The Motion should be denied.

## II.   <u>FACTUAL BACKGROUND</u>

The Movants are counsel to Charles Klasky.  (Motion at 1.)  Mr. Klasky is a former employee of Defendant Surgery Center Management, LLC ("SCM") and was the manager of the sleep study program that is a central focus of the First Superseding Indictment in this matter.  (ECF No. 12 ¶¶ 2, 21.)

On March 24, 2016, Mr. Klasky agreed to cooperate with the Government in connection with the Get-Thin Investigations, and effectively became a member of the prosecution team.  (ECF No. 787 at 11.)  According to the Government, Mr. Klasky's prior counsel, Michael Proctor and Alison Mackenzie of Caldwell, Leslie & Proctor PC, "facilitated Klasky's cooperation with the government, including by discussing the approach and strategy of undercover activities with the agents." (*Id.*)  During the period between March and June 2016, Mr. Klasky secretly recorded conversations for the Government, including conversations with Mr. Omidi. (*Id.* at 11-19.)  Mr. Klasky and his counsel worked with the Government to create a subterfuge intended to prompt a discussion of Mr. Omidi's defense during these meetings.  The Government provided Mr. Klasky and his counsel a fake "target letter" addressed to Mr. Klasky's attorneys to be shared with Mr. Omidi and his attorneys, indicating that Mr. Klasky was the target of the criminal investigation (even though at the time Mr. Klasky was already cooperating with the Government).  On April 29, 2016, the Movants began representing Mr. Klasky and "continued to facilitate Klasky's cooperation with the government." (*Id.* at 16.)

On August 9, 2017, Mr. Klasky pled guilty to a single-count information, pursuant to a plea agreement that requires him to cooperate with the Government in

connection with this case.  (Motion at 1.)  A week later, Mr. Klasky testified before the grand jury.  He is anticipated to testify at trial in this case.  (*Id.* at 1-2.)

The Government has produced to the Defendants tens of thousands of documents that were either seized from Mr. Klasky pursuant to a search warrant or provided to the Government by Mr. Klasky's counsel.  These include thousands of Mr. Klasky's personal emails that the Government received from AOL pursuant to a search warrant.  Mr. Klasky and the Movants were aware as early as January 2017 that the Government obtained these emails.  (Ex. B at 3 (indicating that the Government showed Mr. Klasky his AOL emails at a January 23, 2017 proffer session attended by Mr. Moss).)  On October 30, 2017, Mr. Klasky, who at the time was represented by the Movants, consented to the government's search of all of the emails obtained in connection with the warrant for his AOL account.  (Ex. C at 3, Exhibit B.)  Mr. Klasky signed this consent days after the Government informed Mr. Klasky's counsel that the Prosecution team had obtained a production of Mr. Klasky's AOL emails that had not been reviewed for scope, even though the warrant for these emails indicated that they would be reviewed for scope.  (*Id.* at 2-3.)

On June 12, 2018, Mr. Fleming (one of the Movants) sent to the Government via email a 27-page memorandum, with accompanying exhibits, written by Mr. Klasky, dated April 8, 2013, directed to his attorneys and labeled "Attorney Client Privilege."  (Ex. D, the "April 8 Memo".)  The April 8 Memo set forth in detail Mr. Klasky's defense strategy with respect to the Get-Thin Investigations and included a thorough recitation of, among other things, Mr. Klasky's role at the sleep study program, his allegations that sleep study reports were altered, his allegations that raw sleep study data was destroyed, billing procedures for the sleep study program, an FDA warning letter that mentioned Mr. Klasky, and Mr. Klasky's past deposition testimony.  (*Id.*)

Prior to providing this document to the Government Filter Team, Mr. Fleming sent two emails to the Prosecution Team indicating that Mr. Klasky had decided to

waive his attorney-client privilege in connection with his disclosure of the April 8 Memo.  On May 25, 2018, Mr. Fleming described the April 8 Memo in an email to Kristen Williams of the Prosecution Team and told Ms. Williams that the Movants were reviewing the April 8 Memo and that Mr. Klasky likely would waive his attorney-client privilege with respect to the April 8 Memo.  (Ex. E.)  On June 12, 2018, shortly before sending the April 8 Memo to the Filter Team, Mr. Fleming sent another email to Ms. Williams, confirming Mr. Klasky's express waiver of his attorney-client communication privilege with respect to the April 8 Memo and asking how Ms. Williams would like Mr. Fleming to produce the April 8 Memo.  (Ex. F.)  Ms. Williams replied with the Government's confirmed understanding that Mr. Klasky had waived his privilege with respect to the document and instructed Mr. Fleming to send the document to the Filter Team.  (*Id.*)  After receiving the April 8 Memo on June 12, 2018, the Filter Team released the April 8 Memo to the Prosecution Team on April 27, 2020.  (Ex. G at Rows 133-134.)  The Prosecution Team subsequently produced the April 8 Memo to the Defendants.  The Prosecution Team also relied affirmatively on the April 8 Memo in their opposition to Mr. Omidi's motion regarding the application of the joint defense privilege to the conversations Mr. Klasky secretly recorded.  (ECF No. 787 at 5-6, Ex. 21.)  The Government also recently informed Mr. Omidi's counsel that it intends to introduce the April 8 Memo as an exhibit at trial.  (Ex. H.)

The Government has obtained, reviewed, and produced additional privileged communications between Mr. Klasky and his attorneys regarding the Get-Thin Investigations.  These include a December 5, 2016 letter from Mr. Klasky to the Movants (Ex. B at GT_REPORTS_00099225, the "December 5 Letter") and a memorandum from May 29, 2018 (Ex. I , the "May 29 Memo").  (*See also* Ex. G Rows 137-138.)  The Filter Team reviewed the December 5 Letter and the May 29 Memo and released them to the Prosecution Team on January 12, 2017 and April 27, 2020, respectively.  (Ex. G Rows 137-138.)

6

On February 10, 2021, Mr. Omidi's counsel sent the Subpoena to the Movants via email, and Mr. Fleming agreed on behalf of the Movants to accept service of the Subpoena via email. (Motion at 2.)   The Subpoena includes two requests.  First, it requests that the Movants produce all communications and documents within their possession "concerning [the Movants'] representation of Charles Klasky as it related to the 1-800-Get-Thin Investigations, 1-800-Get-Thin, and/or Julian Omidi." (Ex. A.)  This request includes a non-exhaustive list of specific topics about which the Movants might have responsive documents, including sleep study programs, sleep study reports, and alleged changes to and destruction of sleep study data. (*Id.*)  The Subpoena's other request is for communications between the Movants and the Government concerning the same topics. (*Id.*)

## III.   ARGUMENT

### A.   The Materials Sought In the Subpoenas Are Not Protected From Disclosure By The Attorney-Client Privilege

The Motion is based in large part on the Movants' assertion that the Subpoena seeks privileged documents and communications. (Motion at 7-11.)  This is a false premise.  Because Mr. Klasky and the Movants voluntarily waived his attorney-client privilege with respect to the subject of the Subpoena, ***nothing*** sought in the Subpoena is protected from disclosure by the attorney-client privilege.

"The party asserting the [attorney-client] privilege has the burden to prove the privilege applies."  *United States v. Plache*, 913 F.2d 1375, 1379 (9th Cir. 1990). "One of the elements that the asserting party must prove is that it has not waived the privilege."  *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).  Moreover, "[b]ecause it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed."  *Id.* at 24.

### 1.      The Movants And Mr. Klasky Waived His Attorney-Client Privilege With Respect To The Subject Of The Subpoena

"[I]t has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject."  *Weil* 647 F.2d at 24; *see also United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (same); *Plache*, 913 F.2d at 1380 ("[W]e conclude the district court properly found that Plache voluntarily disclosed his privileged attorney communication, thereby waiving the privilege on all other communications on the same subject.").  The policy underlying this rule is one of fairness.  "When the privilege holder's conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not." *Weil*, 647 F.2d at 24; *see also United States v. Sanmina Corp.*, 968 F.3d 1107, 1117 (quoting *Weil*, 647, F.2d at 24) (9th Cir. 2020) (This fairness principle also animates the concept of ***subject matter*** waiver, in which "voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject.") (emphasis added).

Mr. Klasky and the Movants expressly and repeatedly waived his attorney-client privilege with respect to the Get-Thin Investigations and this case by voluntarily disclosing communications regarding these subjects that, absent this waiver, would be privileged.  Most glaringly, when Mr. Fleming provided the April 8 Memo to the Government, he told Ms. Williams of the Prosecution Team that Mr. Klasky was willing to waive his attorney-client privilege with respect to the April 8 Memo.  (Ex. F.)  This explicit, unambiguous, and voluntary waiver in Mr. Fleming's email stands in stark contrast with the conclusory assertion in Mr. Fleming's declaration that "Mr. Klasky has not waived" the attorney-client privilege (*See* Fleming Decl. ¶¶ 2, 3).

The April 8 Memo was a confidential communication between Mr. Klasky and his former counsel, Michael Proctor and Alison Mackenzie, for the purpose of

obtaining legal advice in connection with the Get-Thin Investigations.  Mr. Klasky clearly indicated that his attorneys were the intended recipients of this communication and that he intended for the communication to be kept confidential, affixing an "Attorney Client Privilege" header to each page.  (Ex. D.)  Likewise, the December 5 Letter and the May 29 Memo were attorney-client communications regarding the Get-Thin Investigations that Mr. Klasky and the Movants nevertheless voluntarily shared with the Government Team.   (*See* Ex. B at GT_REPORTS_00099225; Ex. I.) Without a waiver, the April 8 Memo, the December 5 Letter, and the May 29 Memo were unquestionably protected from disclosure by the attorney-client privilege. *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) ("The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice.") (quotations omitted).

By voluntarily providing these materials to the Government and expressly waiving Mr. Klasky's attorney-client privilege, Mr. Klasky and the Movants waived his attorney-client privilege with respect to "***all other such communications on the same subject***." *Weil*, 647 F.2d at 24 (emphasis added).  In light of the broad scope of these materials, which discuss Mr. Klasky's defense strategy and many of the allegations he eventually made before the Grand Jury and presumably will make when he testifies at trial, Mr. Klasky's subject matter waiver extends broadly and includes the materials requested in the Subpoena.  Indeed, every one of the topics mentioned in the Subpoena—the Get-Thin Investigations, Get-Thin, Mr. Omidi, sleep study programs, sleep study reports, alleged changes to sleep study data, alleged destruction of sleep study data, sleep study case meetings, sleep study billing, and related civil litigation—is discussed in the April 8 Memo alone.  (*Compare* Ex. A *with* Ex. D.) The breadth of Mr. Klasky's waiver is further underscored by his consent, while represented by the Movants, to the Government's complete search of Mr. Klasky's AOL emails in October 2017.  (Ex. C.)

The Movants cannot conceivably argue that their disclosure of Mr. Klasky's privileged communications was inadvertent, particularly in light of Mr. Fleming's express waiver on his client's behalf.  (Ex. F.)  Moreover, the Movants provided the April 8 Memo and other privileged communications to the Government without first applying redactions or providing any indication that Mr. Klasky objected to the disclosure of these materials or any portions thereof to the Prosecution Team or the Defendants.  These disclosures also occurred after Mr. Klasky had already consented to the Government performing a complete search of his AOL emails and more than a year after Mr. Klasky and the Movants learned that the Government had obtained these emails via a search warrant.  (Exs. B, C.)  And in any event, "'inadvertence' of disclosure does not as a matter of law prevent the occurrence of waiver."  *Weil*, 647 F.2d at 24.  In *Weil*, the Ninth Circuit concluded that a party's "bare assertion that it did not subjectively intend to waive the privilege is insufficient to make out the necessary element of nonwaiver," noting in support that the privileged communication was "voluntarily disclosed without objection by the asserting party's counsel."  *Id.* at 25 n.13.  Here, Mr. Klasky and the Movants similarly never objected to the broad disclosure of his privileged attorney-client communications.  Nor could they reasonably object, in light of their voluntary disclosure and express waiver.

The Movants speculate that the Subpoena calls for materials protected from disclosure by the work product doctrine.  A party's voluntary disclosure of work product to an adversary or conduit to an adversary in litigation constitutes a waiver of work product protection.  *See McMorgan & Co. v. First Cal. Mortg.,* 931 F. Supp. 703, 709 (N.D. Cal. 1996); *United States v. Bergonzi,* 216 F.R.D. 487, 498 (N.D. Cal. 2003).  The Government, which indicted Mr. Klasky, was his adversary.  And in any event, materials protected by the work product doctrine may be "ordered produced upon an adverse party's demonstration of 'substantial need' [for] the materials' and 'undue hardship [in obtaining] the substantial equivalent of the materials by other means."  *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900,

906 (9th Cir. 2004) (citing Fed. R. Civ. P. 26(b)(3)).  This is especially so where, as here (*see infra* Sec. III.B.3), the requested materials are exculpatory within the scope of *Brady*.  *United States v. Goldman*, 439 F. Supp. 337, 350 (S.D.N.Y. 1977) ("Of course, if the material be of a Brady nature, then it must be produced.").

## 2.    The Movants And Mr. Klasky May Not Selectively Disclose Privileged Materials

Mr. Klasky's attempt to selectively disclose privileged communications to the Government without waiving his attorney-client privilege runs counter to every applicable precedent and the very purposes of the attorney-client privilege.  In *In re Pacific Pictures Corp.*, the Ninth Circuit rejected a party's argument that "because [he] disclosed [] documents to the government, as opposed to a civil litigant, his actions did not waive the privilege as to the world at large."  *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1127 (9th Cir. 2012).  In so holding, the Ninth Circuit chose not to adopt "the theory of 'selective waiver' initially accepted by the Eighth Circuit, but rejected by every other circuit to consider the issue since."  *Id.* (citations omitted).  The court explained that "selective waiver does not serve the purpose of encouraging full disclosure to one's attorney in order to obtain informed legal assistance; it merely encourages voluntary disclosure to government agencies, thereby extending the privilege beyond its intended purpose."  *Id.* (quotations omitted).  The court notably pointed out that Congress chose not to adopt "even [a] limited form of selective waiver" for disclosure to government agencies.  *Id.* at 1129 ("'Rule 502 does not provide a basis for a court to enable parties to agree to a selective waiver of the privilege, such as to a federal agency conducting an investigation.'") (quoting *Statement of Congressional Intent Regarding Rule 502 of the Federal Rules of Evidence*, 154 Cong. Rec. H. 7817 (2008)).

Allowing Mr. Klasky to disclose certain privileged communications, but not others, would undermine completely the policy of fairness underlying the subject matter waiver rule.  As the Ninth Circuit observed in *Weil*, "[h]e cannot be allowed,

after disclosing as much as he pleases, to withhold the remainder. He may elect to withhold or disclose, but after a certain point his election must remain final." *Weil*, 647 F.2d at 24 (quotations omitted). Although they were under no obligation whatsoever to do so, Mr. Klasky and the Movants elected to disclose his privileged communications and waive his attorney-client privilege. They did so at the request of the Government, so that the Government can make affirmative use of the April 8 Memo in pre-trial proceedings and at trial.

The Movants and Mr. Klasky cannot now use their attorney-client relationship as a shield, after previously using it as a sword. Such gamesmanship would offend the "fundamental fairness" and "principal purpose" of the subject matter waiver doctrine, which is to "to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable." *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340-41 (9th Cir. 1996); *see also Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.,* 259 F.3d 1186, 1196 (9th Cir. 2001) ("The privilege which protects attorney-client communications may not be used both as a sword and a shield. Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived.").[1]

---

[1] It would similarly offend principles of fairness to allow Mr. Klasky to selectively disclose privileged communications in light of the Government's arguments in opposition to Mr. Omidi's recent motion for judicial findings regarding the joint defense agreement between Mr. Omidi, Mr. Klasky, and others. The Government argued that Mr. Omidi's presentation to the Government during a proffer session "waived any claims of privilege" over conversations that Mr. Klasky had secretly recorded, simply because the presentation advanced arguments that were also discussed during the recorded conversations. (ECF No. 886 at 8-9.) The Court agreed with the Government, concluding that "Omidi and his counsel disclosed the contents of their purportedly 'confidential' communications to … the Government in his proffer." (ECF No. 943 at 15 fn. 28.) We respectfully submit that the Court's reasoning that Mr. Omidi's presentation of arguments to the Government during a proffer waived the privileged nature of attorney-client communications regarding those and similar arguments, should *a fortiori* indicate that the voluntary disclosure of Mr. Klasky's actual attorney-client communication constitutes a subject matter waiver.

In light of the broad, explicit waiver of Mr. Klasky's attorney-client privilege with respect to the Get-Thin Investigations and this case, the Movants cannot avoid compliance with the Subpoena by claiming that the materials requested in the Subpoena are privileged or that the Movants have an ethical or fiduciary responsibility to keep these communications confidential in spite of Mr. Klasky's broad waiver.

**B.    The Subpoena Complies With Rule 17 And _Nixon_**

The Movants also contend that the Subpoena is not sufficiently specific and does not call for information that is relevant and admissible, in violation of Rule 17. This argument fails, as it is premised on a misconstruction of applicable law and overlooks the critical importance of the materials sought in the Subpoena.

The United States Constitution—through the Due Process, Compulsory Process, and Confrontation Clauses—"guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quotations and citations omitted). Specifically, "[t]he Sixth Amendment explicitly confers upon every defendant in a criminal trial the right 'to be confronted with the witness against him and to have compulsory process for obtaining witnesses in his favor." *United States v. Nixon*, 418 U.S. 683, 711 (1974) (quotations omitted). Accordingly, "[i]t is the manifest duty of the courts to vindicate those guarantees, and to accomplish that it is essential that all relevant and admissible evidence be produced." *Id.; see also United States v. Prantil,* 764 F.2d 548, 552 (9th Cir. 1985) ("The court must honor the defendant's constitutional rights under the confrontation and compulsory process clauses of the Sixth Amendment."). "Rule 17(c) implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor." *In re Martin Marietta Corp.*, 856 F.2d 619, 621 (4th Cir. 1988). The Supreme Court in *Nixon* held that a subpoena promulgated pursuant to Rule 17 must seek information that is sufficiently relevant, admissible, and specific. *Nixon*, 418 U.S. at 700. The Subpoena easily clears these hurdles.

### 1.       The Subpoena Seeks Materials That Are Relevant

The relevance requirement under *Nixon* "requires the Court to assess whether the documents sought have any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *United States v. Pac. Gas & Elec. Co.*, No. 14-cr-00175-THE, 2016 WL 3365754, at *2 (N.D. Cal. June 17, 2016) (quotations omitted).

The relevance of the materials requested in the Subpoena to Mr. Omidi's defense is beyond question.  In an attempt to argue otherwise, the Motion relies on vague, conclusory statements such as that the Subpoena is "a fishing expedition," and focuses on the use of the words "any" and "all" in the Subpoena.  Absent from this analysis, however, is any discussion whatsoever of the requests themselves or Mr. Klasky's role in this case.  Mr. Klasky is the Government's primary cooperating witness.  He is referenced repeatedly in the First Superseding Indictment.  (ECF No. 12 ¶¶ 2-3, 21, 23, 37, 38(g), 38(h), 38(i), 38(j), 38(k), 38(m), 38(p), 38(r), 38(s), 49, 53, 54(b), 54(c), 54(d), 54(e), 54(g), 54(h), 55; Overt Act Nos. 2, 6, 9, 17, 21, 25, 26, 27.)  He is expected to testify for the Government at trial (Motion at 1-2), and if his testimony before the Grand Jury is any indication, his trial testimony will be lengthy and significant.  In short, the truth or falsity of Mr. Klasky's allegations and—by extension—Mr. Klasky's credibility are of critical importance to the Government's case against all three of the Defendants in this case.  Thus, Mr. Klasky's communications regarding the topics identified in the Subpoena—the Get-Thin Investigations, Get-Thin, and Mr. Omidi—will undoubtedly shed light on facts that are "of consequence to the determination of the action." *Pac. Gas & Elec.*, 2016 WL 3365754, at *2.  *See also, e.g., United States v. Perez*, No. CR 13-00087-(A)-VAP, 2014 WL 12697319, at *2 (C.D. Cal. May 14, 2014) (holding that subpoena of government informant satisfied relevance requirement); *United States v. Silva*, No. 15-cr-00158-JCM-CWH, 2015 WL 5895837, at *2 (D. Nev. Oct. 8, 2015) (granting defendant's motion for 17(c) subpoena of government witness because requested

information was relevant to defense strategy); *United States v. Zhiqiang Zhang*, 10-cr-00827 LHK (HRL), 2012 WL 195509, at *2 (N.D. Cal. Jan.23, 2012) ("Because it is often difficult at the pretrial stage to determine with precision the admissibility of certain documents . . . if a document is arguably relevant and admissible under the Rules of Evidence, the *Nixon* evidentiary requirement is likely satisfied." (citations and internal quotation marks omitted)). *United States v. MacKey*, 647 F.2d 898, 901 (9th Cir. Cal. 1981) ("While we agree that a Rule 17(c) subpoena is not intended to . . . to allow a blind fishing expedition seeking unknown evidence. . . [b]ecause the [requesting party] has not yet seen the documents, it would be unreasonable to expect a more detailed connection be provided between the contents of the documents and the ultimate facts at issue in the case.").

More specifically, Mr. Klasky's communications with his attorneys and his attorneys' communications the Government are relevant because Mr. Klasky, the Movants, and the Government have selectively disclosed these communications and put them at issue.  The Government solicited these materials from Mr. Klasky, attached and affirmatively relied on the April 8 Memo in its opposition to Mr. Omidi's motion regarding recorded conversations that were subject to the joint defense privilege, and subsequently confirmed that it intends to introduce the April 8 Memo as an exhibit at trial.  (ECF No. 787 at 5-6, Ex. 21; Ex. H.)  Mr. Omidi is entitled to obtain and introduce other statements Mr. Klasky made, as well as the Movants' other communications with the Government, so that Mr. Omidi has a full and fair opportunity to respond to the Government's reliance on the April 8 Memo and any other evidence Mr. Klasky selectively disclosed to the Government.  Denying Mr. Omidi this opportunity and allowing Mr. Klasky, the Movants, and the Government to pick and choose what evidence they disclose would result in "a partial or

speculative presentation of the facts," in violation of Mr. Omidi's Sixth Amendment right to compulsory process. *Nixon*, 418 U.S. at 709. [2]

The Movants suggest that, "even if any responsive documents might be relevant for impeachment," this is not sufficient to defeat a motion to quash. (Motion at 6-7.) Even putting aside the fact that Mr. Omidi seeks these materials for more than impeachment purposes, the Movants' argument fails. In support, the Movants cite inapposite case law in involving 17(c) *pretrial* subpoenas. "[T]hough impeachment is an insufficient basis for pretrial production under Rule 17(c), the cases establishing this principle do not extend to production at trial." *Pac. Gas & Elec.*, 2016 WL 3365754, at *2 (citing *Nixon*, 418 U.S. at 701; *United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981)). In *Pacific Gas & Electric*, the court explained that its prior denial of "request[s] for *pretrial* production … were procedural and do not find application with the present *trial* subpoenas." *Id.* (emphasis in original). Likewise here, the Movant's statement that "courts routinely quash subpoenas when they seek evidence exclusively for impeachment purposes" is not applicable here. This case law is further irrelevant where, as here, "it is known with certainty before trial that the witness will be called to testify." *United States v. King*, 194 F.R.D. 569, 574 (E.D. Va. 2000) (explaining that "[t]he rationale offered for generally eschewing the use of Rule 17(c) to secure impeachment material" is inapplicable in these circumstances).[3]

The Movants' argument that "Rule 17(h) specifically prohibits using a Rule 17 subpoena to obtain 'a statement of a witness or of a prospective witness'" similarly has no application here. (Motion at 7.) Rule 17(h) does nothing of the sort. Rather,

---

[2] "A subpoena for documents may be quashed if their production would be unreasonable or oppressive, but not otherwise." *Nixon*. 418 U.S. at 699. *United States v. R. Enters.*, 498 U.S. 292, 301 (1991) (the burden of demonstrating the unreasonableness of complying with a Rule 17(c) subpoena rests on the "recipient who seeks to avoid compliance").

[3] And in any event, this case law has no application where, as here, the materials sought are exculpatory pursuant to *Brady* and may be obtained prior to trial. (*See infra* Sec. III.B.3.)

this rule prevents defendants from subpoenaing the **Government** to obtain witness statements in its possession.  It is entirely appropriate to request statements from third parties that are not in the possession of the Government.  As originally enacted, Rule 17(h) provided that "[s]tatements made by witnesses or prospective witnesses may not be subpoenaed *from the [G]overnment or the defendant* under this rule, but shall be subject to production only in accordance with the provisions of Rule 26.2."  *See* Order of the Supreme Court, 207 F.R.D. 89, 442 (2002) (emphasis added).  When this provision was amended to its current version in 2002, its language was no longer explicit.  *See id.*  But the Advisory Committee made clear that this "change[] [was] *intended to be stylistic only*," and was simply "part of the general restyling of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules."  *Id.* at 443 (emphasis added).  In other words, even after the 2002 amendment, Rule 17(h) forbids subpoenas of witness statements only "from the [G]overnment or the defendant."  Rule 17(h) therefore does not prevent a defendant from subpoenaing witness statements from a third party where the Government does not possess the statements.  *United States v. Hussain*, No. 16-CR-00462-CRB-1, 2018 WL 1091083, at *2 (N.D. Cal. Feb. 28, 2018) (Rule 17(h) does "not reflect an intention to make third-party witness statements undiscoverable"); *see also United States v. Young*, No. 03-20400 BV, 2004 WL 784840, at *2 (W.D. Tenn. Mar. 4, 2004) (Rule 17(h) "only appl[ies] to [witness] statements in the government's possession").

### 2.     The Subpoena Seeks Materials That Are Admissible, Sufficiently Specific, And Not Easily Obtainable From Other Sources

The Subpoena also satisfies *Nixon*'s admissibility requirement.  Although the Motion includes the terse, conclusory statement that Mr. Omidi "cannot show that the Subpoena seeks production of … admissible documents," it lacks any explanation of why the materials Mr. Omidi seeks might not be admissible.  To the extent the

17

Movants contend that the materials are inadmissible due to the attorney-client privilege, this argument fails because that privilege has been waived with respect to the subject matter of the Subpoena.  (*See supra* Sec. III.A.)  Notwithstanding the Movants' conclusory assertion to the contrary, the Subpoena seeks information that is "admissible because the information could be used, among others, to potentially impeach government witnesses." *Silva*, 2015 WL 5895837, at *2.  Moreover, the Federal Rules of Evidence explicitly set out the admissibility of writings "that in fairness out to be considered at the same time" at other writings an opposing party introduces. Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time"). It is difficult to imagine a scenario where the Rule of Completeness is more explicitly implicated.

The Subpoena is also sufficiently specific to comply with Rule 17 and is not overbroad.  The specificity requirement "may be satisfied if there is a sufficient likelihood, demonstrated through rational inferences, that the documents being sought contain relevant and admissible evidence." *Pac. Gas & Elec.*, 2016 WL 3365754, at *2 (quotations omitted).  The Subpoena includes two targeted requests for documents and communications relating to topics that are the subject of Mr. Klasky's April 8 Memo and Grand Jury testimony—the 1-800-Get Thin Investigations, Get-Thin, and Mr. Omidi.  As set forth above, the Movants and Mr. Klasky, in conjunction with the Government, have selectively disclosed communications between Mr. Klasky and his attorneys and, in so doing, have waived Mr. Klasky's privilege with respect to the subject matter of the Subpoena.  The scope of the Subpoena is no broader than the scope of this waiver or of the April 8 Memo that the Government intends to introduce as an exhibit at trial.

Finally, Mr. Omidi cannot "readily obtain" these documents from another source, as the Movants suggest.  (Motion at 6.)  Among the more than one million

18

documents Mr. Omidi has obtained from the Government, only a small handful are communications with the Movants.  Moreover, Mr. Omidi's counsel requested that the Government produce Mr. Klasky's attorneys' files and communications and all correspondence between Mr. Klasky's counsel and the Prosecution Team and its agents.  The Government refused to produce documents in response to both requests.  (Ex. J, Items 29, 32.)

Because the Subpoena includes sufficiently specific requests for relevant and admissible materials necessary for Mr. Omidi's defense, the Subpoena complies with Rule 17 and *Nixon*.

## C.    Mr. Omidi Is Entitled To The Materials Sought In The Subpoena Pursuant To *Brady*

Pursuant to the Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963), Mr. Omidi is properly seeking the disclosure of "all material evidence that could … be used to impeach one of the prosecution's witnesses or undermine the prosecution's case." *Milke v. Ryan*, 711 F.3d 998, 1003 (9th Cir. 2013).  Here, the selective disclosure by the Government, Mr. Klasky, and the Movants of Mr. Klasky's attorney-client communications and other documents raises the prospect of a *Brady* violation that must be addressed by the production of the materials sought in the Subpoena.

As set forth above, the Government, Mr. Klasky, and the Movants have put certain specific communications between Mr. Klasky and his attorneys at issue, while withholding other such communications that may be exculpatory, including documents that contradict or undermine the April 8 Memo, the December 5 Letter, or the May 29 Memo, or that impact Mr. Klasky's credibility.  The suppression of these materials, which are potentially exculpatory, has "distorted the fact-finding process" and, if allowed to continue, will raises the prospect of an "unconstitutionally incomplete record."  *Milke,* 711 F.3d at 1007.  Under *Brady*, "it is the state's obligation to turn over all evidence bearing on [a] witness's credibility." *Carriger v.*

*Stewart*, 132 F.3d 463, 480 (9th Cir. 1997); *see also United States v. Johnson,* No. 14-CR-00412-TEH-1, 2014 WL 5077299, at *1 (N.D. Cal. Oct. 9, 2014) (Granting a rule 17(c) subpoena because "'[a] defendant must be provided with evidence concerning the credibility of witnesses where the evidence may be determinative of guilt or innocence.'") *(quoting Giglio v. United States,* 405 U.S. 150, 153–54 (1972))*.* Moreover, the Government "has an affirmative obligation to learn of potentially favorable information" regarding Mr. Klasky, the Government's principal witness and cooperator, "and provide it to the defense." *United States v. Bundy*, 968 F.3d 1019, 1029, 1038 (9th Cir. 2020) ("[T]he prosecution's failure to look beyond the FBI file that was provided" constituted a "reckless disregard for its [constitutional] obligations to learn and seek out favorable evidence.") (alteration in original).[4] Here, the Government failed to look beyond the selective privileged information Mr. Klasky and the Movants provided, in "disregard for its [constitutional] obligations." *Id.* 1029. To this day, the Government refuses to provide the materials requested in the Subpoena, despite its representation at a recent status conference that its "primary concern is with ensuring that its discovery obligations to the co-defendants are met well in advance of trial."  (ECF No. 998 at 8.)

Pursuant to Rule 17, however, the Government is not the sole source from which Mr. Omidi may seek potential *Brady* material.  He may also seek this information from third parties, such as the Movants.  "Exculpatory evidence in the possession of third parties is subject to a subpoena duces tecum." *King*, 194 F.R.D. at 573 (holding that subpoena seeking exculpatory impeachment material was proper under Rule 17).  Here, Mr. Omidi is entitled to seek from the Movants "the same

---

[4] *See also, e.g.*, *United States v. Bruce*, 984 F.3d 884, 896 (9th Cir. 2021) (finding the Government violated *Brady* because even if the Government had no obligation to call a witness, "the government still bore the burden of investigating whether potentially exculpatory evidence existed");  *Kyles*, 514 U.S. 419, 438 (1995) (noting that *Brady* imposes "an ongoing duty" on the government to "learn of any favorable evidence known to the others acting on the government's behalf in the case").

material the federal government is required to provide as a matter of course." *United States v. Origel*, No. CR 09-2688-TUC-FRZ, 2010 WL 1654134, at *2 (D. Ariz. Apr. 20, 2010) (denying motion to quash Rule 17 subpoena served on state agency to obtain *Brady* material outside the federal prosecutors' control). Indeed, "[n]o rational purpose would be advanced by going through the charade of ordering the government to request the documents from [the third-party] so that the government may turn them over to the defendants." *United States v. Stein*, 488 F. Supp. 2d 350, 366 (S.D.N.Y. 2007). *Cf. also United States v. Llanez-Garcia,* 735 F.3d 483, 494 (6th Cir. 2013) ("[T]o the extent the government-as-gatekeeper theory allows the government to obstruct a criminal defendant's access to materials needed for his defense by strategically opting not to obtain them itself, this erroneous legal view risks frustrating the defendant's guarantee of compulsory process under the Sixth Amendment."). *See also Brady*, 373 U.S. at 87 ("Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly."). *United States v. Sedaghaty*, 728 F.3d 885, 904–05 (9th Cir. 2013) ("the Constitution's guarantee that all criminal defendants must have a meaningful opportunity to present a complete defense.") (citations and internal quotations omitted). Accordingly, Mr. Omidi properly seeks exculpatory *Brady* material from the Movants in the Subpoena.

*Brady* also entitles Mr. Omidi to obtain these materials in connection with his anticipated pretrial motions. The Ninth Circuit has held that "the due process principles announced in *Brady* and its progeny must be applied to a suppression hearing." *United States v. Barton*, 995 F.2d 931, 935 (9th Cir. 1993). Because Mr. Omidi seeks suppression or dismissal based on the Government's violation of his Fourth and Sixth Amendment rights, the documents he seeks in the Subpoena are relevant. For example, Mr. Omidi intends to challenge the adequacy and integrity of the Government's investigation in light of the selective disclosure of Mr. Klasky's attorney-client communications and other documents (as set forth above), and he is

entitled to documents that will shed meaningful light on these issues. *See Kyles v. Whitley*, 514 U.S. 419, 446 (1995) ("A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant, and we may consider such use in assessing a possible *Brady* violation") (citation omitted). Mr. Omidi also intends to challenge the Government's and Mr. Klasky's subterfuge and entrance to Mr. Omidi's lawyers' office on false pretenses to elicit discussion of Mr. Omidi's defense during secretly recorded meetings. To the extent Mr. Omidi seeks relief based on this conduct, Mr. Klasky's communications with his attorneys and his attorneys' communications with the Government, which to date have only been partially and selectively disclosed, will be highly relevant.

Mr. Omidi's entitlement to seek potentially exculpatory material provides an additional, independent basis for denying the Motion and enforcing the Subpoena.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Mr. Omidi respectfully requests that the Court deny the Motion.

Dated:  April 14, 2021

Respectfully submitted,

**WILLKIE FARR & GALLAGHER LLP**

By: <u>s/ Randall W. Jackson</u>
    MICHAEL S. SCHACHTER
    RANDALL W. JACKSON
    CASEY E. DONNELLY
    SIMONA AGNOLUCCI

    ATTORNEYS FOR DEFENDANT
    JULIAN OMIDI

<u>PROOF OF SERVICE</u>

I am employed and a resident of New York. I am over the age of 18 and not a party to the within action; my business address is 787 Seventh Avenue, New York, NY 10019. On April 14, 2021, I served the document described as: **DEFENDANT JULIAN OMIDI'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION OF MOSS LAW GROUP TO QUASH SUBPOENA** upon the interested parties in this action as follows:

      X    By the Court's ECF.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 14, 2021.


s/ Randall W. Jackson
Michael S. Schachter

Attorney for Defendant
JULIAN OMIDI