Michael S. Schachter** (NY 3910205)
Randall W. Jackson** (NY 5274048)
Casey E. Donnelly** (NY4936803)
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8102; Fax: (728) 728-8111
Email: *mschachter@willkie.com*

 *Attorneys for Defendant*,
 Julian Omidi

[Additional Counsel Continued On Next Page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        *vs.*<br><br>JULIAN OMIDI, INDEPENDENT MEDICAL SERVICES INC., a professional corporation, SURGERY CENTER MANAGEMENT, LLC, and MIRALI ZARABI, M.D.,<br><br>                    Defendants.<br><br>                    . | Case No. CR 17-00661(A)-DMG<br><br>[*Assigned to Hon. Dolly M. Gee, District Court Judge*]<br><br>**SECOND MOTION BY JULIAN OMIDI TO SUPPRESS EVIDENCE OBTAINED FROM UNREASONABLE SEARCHES AND SEIZURES AT THREE ADDITIONAL PREMISES**<br><br>Hearing:      Sept. 1, 2021 at 2:00 pm<br>Dept.:        Courtroom 8C<br>Location:    350 West 1st Street, 8th Fl.<br>                  Los Angeles, CA 90012 |

[Additional Counsel Continued From Previous Page]

Simona Agnolucci (SBN 246943)
**WILLKIE FARR & GALLAGHER LLP**
One Front Street
San Francisco, CA 94111
Tel: (415) 858-7447, Fax: (415) 858-7599
Email: *sagnolucci@willkie.com*

Bruce H. Searby* (SBN 183267)
Edmund W. Searby* ** (OH 067455)
**SEARBY LLP**
1627 Connecticut Ave, NW, Suite 4
Washington, D.C. 20009
Tel: (202) 750-6106, Fax: (202) 849-2122
Email: *bsearby@searby.law*

*Appearing specially   **Appearing pro hac vice*

*Counsel for Defendant Julian Omidi*

**TO THE CLERK OF THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that, on September 1, 2021 at 2 P.M., or, as soon as this matter may be heard in Courtroom 8C, of this Court, located at 350 West 1st Street, 8th Floor, Los Angeles, California, 90012, Defendant Julian Omidi ("Defendant"), by and through his counsel of record, will move and does move to suppress evidence obtained in clear violation of the Fourth Amendment of the United States Constitution, in the Second Motion To Suppress from three additional business premises (i.e., not previously the subject of his First Motion to Suppress, ECF No. 1086, as clarified in his Reply Brief thereto at ECF No. 1125), this time the premises at 9001 Wilshire Blvd, Suite 207, Beverley Hills, at 624 South Grand Avenue (also known as One Wilshire Boulevard), Suite 1208, Los Angeles, particularly electronic devices including a server located therein, and 5353 Desert Inn, Apt 1112, Las Vegas, Nevada, on various grounds, including because (1) the search warrants failed to particularly describe the evidence to be seized, and were overbroad; (2) the warrants were further facially deficient in their failure to establish probable cause that particular evidence of a specified crime would be found in a particular place, and to establish necessity for the search; and (3) the execution of the general warrants were further unreasonable in scope, permitting the retention of massive stores of records for plain-view browsing. All of these defects were blatant and facially apparent, making it impossible to argue for the good-faith exception. Accordingly, the evidence seized must be excluded. Mr. Omidi has standing in this motion by virtue of his managerial authority over, and personal connection to, these premises and documents seized from them.

A Memorandum of Law more fully setting forth the grounds for suppression is attached hereto and fully incorporated by reference herein. This Memorandum of Law incorporates by reference the points, authorities, evidence, and oral argument submitted in the First Motion as to the defectiveness of the warrants there. This Second Motion to Suppress is also supported additional points and authorities, by the Declaration of Julian

Omidi (Second Motion), the Declaration of Farrell Newton, and by an exhibits submitted for manual filing under seal with an accompanying unopposed *ex parte* application and proposed order.  Finally, the Motion To Suppress is supported by all the files and records in this case, including any evidence filed contemporaneously by co-defendant Surgery Center Management ("SCM").

Pursuant to Local Rule 7-3, counsel for Julian Omidi met and conferred about this Motion to Suppress with assigned Assistant United States Attorneys on July 12, 2021. The parties did not agree on the relief requested by Mr. Omidi as to these additional premises.

WHEREFORE, for the foregoing reasons and those more fully stated in the Memorandum in Support, Julian Omidi respectfully submits that this Court should grant the Motion to Suppress.

Dated:  August 3, 2021          Respectfully submitted,

**SEARBY LLP**

By: /s Bruce H. Searby
    EDMUND W. SEARBY
    BRUCE H. SEARBY

    ATTORNEYS FOR DEFENDANT
    JULIAN OMIDI

1

# TABLE OF CONTENTS

2
**Page(s)**

3      I.      INTRODUCTION.................................................................................. 1

4      II.     FACTUAL BACKGROUND FOR THESE THREE PREMISES........................ 2

5              A.     Mr. Omidi Incorporates By Reference the Factual Showing for His and

6                     SCM's First Motion.......................................................................... 2

7              B.     Additional Factual Background For the Three Current Premises ................ 2

8                     1.     Suite 207 of 9001 Wilshire Blvd., Beverly Hills .............................. 2

9                     2.     Server System at One Wilshire, Los Angeles................................... 3

10                    3.     Las Vegas, Nevada Tax Preparation Records................................... 4

11     III.    ARGUMENT...................................................................................... 5

12             A.     The Warrants Suffer Blatant Facial Defects As To Particularity,

13                    Limitation of Scope, and Probable Cause, Requiring Suppression.............. 6

14             B.     The Server Seized Pursuant to the One Wilshire Warrant Subjected a

15                    Large Computer System To Roving, Plain-View Seizures ......................... 8

16             C.     Mr. Omidi Has Standing To Move for Suppression Of Seizures At

17                    Each of the Premises........................................................................ 10

18     IV.     CONCLUSION.................................................................................. 12

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

**Page(s)**

2

3

**Cases**

4

*In re Property Belonging to Talk of the Town Bookstore, Inc.,*
  644 F.2d 1317 (9th Cir. 1981).................................................................... 7

5

6

*In the Matter of Search of Black iPhone 4,*
  27 F. Supp. 3d 74 (D.D.C. 2014)............................................................. 8

7

8

*Lord v. Kelley,*
  223 F.Supp. 684 (D. Mass. 1963)............................................................ 11

9

10

*United States v. Comprehensive Drug Testing,*
  621 F. 3d 1162 (9th Cir. 2010).......................................................... 9, 10

11

*United States v. Galpin,*
  720 F. 3d 436 (2d Cir. 2013)................................................................... 10

12

13

*United States v. Hill,*
  459 F. 3d 966 (9th Cir. 2006)................................................................... 8

14

15

*United States v. Lazar,*
  604 F. 2d 230 (6th Cir. 2010)................................................................... 9

16

17

*United States v. Mancini,*
  8 F.3d 104 (1st Cir.1993)....................................................................... 12

18

*United States v. Miller,*
  425 U.S. 435 (1976)............................................................................... 12

19

20

*United States v. Najarian,*
  915 F. Supp. 1441 (D. Minn. 1995)....................................................... 12

21

22

*United States v. Otero,*
  563 F. 3d 112 (10th Cir. 2009)................................................................. 8

23

24

*United States v. Richards,*
  659 F. 3d 527 (6th Cir. 2011)................................................................... 8

25

26

*United States v. Schesso,*
  730 F. 3d 1040  (9th Cir. 2013).............................................................. 10

27

*United States v. SDI Future Health, Inc.,*
  568 F. 3d 684 (9th Cir. 2009).................................................................. 11

28

*United States v. Stabile,*
   633 F. 3d 219 (3d Cir. 2011)...................................................................... 10

*United States v. Tamura,*
   694 F. 2d 591 (9th Cir. 1982)...................................................................... 10

**SECOND MOTION TO SUPPRESS EVIDENCE OBTAINED FROM UNREASONABLE SEARCHES AND SEIZURES
AT THREE ADDITIONAL PREMISES**

# I.   __INTRODUCTION__

Mr. Omidi has already moved to suppress evidence obtained against Mr. Omidi through broad, exploratory search warrants for various premises -- office, residential, and electronic accounts -- each of which lacked support from the Master Affidavit for the general searches and placed no meaningful limits on what the Government could seize as required by the Fourth Amendment.  This Second Motion moves to suppress evidence seized from three additional premises on much the same grounds as those set forth in the First Motion.[1]  Mr. Omidi further argues below certain grounds for suppressing evidence from these particular locations and devices, including that the server and other electronic devices seized became the subject of wholesale possession and retention, and a general roving plain-view search capability.

Mr. Omidi had a reasonable expectation of privacy over each of these premises that were searched and from which evidence was taken.  Mr. Omidi's standing, established by his active management of the business and its records for Surgery Center Management

---

[1] The Factual Background in the First Motion itemized the premises at issue therein as follows:

(i) Mr. Omidi's residence at 1235 Sierra Alta Way (the "Home Warrant"), *see* Ex. 2, Application for a Search Warrant with attachments and exhibits, Case No. 14-1033M; (ii) business offices located at 9001 Wilshire Blvd., Beverly Hills, CA (the "Business Offices Warrant"), *see* Ex. 1; (iii) four Google email accounts, including weightlosscenters@gmail.com, executed upon Google, Inc. (the "Google Warrant"), *see* Ex. 3, Search and Seizure Warrant with attachments and exhibits, Case No. 14-1029M; and (iv) the America Online email account used by Mr. Omidi's accountant, itransact2@aol.com, executed upon America Online (the "AOL Warrant"), *see* Ex. 4, Search and Seizure Warrant with attachments and exhibits, Case No. 14-1026M (with the Home Warrant, Business Offices Warrant, and Google Warrant, collectively the "Warrants").

First Motion, Memorandum in Support, at p. 3. However, as flagged by the Government in its opposition brief, and as clarified by Mr. Omidi in his reply brief, Mr. Omidi had intended in the First Motion and his supporting declaration to put at issue the premises where his private office was at 9100 Wilshire -- not the similar-looking 9001 Wilshire.  Thus, this Second Motion now focuses on offices at 9001 as well as in downtown LA at One Wilshire, as well as on a Las Vegas premises.

**SECOND MOTION TO SUPPRESS EVIDENCE OBTAINED FROM UNREASONABLE SEARCHES AND SEIZURES AT THREE ADDITIONAL PREMISES**

("SCM"), which is especially clear from his own personal role in leasing one suite and from his ownership of records seized from another location.

In these three searches, Government agents continued their blatant abandonment of the Constitution's protections against unreasonable search and seizure, and therefore, this Court should reject the application of the good-faith doctrine and suppress evidence from these premises, too.

## II.    FACTUAL BACKGROUND FOR THESE THREE PREMISES

### A.    Mr. Omidi Incorporates By Reference the Factual Showing for His and SCM's First Motion

Mr. Omidi incorporates by reference in this brief the factual showing in his moving papers in the First Motion (ECF No. 1086, 1087), his reply papers and supplemental declaration in support thereof (ECF No. 1125), the showing made by co-defendant SCM in joining Mr. Omidi's First Motion (ECF No. 1127, 1128), and the argument presented at the two hearings on the First Motion to Suppress.

### B.    Additional Factual Background For the Three Current Premises

#### 1.    Suite 207 of 9001 Wilshire Blvd., Beverly Hills

The first premises now at issue here is Suite 207 of 9001 Wilshire Boulevard, Beverly Hills, a suite leased by Mr. Omidi and certain medical businesses he managed under a consultant contract. (Declaration of Julian Omidi for Second Motion, attached hereto ("Second Omidi Decl."), at ¶ 2 & Exhibit A thereto.) The seizure of materials there was pursuant to the same Master Affidavit and Attachment B-1 Schedule of Items To Be Seized at issue in the First Motion.  (*See* Exhibit 1 hereto, filed contemporaneously under seal, Application for a Search Warrant with attachments and exhibits, Case No. 14-1035M).

Suite 207 was one of the medical offices in the building occupied since the late-2000s by a series of medical businesses managed by Mr. Omidi.  Mr. Omidi was a signatory on leasing paperwork for the suite in a personal as well as corporate management capacities, as shown in the lease and lease assignment documents attached by

the landlord to a publicly-filed complaint for unlawful detainer filed after the FBI raid. (*See* Exhibit 2 attached hereto, August 1, 2014 Arcadia Hub Holdings 3, LLC Lawsuit Attaching Lease and Assignment Documents, at pp. 50-76 of PDF.)  As detailed in various respects by a witness to the FBI raid filed by SCM in joining the First Motion, Mr. Omidi as the main contractual consultant exercised possession and control over the premises and the records stored there as a result of a delegation by SCM.  (Declaration of Monica Porter, ECF No. 1128.)  Mr. Omidi also kept personal records at Suite 207, where he had personally signed the lease documentation.  (Second Omidi Decl., at ¶ 4.)

As set forth in further detail in the First Motion in connection with other offices, the Warrant encompassing Suite 207 contains twenty-three boiler plate categories of Items To Be Seized -- not limited in scope to the alleged Lap-Band fraud described in the Master Affidavit.  (*See* Exhibit 1, Attachment B-1, at ¶¶ 7, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, and 34.).  It further contains several paragraphs specifying the seizure of "communications" and "documents" related to the Lap-Band, but then opens up the seizure to "any other aspect of the business of any Exhibit 1 entity." (*See* Exhibit 1, Attachment B-1, at ¶¶ 20, 21).  Thus, it targeted an almost unlimited range of documents relating to the 174 entities listed on the Government's Ex. 1 to the warrant.[2]

## 2.   Server System at One Wilshire, Los Angeles

The second premises at issue here is the SCM-owned server system seized from a downtown Los Angeles location, a suite in a building at 624 South Grand Avenue also known as One Wilshire, containing a medical file-sharing and messaging system.  (*See* Exhibit 3 hereto, filed contemporaneously under seal, Application for a Search Warrant with attachments and exhibits, Case No. 14-1030M).

As the Government asserted by the Affiant, citing the Grand Jury testimony of the IT professional who had operated the server system at the location for six years, the

---

[2] References to Ex. 1 to the warrant itself are not to be confused with references to Ex. 1 to this brief, which appear throughout this brief in citation to the application for a search and seizure warrant (with attachments and exhibits) for the Business Offices.

servers were "owned by Surgery Center Management" and this IT administrator dealt with Mr. Omidi over major issues relating to its functioning. (*See* Master Affidavit ¶¶ 306, 307, at p. 156.) As with the other SCM-managed records discussed above in Suite 207, Mr. Omidi possessed, controlled, and protected these electronic records from intrusion, by delegation of SCM. (*See* Declaration of Julian Omidi for Second Motion, attached hereto ("Second Omidi Decl."), at ¶ 5-7.) Mr. Omidi instructed the IT Administrator when setting up the server system in the first place. (*Id.,* at ¶ 5.*)*

Authorizing seizure of Lap Band-related documents from the server system, the One Wilshire Warrant opened the seizure to medical and insurance records for all 174 of "the entities listed on Exhibit 1," as with the other warrants in this case. (*See* Exhibit 3, Attachment B-3, ¶ 1, at p. 1). The Master Affidavit lacked any reference to almost all of the 174 businesses on Exhibit 1, much less a showing of probable cause that documents relating to these entities constituted evidence of a crime.

### 3.  Las Vegas, Nevada Tax Preparation Records

The third premises at issue is the Las Vegas, Nevada location, 5353 Desert Inn, Apt 1112, where the Government determined that Mr. Omidi and various Get Thin entities he managed had records belonging to them stored with a tax accountant, obtaining a June 2014 search warrant pursuant to another supporting affidavit ("the Las Vegas Warrant"). (*See* Exhibit 4 hereto, filed contemporaneously under seal, Application for a Search Warrant with attachments and exhibits, District of Nevada, Case No. 14-375M.)

There, tax accountant Farrell Newton had known Mr. Omidi, Ms. Cindy Omidi (Mr. Omidi's mother) and several businesses whom he associated with Mr. Omidi, as his clients for a handful of tax years mid- to late in the decade of the 2000s. (Declaration of Farrell Newton, attached hereto ("Newton Decl."), ¶ 3.) Mr. Newton nicknamed Mr. Omidi "Dr. J." (*Id.*) Ms. Cindy Omidi would deliver Mr. Omidi's personal records, including bank statements and credit card records, and the businesses' records to Mr. Newton for preparation of these taxpayers' returns. (*Id.,* at ¶ 4.) Mr. Newton handled these client records, which he considered very important, with precautions and

1   confidentiality for Mr. Omidi and the businesses, which is what his clients expect.  (*Id,.*at

2   ¶ 5.)  Mr. Omidi so expected.  (Second Omid Decl., at ¶ 8.)  Agents in the raid in June

3   2014 entered Mr. Newton's premises by busting down the door.  (Newton Decl. ¶ 5.)

4          Here, as with other warrants in this case, the Government was indiscriminate in

5   which of Mr. Omidi's and the somehow-associated-with-him entities' records it sought to

6   be seized, seeking: "All financial records and documents related to Julian Omidi, Michael

7   Omidi, Cindy Omidi, or any of the entities listed" in the Government's Exhibit 1 to the

8   warrant.  (Attachment B, ¶ 1, at p. 50.)  There was no showing even ostensibly in support

9   of the notion that any document from any time period related to the Omidis and the

10  entities would be relevant to the suspected tax offenses described therein.

11         Search inventory records produced in discovery show that indeed the Government

12  took and logged Mr. Omidi's personal records from the Las Vegas premises.  (*See* Exhibit

13  5 attached hereto, Compilation of Las Vegas Search Records.)  As examples, the

14  Government has produced in discovery financial documents not prepared by Mr. Newton

15  for Mr. Omidi, but rather submitted to Mr. Newton and quite evidently stored there until

16  the time of the raid. (*See* Exhibit 6 hereto, filed contemporaneously under seal, Sample

17  Personal Financial Records Seized from Las Vegas Premises.)  An electronic search result

18  from the same premises shows computer records from Mr. Omidi (repeatedly referenced

19  as "Dr. J") and a small number of medical businesses.  (*See* Exhibit 7 hereto, filed

20  contemporaneously under seal, Computer Seizure Report from Las Vegas Premises.)

21  **III.   ARGUMENT**

22         The Fourth Amendment defects with the warrants for the three premises at issue in

23  this Second Motion largely track those in the First Motion, the arguments in support of

24  which Mr. Omidi hereby incorporates by reference.  The argument below is limited

25  accordingly and goes into more detail to the extent which these issues and Mr. Omidi's

26  standing deserve separate analysis for the three additional premises.

27

28

### A.   The Warrants Suffer Blatant Facial Defects As To Particularity, Limitation of Scope, and Probable Cause, Requiring Suppression

These warrants reflect, sometimes in their own way, the other warrants' callous disregard for the basic requirements of the Fourth Amendment in contravention of the respect afforded it by the Ninth Circuit and the Supreme Court.

The Suite 207 Warrant mirrors the numerous problems besetting the home, office, and electronic account warrants challenged in the First Motion, as it contains the same list of items to be seized off the same attempted showing of probable cause that offenses were committed and evidence thereof was to be found there.  This sameness itself is a tell-tale sign of a general warrant.  For the Warrant encompassing Suite 207 contains the same twenty-three boiler plate categories of Items To Be Seized -- not limited in scope to the alleged Lap-Band fraud described in the Master Affidavit.  (*See* Exhibit 1, Attachment B-1, at ¶¶ 7, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, and 34.)

It further contains two paragraphs authorizing the seizure of "communications" and "documents" related to the Lap-Band, but then opening up the seizure to "any other aspect of the business of any Exhibit 1 entity." (*See* Exhibit 1, Attachment B-1, at ¶¶ 20, 21). These paragraphs alone open the scope of the seizure to more than 150 entities never even mentioned in the Master Affidavit, much less shown to be involved in any crime.  The stated criteria in the Master Affidavit (¶ 263) for including entities on Exhibit 1 did not in any way establish probable cause for involvement in the suspected Lap-Band fraud or any other crime.  Two of the criteria for listing businesses as stated in Master Affidavit ¶ 263, filing an IRS Form 1099 or billing one of six major insurance companies, described conduct both legal and commonplace yet permitted the Government to obtain evidence on any aspect related to the businesses.  But it gets worse.  The warrant not only authorizes the seizure of documents related to businesses never mentioned in the Affidavit, but documents related to "***any other aspect***" of these business without further limitation.  At oral argument, the Government offered an illogical argument that this was somehow

1    sufficiently particular because the Master Affidavit also referenced money-laundering and

2    tax offenses.  But the Master Affidavit still did not establish probable cause that some 100

3    entities had any involvement in these crimes either, and no matter how broadly the

4    Government construes the crimes supposedly at issue the scope is not as broad as a license

5    to seize documents relating to "any other aspect" of 174 businesses.

6          The warrant for the server system at One Wilshire, Los Angeles, authorizes just like

7    the other warrants seizures for many businesses on Government's Exhibit 1 for which

8    there had been no showing of probable cause for fraud, let alone that they were all Lap

9    Band-focused, or all secretly owned by Mr. Omidi.  The constitutionally toxic

10   ramifications of this defect are further explored in the following section.

11         Contrary to the Government's assertions at the August 2, 2021 hearing, the

12   overbreadth and lack of particularity of the warrants (resulting in the unbridled authority

13   of agents to seize virtually any materials related to the Omidis and the 174 businesses) is

14   not somehow cured by virtue of the Affidavits' incorporation into the warrants.  As an

15   initial matter, "the Fourth Amendment by its terms requires particularity in the warrant,

16   not in the supporting documents." *Groh v. Ramirez*, 540 U.S. 551, 557 (2004).  The

17   doctrine permitting facts stated in an affidavit to "cure" defects in the warrant applies only

18   where the incorporated affidavit provides *more* specificity for the items to be seized than

19   the warrant itself, and only then when the affidavit accompanies the warrant and is

20   available to the person whose property is to be searched.  *See In re Property Belonging to*

21   *Talk of the Town Bookstore, Inc.*, 644 F.2d 1317, 1319 (9th Cir. 1981).  In the case at bar,

22   the Government is not even claiming that the Affidavits somehow *limit* the items to be

23   seized more narrowly than authorized by the attachments, nor even if they did, these

24   sealed Affidavits did not accompany the warrants on the searches.  Accordingly, the

25   Government cannot rely on the Affidavits to deflect the particularity analysis, and the

26   Court should suppress the warrants and their fruits in their entirety.

27         Finally, the Las Vegas Warrant, grasping for "[a]ll financial records and documents

28   related to Julian Omidi" or any of the entities listed in the Government's Exhibit 1 to the

warrant, considerably overreaches both the offense conduct and the time frame ostensibly supported with probable cause.  While the warrants based on the Master Affidavit are flawed by resting on essentially an incantation of the magic words "permeated by fraud," to invoke that doctrinal exception to particularity, here in the Las Vegas Warrant even that incantation is absent.  The seizure was a naked grab for anything and everything from his personal papers stored there to go after Mr. Omidi.

No reasonable agent could have looked at the face of these warrants and considered them constitutionally drawn, that is, incapable of further delineation and specificity.

### B.    The Server Seized Pursuant to the One Wilshire Warrant Subjected a Large Computer System To Roving, Plain-View Seizures

In this and too many other cases, the Government abuses the need to find a needle of evidence in the electronic haystack into an unlimited right to review and retain evidence without limitation.  But a computer's ability to store "a huge array of one's personal papers in a single place…makes the particularity requirement that much more important." *United States v. Otero*, 563 F. 3d 112, 113 (10th Cir. 2009); *accord, United States v. Richards*, 659 F. 3d 527, 537-38 (6th Cir. 2011) (the risk of an unconstitutional general search has increased exponentially in the computer era); *In the Matter of Search of Black iPhone 4*, 27 F. Supp. 3d 74, 79 (D.D.C. 2014) (allowing the government to search all of the records on an electronic device regardless of "whether they bear any relevance whatsoever to the investigation" is "precisely the type of 'general exploratory rummaging in a person's belongings' that the Fourth Amendment prohibits.") (citation omitted.)

This concern for a general search is all the more significant in this case for at least four reasons.  First, the warrant gave the Government the option to simply seize the entire server and review it offsite.  (*See* Instrumentality Protocol at p.5, para. 6(a).)  The Government received this option without demonstrating that it was necessary to seize the entire server as required by the Ninth Circuit.  *See United States v. Hill*, 459 F. 3d 966, 976 (9th Cir. 2006)("We do not approve of issuing warrants authorizing blanket removal of all computer storage media for later examination when there is no affidavit giving a

reasonable explanation…as to why a wholesale seizure is necessary.")  While the warrant purports to limit the Government to sixty days to conduct this review, the Government has violated these time limits in this case without completing the review of data.  Furthermore, this limitation is swiftly vitiated by the further provision allowing the Government to retain the entire device if a single document falling within the items to be seized is located or if the server is "determined to be an instrumentality of an offense under investigation." (*Id*. at p.7, para. (g) and (h). This latter exception is easily invoked in this type of investigation and swallows any limits on the retention of the entire server without regard to subject matter. *See United States v. Comprehensive Drug Testing*, 621 F. 3d 1162, 1180 (9th Cir. 2010) (*en banc*) (guidance that to avoid a general warrant the government must destroy or return non-responsive data.)

Second, the Government's warrant does not indicate that it only used specialized personnel not involved in the investigation to segregate data.  *See Id.* (noting importance of using separate personnel who will not disclose information regarding data outside of the scope to investigators.)  Accordingly, the license to seize the entire server became a license for investigators to review data it never had probable cause to seize in the first place.

Third, the descriptions of documents which may be seized from the server are not specific to billing for named patients which the Government demonstrates probable cause to believe fraudulent. For example, just one description allows for the seizure for a six-year period of "(m)edical, insurance, scheduling, billing payment, and collection records and documents for Lap-Band patients" without limitation to specific fraudulent procedures.  While a vast improvement on the other general warrants in this case that opened the scope up to "any other aspect" of more than a hundred entities never even shown to be involved in a fraud, the language in this warrant is still broader than accepted by federal courts.  *See United States v. Lazar*, 604 F. 2d 230 (6th Cir. 2010) (suppressing seizure of patient files when government relied upon a generic description and did not specify the files sought on list provided to the examining magistrate.)

Fourth, the Government has not disavowed reliance upon the plain view doctrine" to retain as evidence even documents outside of the scope of its purported healthcare fraud investigation. *See Comprehensive Drug Testing*, 621 F. 3d at 1180.[3]  Federal courts have expressed the need for judicial oversight to prevent the government from "overseizing data and then using the process of identifying and segregating electronic data to bring constitutionally protected data…into plain view." *United States v. Schesso*, 730 F. 3d 1040, 1047 (9th Cir. 2013) (*citing Comprehensive Drug Testing*, 621 F. 3d at 1180). "Once the government has obtained authorization to search the hard drive, the government may claim that the contents of every file it chose to open were in plain view and, therefore admissible even if they implicate the defendant in a crime not contemplated by the warrant." *United States v. Galpin*, 720 F. 3d 436, 437 (2d Cir. 2013).  This results in a serious risk that every warrant for electronic information will become, in effect, a general warrant, rendering the Fourth Amendment irrelevant." *Comprehensive Drug Testing*, 621 F.3d at 1176; *accord United States v. Stabile*, 633 F. 3d 219, 237 (3d Cir. 2011) ("granting the Government a carte blanche to search every file on the hard drive impermissibly transforms a limited search into a general one.").

In sum, while the Ninth Circuit sitting *en banc*, offered specific guidance to avoid a general search when, as in this case, over-seizing electronic data, the Government hardly followed any of it.  This was not simply helpful guidance, but the procedures set forth in the controlling case of *United States v. Tamura*, 694 F. 2d 591 (9th Cir. 1982).

## C.   Mr. Omidi Has Standing To Move for Suppression Of Seizures At Each of the Premises

The issue of standing has also been briefed and argued extensively. Based on comments from the bench at oral argument on July 28, 2021 and in its tentative opinion earlier that day, Mr. Omidi asks the Court to more closely review the extensive details of his and SCM's showing for standing in support of the First Motion.  As adduced in this

---

[3] The Government has not produced any Orders or notes indicating that it invoked the plain view doctrine.

1  Second Motion, the facts also support Mr. Omidi's standing for these three premises.

2  First, Mr. Omidi's "personal connection" to Suite 207, *see United States v. SDI*

3  *Future Health, Inc.*, 568 F. 3d 684, 698 (9th Cir. 2009), is amply shown by his presence

4  on the lease documentation and his storage of personal records there, in addition to the

5  day-to-day operational control over records and access generating his expectation of

6  privacy.

7  Second, the Government concedes in its Master Affidavit Mr. Omidi's personal

8  interaction with the IT administrator over major computer issues with the SCM-owned

9  systems housed at One Wilshire.[4] (*See* Master Affidavit ¶¶ 306, 307, at p. 156.)  Mr.

10  Omidi also had the role through SCM in setting up the system and day-to-day control and

11  management over access to the records.  This is the kind of "personal connection" to the

12  workplace and its records that allows even a corporate manager to assert standing to

13  contest an unconstitutionally-drawn warrant to search corporate premises.

14  Third, there is standing to contest the seizure of his personal papers from his tax

15  accountant in Las Vegas, because Mr. Omidi was the owner of the private papers stored

16  there confidentially until the federal agents in this case broke down Mr. Newton's door.

17  *See SDI Future Health, Inc.*, 568 F. 3d at 697-98 (ownership of an item is a factor to be

18  considered in determining whether an individual's Fourth Amendment rights have been

19  violated).  Ownership of personal records stored at an accountant's office is precisely the

20  kind of interest over confidential, personal information conferring standing.  *See Lord v.*

21  *Kelley*, 223 F.Supp. 684 (D. Mass. 1963) (movant had standing to contest search of his

22  accountant's office where his personal files were seized); *see also United States v. Najarian*,

23

24  ───────────────

[4] The Government has not, and could not, deny SCM's standing to move to suppress the

25  search warrants for the server and the offices at issue.  In addition to acknowledging SCM's

26  ownership of the servers, the Government has long agreed for SCM and other associated

businesses to participate in a privilege review of the electronic documents seized with the

27  warrants at issue, contracting with Stroz Friedberg.  (*See, e.g.,* Declaration of James Aquilina,

filed under seal on September 21, 2015 in *In Re Search Warrants,* Case No, Cr. Misc. 15-1031 (J.

28  Abrams) (related to Case Nos. 14-1030M, 14-1033M, 14-1034M, 14-1035M, 14-1036M, 14-

1110M, 14-llllM, and 14-1112M).)

915 F. Supp. 1441, 1454-55 (D. Minn. 1995) (physician had standing to contest seizure of his partnership papers stored at a state university office when he had expectation of privacy over papers) (*citing United States v. Mancini*, 8 F.3d 104 (1st Cir.1993) (mayor had standing to contest the validity of a search warrant that had been executed to search the city's archive room and which uncovered the mayor's personal calendar)); *cf. United States v. Miller,* 425 U.S. 435, 440-41 (1976) (because records were not bank depositor's "private papers" held at bank, but bank-generated records, there was no standing by depositor to contest bank subpoena).

As previously argued, Mr. Omidi is clearly the target or victim of these seizures, not some interloper in the Government's investigation, and thus the Court should take most seriously his bid to remedy the Government's blatant violations of the warrant requirements as interpreted by the federal judiciary.

## IV.   <u>CONCLUSION</u>

For all the foregoing reasons, this Court should order the suppression of all of the evidence seized pursuant to the 9001 Wilshire Blvd., Suite 207 Warrant, the One Wilshire Warrant, and the Las Vegas Warrant.

Dated:  August 3, 2021                         Respectfully submitted,

**SEARBY LLP**

By:/s Bruce H. Searby _____
     EDMUND W. SEARBY
     BRUCE H. SEARBY

     ATTORNEYS FOR DEFENDANT
     JULIAN OMIDI

## PROOF OF SERVICE

I am employed and a resident of the District of Columbia. I am over the age of 18 and not a party to the within action; my business address is 1627 Connecticut Avenue, NW, Suite 4, Washington, DC, 20009. On August 3, 2021, I served the document described as:

**SECOND MOTION BY JULIAN OMIDI TO SUPPRESS EVIDENCE OBTAINED FROM UNREASONABLE SEARCHES AND SEIZURES AT THREE ADDITIONAL PREMISES**

Upon the interested parties in this action as follows:

_____X_____ By the Court's ECF.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 3, 2021.

/s Bruce H. Searby_____
Bruce Searby