Michael S. Schachter** (NY 3910205)
Randall W. Jackson** (NY 5274048)
Casey E. Donnelly** (NY4936803)
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8102; Fax: (728) 728-8111
Email: *mschachter@willkie.com*

*Attorneys for Defendant*,
Julian Omidi

[Additional Counsel Continued On Next Page]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>*vs*.<br><br>JULIAN OMIDI, INDEPENDENT MEDICAL SERVICES INC., a professional corporation, SURGERY CENTER MANAGEMENT, LLC, and MIRALI ZARABI, M.D.,<br><br>Defendants.<br><br>. | Case No. CR 17-00661(A)-DMG<br><br>[*Assigned to Hon. Dolly M. Gee, District Court Judge*]<br><br>**MOTION FOR RELIEF BASED ON INTERFERENCE WITH FIFTH AND SIXTH AMENDMENT PRIVILEGE INTERFERENCE**<br><br>Hearing:    Sept. 1, 2021 at 11:00 am<br>Dept.:      Courtroom 8C<br>Location:   350 West 1st Street, 8th Fl.<br>            Los Angeles, CA 90012 |

[Additional Counsel Continued From Previous Page]

Simona Agnolucci (SBN 246943)
**WILLKIE FARR & GALLAGHER LLP**
One Front Street
San Francisco, CA 94111
Tel: (415) 858-7447, Fax: (415) 858-7599
Email: *sagnolucci@willkie.com*

Bruce H. Searby* (SBN 183267)
Edmund W. Searby* ** (OH 067455)
**SEARBY LLP**
1627 Connecticut Ave, NW, Suite 4
Washington, D.C. 20009
Tel: (202) 750-6106, Fax: (202) 849-2122
Email: *bsearby@searby.law*

*Appearing specially  ** Appearing pro hac vice*

*Counsel for Defendant Julian Omidi*

**TO THE CLERK OF THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that, on September 1, at 11:00 A.M., or, as soon as this matter may be heard in Courtroom 8C, of this Court, located at 350 West 1st Street, 8th Floor, Los Angeles, California, 90012, Defendant Julian Omidi ("Defendant"), by and through his counsel of record, will move and does hereby move this Court for an order to dismiss the Indictment or an order for suppression, based on privilege intrusions by the Government that violated Mr. Omidi's Fifth and Sixth Amendment rights. The Government knowingly and indiscriminately seized Mr. Omidi's attorney-client privileged material without prior approval and without a prior protocol for the review of privileged material. After the Court denied the Government's after-the-fact request to review the putatively privileged material through a separate team of attorneys and agents, the Government persisted and reviewed the material anyway. And notwithstanding its determination that it had seized thousands of privileged documents, the Government has not returned Mr. Omidi's privileged material nor certified to its destruction. These actions by the Government interfered with Mr. Omidi's attorney-client privilege and therefore violated the Fifth and Sixth Amendments. Dismissal of the Indictment and suppression of the evidence is required because the Government's violation was not harmless.

A Memorandum of Law more fully setting forth the grounds for suppression is attached hereto and fully incorporated by reference herein. This Motion to Dismiss is also supported by the Declaration of Julian Omidi and by exhibits, one of which is attached (Ex. 2) and the others have been submitted for manual filing under seal with an accompanying unopposed *ex parte* application and proposed order (Ex. 1, 3-5). Finally, the Motion to Dismiss is supported by all the files and records in this case.

Pursuant to Local Rule 7-3, counsel for Julian Omidi met and conferred about this Motion for Relief with the assigned Assistant United States Attorneys on August 2, 2021. The parties did not agree on the relief requested by Mr. Omidi.

Dated:  August 3, 2021

Respectfully submitted,

**WILLKIE FARR & GALLAGHER LLP**

By: /s/ Michael S. Schachter
    MICHAEL S. SCHACHTER
    RANDALL W. JACKSON
    CASEY E. DONNELLY
    SIMONA AGNOLUCCI

    ATTORNEYS FOR DEFENDANT
    JULIAN OMIDI

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  PROCEDURAL AND FACTUAL BACKGROUND ............................................. 1

III. ARGUMENT ........................................................................................................ 4

A.   The Government's Unauthorized Intrusion Into and Continued
Possession of Privileged Material Violates Sixth and Fifth Amendment
Rights ........................................................................................................... 4

1.   The Government Lacked Prior Authorization to Seize and
Review Privileged Communications and Work Product. ..................... 6

2.   The Government Violated Judge Choljian's Stipulated
Discovery Review Orders and Judge Abrams' October 15, 2015
Order ................................................................................................. 8

3.   The Government's Review of Privileged Material Is Not
Harmless ............................................................................................ 9

4.   The Government Violates Mr. Omidi's Rights by Continuing to
Retain His Privileged Communications and Work Product. ............. 11

B.   This Court Should Grant An Evidentiary Hearing ....................................... 12

IV.  CONCLUSION ................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Demassa v. Nunez*,
   770 F. 2d 1505 (9th Cir. 1985) .......................................................................4

*Fisher v. United States*,
   425 U.S. 391 (1976).......................................................................................4

*Harbor Healthcare System, L.P. v. United States*, --- F. 4th. ---,
   2021 WL 3009732 (5th Cir. July 15, 2021) ...........................................6, 10, 12

*Hickman v. Taylor*,
   329 U.S. 495 (1947).......................................................................................4

*Hoffa v. United States*,
   385 U.S. 293 (1966).....................................................................................10

*Hunt v. Blackburn*,
   128 U.S. 464 (1888).......................................................................................4

*In re Grand Jury Investigation*,
   974 F. 2d 1068 (1992)................................................................................7, 8

*In re Grand Jury Proceedings (Goodman)*,
   33 F. 3d 1060 (9th Cir. 1994) ........................................................................5

*In re Grand Jury Subpoenas*,
   454 F. 3d 511 (6th Cir. 2006) ..................................................................11, 12

*In re Lott*,
   424 F. 3d 446 (6th Cir. 2005) ...................................................................4, 10

*In re Search Warrant Issued June 13, 2019*,
   942 F. 3d 159 (4th Cir. Oct. 31, 2019)......................................................4, 10, 11

*Kastigar v. United States*,
   406 U.S. 441 (1972).....................................................................................11

*Katz v. United States*,
   389 U.S. 347 (1967).......................................................................................6

*Maine v. Moulton*,
   474 U.S. 159 (1985).......................................................................................5

*Strickland v. Washington*,
    466 U.S. 668 (1984)....................................................................................4

*United States v. Danielson*,
    325 F. 3d 1054 (9th Cir. 2003) ........................................................10, 11

*United States v. Harrison*,
    213 F. 3d 1206 (9th Cir. 2000) ................................................................5

*United States v. Haynes*,
    216 F. 3d 789 (9th Cir. 2000) ........................................................10, 12, 13

*United States v. Irwin*,
    612 F. 2d 1182 (9th Cir. 1980) ..............................................................12

*United States v. Neill*,
    952 F. Supp. 834 (D.D.C. 1997).............................................................5

*United States v. Nobles*,
    422 U.S. 225 (1975)................................................................................4

*United States v. Stepney*,
    246 F. Supp. 2d 1069 (N.D. Cal. 2003)..................................................5

*United States v. Voight*,
    89 F. 3d 1050 (3d Cir. 1996) ................................................................12

*United States v. Zolin*,
    491 U.S. 554 (1989)............................................................................4, 6

*Upjohn*....................................................................................................4

*Upjohn Co. v. United States*,
    449 U.S. 383 (1991)..........................................................................4, 10

 **Other Authorities**

Black's Law Dictionary (6th ed. 1990)...................................................4

## I.      INTRODUCTION

Years after the disclosure of an ongoing investigation, the Government executed broad, exploratory searches directed at Mr. Omidi's entire professional and personal life, including his effort to defend against potential health care fraud charges.  By these general searches and seizures, the Government seized and reviewed thousands of documents in paper and electronic format relating to the issues under investigation, including communications protected by the attorney-client privilege and the attorney work product doctrine.

The Government's seizure, review, and continued possession of this privileged material is unlawful and violative of the Sixth and Fifth Amendments for several reasons. First, despite the Government's knowledge that its general searches would intrude upon privileged communications and work product, the Government did not have warrants particularly describing the seizure of legal materials and it received no prior authorization to seize privileged material, nor a prior protocol for the review of privileged material. Second, when the Government, after the fact, sought authorization for the review of the putatively privileged material by a separate team of attorneys and agents, the Court denied this request.  And yet in violation of the Court Order, the Government persisted and reviewed the material anyway.  Third, notwithstanding its determination that it had seized thousands of privileged documents, the Government has never certified to the return of all copies of privileged material nor to the destruction of all privileged material.

Accordingly, for these reasons, as more fully discussed below, the Government has violated Mr. Omidi's Sixth Amendment right to counsel as well as the Fifth Amendment right to due process and fundamental fairness by its outrageous conduct, including acting in deliberate violation of a court order.

## II.      PROCEDURAL AND FACTUAL BACKGROUND

The long-standing investigation leading to the charges in this case originated with a complaint regarding advertisements for lap-band surgery that did not adequately inform patients of potential risks.  (*See* ECF No. 1086, Ex. 1, Master Affidavit of Zeva Pettigrew,

**MOTION FOR RELIEF BASED ON INTERFERENCE WITH FIFTH AND SIXTH AMENDMENT PRIVILEGE INTERFERENCE**

("Master Affidavit"), at ¶ 40). By 2011, the Government disclosed the investigation to the targets and subjects, including Mr. Omidi, who engaged counsel for their defense. (*See Id*. at ¶¶ 45-46; Omidi Decl. at ¶ 2). In addition, as the Government knew prior to the execution of the warrants, Mr. Omidi as well as a number of other entities were engaged in litigation against insurer United Healthgroup. (Master Affidavit at ¶ 156).

More than two years later, after serving numerous subpoenas and conducting numerous interviews, the Government applied for and received facially broad warrants to conduct a general exploratory search of Mr. Omidi's entire professional and personal life. In doing so, however, the Government's warrants did not particularly describe the seizure of legal materials nor attorney-client communications, nor set forth a procedure or protocol in the event the Government encountered privilege material. (*See e.g.*, ECF No. 1086, Ex. 3, Warrant 14-1029M ("Google Warrant")).

Demonstrating the exceptional overbreadth of the searches and seizures, the Government by its own admission seized some 200 digital storage devices and 1,700 boxes of hard copy documents. (Ex. 4, *Ex Parte* Application for Order Imposing Privilege Review Protocol, Oct. 1, 2015, CR Misc. 15-1030.) Notwithstanding the lack of prior authorization, the Government removed from Mr. Omidi's private office in Suite 800E at 9100 Wilshire Blvd legal files, containing privileged documents and work product. (Omidi Decl. at ¶¶ 4-5). The Government further seized from his Google email account (weightlosscenters@gmail.com) thousands of communications to and from Mr. Omidi's counsel with reference to the investigation and the related litigation with private insurance companies. (*See* Ex. 1, Filter Team Privilege Log Excerpt).

Mr. Omidi and other targets of the searches and seizures protested the indiscriminate seizure of privileged material and expressed concern about any intention by the Government to review it with a separate team of government agents and attorneys known as a taint team or a filter team. (Ex. 2, June 11, 2014 Letter from Charles Kreindler). Mr. Omidi did not protest at that time the seizure of his privileged communications with counsel from his mail account because the Government did not disclose the execution of this warrant upon Google.

(*See* Omidi Decl. at ¶ 7).  Following the objection to review by a taint team, the Government and various parties aggrieved by the searches and seizures reached an agreement for a third party, Stroz Freidberg, to segregate the seized material for scope and privilege.  (*See* Ex. 3, Stipulated Order of Judge Chooljian, July 13, 2015).[1]

By October of 2015, the Government was dissatisfied with the progress of the privilege review under Stroz and other neutral parties, and it moved the Court to modify the July 13, 2015 order so as to allow for privilege review by a Government taint team.  (*See* Ex. 4, Ex Parte Application for Order Imposing Privilege Review Protocol, Oct. 1, 2015, CR Misc. 15-1030).  This time the Government "included" in a footnote a reference to the Google Warrant even though it had never been included in the prior agreements and stipulated orders.  (*Id.* at *2 n.1).  On October 15, 2015, Judge Abrams denied the Government's motion for taint team review.  (Ex. 5, Order of Judge Abrams of October 15, 2015 the "Court Order").)

Notwithstanding the denial of its motion, the Government in flagrant disregard of the Court Order proceeded with taint team review anyway.  Over the objection of Mr. Omidi and other holders of the privilege, the Government instituted, on its own initiative, an unauthorized taint team privilege review.  Eventually, the Government determined that thousands of documents in its possession should be protected by the attorney-client privilege.  (*See* Ex. 1, Filter Team Privilege Log Excerpt).  However, the Government never certified to the return of all of the copies of these privileged materials nor certified to their destruction.  The Government has also refused to provide the data set of what its taint team provided to the investigative team so that Mr. Omidi and other holders of the privilege might determine whether privileged material was nevertheless passed to the investigation/prosecution team.

---

[1] The Google warrant was not included in the July 13, 2015 Order because the Government had not disclosed its existence, notwithstanding the fact that such an omission undermined the very reason that millions of dollars in seized funds would be paid to third parties, that is, to avoid having government agents and attorneys review privileged documents.

## III.   ARGUMENT

### A.   The Government's Unauthorized Intrusion Into and Continued Possession of Privileged Material Violates Sixth and Fifth Amendment Rights.

The attorney-client privilege is sacrosanct as "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1991).  This privilege operates as a bar to the disclosure of confidential communications between attorney and client.  *See e.g., Fisher v. United States*, 425 U.S. 391, 403 (1976); *In re Search Warrant Issued June 13, 2019*, 942 F. 3d 159, 173 (4th Cir. Oct. 31, 2019) (*citing* Black's Law Dictionary 129 (6th ed. 1990)).  The purpose of the attorney-client privilege is "to encourage full and frank communications between attorneys and their clients and thereby promote broader public interest in the observance of law and administration of justice." *Upjohn,* 449 U.S. at 389.

"[I]t is not hyperbole to suggest that the attorney-client privilege is a necessary foundation for the adversarial system of justice."  *In re Lott*, 424 F. 3d 446, 450 (6th Cir. 2005).  The right to the assistance of legal counsel "can only be safely and readily availed of when free from the consequences or the apprehension of disclosure."  *Upjohn*, 449 U.S. at 389 (*quoting Hunt v. Blackburn*, 128 U.S. 464, 470 (1888)); *accord, United States v. Zolin*, 491 U.S. 554, 571 (1989); *Demassa v. Nunez*, 770 F. 2d 1505, 1507 (9th Cir. 1985).

The law further recognizes "a qualified privilege" to be held by lawyer and client for "certain materials prepared by an attorney 'acting for his client in anticipation of litigation.'" *United States v. Nobles*, 422 U.S. 225, 237-38 (1975) (*quoting Hickman v. Taylor*, 329 U.S. 495, 508 (1947)).  As the Supreme Court explained, a lawyer must be able to "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman*, 329 U.S. at 510.

Together, "the attorney-client privilege and the work product doctrine jointly support the Sixth Amendment's guarantee of effective assistance of counsel." *In re: Search Warrant Issued June 13, 2019*, 942 F. 3d at 174 (*citing Strickland v. Washington*, 466 U.S. 668, 686 (1984)); *Demassa v. Nunez*, 770 F. 2d at 1507 (finding attorney-client privilege

essential to the Sixth Amendment right to effective assistance of counsel).  The "attorney-client privilege, the ethical duty of confidentiality imposed on attorneys, and the ethical and constitutional requirements that the government not intrude upon the attorney-client relationship…serve the common end of keeping communications between attorney and client from disclosure either to adversaries or the finder of fact."  *United States v. Stepney*, 246 F. Supp. 2d 1069, 1075 (N.D. Cal. 2003).

While the Sixth Amendment right to counsel attaches upon the initiation of formal charges, *see Maine v. Moulton*, 474 U.S. 159, 170 (1985), the Government's *preindictment* conduct may violate the Sixth Amendment if the aggrieved is later indicted.  *See United States v. Harrison*, 213 F. 3d 1206, 1213 (9th Cir. 2000) ("we have considered pre-indictment activities relevant to the Sixth Amendment analysis"); *In re Grand Jury Proceedings (Goodman)*, 33 F. 3d 1060, 1062 (9th Cir. 1994) ("The Sixth Amendment can apply when the government conduct occurs preindictment.").  "[W]hen there is a close nexus between the focus of a pre-indictment investigation and the ultimate charges brought in the indictment, defendant's ongoing relationship with counsel that is known (or should be known) by the government invokes the Sixth Amendment right to counsel once that right attaches."  *Harrison*, 213 F. 3d at 1213; *see also United States v. Stein*, 541 F. 3d 130, 152 (2d Cir. 2007) (affirming dismissal of indictments against KPMG partners where government interfered with KPMG's advancement of legal fees to partners during investigative phase and this "had post-indictment effects of Sixth Amendment significance"); *United States v. Neill*, 952 F. Supp. 834, 839 (D.D.C. 1997) ("the right to a fair trial could be crippled by government interference with the attorney-client privilege *long before the formal commencement of a criminal proceeding*.") (emphasis added).

Here, by its unlimited searches and seizures, the Government knowingly intruded into Mr. Omidi's privileged communications with his attorneys, as well as attorney work product prepared for his defense.  This intrusion is unlawful for at least three reasons: (1) the Government did so intentionally without prior judicial approval; (2) the intrusion is harmful, and the Government bears the burden to demonstrate a lack of prejudice; and (3) the

Government continues to unlawfully possess privileged material. These points are discussed below.

### 1. The Government Lacked Prior Authorization to Seize and Review Privileged Communications and Work Product.

The Government seized, reviewed, and continues to retain privileged communications and work product without prior judicial approval. "Central to the Fourth Amendment" is the requirement that the government demonstrate "antecedent justification" to a neutral judge. *Katz v. United States*, 389 U.S. 347, 358 (1967). With limited exceptions – and this certainly is not one – searches and seizures cannot be justified "after the fact." Here, the warrants do not particularly describe or authorize the seizure of privileged materials. Nor can the Government claim that it received prior authorization from the reviewing magistrate judges to seize such materials. As the Fifth Circuit recently concluded, the government demonstrates callous disregard for the attorney-client privilege when it seizes attorney-client privileged materials without prior judicial authorization. *Harbor Healthcare System, L.P. v. United States*, --- F. 4th. ---, 2021 WL 3009732 at *4 (5th Cir. July 15, 2021).

The Supreme Court's decision in *United States v. Zolin*, 491 U.S. 554 (1989) further demonstrates the unlawfulness of the Government's intrusion without prior judicial authorization. In *Zolin*, the Supreme Court restricted the intentional review of putatively privileged materials to limited situations where there is prior judicial authorization based upon a showing akin to probable cause. 491 U.S. at 572. There, the government urged the court to review *in camera* certain putatively privileged tape recordings to determine whether the crime-fraud exception to the attorney-client privilege applied. The Supreme Court addressed the question of whether *in camera* review by a court of allegedly privileged material should always be permitted. The Supreme Court answered the question no, reasoning that "[a] blanket rule allowing in camera review as a tool for determining the applicability of the crime-fraud exception…would place the policy of protecting open and legitimate disclosure between attorneys and clients at undue risk." *Zolin*, 491 U.S. at 571.

The Supreme Court emphasized that "[t]oo much judicial inquiry into the claim of privilege would force disclosure of the thing the privilege was meant to protect." *Id.* at 570. Instead, the Supreme Court required a special showing to the court akin to probable cause before even a judge can knowingly review privileged material. *Id.*

If *in camera* review by a presumably independent judge poses a threat to the privilege and is not permissible absent a special showing, then taint team review by government agents and attorneys is unlawful absent a similar showing to the court. *Zolin* cannot be reconciled with the notion that the government can seize and review privileged material whenever it chooses without demonstrating extraordinary grounds to do so. Indeed, the Ninth Circuit has recognized that the logic of *Zolin* applies to a range of situations where the privilege is contested. *In re Grand Jury Investigation*, 974 F. 2d 1068, 1074 (1992).

It merits emphasis that the Government did not inadvertently stumble into privileged material while executing the search warrants. The Government disclosed the existence of its investigation years prior to seizing the privileged material in 2014. For example, as early as December of 2011, the FDA sent warning letters to Mr. Omidi and others regarding practices alleged in the affidavits to constitute criminal activity. (*See* Master Affidavit at ¶¶ 43-44). These contacts, as well as others such as the service of subpoenas, predictably caused Mr. Omidi and other targets to retain counsel with reference to the investigations. The Government knew this. Attorneys for various targets of the investigation, including Mr. Omidi, contacted the Government on behalf of their clients. (*See e.g., Id.* at ¶ 46).[2] Accordingly, as the Government well knew, by disclosing the investigation and then executing search warrants, the Government primed the pump for the creation of attorney-client communications and attorney work-product that it then seized in its unrestrained

---

[2] In addition, as the Government also knew, Mr. Omidi and various entities who were targets or subjects of the investigation were litigating against the insurance companies for non-payment for Lap-Brand procedures and other services. (*See Id.* at ¶¶ 152-155). The private insurance companies counterclaimed alleging that Mr. Omidi and others conspired to submit fraudulent claims. (*Id.* at ¶ 156). As the Government well knew, this litigation too would create significant attorney-client communications and work product, overlapping with the subject matter of the investigation.

exploratory searches.

Notwithstanding the certainty that it would intrude upon privileged communications and work product, there is no indication that the Government sought prior authorization to seize privileged material or set forth a judicially authorized protocol to segregate privileged material once encountered in the searches and seizures. *See In re Search Warrant June 13, 2019*, 942 F. 3d at 176 (noting prior authorization of filter team by judiciary but still found troubling because done without opportunity of holder of privilege to be heard.) Nevertheless, the Government did not hesitate to seize Mr. Omidi's legal material from his private office, his home, and the email account he used to communicate with his counsel. (*See* Omidi Decl. at ¶¶ 3-6).

### 2.    The Government Violated Judge Choljian's Stipulated Discovery Review Orders and Judge Abrams' October 15, 2015 Order

In his June 11, 2014 Letter, Mr. Omidi and SCM's attorney Charles Kreindler complained of the Government's improper seizure of privileged material. (Exhibit 2). Subsequently, on July 13, 2015, Magistrate Judge Jacqueline Chooljian signed stipulated privilege review protocols for eight warrants, where a discovery referee along with Stroz Friedberg would assist in the privilege review, instead of a taint team. (*See* Exhibit 3). The stipulated orders *mandated* that the discovery review occur with the discovery referee, who was mutually selected as retired Judge Dickran Tevrizian.

Critically, the Government did not disclose to Defendants nor Judge Chooljian that it had obtained a warrant for Mr. Omidi's Gmail account, weightlosscenters.com, 14-1029. Thus, this concealed Google warrant was not part of the stipulated privilege review protocol orders signed by Judge Chooljian, and the Government had no right to review Mr. Omidi's Gmail Account. Several months thereafter, Defendants discovered that the Government had not obtained court permission for the use of seized funds to pay for the discovery referee and Stroz Friedberg. This issue was raised with the Discovery Referee who directed the parties to raise the issue with the court. Subsequently, on October 1, 2015, the Government filed its "Ex Parte Application for Order Imposing Privilege

Review Procotol and Vacating or Modifying Appointment of Discovery Referee," asking that "the Court exercise its inherent authority to issue an order governing the privilege-review process for the digital devices."   (Ex. 4 at p. 3:9-11).  The Government explained:

> Courts have suggested that the government should not unilaterally employ a taint team, at least in the face of objections by the subjects and with their offer of assistance, and instead should seek court approval of any privilege-review procedure so as to avoid a presumption that the investigative team was tainted. E.g., *United States v. SDI Future Health, Inc.*, 464 F. Supp. 2d 1027, 1046-47 (D. Nev. 2006). The government is now faced with two options: unilaterally take over the failed privilege review from the subjects and risk a court second-guessing that decision at trial; **or**, as recommended in SDI Future Health, ask the Court to exercise its inherent authority to impose a privilege-review protocol on the government or, if appropriate, the parties. ***The government has chosen the second option***.

*Id.* at p. 6:5-14 (emphasis added).

In addition, the Government "included" in a footnote a reference to the Google Warrant (CR 14-1029M), in order to include it in its desired taint team review protocol, even though it had never been included in the prior agreements and Stipulated Orders.  (*Id.* at 2).  The Court considered the government's *Ex Parte* Application to modify the privilege review protocol and vacate or modify the discovery referee, and ***denied*** it on October 15, 2015.  (*See* Ex. 5, 10/15/2015 Order of Judge Abrams). Nor, once the Government encountered privileged material did the Government immediately return to the Court and seek prior approval to review it with a separate team of agents and attorneys known as a "taint team" or "filter team."  As Judge Abrams emphasized in denying the Government's belated motion to authorize a taint team, the Government had "*previously* seized" the evidence.  (Ex. 5).  Moreover, notwithstanding the denial of its motion seeking authorization to involve a taint team, the Government went ahead with taint team review for privileged material anyway.  There is no justification for the Court's disregard of Judge Abrams's Order.

### 3.    The Government's Review of Privileged Material Is Not Harmless

The Government's intrusion into a privileged relationship "seriously injures the

privilege holder," *In re: Search Warrant Issued June 13, 2019*, 942 F. 3d at 175, and may amount to a constitutional violation. *See also United States v. Danielson*, 325 F. 3d 1054, 1069 (9th Cir. 2003) (intrusion may violate Sixth Amendment rights); *Harbor Healthcare*, 2021 WL 3009732 at *5 (Government's ongoing intrusion into privacy and "continued possession of attorney-client privileged documents" "constitutes an irreparable injury"); *see also Hoffa v. United States*, 385 U.S. 293, 306 (1966) ("a surreptitious invasion by a government agent into the legal camp of the defense may violate the protection of the Sixth Amendment…"); *United States v. Haynes*, 216 F. 3d 789, 796 (9th Cir. 2000) (deliberate intrusion may violate Fifth Amendment). In this case, the Government seized, reviewed, and still possesses Mr. Omidi's privileged communications regarding the issues to be tried in this case, as well as attorney-work product and other defense information. The Government itself has confirmed that it seized thousands of privileged documents in the execution of the search warrants. (Ex. 1, Filter Team Privilege Log Excerpt).

While the Government will predictably claim that there is no harm because the privileged information was screened by a separate team of agents and attorneys known as a taint team or a filter team, this is incorrect for at least two related reasons. First, "mandatory disclosure…is the exact harm the privilege is meant to guard against." *In re Lott*, 424 F. 3d 446, 450 (6th Cir. 2005). Again, the right to the assistance of legal counsel "can only be safely and readily availed of when free from the consequences *or the apprehension of disclosure*." *Upjohn*, 449 U.S. at 389. When the Government forcibly removes privileged material (without even prior judicial authorization) and has it reviewed by a team of government agents and lawyers (whatever euphemism you call that team), clients such as Mr. Omidi can no longer be secure in their ability to consult counsel in confidence. After what has already transpired in this case, Mr. Omidi can have little confidence that his communications with his attorneys going forward will be secure, or that the communications already seized and recorded will not be reviewed in preparation for trial.

Second, "taint teams pose a serious risk to holders of privilege, and this supposition is substantiated by past experience." *In re Grand Jury Subpoenas*, 454 F. 3d 511, 523 (6th

Cir. 2006); *accord, In re: Search Warrant*, 942 F. 3d at 183 (rejecting government filter team or taint team to review seized materials from law firm).  As stated in *In re Grand Jury Subpoenas*, there is "an obvious flaw in the taint team procedure: the government's fox is left in charge of the appellants' henhouse, and may err by neglect or malice, as well as by honest differences of opinion." 454 F. 3d at 523.  As the Fourth Circuit quoted, "'(i)t is a great leap of faith to expect that members of the general public would believe any...wall [between a filter team and a prosecution] would be impenetrable; this notwithstanding our own trust in the honor of an AUSA.'"  *In re Search Warrant*, 942 F. 3d at 182 (citation omitted).  The leap of faith is all the greater in this case given the volume of privileged material seized during a pending investigation, and the Government's refusal to provide a data set of the material transferred from the taint team to the prosecution team.  On this latter point, the defense can think of no reasonable explanation for why the Government would refuse to provide this data, other than concern that the defense and the Court might learn that the Government's investigation and prosecution team was exposed to privileged communications and work product.

In any event, the Ninth Circuit has instructed that "once the government has improperly interfered with the attorney-client relationship and thereby obtained privileged trial strategy information, the prosecutor has the 'heavy burden' of showing non-use." *Id.*[3] Applying the Supreme Court's decision in *Kastigar v. United States*, 406 U.S. 441 (1972), the Ninth Circuit "imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the [intrusion]." *Danielson*, 325 F.3d at 1071.  "The government must introduce evidence and must show by a preponderance of that evidence that it did not use this privileged information." *Danielson*, 325 F. 3d at 1074.  This Court should hold the Government to this duty.

### 4.    The Government Violates Mr. Omidi's Rights by Continuing to

---

[3] The Ninth Circuit adopted the burden-shifting approach in part because of the "practical problems facing a criminal defendant trying to show prejudice." *Danielson*, 325 F. 3d at 1070.

**Retain His Privileged Communications and Work Product.**

In addition to the harm already suffered by the exposure of privileged communications, Mr. Omidi suffers the ongoing harm from the Government's continuing retention of thousands of documents the Government has already identified as privileged. The Government has never certified to the return or destruction of these privileged communications and work product, including attorney defense strategy material.[4]  As the Fifth Circuit recently held:  "A taint team serves no practical effect if the government refuses to destroy or return the copies of documents that the taint team has identified as privileged." *Harbor Healthcare*, 2021 WL 3009732 at * 5.  Such a retention of privileged material amounts to callous disregard for Mr. Omidi's rights. *Id.* Moreover, by retaining the privileged material, "the government fox is left in charge of (Mr. Omidi's) henhouse, and may err by neglect or malice." *In re Grand Jury Subpoenas*, 454 F. 3d at 523.

In addition to the violation of the Fourth Amendment from the retention of privileged material that the Government never had prior authorization to seize, the ongoing retention of this privileged material into the trial of this case violates Sixth Amendment and Fifth Amendment rights. *See Haynes*, 216 F. 3d at 796 (*citing United States v. Voight*, 89 F. 3d 1050, 1066 (3d Cir. 1996) (recognizing "claim of outrageous government conduct premised upon deliberate intrusion into the attorney-client relationship…).

**B.     This Court Should Grant An Evidentiary Hearing**

Mr. Omidi hereby requests and is entitled to an evidentiary hearing.  An evidentiary hearing is "required" if the motion raises "a material issue of fact." *United States v. Irwin*, 612 F. 2d 1182, 1187 (9th Cir. 1980); *see also Voight*, 89 F. 3d at 1067.  Here, Mr. Omidi is entitled to a hearing to address such basic issues as the Government's procedures for the review of privileged material; the composition of the agents and attorneys on the so-called filter team or taint team; the Government's failure to timely disclose the Google warrant

---

[4] Mr. Omidi has asked the Government to confirm whether it continues to possess documents determined to be privileged.  To date, the Government has neither confirmed nor denied its continued possession of privileged material.

prior to the agreement to involve third parties in conducting the privilege review; the Government's refusal to share the data set of what was first transferred from the filter team or taint team to the investigation and prosecution team; and the Government's continued retention of thousands of privileged documents.

The need for a hearing should further be considered in light of the pattern of interference with the right to counsel in the case.  In addition to the wholesale seizure of attorney-client privileged communications during a pending investigation at issue in this motion, prior motions have evidenced the Government's deliberate and protracted intrusions into meetings held with the express understanding that they were protected by the joint defense privilege, and the indiscriminate seizure of innocent assets needed to retain counsel of choice.  Thus far, the Government has escaped with a few conclusory denials in its written papers and no obligation to answer any of the hard questions under oath.  Now considering the totality of evidence demonstrating the lack of regard for the right to counsel and Sixth Amendment rights, basic fairness and due process requires a hearing in this matter.

## IV.   CONCLUSION

As set forth above, the Government has seized and reviewed thousands of privileged communications and documents protected by the attorney work product doctrine, and unlawfully retained these documents to this day.  Mr. Omidi is unquestionably entitled to relief.  The Ninth Circuit has traditionally recognized two remedies for the improper interference with the attorney-client relationship:  (1) suppression of evidence; and (2) dismissal of the indictment.  *See Haynes*, 216 F. 3d at 795.

Dated:  August 3, 2021          Respectfully submitted,

**WILLKIE FARR & GALLAGHER LLP**

By: /s/ Michael S. Schachter

MICHAEL S. SCHACHTER
RANDALL W. JACKSON
CASEY E. DONNELLY
SIMONA AGNOLUCCI

ATTORNEYS FOR DEFENDANT
JULIAN OMIDI

PROOF OF SERVICE

I am employed and a resident of New York. I am over the age of 18 and not a party to the within action; my business address is 787 Seventh Avenue, New York, NY 10019. On August 3, 2021, I served the document described as:

**MOTION FOR RELIEF BASED ON INTERFERENCE WITH FIFTH AND SIXTH AMENDMENT PRIVILEGE INTERFERENCE**

Upon the interested parties in this action as follows:

_____X_____ By the Court's ECF.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 3, 2021.

/s/ Michael S. Schachter
Michael S. Schachter