TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KRISTEN A. WILLIAMS (Cal. Bar No. 263594)
Deputy Chief, Major Frauds Section
CATHY J. OSTILLER (Cal. Bar No. 174582)
Senior Litigation Counsel
ALEXANDER C.K. WYMAN (Cal. Bar No. 295339)
ALI MOGHADDAS (Cal. Bar No. 305654)
JAMES E. DOCHTERMAN (Cal. Bar No. 256396)
Assistant United States Attorneys
Major Frauds/Asset Forfeiture Sections
     1100/1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0526/6159/2435/1786/2686
     Facsimile: (213) 894-6269/0142
     E-mail:    Kristen.Williams@usdoj.gov
                Cathy.Ostiller@usdoj.gov
                Alex.Wyman@usdoj.gov
                Ali.Moghaddas@usdoj.gov
                James.Dochterman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 17-00661(A)-DMG-1 |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT JULIAN OMIDI'S *EX PARTE* APPLICATION FOR RELEASE OF ADDITIONAL FUNDS |
| v. | |
| JULIAN OMIDI, aka "Combiz Omidi," aka "Combiz Julian Omidi," aka "Kambiz Omidi," aka "Kambiz Beniamia Omidi," aka "Ben Omidi," SURGERY CENTER MANAGEMENT, LLC, and MIRALI ZARRABI, M.D., aka "Mirali Akba Ghandchi Zarrabi," aka "M.A. Ghandchi Zarrabi," | Trial Date: September 21, 2021<br>Trial Time: 8:30 a.m.<br>Place: Courtroom of the Hon. Dolly M. Gee |
| Defendants. | |

1

2        Plaintiff United States of America, by and through its counsel

3   of record, the Acting United States Attorney for the Central District

4   of California and Assistant United States Attorneys Kristen A.

5   Williams, Cathy J. Ostiller, Alexander C.K. Wyman, Ali Moghaddas, and

6   James E. Dochterman, hereby files its Opposition to defendant Julian

7   Omidi's Opposed Ex Parte Application Seeking Additional Funds from

8   the Seized Res To Pay for Defense Costs and Renewed Request for a

9   Monsanto/Unimex Hearing.  (Dkt. 1150.)

10       This Opposition is based upon the attached memorandum of points

11  and authorities, the files and records in this case, and such further

12  evidence and argument as the Court may permit.

 Dated: August 6, 2021          Respectfully submitted,

13                              TRACY L. WILKISON
14                              Acting United States Attorney

15                              SCOTT M. GARRINGER
                                Assistant United States Attorney
16                              Chief, Criminal Division

17

18                              _____
                                KRISTEN A. WILLIAMS
19                              CATHY J. OSTILLER
                                ALEXANDER C.K. WYMAN
20                              ALI MOGHADDAS
                                JAMES E. DOCHTERMAN
21                              Assistant United States Attorneys

22                              Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

23

24

25

26

27

28

                                       2

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3        Although defendant Julian Omidi ("OMIDI") still has nearly half

4   of the $10 million in seized funds he previously received for his

5   legal defense, he has filed an ex parte application seeking an

6   additional $8.5 million to pay for his anticipated expenses through

7   trial in this case and beyond.  He seeks those funds even though he

8   admits that he has no property interest in the seized funds, which

9   the Court has found the government had probable cause to seize.

10  Moreover, his desire to have a luxury legal defense is not an

11  acknowledged right under the law; he only is entitled to the legal

12  defense he can afford.  Finally, his artificial claims of poverty and

13  his family's willingness to fund his luxury lifestyle but not his

14  criminal defense fail to satisfy his burden to justify a Unimex

15  hearing.  For all the foregoing reasons, OMIDI's ex parte application

16  should be denied.

17  ## II.   STATEMENT OF PERTINENT FACTS

18       The relevant facts related to OMIDI's ex parte application are

19  set forth in detail in the government's opposition to OMIDI's Motion

20  to Dismiss.  (See Dkt. 1052 at 3-16.)  These facts include the pre-

21  indictment seizure of funds pursuant to a finding of probable cause

22  and a seizure warrant issued by former United States Magistrate Judge

23  Victor B. Kenton; the filing of this criminal case; the filing of the

24  civil forfeiture action related to this case (United States v.

25  Approximately $107,539,422.29 in Funds and Securities, CV 18-3855-DMG

26  (the "Funds Case")); the prior unsuccessful or withdrawn motions for

27  return of property filed in this case and other cases; and the

28  parties' negotiations for a limited return of funds to OMIDI's

1    counsel in this case culminating in a stipulation and resulting order

2    in the Funds Case in the fall of 2020.

3         Among other things, the Order issued in the Funds Case on

4    October 8, 2020 authorized the release of $10 million for OMIDI's

5    legal fees.  (Funds Case, Dkt. 50 (the "October 2020 Order").)  The

6    October 2020 Order also included the following provision that

7    specifically authorized OMIDI and his counsel to bring a motion for

8    the release of additional funds in this case if the parties could not

9    reach an agreement after meeting and conferring:

10        A further request for release of funds by [OMIDI] is not
          anticipated. However, if [prior OMIDI counsel] or
11        substitute counsel for Julian Omidi comes to believe that
          such a request will be necessary, the Parties shall meet
12        and confer on whether there is good cause for the release
          of additional funds. If the Parties cannot reach agreement,
13        [prior OMIDI counsel] (or its successor) and [OMIDI] shall
          be allowed to move for the release of additional funds in
14        CR 17-661(A) DMG, so long as all of the Substitute
          Claimants waive their respective rights to object to the
15        release of any requested additional portion of the
          defendant res.
16

17    (Id. at 6-7 (¶ 13).)

18        On June 15, 2021, the Court denied OMIDI's motion to dismiss and

19    rejected his claim that the government's 2014 seizure of the funds

20    restrained OMIDI's ability to retain counsel of his choice and

21    violated his Sixth Amendment rights.  (Dkt. 1084.)  As part of its

22    Order, the Court ordered the parties to meet and confer regarding

23    OMIDI's request for the release of additional funds for his defense.

24    (Id. at 15.)  On June 25, 2021, after the parties attempted to meet

25    and confer regarding OMIDI's request for an additional $8.5 million

26    in funds, the parties filed a joint status report regarding OMIDI's

27    request.  (Dkt. 1097.)  The government noted in that joint status

28    report that, despite repeated requests, it had not received a

                                    2

1  comprehensive listing of OMIDI's assets or information regarding his

2  access to assets.  (Id. at 6-9.)

3       Over a month later, on July 30, 2021, OMIDI filed an ex parte

4  application seeking the release of $8.5 million in funds.  (Dkt.

5  1150.)  As noted in the ex parte application, and as discussed more

6  fully below, the government opposes the request for the release of

7  additional funds.  (Id. at 2 (Notice).)

8  **III.  ARGUMENT**

9       **A.   OMIDI Is Not Entitled to Funds that He Admits Do Not Belong
           to Him, Regardless of His Desire to Spend Those Funds on**
10          **His Burgeoning Legal Fees**

11       OMIDI's persistence notwithstanding, there is no legal principle

12 that allows OMIDI to take ownership of a third party's property based

13 on his asserted intent to use the property to pay for legal services

14 that he otherwise cannot afford.  The Court properly recognized and

15 applied this foundational bar to OMIDI's repeated demands to release

16 additional res funds when it held that both Caplin & Drysdale,

17 Chartered v. United States, 491 U.S. 617 (1989), and United States v.

18 Monsanto, 491 U.S. 600 (1989), controlled.  (Dkt. 1145 at 1, 3.)  In

19 particular, the Court adopted Caplin & Drysdale's holding that "[a]

20 defendant has no Sixth Amendment right to spend another person's

21 money for services rendered by an attorney, even if those funds are

22 the only way that defendant will be able to retain the attorney of

23 his choice," Caplin & Drysdale, 491 U.S. at 626, and acknowledged

24 Monsanto's permissive bar on the use of forfeitable assets to pay a

25 defendant's legal fees.  (Id.)  Simply put, as the Court has held,

26 OMIDI has no recognizable claim to the seized res, regardless of his

27 desired use of it.

28

1       Nothing in OMIDI's _ex parte_ application seeking additional

2  access to _res_ funds changes the fact that he and relevant parties

3  stipulated to stay the Funds Case, and that OMIDI himself is not a

4  claimant in those proceedings, affording him no recognizable interest

5  in the property.  In fact, the crux of OMIDI's repeated arguments

6  appears to be that while he both denies any involvement in the fraud

7  schemes and money laundering conspiracy alleged in the First

8  Superseding Indictment, and did not assert ownership of the seized

9  _res_, he nonetheless feels entitled to increasingly larger portions of

10  someone else's property to fund his expanding legal endeavors, while

11  he and his family members prioritize a luxury lifestyle over OMIDI's

12  own criminal defense.

13       As the October 2020 Order required, OMIDI offers that the Funds

14  Case claimants have affirmed that they do not object to releasing a

15  portion of the seized _res_ to OMIDI for his legal fees.  (Dkt. 1150 at

16  8 (referring to a May 2021 declaration by counsel for Property Care

17  Insurance, Inc.; Surgery Center Management, LLC ("SCM"); and the

18  Bridgeford Trust Company, LLC.)  That does not actually appear to be

19  the case, however.  One of those claimants (SCM, through its separate

20  criminal counsel) recently filed a motion to release the same funds

21  to itself instead.[1]  (Dkt. 1158.)  Additionally, given that the Funds

22

23       [1] SCM appears to be asking for funds from allegedly "untainted"
    assets (Dkt. 1158), although the Court has already found that there
24  was probable cause to find that the commingling of any untainted
    funds with tainted funds, as alleged in the seizure warrant
25  affidavit, rendered the entire _res_ subject to forfeiture.  (Dkt. 1084
    at 10-12.)  Regardless, it is apparent that the $28 million in funds
26  that SCM is seeking are the same funds that OMIDI claims he is
    entitled to access to obtain the $8.5 million in anticipated legal
27  fees he now seeks and from which he already has received $10 million.
    (See Dkt. 1038 at 14 (referencing $23-27 million in allegedly
28  "innocent" assets commingled with other funds).)  Simple math reveals
    that there is not enough money there for both OMIDI and SCM to claim.

1   Case claimants only filed bare claims (and no Answer as yet is

2   required) and the Funds Case remains stayed (by the claimants' own

3   agreement), those claimants' property interests are inchoate.

4   Because the claimants do not have title to the property they are

5   offering, the claimants are in no better position to direct the

6   distribution of the seized res than is OMIDI.[2]

7       Because OMIDI "has no Sixth Amendment right to use another

8   person or entity's funds for his defense," as the Court repeatedly --

9   and correctly -- has held, OMIDI's ex parte application should be

10  denied.  (Dkt. 1145 at 3.)

11      **B.    Defendant Demands an Unrecognized Ownership Interest in the**
            **Seized Res in Order to Fund a Luxury Legal Defense that Is**
12          **Not Guaranteed under the Sixth Amendment**

13      As the Court noted, "'[t]he Sixth Amendment guarantees a

14  defendant the right to be represented by an otherwise qualified

15  attorney whom that defendant can afford to hire.'"  (Dkt. 1084 at 5

16  (quoting Luis v. United States, 136 S. Ct. 1083, 1089 (2016)

17  (emphasis added)).)  By OMIDI's own admission, he still has

18  $5,183,212.00 in released res funds at his disposal for legal

19  counsel, having spent nearly half of the released funds pre-trial,

20  churning through multiple law firms just since last October before

21  landing on the current two (with possibly a third in the wings).

22  (Dkt. 1150 at 7.)  Without offering a non-conjectural accounting,

23  OMIDI now asserts his luxury defense will cost an additional $8.5

24  million, thereby bringing to $18.5 million the total amount that he

25  seeks to have the government release to fund his defense.  However,

26  the government should not have to further reduce the res as a result

27  _____

28      [2] As the government will address in response to SCM's motion,
    SCM has a similarly weak claim to those funds.

1  of OMIDI's inability or refusal to budget his remaining released <u>res</u>

2  funds appropriately and in accordance with the <u>Luis</u> affordability

3  standard.

4       OMIDI's <u>ex parte</u> application cannot overcome what the Court has

5  identified as his prior "fail[ure] to establish his lack of access to

6  funds for his defense, particularly in light of the stipulated

7  release of $10 million for a trial only a few months away."  (Dkt.

8  1145 at 3.)  To the contrary, OMIDI admits that he has enormous

9  resources at his disposal -- just not as much as he wants to fund his

10  luxury legal representation.

11       **C.    Defendant's Aspirational, Conjectural Defense Costs Do Not**
         **Satisfy the Court's Specificity Standards for a <u>Unimex</u>**
12       **Hearing**

13       The Court previously denied OMIDI's request for release of funds

14  based on his failure to provide an "accounting of, or clear statement

15  regarding, what funds out of the $10 million have been spent, or any

16  detailed information, such as a declaration from Defendant OMIDI,

17  providing specific information regarding his lack of funds or lack of

18  access to other funds."  (Dkt. 1084 at 6.)  The Court correctly

19  denied defense counsel's prior release request as supported by only a

20  "generalized declaration attesting to their legal fees in another

21  criminal matter []" that "they 'believe costs are likely to be

22  similar in [OMIDI's] case.'"  (Dkt. 1084 at 6.)  OMIDI's similarly

23  generalized instant demand for release of <u>res</u> funds fails to overcome

24  his prior specificity failures and should be denied as well.

25       The inherently speculative nature of OMIDI's request for funds

26  he "would like" to spend related to "potential" future outcomes

27  demonstrates OMIDI's inability to meet the threshold particularity

28  standard for a so-called <u>Unimex</u> hearing – <u>i.e.</u>, whether "the moving

1    papers filed, including affidavits, are sufficiently definite,

2    specific, detailed, and nonconjectural, to enable the court to

3    conclude that a substantial claim is presented." United States v.

4    Unimex, Inc., 991 F.2d 546, 551 (9th Cir. 1993).  (Dkt. 1084 at 5

5    (quoting Unimex, Inc., 991 F.2d at 551).)  Among the many asserted

6    expenses, OMIDI requests $800,000 for an "additional [unretained]

7    attorney that [OMIDI] would like to hire," and $2.5 million for "fees

8    and expenses associated with potential sentencing and appeal."  (Dkt.

9    1150 at 8 (emphasis added).)

10       OMIDI's remaining conclusory line items also lack any

11   explanation as to necessity or cost reasonableness.  For example,

12   while many defendants probably would like to spend $350,000 on a

13   "trial graphics and jury consulting firm," they, like OMIDI, are not

14   constitutionally entitled to such luxuries.  Of course, OMIDI is

15   welcome to prioritize this expense, but he, like all defendants, must

16   balance that expenditure within his available funds -- here, a

17   remaining war chest of $5 million.

18       Similarly, OMIDI's vague asserted need for an additional $6.5

19   million for his current defense counsel described only as "fees" and

20   his $700,000 demand for anticipated travel fees associated with

21   OMIDI's bi-coastal legal representation fails to overcome his prior

22   request's indefinite and conjectural deficiencies.  OMIDI's decision

23   to engage legal representation from the East Coast, with the

24   accompanying expenses to be incurred for cross-country travel,

25   hotels, and meals, for a three-month trial, is his and his alone.  At

26   bottom, all that OMIDI has demonstrated is that, while he has a

27   substantial legal war chest at his disposal, it is simply not as much

28   as he wants for a costly defense to which he has no recognizable

                                    7

1   constitutional right and that far exceeds the prior estimates made by

2   experienced counsel assessing his case.  (Dkt. 1084 at 7 n.4; October

3   2020 Order at 6-7 (¶ 13).)

4           D.    **Defendant's Asserted Poverty is a Fiction that Warrants**
                  **Denial**

5

6       OMIDI frames this luxury legal defense war chest in poverty

7   language, asserting that he "does not have any assets of his own."

8   (Dkt. 1150 at 9.)  But to be clear, OMIDI's financial dependency is a

9   fiction built on a byzantine network of straw buyers and business

10  entities intended to hold fraudulently derived funds under their

11  identities, not his.  It is by OMIDI's own scheme that he lacks

12  lawful title to those assets, as demonstrated in the <u>Funds</u> Case,

13  where he was admittedly not a signatory to the seized accounts and

14  filed no claims.  (Dkt. 1150 at 9.)  In the continuing absence of a

15  true accounting of OMIDI's assets and those of the individuals and

16  entities to which he has long enjoyed access, his bare assertions of

17  poverty further fail to satisfy the <u>Unimex</u> threshold standards.

18      OMIDI asserts that his luxury lifestyle is possible only due to

19  his family's generosity -- a kindness that they freely choose to

20  withhold from a criminal defense that could presumably result in

21  OMIDI's conviction and incarceration.  This familial generosity

22  extends to "moderate" and "everyday living expenses" charged on an

23  American Express account for "everything, including groceries and

24  items associated with [OMIDI's] defense, such as a laptop computer

25  [for court appearances]."  (Dkt. 1150 at 10.)  Despite OMIDI's humble

26  assertions, however, OMIDI admits that his "everyday living expenses"

27  include (among many others) such luxuries as:  a $265 monthly gym

28  membership at Equinox gym (Dkt. 1150-2, Ex. 8); $1,840.88 for

                                    8

nutritional supplements at Get Yokd Nutrition (April 4, 2021) (Dkt. 1150-2, Ex. 4); $465.73 for nutritional supplements at Biotech Nutra (April 23, 2021) (Dkt. 1150-2, Ex. 5); $1,096.34 for flowers at Dose of Roses, a luxury flower shop (February 11, 2021) (Dkt. 1150-2, Ex. 2); and, despite not owning a home, expenditures at Home Depot of $1,465.23 on December 1, 2020 (Dkt. 1150-2, Ex. 8), and $1,320.29 on January 21, 2021 (Dkt. 1150-2, Ex. 1.)

That OMIDI describes these expenses as "everyday living expenses" illustrates the unbridgeable discrepancy between OMIDI's facially substantial $5 million reality, and his $13.5 million aspirations. Other than earnestly wanting more money, OMIDI again fails to substantiate his demand for release of a lawfully seized res to which he lacks any recognizable right. Even if OMIDI possessed an interest in the seized res, which he does not, the government may "without offending the Fifth or Sixth Amendment [ ] -- obtain forfeiture of property that a defendant might have wished to use to pay his attorney." Monsanto, 491 U.S. at 616 (internal citation omitted).

Moreover, OMIDI uses the assets of those around him as both a sword and a shield: claiming some right to money that does not belong to him but that others are supposedly willing to let him have, while simultaneously resisting any effort to interrogate the assets of those other parties. Instead, he points to their recent claimed unwillingness to further fund his defense. They will fund this lifestyle, permit him to live in one mansion and party in one next door, and assist in his retention of numerous private counsel for years in this case, but are suddenly unwilling to do more. OMIDI says that his mother is not willing to have the corporation she

9

controls sell the 18,000-square-foot mansion that was purchased during the charged scheme, without disclosing that the property was actually on the market for almost $30 million (or for rent for $80,000 per month) between March and August 2020 before the listing was removed.  (See Katherine Clark, L.A. Property Built to Withstand a Nuclear Explosion Asks $29.995 Million, Wall Street Journal (Mar. 13, 2020, 1:20 PM), https://www.wsj.com/articles/l-a-property-built-to-withstand-a-nuclear-explosion-asks-29-995-million-11584119917; https://www.zillow.com/homedetails/1235-Sierra-Alta-Way-Los-Angeles-CA-90069/20535085_zpid/.  The convenience of this timing, particularly when combined with the fact that those family members have revealed little about their assets (or the assets of the companies they operate through), does not demonstrate that OMIDI lacks access to funds for his defense.

OMIDI has at his disposal approximately $5 million in released res funds to pay for his defense.  The Court correctly held that probable cause existed to seize the res.  (Dkt. 1084 at 12.)  OMIDI admits that he has no property interest in that seized res.  And regardless of what OMIDI may want, he simply does not have a right to unaffordable legal representation.  OMIDI's bare assertions of poverty are inadequate to satisfy his burden under Unimex.

**IV.  CONCLUSION**

For all of the foregoing reasons, OMIDI has failed to make a showing that he is entitled to release of additional funds.  Therefore, the government respectfully requests that the Court deny OMIDI's ex parte application.

10