TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KRISTEN A. WILLIAMS (Cal. Bar No. 263594)
Deputy Chief, Major Frauds Section
ALEXANDER C.K. WYMAN (Cal. Bar No. 295339)
ALI MOGHADDAS (Cal. Bar No. 305654)
DAVID H. CHAO (Cal. Bar No. 273953)
DAVID C. LACHMAN (Cal. Bar No. 261711)
Assistant United States Attorneys
Major Frauds/General Crimes Sections
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2400
    Facsimile: (213) 894-6269
    E-mail:    Kristen.Williams@usdoj.gov
            Alex.Wyman@usdoj.gov
            Ali.Moghaddas@usdoj.gov
            David.Chao@usdoj.gov
            David.Lachman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 17-661(A)-DMG |
|         Plaintiff, | DISPUTED JURY INSTRUCTIONS |
|           v. | Trial Date: September 21, 2021 |
| JULIAN OMIDI, | Trial Time: 8:30AM |
|   aka "Combiz Omidi," | Location:   Courtroom of the Hon. |
|   aka "Combiz Julian Omidi," |             Dolly M. Gee |
|   aka "Kambiz Omidi," | |
|   aka "Kambiz Beniamia Omidi," | |
|   aka "Ben Omidi," | |
| SURGERY CENTER MANAGEMENT, | |
| LLC, and | |
| MIRALI ZARRABI, M.D., | |
|   aka "Mirali Akba Ghandchi | |
|       Zarrabi," | |
|   aka "M.A. Ghandchi Zarrabi," | |
|        Defendants. | |

1        Plaintiff United States of America, by and through its counsel

2   of record, the Acting United States Attorney for the Central District

3   of California and Assistant United States Attorneys Kristen A.

4   Williams, Alexander C.K. Wyman, Ali Moghaddas, David H. Chao, and

5   David C. Lachman; defendant Julian Omidi, by and through his counsel

6   of record Michael S. Schacter, Randall W. Jackson, and Casey E.

7   Donnelly; defendant Surgery Center Management, LLC, by and through

8   its counsel of record Michael Devereux; and defendant Mirali Zarrabi,

9   MD, by and through his counsel of record Thomas P. O'Brien, Ivy A.

10  Wang, and Jennie Wang VonCannon, hereby submit their Disputed Jury

11  Instructions in the above-captioned case.  The parties respectfully

12  reserve the right to supplement these jury instructions as needed.

13       Unless otherwise noted, the parties have used the most recent

14  version (as of August 2021) of the Jury Instructions found on the

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

Ninth Circuit's website at: http://www3.ce9.uscourts.gov/jury-instructions/model-criminal.

Dated: September 14, 2021          Respectfully submitted,

                                   TRACY L. WILKISON
                                   Acting United States Attorney

                                   SCOTT M. GARRINGER
                                   Assistant United States Attorney
                                   Chief, Criminal Division


                                   _____/s/_____
                                   KRISTEN A. WILLIAMS
                                   ALEXANDER C.K. WYMAN
                                   ALI MOGHADDAS
                                   DAVID H. CHAO
                                   DAVID C. LACHMAN
                                   Assistant United States Attorneys

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

3

## INDEX OF DISPUTED JURY INSTRUCTIONS

| No. | Title | Source | Page |
|---|---|---|---|
| 21.1 | Inappropriate Considerations* | Given in United States v. Mazzo, No. 8:12-cr-00269(B)(AG) (C.D. Cal. Feb. 21, 2018) (Guilford, J.), ECF No. 912 (jury instruction number 17); see Leonard B Sand. et al., Modern Federal Jury Instructions: Criminal, Instr. 2-11 (2016); United States v. Rank, No. 84-1870, 1986 WL 18059, at *4 (6th Cir. Oct. 14, 1986) (per curiam); Beck v. United States, 33 F.2d 107, 112 (8th Cir. 1929) | 2 |
| 30.1 | Number of Witnesses and Uncontradicted Testimony* | 1 Sand, Modern Federal Jury Instructions-Criminal ¶ 4-3 (Matthew Bender ed. 2020) (modified) | 6 |
| 33 | Statements by Defendants* | Ninth Circuit Model Criminal Jury Instruction No. 4.1 (2010 ed.) | 9 |
| 37.1 | Law Enforcement Witness* | 1 Sand, Modern Federal Jury Instructions-Criminal ¶ 7-16 (Matthew Bender ed. 2020) (modified); Third Circuit Model Criminal Jury Instruction 4.18 (same); United States v. Bethancourt, 65 F.3d 1074, 1080 (3d Cir. 1995); Bush v. United States, 375 F.2d 602, 605 n.6 (D.C. Cir. 1967) | 12 |
| 39.1 | Lost or Destroyed Evidence* | Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit § 4.19 (2010 ed., last updated 3/2021) | 15 |

i

| No. | Title | Source | Page |
|-----|-------|--------|------|
| 40 | "On or About" – Explained; Approximate Amount – Explained* | Ninth Circuit Model Criminal Jury Instruction No. 3.18 [On or About-Defined] (2010 ed.) (modified for money laundering; allegations in FSI); 1A O'Malley, Grenig, & Lee, Federal Jury Practice & Instructions, § 13.05 ["On or About" – Explained] (modified to encompass "in or about" allegations in the indictment), § 13.06 [Approximate Amount - Explained] (6th ed. 2008) | 18 |
| 43 | Mail Fraud* | Ninth Circuit Model Criminal Jury Instruction No. 8.121 (2010 ed.; approved 6/2021) (modified to add chart of specific counts) | 25 |
| 44 | Wire Fraud* | Ninth Circuit Model Criminal Jury Instruction No. 8.121 (2010 ed.; approved 6/2021) (modified to add chart of specific counts) | 42 |
| 45 | Scheme to Defraud – Vicarious Liability* | Ninth Circuit Model Criminal Jury Instruction No. 8.122 | 49 |
| 47 | Each use of the mails and each transmission by wire communication in interstate commerce – Defined* | O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, § 47.15 (6th ed. 2009) [Each use of the mails and each transmission by wire communication in interstate commerce -- Defined]; see also United States v. Garlick, 240 F.3d 789, 792 (9th Cir. 2001); United States v. Ferreyro, CR 18-865-JFW (Dkt. 74 at 18) (proposed instruction above on wire fraud given as instruction in wire fraud trial) | 52 |

ii

| No. | Title | Source | Page |
|-----|-------|--------|------|
| 47.1 | Good Faith* | O'Malley, <u>Federal Jury Practice & Instructions-Criminal</u> § 19:06 (6th ed. Feb. 2021 update) (*modified*); <u>see</u> Sand, <u>Modern Federal Jury Instructions</u> ¶ 8.01 (Good Faith) (Matthew Bender ed. 2020); <u>United States v. Tarallo</u>, 380 F.3d 1174, 1191 (9th Cir. 2004); <u>United States v. Amlani</u>, 111 F.3d 705, 717-18 (9th Cir. 1997); <u>United States v. Gering</u>, 716 F.2d 615, 622 (9th Cir. 1983); <u>United States v. Lin</u>, 3:11-cr-00393-TEH, Dkt. 102, Jury Instructions, at 42-44 (N.D. Cal. May 5, 2012); <u>see also</u> United States v. Casperson, 773 F.2d 216 (8th Cir. 1985); <u>United States v. Jimenez</u>, 513 F.3d 62, 75 (3rd Cir. 2008) | 55 |
| 49 | Fraud in Connection With Identification Documents Aggravated Identity Theft* | Ninth Circuit Model Instruction No. 8.83 (2010 ed.; approved 3/2021) (modified to add "use" definition set forth in the comment and to specify the person and means-of-identification charged) | 60 |
| 53 | Proof of Knowledge or Intent* | 1A O'Malley, Grenig, & Lee, Federal Jury Practice and Instructions, § 17.07 (6th ed. 2008); <u>United States v. Dearing</u>, 504 F.3d 897, 901-03 (9th Cir. 2007); <u>United States v. Lloyd</u>, 807 F.3d 1128, 1164 (9th Cir. 2015) | 64 |
| 53.1 | Venue with Respect to Counts 1-34* | Adapted from L. Sand et al. <u>Modern Fed. Jury Inst. – Crim.</u>, Inst. 3-11) | 68 |

iii

| No. | Title | Source | Page |
|---|---|---|---|
| 54 | Conspiracy-Elements* | Ninth Circuit Model Instruction No. 8.20 (2010 ed.; approved 1/2109) (modified for money laundering and single object); id. cmt. (stating that overt act element should be omitted in money laundering conspiracy cases) | 72 |
| 55 | Conspiracy—Knowledge of the Association with Other Conspirators* | Ninth Circuit Model Jury Instruction No. 8.23 (2010 ed.; approved 4/2019) | 77 |
| 56 | Financial Transaction or Attempted Transaction to Promote Unlawful Activity; Laundering or Attempting to Launder Monetary Instruments* | Ninth Circuit Model Instruction Nos. 8.146 and 8.147 (2010 ed.; approved 6/2021); 18 U.S.C. § 1956(a)(1) | 81 |
| 56.1 | Venue with Respect to Counts 35-37* | Adapted from 18 U.S.C. § 1956(i); United States v. Saavedra, 223 F.3d 85, 93 (2d Cir. 2000) | 87 |
| 56.2 | Theory of Defense* | Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit at 105 (Introductory Comment) (2010 ed., last updated 3/2021); United States v. Perdomo-Espana, 522 F.3d 983, 986-87 (9th Cir. 2008) (same); United States v. Sarno, 73 F.3d 1470, 1487-88 (9th Cir. 1995); United States v. Morton, 999 F.2d 435, 439 (9th Cir. 1993) | 91 |

1

2

3

4

5

6

7

8

9

10

11                          UNITED STATES DISTRICT COURT

12                      FOR THE CENTRAL DISTRICT OF CALIFORNIA

13    UNITED STATES OF AMERICA,            No. CR 17-661(A)-DMG

14             Plaintiff,                  DISPUTED JURY INSTRUCTIONS

15                  v.

16    JULIAN OMIDI,
         aka "Combiz Omidi,"
17       aka "Combiz Julian Omidi,"
         aka "Kambiz Omidi,"
18       aka "Kambiz Beniamia Omidi,"
         aka "Ben Omidi,"
19    SURGERY CENTER MANAGEMENT, LLC,
      and
20    MIRALI ZARRABI, M.D.,
         aka "Mirali Akba Ghandchi
21          Zarrabi,"
         aka "M.A. Ghandchi Zarrabi,"
22
                 Defendants.
23

24

25

26

27

28

COURT'S INSTRUCTION NO. _____

DEFENDANTS' PROPOSED INSTRUCTION NO. 21.1

It would be improper for you to consider, in reaching your decision as to whether the government sustained its burden of proof, any personal feelings you may have about the gender, age, race, religion, national origin, political affiliation or other characteristics of Dr. Zarrabi or Mr. Omidi.

It would be improper for you to think that Dr. Zarrabi engaged in or had knowledge of the alleged conduct just because he was an independent contractor for Independent Medical Services, Inc. Likewise, it would be improper for you to think that Mr. Omidi engaged in or had knowledge of the alleged conduct just because of his job title or responsibilities.  It is not enough for the government to prove that one or more individuals involved in alleged conduct reported to Mr. Omidi.  In addition, you may not infer that Mr. Omidi, based solely on his position engaged in or had knowledge of any alleged conduct.

It is also improper for you to consider any personal feelings that you may have about the wealth, compensation, lifestyle, or other characteristics of Dr. Zarrabi or Mr. Omidi.  All defendants, no matter what their personal characteristics may be, are entitled to the presumption of innocence, and the government always has the burden of proof.

///

///

///

1     It would also be improper for you to allow any feelings you

2 might have about the nature of the crimes charged to interfere with

3 what must be your fair and impartial decision-making process.

4

5 Source:    Given in <u>United States v. Mazzo</u>, No. 8:12-cr-00269(B)(AG)

6            (C.D. Cal. Feb. 21, 2018) (Guilford, J.), ECF No. 912 (jury

7            instruction number 17); <u>see</u> Leonard B Sand. et al., <u>Modern</u>

8            <u>Federal Jury Instructions: Criminal</u>, Instr. 2-11 (2016);

9            United States v. Rank, No. 84-1870, 1986 WL 18059, at *4

10           (6th Cir. Oct. 14, 1986) (per curiam) (reversing conviction

11           and "declin[ing] to adopt the government's theory, akin to

12           a respondeat superior basis for criminal liability," that

13           "Brown's position as owner and president of the Clinic and

14           his frequent telephone contacts with it from the Caribbean

15           demonstrated sufficient control over the Clinic's operation

16           to infer that Brown had participated in the criminal acts

17           alleged against him"); <u>Beck v. United States</u>, 33 F.2d 107,

18           112 (8th Cir. 1929) ("the doctrine of respondeat superior

19           that sometimes holds a principal for representations he

20           neither authorized nor ratified, expressly or impliedly, is

21           a doctrine of civil liability, and not of criminal

22           responsibility").

23

24

25

26

27

28

GOVERNMENT'S OBJECTION TO

DEFENDANTS' PROPOSED INSTRUCTION NO. 21.1

The government objects to the inclusion of this instruction. The issue of bias -- both explicit and unconscious -- is already covered sufficiently in Joint Proposed Instruction Nos. 1 and 20, which follow Ninth Circuit Model Criminal Jury Instruction Nos. 1.1 and 3.1.  The government would not object to adding "wealth" or "lifestyle" to those instructions.

With regard to the first sentence in paragraph two, regarding defendant Zarrabi's status as an independent contractor, this instruction improperly focuses the jury's attention on a particular fact -- namely, that Dr. Zarrabi was an independent contractor for co-defendant Independent Medical Services, Inc.  With regard to the remaining sentences in paragraph two, regarding defendant Omidi, this instruction improperly focuses the jury's attention on particular facts related to defendant Omidi's titles or responsibilities.  In both cases, the jury is properly instructed elsewhere to view the evidence as a whole, and this instruction could confuse the jury by singling out a piece of evidence and could mislead the jury into thinking that they cannot consider defendant Zarrabi's title or defendant Omidi's titles or responsibilities in evaluating the evidence.

Lastly, the jury will already be instructed several times on the government's burden, and, therefore, the additional language in this paragraph regarding the government's burden is unnecessary.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' RESPONSE TO GOVERNMENT'S OBJECTION TO
DEFENDANTS' PROPOSED INSTRUCTION NO. 21.1

Defendants believe this instruction should be given, as it is well-supported in the case law, as the source citations demonstrate. Moreover, given the amount of evidence that is likely to be adduced at trial about Mr. Omidi's and Dr. Zarrabi's respective employment positions, Defendants believe that the jury should be told, directly, that they cannot assume knowledge or participation simply because, for example, Mr. Omidi may have held a supervisory position, or the fact that Dr. Zarrabi served as independent contractor.  While Defendants agree that other jury instructions make clear that the Government needs to prove each defendant's knowledge and participation, Defendants believe that this proposed instruction will *ensure* that the jurors realize that it would be improper to convict on the basis of the facts described in this instruction.  Moreover, this instruction does not prejudice the Government in any way and it is short, both of which are factors that support it being given.

COURT'S INSTRUCTION NO. \_\_\_\_\_

DEFENDANTS' PROPOSED INSTRUCTION NO. 30.1


The fact that one party called more witnesses and introduced more evidence than the other does not mean that you should necessarily find the facts in favor of the side offering the most witnesses.  By the same token, you do not have to accept the testimony of any witness who you find not to be credible, even if the witness's testimony has not been contradicted or impeached. You also have to decide which witnesses to believe and which facts are true. To do this you must look at all the evidence, drawing upon your own common sense and personal experience.  After examining all the evidence, you may decide that the party calling the most witnesses has not persuaded you because you do not believe its witnesses, or because you do believe the fewer witnesses called by the other side.

You should keep in mind that the burden of proof is always on the government and the defendants are not required to call any witnesses or offer any evidence, since they are presumed to be innocent.

Source:     1 Sand, Modern Federal Jury Instructions-Criminal ¶ 4-3
            [Number of Witnesses and Uncontradicted Testimony] (Matthew
            Bender ed. 2020) (modified).

6

GOVERNMENT'S OBJECTION TO

DEFENDANTS' PROPOSED INSTRUCTION NO. 30.1


The government objects to the inclusion of this instruction as unnecessary and argumentative and without support in the Ninth Circuit.  Also, the issue of presumption of innocence is already covered in Joint Proposed Instructions Nos. 2 and 21.

DEFENDANTS' RESPONSE TO GOVERNMENT'S OBJECTION TO
DEFENDANTS' PROPOSED INSTRUCTION NO. 30.1

Defendants believe this instruction should be given.  It is very likely that the parties will be calling different numbers of witnesses and the jury should be told that the number of witnesses is not indicative of guilt or innocence.  Moreover, it is important for the jury to understand that they are the final arbiter of a witness's credibility, even if that credibility is not attacked during cross-examination by the attorneys.  This instruction is short, causes no prejudice to the Government's case and can only benefit the cause of justice by ensuring that the jury fully understands what conclusions are permissible and impermissible to draw.

COURT'S INSTRUCTION NO. ___

GOVERNMENT'S PROPOSED INSTRUCTION NO. 33

You have heard testimony that defendant Mirali Zarrabi, and agents of defendant Surgery Center Management, LLC, made a statement. It is for you to decide (1) whether the defendant made the statement, and (2) if so, how much weight to give to it.  In making those decisions, you should consider all the evidence about the statement, including the circumstances under which the defendant may have made it.

Source:   Ninth Circuit Model Criminal Jury Instruction No. 4.1
          [Statements by Defendant] (2010 ed.).

9

1
2

DEFENDANTS' OBJECTION TO

GOVERNMENT'S PROPOSED INSTRUCTION NO. 33

3

4      Defendants object to the inclusion of this instruction.  As the

5  comments to Ninth Circuit Model Criminal Jury Instruction No. 4.1,

6  make clear, this jury instruction is for confessions or self-

7  incriminating statements and none of the parties in this case have

8  confessed.  During meet and confer discussions with the Government,

9  the Government responded that this instruction should be "given at

10  least with regard to Dr. Zarrabi, who gave recorded statements in

11  interviews, and SCM, whose agent, Charles Klasky, has pleaded guilty

12  and is going to testify at trial about his involvement in the crimes

13  as SCM's agent."  Even as modified, Defendants continue to object.

14  First, all Defendants have objected to the admission of Dr. Zarrabi's

15  recorded statements and if the Court properly sustains those

16  objections, there will be no predicate for this instruction.  Second,

17  even if the statements were to be admitted, this instruction

18  prejudicially directs the jury's attention to those statements, by

19  noting them specifically in the jury charge.  Second, with respect to

20  SCM and Charles Klasky, it is not appropriate for the court to

21  instruct the jury that Klasky was "acting as an agent of SCM" when he

22  acted as he did.  That is a factual determination for the jury to

23  decide.

24
25
26
27
28

10

1

GOVERNMENT'S RESPONSE TO DEFENDANTS' OBJECTION TO

2

GOVERNMENT'S PROPOSED INSTRUCTION NO. 33

3

4      The government continues to believe that this instruction, which

5   is based on a Ninth Circuit model instruction, is appropriate at

6   least as to defendants Zarrabi and SCM.  If the Court does not

7   ultimately allow the statements to be admitted, the parties and the

8   Court can revisit the need for this instruction.

COURT'S INSTRUCTION NO. ____

DEFENDANTS' PROPOSED INSTRUCTION NO. 37.1

You have heard testimony from witnesses who work for government agencies.  The fact that a witness may be employed by the federal or state government as an official does not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

At the same time, it is quite legitimate for defense counsel to try to attack the credibility of a government agency witness on the grounds that his or her testimony may be colored by a personal or professional interest in the outcome of the case.

It is your decision, after reviewing all the evidence, whether to accept the testimony of a government agency witness and to give that testimony whatever weight, if any, you find it deserves.

Sources:   1 Sand, <u>Modern Federal Jury Instructions-Criminal</u> ¶ 7-16
(Law Enforcement Witness) (Matthew Bender ed. 2020)
(modified); Third Circuit Model Criminal Jury Instruction
4.18 (same); <u>United States v. Bethancourt</u>, 65 F.3d 1074,
1080 (3d Cir. 1995) ("[T]he government witnesses' testimony
was not entitled to any greater consideration because of
their federal employment."); <u>Bush v. United States</u>, 375
F.2d 602, 605 n.6 (D.C. Cir. 1967) (affirming lower court
instruction "to give an officer's testimony no weight
different from that given any other witness simply
because he was an officer.").

12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOVERNMENT'S OBJECTION TO

DEFENDANTS' PROPOSED INSTRUCTION NO. 37.1

The government objects to the inclusion of this instruction. This argumentative instruction appears to suggest to the jury that law enforcement testimony should be treated with caution in the same manner as cooperator testimony -- for example, by stating that it is "quite legitimate for defense counsel to try to attack the credibility of a law enforcement witness on the grounds that his testimony may be colored by a personal or professional interest in the outcome of the case" -- which is without support in the Ninth Circuit.

The cases cited by defendants in support of this instruction stand for the unremarkable proposition that testimony of law enforcement witnesses should be treated no differently than the testimony of other witnesses.  Paragraph two of this proposed instruction, however, does just that by suggesting that law enforcement witnesses have a "personal or professional interest in the outcome of the case" that may affect their credibility.

13

DEFENDANTS' RESPONSE TO GOVERNMENT'S OBJECTION TO
DEFENDANTS' PROPOSED INSTRUCTION NO. 37.1

Defendants believe this instruction should be given, especially given that the Government has made clear that it intends to use law enforcement witnesses to present substantial portions of its case. As the sources cited by Defendants make clear, this instruction is well supported in the law and the fact that it is not always given in every Ninth Circuit case is not a reason why it should not be given here, especially since Defendants have specifically asked for it and given the role that law enforcement witnesses will likely play at trial. The Government's claim that this instruction suggests that law enforcement witnesses should be treated differently is contradicted by the instruction itself, which makes clear that the jury is the ultimate arbiter of credibility.

14

COURT'S INSTRUCTION NO. ___

DEFENDANTS' PROPOSED INSTRUCTION NO. 39.1


[*Defendants reserve the right to propose a missing evidence instruction at a later date, if appropriate*].

Source:   Manual of Model Criminal Jury Instructions for the District

Courts of the Ninth Circuit § 4.19 [Lost or Destroyed

Evidence] (2010 ed., last updated 3/2021).

15

GOVERNMENT'S OBJECTION TO

DEFENDANTS' PROPOSED INSTRUCTION NO. 39.1

Although the government understands that defendants are simply reserving their rights as to this instruction, they have not provided any basis for the inclusion of this instruction, which is appropriate only where there is a showing that there was "evidence lost or destroyed by the government."  Ninth Circuit Model Criminal Jury Instruction No. 4.19 cmt.  Aside from defendant SCM's claims that materials Charles Klasky may have deleted at the end of his employment constituted exculpatory evidence -- a factual assertion that the government disputes and for which the Court has found no evidence (see Dkt. 1338) -- defendants have not identified any evidence that they believe has been "lost or destroyed by the government."

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' RESPONSE TO GOVERNMENT'S OBJECTION TO
DEFENDANTS' PROPOSED INSTRUCTION NO. 39.1

Defendants have only reserved their right to ask for this
instruction, based on what may be revealed at trial.  For example,
while the Government claims that only "SCM" has claimed that
important evidence has been deleted, SCM is a defendant in this case
and its cross examination during trial is likely to reveal important
evidence that corroborates its claim.  The Court should reserve
judgment on this instruction until after the parties have rested, and
only if Defendants actually seek a missing evidence instruction.

1          COURT'S INSTRUCTION NO. ___

2        GOVERNMENT'S PROPOSED INSTRUCTION NO. 40

3

4      The indictment charges that the offenses alleged were committed

5  "on or about" or "in or about" certain dates.

6      Although it is necessary for the government to prove beyond a

7  reasonable doubt that the offenses were committed on a date

8  reasonably near the dates alleged in the indictment, it is not

9  necessary for the government to prove that the offenses were

10  committed precisely on the dates charged.

11     The indictment also alleges approximate amounts of money

12  involved in the crimes charged.  It is not necessary for the

13  government to prove the exact or precise amount of money alleged in

14  the indictment.

15     The indictment also charges the defendants with committing the

16  charged offenses in several ways, using the conjunctive word "and."

17  However, it is sufficient if the government proves that the

18  defendants committed the offense in only one of the several ways.

19

20  Sources:  Ninth Circuit Model Criminal Jury Instruction No. 3.18 [On

21           or About - Defined] (2010 ed.; approved 6/2015) (modified

22           to include "in or about"); 1A O'Malley, Grenig, & Lee,

23           Federal Jury Practice & Instructions, § 13.05 ["On or

24           About" - Explained] (modified to include "in or about"),

25           § 13.06 [Approximate Amount - Explained] (6th ed. 2008);

26           United States v. Bonanno, 852 F.2d 434, 441 (9th Cir.

27           1988).

28

1       DEFENDANTS' PARTIAL OBJECTION TO

2      GOVERNMENT'S PROPOSED INSTRUCTION NO. 40

3

4       Defendants object to the inclusion of the final two sentences of

5  this instruction, which state "[t]he indictment also charges the

6  defendants with committing the charged offenses in several ways,

7  using the conjunctive word 'and.'  However, it is sufficient if the

8  government proves that the defendants committed the offense in only

9  one of the several ways."  During meet and confer discussions with

10  the Government, the Government stated that these sentences were meant

11  to refer to the mail and wire fraud statutes, which, at first glance,

12  appear to be written to include two alternative means by which they

13  can be violated.  See 18 U.S.C. § 1343 ("Whoever, having devised or

14  intending to devise any scheme or artifice to defraud, or for

15  obtaining money or property by means of false or fraudulent

16  pretenses, representations, or promises, transmits or causes to be

17  transmitted by means of wire, radio, or television communication in

18  interstate or foreign commerce, any writings, signs, signals,

19  pictures, or sounds for the purpose of executing such scheme or

20  artifice, shall be fined under this title or imprisoned not more than

21  20 years, or both."); see also 18 U.S.C. § 1341 (nearly identical

22  mail fraud statute).

23       There was a time when lower courts interpreted the two clauses

24  separated by the "or" to mean that 18 U.S.C 1341 (mail fraud) and

25  1343 (wire fraud) could be violated via two different means:  (i) a

26  scheme to "obtain money or property by means of false or fraudulent

27  pretenses, representations" or (ii) a "scheme to defraud," without

28

19

any false representations.  Thirty years ago, however, the Supreme Court decided McNally v. United States, 483 U.S. 350, 358, 359 (1987) and held that the phrase "to defraud" and the phrase "to obtain money or property" do not represent separate crimes, but instead modify each other, such that the phrase "obtain money or property by means of false or fraudulent pretenses, representations" simply describes what constitutes a "scheme to defraud."  See Cleveland v. United States, 531 U.S. 12, 26 (2000) (rejecting the "Government conten[tion] that § 1341, as amended in 1909, defines two independent offenses: (1) 'any scheme or artifice to defraud' and (2) 'any scheme or artifice . . . for obtaining money or property by means of false or fraudulent pretenses, representations, or promises'" and explaining that "in McNally, we recognized that '[b]ecause the two phrases identifying the proscribed schemes appear in the disjunctive, it is arguable that they are to be construed independently.' But we rejected that construction of the statute, instead concluding that the second phrase simply modifies the first by 'making it unmistakable that the statute reached false promises and misrepresentations as to the future as well as other frauds involving money or property' . . . Were the Government correct that the second phrase of § 1341 defines a separate offense, the statute would appear to arm federal prosecutors with power to police false statements in an enormous range of submissions to state and local authorities . . . [W]e declined to attribute to § 1341 a purpose so encompassing where Congress has not made such a design clear."); see also Loughrin v. United States, 573 U.S. 351, 359 (2014) (explaining that "despite the word 'or' [in Section 1341] McNally understood that provision as

20

setting forth just one offense—using the mails to advance a scheme to defraud.  The provision's back half . . . merely codified a prior judicial decision applying the front half: In other words, the back clarified that the front included certain conduct, rather than doing independent work.").  Just last year, in the Supreme Court's latest opinion interpreting the wire fraud statute, the Supreme Court again confirmed that Section 1343's "disjunctive language" must be read as a "unitary whole," such that "the latter phrase" in fact "limits the former," rather than constituting two separate crimes.  Kelly v. United States, 140 S. Ct. 1565, 1571 (2020).  To the extent that the Ninth Circuit at one time interpreted Section 1341 and Section 1343 to contain two different "alternatives," those cases have now been squarely overruled.  See also United States v. Kalu, 791 F.3d 1194, 1202-03 (10th Cir. 2015) ("The underlying premise of the Government's argument—that § 1341 contains two separate offenses with distinct elements—is incorrect. The Supreme Court has clarified . . . that § 1341 contains a single offense and does not separately prohibit a "scheme or artifice to defraud" and a scheme or artifice "for obtaining money or property by means of false or fraudulent pretenses."); United States v. Males, 459 F.3d 154, 157 (2d Cir. 2006) ("It is well established that the language in § 1343, 'scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises,' is not to be read in the disjunctive. . . . [T]he Supreme Court[] [has] command[ed] that the statute be read conjunctively to require that the defendant not only devise a scheme or artifice, but also use that scheme or artifice to obtain money or property."); United States v.

21

Berroa, 856 F.3d 141, 149 (1st Cir. 2017) (explaining that the "bank fraud statute, unlike the mail fraud statute, may be violated in two distinct ways") (emphasis added).

Because the Supreme Court has made clear that there is only one means of violating the mail and wire fraud statutes—by devising a scheme to defraud to obtain money or property executed through material false representations—there is no need for the final two sentences of the Government's proposed instruction and the Court should not include those sentences in its jury charge.

1  GOVERNMENT'S RESPONSE TO DEFENDANTS' PARTIAL OBJECTION TO
2  GOVERNMENT'S PROPOSED INSTRUCTION NO. 40

3

4  Defendants misstate the law.  <u>McNally v. United States</u>, 483 U.S.
5  350, 358-60 (1987), held that regardless of how the government is
6  proceeding in a mail or wire fraud case, the object of the scheme
7  must be to deprive the victim of money or property, not an intangible
8  right.  (The specific context was the intangible right to honest
9  services.)  Congress responded to <u>McNally</u> by enacting 18 U.S.C.
10  § 1346, which reinstated honest services fraud as something covered
11  by 18 U.S.C.  §§ 1341 and 1343.  <u>McNally</u> still stands for the
12  proposition that Sections 1341 and 1343 do not extend to any other
13  intangible rights.  But it did not merge the two ways the government
14  can prove up a violation.

15  The Ninth Circuit in <u>United States v. Woods</u>, 335 F.3d 993, 997-
16  98 (9th Cir. 2003) (which is cited in Ninth Circuit Model Criminal
17  Jury Instruction No. 8.121), explicitly established that, at least in
18  the Ninth Circuit, there are still two distinct ways to prove
19  mail/wire fraud, one of which is a "scheme to defraud" without any
20  specific false representations.  Indeed, it approved of an
21  instruction including the following language:

22      <u>A defendant's actions can constitute a scheme to defraud
    even if there are no specific false statements involved.</u>
23      <u>The deception need not be premised upon words or statements
    standing alone.</u>  The arrangement of the words or the
24      circumstances in which they are used may create an
    appearance which is false or deceptive, even if the words
25      themselves fall short of this.  Thus, even if statements as
    part of the scheme are not literally false, you may
26      consider whether the statements taken as a whole were
    misleading and deceptive.  <u>Evidence beyond a reasonable
27      doubt that a scheme was reasonably calculated to deceive is
    sufficient to establish a scheme to defraud.</u>

28

Id. (emphasis added).  Accordingly, the government's proposed instruction comports with existing Ninth Circuit law, and the Court should give the instruction as requested.

1                    COURT'S INSTRUCTION NO. ___

2             GOVERNMENT'S PROPOSED INSTRUCTION NO. 43

3

4      The defendants are charged in Counts One through Twenty-Eight of

5  the First Superseding Indictment with executing a mail fraud scheme

6  on or about the dates set forth below, in violation of Section 1341

7  of Title 18 of the United States Code.

8

| COUNT | DATE | ITEM MAILED |
|---|---|---|
| ONE | 1/29/13 | CMS HCFA 1500 claim form for $15,971 for titration study (CPT code 95811) for D.S. on December 10, 2011 and titration study SSR, mailed to United Healthcare |
| TWO | 2/13/13 | Check No. I0001682492 issued by Tricare – West Region Claims payable to Classic SleepCare LLC in the amount of $2,969.59, including $187.01 in payment of a claim for CPAP accessories (CPT codes A7032, A7034, A7037, and A7038) provided to J.J. on January 10, 2013, mailed to Classic SleepCare LLC |
| THREE | 2/27/13 | Check No. I0001755925 issued by Champus – Tri West WI payable to Classic SleepCare LLC in the amount of $4,085.34, including $285.14 in payment of a claim for CPAP accessories (CPT codes A7032, A7034, A7035, A7037, A7038, and A7039) provided to A.F. on January 30, 2013, mailed to Classic SleepCare LLC |
| FOUR | 3/6/13 | Check No. I0001792136 issued by Champus – Tri West WI payable to Classic SleepCare LLC in the amount of $2,747.32, including $50.49 in payment of a claim for CPAP accessories (CPT codes A7033 and A7038) provided to L.M. on February 21, 2013, mailed to Classic SleepCare LLC |

| COUNT | DATE | ITEM MAILED |
|-------|------|-------------|
| FIVE | 3/12/13 | Check No. 0806075258 issued by HealthNet payable to Classic SleepCare LLC in the amount of $3,559.65, including $991.64 in payment of claims for CPAP accessories (CPT codes A7032, A7034, A7037, and A7038) provided to J.C. on 8/24/12 and $880.02 in payment of claims for CPAP accessories (CPT codes A7032, A7034, A7035, A7037, A7038, and A7039) provided to J.C. on 11/27/12, mailed to Classic SleepCare LLC |
| SIX | 3/15/13 | Check No. 121301 issued by Operating Engineers Health and Welfare Fund payable to Classic SleepCare LLC in the amount of $185.03 in payment of a claim for an APAP (CPT code E0601) provided to E.J. on July 31, 2011, mailed to Classic SleepCare LLC |
| SEVEN | 4/3/13 | Check No. I0001937686 issued by Champus – Tri West WI payable to Classic SleepCare LLC in the amount of $3,280.82, including $220.64 in payment of a claim for CPAP accessories (CPT codes A7030, A7035, A7037, A7038, and A7039) provided to M.B. on March 21, 2013, mailed to Classic SleepCare LLC |
| EIGHT | 4/5/13 | Check No. 5692250094SRS issued by Tricare – West Claims payable to Classic SleepCare LLC in the amount of $310.75, including $195.94 in payment of a claim for CPAP accessories (CPT codes A7032, A7034, A7037, and A7038) provided to L.W. on March 21, 2013, mailed to Classic SleepCare LLC |
| NINE | 4/15/13 | Check No. 92301737 issued by United Healthcare payable to Classic SleepCare LLC in the amount of $130.50 in payment of a claim for CPAP accessories (CPT codes A7032, A7034, A7037, and A7038) provided to T.L. on March 30, 2013, mailed to Classic SleepCare LLC |
| TEN | 4/24/13 | Check No. I0002014136 issued by Tricare – West Region Claims payable to Classic SleepCare LLC in the amount of $8,515.20, including $224.39 in payment of a claim for CPAP accessories (CPT codes A7030, A7037, and A7038) provided to T.S. on March 29, 2013, mailed to Classic SleepCare LLC |
| ELEVEN | 5/8/13 | CMS HCFA 1500 claim form for $15,540 for titration study (CPT code 95811) for V.C. on June 2, 2011 and titration study SSR, mailed to Anthem |

| COUNT | DATE | ITEM MAILED |
|-------|------|-------------|
| TWELVE | 6/5/13 | Check No. 38134488 issued by GEHA payable to Lee K. Au, MD in the amount of $3,684.00 in payment of a claim for Lap-Band surgery for S.G. on August 31, 2012, mailed to Dr. Au |
| THIRTEEN | 6/5/13 | CMS UB04 claim form for $16,525 for PSG (CPT 95810) for A.A. on October 14, 2010 and PSG SSR, mailed to GEHA |
| FOURTEEN | 6/12/13 | Check No. 169205 issued by Operating Engineers Health and Welfare Fund payable to Independent Medical Services, Inc. in the amount of $888.90 in payment of a claim for titration study (CPT code 95811) for K.R. on February 16, 2012, mailed to IMS |
| FIFTEEN | 7/25/13 | Check No. 0108284910 issued by Anthem payable to Independent Medical Services, Inc. in the amount of $6,687.25, including $3,245.00 in payment of a claim for PSG (CPT code 95810) for S.K. on February 9, 2012, mailed to IMS |
| SIXTEEN | 9/7/13 | Check issued by Anthem payable to P.R. in the amount of $6,076.16 in payment of a claim for Lap-Band surgery (CPT code 43770) for P.R. on September 8, 2011, mailed to P.R. |
| SEVENTEEN | 11/9/13 | Check issued by Anthem payable to P.R. in the amount of $6,076.16 in payment of a claim for Lap-Band surgery (CPT code 43770) for P.R. on September 8, 2011, mailed to P.R. |
| EIGHTEEN | 12/18/13 | Check No. 240646 issued by Operating Engineers Health and Welfare Fund payable to Classic SleepCare LLC in the amount of $527.28 in payment of a claim for CPAP accessories (CPT Codes A7032, A7034, A7035, A7037, A7038, A7039) provided to C.R. on August 28, 2013, mailed to Classic SleepCare LLC |
| NINETEEN | 12/18/13 | Check No. 238759 issued by Operating Engineers Health and Welfare Fund payable to Classic SleepCare LLC in the amount of $148.02 in payment of a claim for APAP (CPT Code E0601) provided to N.A. on June 24, 2011, mailed to Classic SleepCare LLC |
| TWENTY | 2/19/14 | Check No. 4981383 issued by California's Valued Trust payable to Independent Medical Services, Inc. in the amount of $548.93 in payment of a claim for PSG (CPT code 95810) for S.Z. on February 7, 2014, mailed to IMS |

| COUNT | DATE | ITEM MAILED |
|---|---|---|
| TWENTY-ONE | 3/31/14 | Check No. 854866457 issued by Blue Cross Blue Shield of Massachusetts payable to T.M. in the amount of $1,072.25 in payment of a claim for titration study (CPT code 95811) for F.M. on March 14, 2014, mailed to T.M. |
| TWENTY-TWO | 4/4/14 | Check No. 278850 issued by Operating Engineers Health & Welfare Fund in the amount of $514.08 payable to Independent Medical Services, Inc. in payment of a claim for Lap-Band surgery (CPT code 43770) for S.N. on May 17, 2013, mailed to IMS |
| TWENTY-THREE | 4/8/14 | Check No. 239426 issued by Operating Engineers Health & Welfare Fund payable to Modern Institute of Plastic Surgery in the amount of $5,745.42 in payment of a claim for titration study (CPT code 95811) for A.W. on February 19, 2011, mailed to MIPS |
| TWENTY-FOUR | 8/21/14 | Check No. 5064977 issued by California's Valued Trust payable to Independent Medical Services, Inc. in the amount of $879.28, including $601.39 in payment of a claim for titration study (CPT code 95811) for S.Z. on August 1, 2014, mailed to IMS |
| TWENTY-FIVE | 9/12/14 | Check No. 50006640 issued by Blue Shield of California payable to T.R. in the amount of $421.44 in payment of a claim for titration study (CPT code 95811) for T.R. on August 8, 2014, mailed to T.R. |
| TWENTY-SIX | 10/1/14 | Check No. 356653 issued by Operating Engineers Health & Welfare Fund payable to Independent Medical Services in the amount of $3,213.01 in payment of a claim for Lap-Band surgery (CPT code 43770) for S.N. on May 17, 2013, mailed to IMS |
| TWENTY-SEVEN | 1/8/15 | Check No. 394464 issued by Operating Engineers Health & Welfare Fund payable to San Diego ASC, LLC in the amount of $24,374.82 in payment for a claim for Lap-Band surgery (CPT code 43770) for S.N. on May 17, 2013, mailed to San Diego ASC, LLC |
| TWENTY-EIGHT | 3/22/16 | Check No. 0121443507 issued by Anthem Blue Cross payable to Independent Medical Services, Inc. in the amount of $782.75 in payment of a claim for PSG (CPT code 95810) for K.M. on August 15, 2014, mailed to IMS |

For a defendant to be found guilty of mail fraud, the government must prove each of the following elements beyond a reasonable doubt:

<u>First</u>, the defendant knowingly participated in or devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.  Deceitful statements of half-truths may constitute false or fraudulent representations;

<u>Second</u>, the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

<u>Third</u>, the defendant acted with the intent to defraud; that is, the intent to deceive and cheat; and

<u>Fourth</u>, the defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

In determining whether a scheme to defraud exists, you may consider not only the defendant's words and statements, but also the circumstances in which they are used as a whole.

A mailing is caused when one knows that the mails will be used in the ordinary course of business or when one can reasonably foresee such use. It does not matter whether the material mailed was itself false or deceptive so long as the mail was used as a part of the scheme, nor does it matter whether the scheme or plan was successful or that any money or property was obtained

Source:    Ninth Circuit Model Criminal Jury Instruction No. 8.121
           (2010 ed.; approved 6/2021) [Mail Fraud] (modified to add
           chart of specific counts).

1          DEFENDANTS' OBJECTION TO

2     GOVERNMENT'S PROPOSED INSTRUCTION NO. 43

3

4          Defendants have numerous objections to the Government's proposed

5     instruction regarding the elements of mail fraud.

6          **First**, as proposed, the Government's instruction informs the jury

7     that the mail fraud statute can be violated in two ways:  if the

8     defendant knowingly participated in, or devised, either (i) a "scheme

9     or plan to defraud," **<u>or</u>** (ii) "a scheme or plan for obtaining money or

10    property by means of false or fraudulent pretenses, representations,

11    or promises," thus suggesting that the Government may not have to

12    prove a false representation to obtain conviction.  In meet and

13    confer discussions with the Government, the Government advised that

14    it believes that there are two alternative offenses contained within

15    Section 1341 and that it can prove the existence of a "scheme to

16    defraud" without having to prove any false representations.  The

17    Government is wholly incorrect.

18         There *was* a time when lower courts interpreted the two clauses

19    separated by the "or" to mean that 18 U.S.C 1341 (mail fraud) and

20    1343 (wire fraud) could be violated via two different means:  (i) a

21    scheme to "obtain money or property by means of false or fraudulent

22    pretenses, representations" or (ii) a "scheme to defraud," without

23    any false representations.  Thirty years ago, however, the Supreme

24    Court decided <u>McNally v. United States</u>, 483 U.S. 350, 358, 359 (1987)

25    and held that the clause "to defraud" and the clause "to obtain money

26    or property" do *not* represent separate crimes, but instead modify

27    each other, such that the clause "obtain money or property by means

28
                                    31

of false or fraudulent pretenses, representations" simply describes
what constitutes a "scheme to defraud."  See Cleveland v. United
States, 531 U.S. 12, 26 (2000) (rejecting the "Government
conten[tion] that § 1341, as amended in 1909, defines two independent
offenses: (1) 'any scheme or artifice to defraud' and (2) 'any scheme
or artifice . . . for obtaining money or property by means of false
or fraudulent pretenses, representations, or promises'" and
explaining that "in McNally, we recognized that '[b]ecause the two
phrases identifying the proscribed schemes appear in the disjunctive,
it is arguable that they are to be construed independently.' But we
rejected that construction of the statute, instead concluding that
the second phrase simply modifies the first by 'making it
unmistakable that the statute reached false promises and
misrepresentations as to the future as well as other frauds involving
money or property'. . . Were the Government correct that the second
phrase of § 1341 defines a separate offense, the statute would appear
to arm federal prosecutors with power to police false statements in
an enormous range of submissions to state and local authorities . . .
[W]e declined to attribute to § 1341 a purpose so encompassing where
Congress has not made such a design clear."); see also Loughrin v.
United States, 573 U.S. 351, 359 (2014) (explaining that "despite the
word 'or' [in Section 1341 and Section 1343] McNally understood that
provision as setting forth just one offense—using the mails to
advance a scheme to defraud. The provision's back half . . . merely
codified a prior judicial decision applying the front half: In other
words, the back clarified that the front included certain conduct,
rather than doing independent work.").

1    Indeed, just last year, in the Supreme Court's latest opinion

2    interpreting the wire fraud statute, the Supreme Court again

3    confirmed that Section 1343's "disjunctive language" must be read as

4    a "unitary whole," such that "the latter phrase" in fact "limits the

5    former," rather than constituting two separate crimes.  Kelly v.

6    United States, 140 S. Ct. 1565, 1571 (2020).  To the extent that the

7    Ninth Circuit might, at one time, have interpreted Section 1341 and

8    Section 1343 to contain two different "alternatives," those cases

9    have now been squarely overruled.  See also United States v. Kalu,

10   791 F.3d 1194, 1202-03 (10th Cir. 2015) ("The underlying premise of

11   the Government's argument—that § 1341 contains two separate offenses

12   with distinct elements—is incorrect. The Supreme Court has clarified

13   . . . that § 1341 contains a single offense and does not separately

14   prohibit a "scheme or artifice to defraud" and a scheme or artifice

15   "for obtaining money or property by means of false or fraudulent

16   pretenses."); United States v. Males, 459 F.3d 154, 157 (2d Cir.

17   2006) ("It is well established that the language in § 1343, 'scheme

18   or artifice to defraud, or for obtaining money or property by means

19   of false or fraudulent pretenses, representations, or promises,' is

20   not to be read in the disjunctive . . . [T]he Supreme Court[] [has]

21   command[ed] that the statute be read conjunctively to require that

22   the defendant not only devise a scheme or artifice, but also use that

23   scheme or artifice to obtain money or property."); United States v.

24   Berroa, 856 F.3d 141, 149 (1st Cir. 2017) (explaining that the "bank

25   fraud statute, *unlike the mail fraud statute*, may be violated in two

26   distinct ways") (emphasis added).

27   Because the Supreme Court has made clear that there is only one

28

33

means of violating the mail and wire fraud statutes—by devising a
scheme to defraud to obtain money or property that is executed
through material false representations—the jury should be informed
that the Government must prove that the defendant knowingly
participated in or devised a scheme or plan to defraud, *which means* a
scheme or plan for obtaining money or property by means of false or
fraudulent pretenses, representations, or promises, as Defendants'
proposed instruction (below) states.

**Second**, the Government's proposed instruction does not provide
the jury with adequate information about what constitutes a false
representation and what does not.  See United States v. Lindsey, 850
F.3d 1009, 1013 (9th Cir. 2017) ("In order to prove a "scheme to
defraud," the jury must find that the defendant employed "material
falsehoods.")  (citing Neder, 527 U.S. at 20.); In re American
Apparel, Inc. Shareholder Litigation, 855 F. Supp. 2d 1043, 1072–73
(C.D. Cal. 2012) (aspirational statements are not false); In re
Actimmune Marketing Litigation, 2009 WL 3740648 (N.D. Cal. 2009)
("Even if the statement was potentially misleading, the
representative's comment that [the company] was 'promising'
constitutes nonactionable puffery, in that it is not the type of
"'specific or absolute'" statement of fact that can support a claim
of fraud."); United States v. Shields, 844 F.3d 819, 823 (9th Cir.
2016) ("[A] nondisclosure [] can support a [wire] fraud charge only
when there exists an independent duty that has been breached by the
person so charged.") (quoting Eller v. EquiTrust Life Ins. Co., 778
F.3d 1089, 1092 (9th Cir. 2015)).

Moreover, the Government's proposed instruction does not define

34

"half truths" which is necessary for the jury to understand the law. See Universal Health Services, Inc. v. United States, 136 S. Ct. 1989, 2000 (a half-truth is a "representation[ ] that state[s] the truth only so far as it goes, while omitting critical qualifying information"); United States v. Autuori, 212 F.3d 105, 118 (2d Cir. 2000) (a "half-truth[]" for purposes of the wire fraud statute is a "partial or ambiguous statement[] that require[s] further disclosure in order to avoid being misleading."); United States v. Holmes, No. 5:18-cr-00258-EJD, 2020 U.S. Dist. LEXIS 24551, at *39 (N.D. Cal. Feb. 11, 2020)(describing a half truth as a statement that omitted "critical qualifying information" about its contents); Newcal Industries, Inc. v. Ikon Office Solution, 513 F.3d 1038, 1053 (9th Cir. 2008) (general, vague, or subjective assertions about a product constitute non-actionable puffery); United States v. Gay, 967 F.2d 322, 329 (9th Cir. 1992) ("'Puffing' concerns expressions of opinion, as opposed to the knowingly false statements of fact which the law proscribes.");

**Third**, the Government's proposed instruction does not make clear that it is not enough for the Government to prove that the false statements at issue caused someone to enter into a transaction that he or she would otherwise have avoided—the false statements need to misrepresent an essential element of the bargain. United States v. Takhalov, 827 F.3d 1307, 1310 (11th Cir. 2016) ("That a defendant merely induced the victim to enter into a transaction that he otherwise would have avoided is . . . insufficient to show wire fraud."); United States v. Shellef, 507 F.3d 82, 108 (2d Cir. 2007) (recognizing "a fine line between schemes that do no more than cause

their victims to enter into transactions that they would otherwise avoid— which do not violate the mail or wire fraud statutes—and schemes that depend for their completion on a misrepresentation of an essential element of the bargain—which do violate the mail and wire fraud statutes").

**Fourth**, the Government's articulation of the <u>mens rea</u> for mail fraud does not adequately capture the Ninth Circuit's recent decision, <u>United States v. Miller</u>, 953 F.3d 1095, 1101 (9th Cir. 2020), where the Circuit found that the Circuit's Model Instructions were not accurate with respect to the definition of a "specific intent to defraud." <u>Miller</u> does not just say that specific intent is an intent to "deceive and cheat," as the Government's proposed instruction suggests, but further explains what that means:  "To have the intent to deceive and cheat, the government must prove that the defendant acted with the intent not only to make false statements, but also to obtain from a victim money or property by means of those deceptions, that is, acted for the purpose of causing cognizable harm to the victim.  If the Government proves only that the defendant schemed to deceive the victim, but not to deprive the victim of anything of value, you must find the defendant not guilty. "  <u>Id.</u>

**Fifth**, the Government's proposed instruction does not include a willfulness instruction, but it should.  See <u>United States v. Leveque</u>, 283 F.3d 1098, 1105 (9th Cir. 2002) (in wire fraud case, "intent to defraud" means "to act willfully, and with the specific intent to deceive or cheat for the purpose of either causing some financial loss to another, or bringing about some financial gain to oneself") (emphasis added) (citing *United States v. Cloud*, 872 F.2d

36

846, 852 n. 6 (9th Cir. 1989); but see United States v. Larsen, 810
Fed. Appx. 508, 510 (9th Cir. 2020) (holding, in unpublished
decision, that bank fraud's mens rea requirement does not require a
"knowledge of unlawfulness").  Numerous other Circuits have found
that the mail and wire fraud statutes require the Government to prove
that the defendant participated in the scheme "willfully."  *See*
United States v. Margiotta, 688 F.2d 108, 129 (2d Cir. 1982) (a mail
or wire fraud conviction "require[s] that the defendant must have
acted willfully," meaning that the Government is obligated to prove
the defendant knew his actions were "contrary to law."); United
States v. Golitshcek, 808 F.2d 195, 202-03 (2d Cir. 1986) (wire fraud
charges "required" the Government to prove the defendant possessed
"knowledge of a legal obligation."); United States v. Rhone, 864 F.2d
832, 834 (D.C. Cir. 1989) (wire fraud requires the jury to find
defendant "knowingly d[id] an act which the law forbids, intending
with bad purpose, either to disobey or disregard the law" and
reversing where trial court instructed "ignorance of the law is no
excuse."); United States v. St. Gelais, 952 F.2d 90, 93-94 (5th Cir.
1992) (wire fraud requires willful violation, meaning the defendant
acted "with the specific intent to do something the law forbids, that
is to say, with bad purpose either to disobey or disregard the
law."); United States v. Ubieta, 630 F. App'x 964, 979 (11th Cir.
2015) (citing approvingly definition of "willfully" in conspiracy to
commit wire and mail fraud as acting "'voluntarily and purposefully
with the intent to do something the law forbids; that is, with the
bad purpose to disobey or disregard the law'"); L. Sand, et al,
Modern Fed. Jury Inst. § 44-11 ("the government must prove beyond a

reasonable doubt" that the defendant participated in the scheme to defraud "willfully," meaning that he acted "knowingly and purposely, with an intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law.").

Instead of the Government's Proposed Instruction on mail fraud, the jury should be instructed as follows, which incorporates each of the points discussed above:

[ELEMENTS OF MAIL FRAUD]

The defendants are charged in Counts One through Twenty-Eight of the First Superseding Indictment with executing a mail fraud scheme on or about the dates set forth below, in violation of Section 1341 of Title 18 of the United States Code.

[INSERT CHART OF COUNTS]

For a defendant to be found guilty of mail fraud, the government must prove each of the following elements beyond a reasonable doubt:

<u>First</u>, the defendant knowingly participated in or devised a scheme or plan to defraud, which means a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.

A representation is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made. A representation is fraudulent if it was falsely made with the intent to deceive. However, a representation, even though knowingly false, is not fraudulent unless it was made with the intent to be communicated to the persons who would act upon that representation to

their detriment. Moreover, expressions of opinion, aspirations, or goals, or general, subjective claims about a product cannot be used as a basis to find that a defendant made false and fraudulent representations.

A misrepresentation includes a statement that is partial or ambiguous, such that it required further disclosure in order to avoid being misleading. This type of misrepresentation is sometimes called a "half-truth." Deceitful statements of half-truths may constitute false or fraudulent representations;

However, a nondisclosure or concealment cannot constitute a false or fraudulent representation;

Second, the falsehoods made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

However, it is not enough for the government to prove that those statements caused someone to enter into a transaction that he or she would otherwise have avoided. In order to prove that a scheme to defraud existed, the government must prove beyond a reasonable doubt that the materially false and fraudulent pretenses, representations, and promises misrepresented an essential element of the bargain.

Third, the defendant participated in the scheme knowingly, willfully, and with the specific intent to defraud the victims of money or property, that is, the specific intent to deceive and cheat. To have the intent to deceive and cheat, the government must prove that the defendant acted with the intent not only to make false statements, but also to obtain from a victim money or property by means of those deceptions, that is, acted for the purpose of causing

cognizable harm to the victim.  If the Government proves only that the defendant schemed to deceive the victim, but not to deprive the victim of anything of value, you must find the defendant not guilty.

"Willfully" means to act with knowledge that one's conduct is unlawful and with the specific intent to do something the law forbids, that is to say with the bad purpose to disobey or disregard the law. The person need not be aware of the specific law or rule that his conduct may be violating.  A defendant's conduct was not "willful" if it was due to negligence, inadvertence or mistake.

An act is done "knowingly" if the defendant is aware of the act and does not act through ignorance, mistake, or accident.

Fourth, the defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

In determining whether a scheme to defraud exists, you may consider not only the defendant's words and statements, but also the circumstances in which they are used as a whole.

A mailing is caused when one knows that the mails will be used in the ordinary course of business or when one can reasonably foresee such use. It does not matter whether the material mailed was itself false or deceptive so long as the mail was used as a part of the scheme, nor does it matter whether the scheme or plan was successful or that any money or property was obtained.

1

2

GOVERNMENT'S RESPONSE TO DEFENDANTS' OBJECTION TO

GOVERNMENT'S PROPOSED INSTRUCTION NO. 43

3

4      The government will insert full names in the chart.

5      With regard to defendants' other comments and edits, the

6  government objects to all of those deviations from the model

7  instruction.  For one thing, it is not correct that there is only one

8  way to prove wire fraud, see United States v. Woods, 335 F.3d 993,

9  997-98 (9th Cir. 2003).  Kelly v. United States, 140 S. Ct. 1565

10  (2020), cited by defendants, stands for the proposition that a scheme

11  to defraud must be a scheme aimed at depriving the victim of money or

12  property, not some intangible right.  Kelly does not address or

13  undermine the holding in Woods that the government need not prove

14  specific false statements in order to establish a scheme to defraud

15  the insurers.  For another, willfulness is not an element of these

16  crimes.  The way defendants have described false representations is

17  also at odds with Woods and Ninth Circuit law, which is accurately

18  reflected in the model instruction.  Finally, the structure of the

19  model instruction, which lists the elements and then provides

20  definitions of the terms, provides an easier to follow road map for

21  the jury.

22      The other additions are neither necessary nor approved by the

23  Ninth Circuit.  The government believes the Court should adopt the

24  Ninth Circuit model instruction as proposed.

25

26

27

28

COURT'S INSTRUCTION NO. ___

GOVERNMENT'S PROPOSED INSTRUCTION NO. 44

The defendants are charged in Counts Twenty-Nine through Thirty-One of the First Superseding Indictment with executing a wire fraud scheme on or about the dates set forth below, in violation of Section 1343 of Title 18 of the United States Code, as follows:

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| TWENTY-NINE | 1/16/15 | Facsimile from MIPS in California to Aetna in Kentucky regarding PSG conducted on June 18, 2011 for patient K.H., including PSG SSR and itemized bill for $17,365.00 |
| THIRTY | 1/22/15 | Facsimile from MIPS in California to Aetna in Kentucky regarding titration sleep study conducted on August 3, 2011 for patient K.H., including titration study SSR |
| THIRTY-ONE | 7/16/15 | Facsimile from MIPS in California to Aetna in Kentucky regarding PSG conducted on October 24, 2011 for patient V.G., including PSG SSR, History and Physical form, and insurance information |

In order for a defendant to be found guilty of wire fraud, in violation of Section 1343 of Title 18 of the United States Code, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant knowingly participated in or devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.  Deceitful statements of half-truths may constitute false or fraudulent representations;

42

1    *Second*, the statements made as part of the scheme were material;

2    that is, they had a natural tendency to influence, or were capable of

3    influencing, a person to part with money or property;

4    *Third*, the defendant acted with the intent to defraud, that is,

5    the intent to deceive and cheat; and

6    *Fourth*, the defendant used, or caused to be used, an interstate

7    wire communication to carry out or attempt to carry out an essential

8    part of the scheme.

9

10    In determining whether a scheme to defraud exists, you may

11    consider not only the defendant's words and statements, but also the

12    circumstances in which they are used as a whole.

13    A wiring is caused when one knows that a wire will be used in

14    the ordinary course of business or when one can reasonably foresee

15    such use.

16    It need not have been reasonably foreseeable to the defendant

17    that the wire communication would be interstate in nature.  Rather,

18    it must have been reasonably foreseeable to the defendant that some

19    wire communication would occur in furtherance of the scheme, and an

20    interstate wire communication must have actually occurred in

21    furtherance of the scheme.

22

23

24

25    Source:   Ninth Circuit Model Criminal Jury Instruction No. 8.124

26               (2010 ed.; approved 6/2021) [Wire Fraud] (modified to add

27               chart of specific counts).

28

43

1          DEFENDANTS' OBJECTION TO

2     GOVERNMENT'S PROPOSED INSTRUCTION NO. 44

3

4      All of the objections that Defendants expressed with respect to

5 the Government's Proposed Instruction on mail fraud apply equally to

6 the Government's Proposed Instruction on wire fraud, since the

7 statutes are identical, except for their jurisdictional element (mail

8 vs. wires).  As such, for the same reasons as above, and based on the

9 same law cited above, Defendants contend that the Court should

10 instruct the jury with respect to wire fraud as follows:

11

12               [ELEMENTS OF WIRE FRAUD]

13

14      The defendants are charged in Counts Twenty-Nine through Thirty-

15 One of the First Superseding Indictment with executing a wire fraud

16 scheme on or about the dates set forth below, in violation of Section

17 1343 of Title 18 of the United States Code, as follows:

18               [INSERT CHART OF COUNTS]

19      In order for a defendant to be found guilty of wire fraud, in

20 violation of Section 1343 of Title 18 of the United States Code, the

21 government must prove each of the following elements beyond a

22 reasonable doubt:

23      First, the defendant knowingly participated in or devised a

24 scheme or plan to defraud, which means a scheme or plan for obtaining

25 money or property by means of false or fraudulent pretenses,

26 representations, or promises.

27

28
                              44

A representation is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made. A representation is fraudulent if it was falsely made with the intent to deceive.  However, a representation, even though knowingly false, is not fraudulent unless it was made with the intent to be communicated to the persons who would act upon that representation to their detriment. Moreover, expressions of opinion, aspirations, or goals, or general, subjective claims about a product cannot be used as a basis to find that a defendant made false and fraudulent representations.

A misrepresentation includes a statement that is partial or ambiguous, such that it required further disclosure in order to avoid being misleading.  This type of misrepresentation is sometimes called a "half-truth."  Deceitful statements of half-truths may constitute false or fraudulent representations;

However, a nondisclosure or concealment cannot constitute a false or fraudulent representation;

Second, the falsehoods made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

However, it is not enough for the government to prove that those statements caused someone to enter into a transaction that he or she would otherwise have avoided. In order to prove that a scheme to defraud existed, the government must prove beyond a reasonable doubt that the materially false and fraudulent pretenses, representations, and promises misrepresented an essential element of the bargain.

Third, the defendant participated in the scheme knowingly,

45

willfully, and with the specific intent to defraud the victims of money or property, that is, the specific intent to deceive and cheat. To have the intent to deceive and cheat, the government must prove that the defendant acted with the intent not only to make false statements, but also to obtain from a victim money or property by means of those deceptions, that is, acted for the purpose of causing cognizable harm to the victim.  If the Government proves only that the defendant schemed to deceive the victim, but not to deprive the victim of anything of value, you must find the defendant not guilty.

"Willfully" means to act with knowledge that one's conduct is unlawful and with the specific intent to do something the law forbids, that is to say with the bad purpose to disobey or disregard the law. The person need not be aware of the specific law or rule that his conduct may be violating.  A defendant's conduct was not "willful" if it was due to negligence, inadvertence or mistake.

An act is done "knowingly" if the defendant is aware of the act and does not act through ignorance, mistake, or accident.

<u>Fourth</u>, the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

In determining whether a scheme to defraud exists, you may consider not only the defendant's words and statements, but also the circumstances in which they are used as a whole.

A wiring is caused when one knows that a wire will be used in the ordinary course of business or when one can reasonably foresee such use.

It need not have been reasonably foreseeable to the defendant that the wire communication would be interstate in nature.  Rather, it must have been reasonably foreseeable to the defendant that some wire communication would occur in furtherance of the scheme, and an interstate wire communication must have actually occurred in furtherance of the scheme.

1          GOVERNMENT'S RESPONSE TO DEFENDANTS' OBJECTION TO

2             GOVERNMENT'S PROPOSED INSTRUCTION NO. 44

3

4          The government will insert full names in the chart.

5          With regard to defendants' other comments and edits, as noted

6     with respect to Government's Proposed Instruction No. 43, the

7     government objects to all of those deviations from the model

8     instruction.  As noted above, it is not correct that there is only

9     one way to prove wire fraud, see Woods, 335 F.3d at 997-98.  For

10    another, willfulness is not an element of these crimes.  The way

11    defendants have described false representations is also at odds with

12    Woods and Ninth Circuit law, which is accurately reflected in the

13    model instruction.  Finally, the structure of the model instruction,

14    which lists the elements and then provides definitions of the terms,

15    provides an easier to follow road map for the jury.

16         The other additions are neither necessary nor approved by the

17    Ninth Circuit.  The government believes the Court should adopt the

18    Ninth Circuit model instruction as proposed.

19

20

21

22

23

24

25

26

27

28

COURT'S INSTRUCTION NO. ____

GOVERNMENT'S PROPOSED INSTRUCTION NO. 45

   If you decide that the defendant was a member of a scheme to defraud and that the defendant had the intent to defraud, the defendant may be responsible for other co-schemers' actions during the course of and in furtherance of the scheme, even if the defendant did not know what they said or did.

   For the defendant to be guilty of an offense committed by a co-schemer in furtherance of the scheme, the offense must be one that the defendant could reasonably foresee as a necessary and natural consequence of the scheme to defraud.

Source:   Ninth Circuit Model Criminal Jury Instruction No. 8.122
          (2010 ed.; approved 6/2021) [Scheme to Defraud –
          Vicarious Liability].

49

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OBJECTION TO

GOVERNMENT'S PROPOSED INSTRUCTION NO. 45

Defendants object to the inclusion of this instruction.  It is confusing, vague, and therefore prejudicial, in that it does not describe what other "offense" is being discussed.  Second, it speaks to "any" scheme to defraud instead of "the" scheme to defraud actually at issue in this case.  Third, it suggests that the only mens rea for mail or wire fraud is "intent to defraud," which is false, as both offenses also require knowledge and willfulness.  See United States v. Leveque, 283 F.3d 1098, 1105 (9th Cir. 2002) (in wire fraud case, "intent to defraud" means "to act **willfully**, and with the specific intent to deceive or cheat for the purpose of either causing some financial loss to another, or bringing about some financial gain to oneself") (emphasis added) (citing United States v. Cloud, 872 F.2d 846, 852 n. 6 (9th Cir. 1989)); see also United States v. Miller, 953 F.3d 1095, 1103 (9th Cir. 2020) (agreeing that wire fraud requires a finding that the defendant "**knowingly** engaged in a scheme or plan to defraud or obtain money or property by means of false or fraudulent pretenses, representations, or promises.") (emphasis added).  Finally, this instruction is unnecessary.  The elements of the charged offenses are otherwise described in other instructions given by the Court and the jury should use those elements to determine whether the Government has proved its case beyond a reasonable doubt.

50

GOVERNMENT'S RESPONSE TO DEFENDANTS' OBJECTION TO
GOVERNMENT'S PROPOSED INSTRUCTION NO. 45

The model instruction properly instructs the jury on co-schemer liability and is appropriately given where, as here, co-schemers are charged in a common scheme to defraud.  Beyond cursory objections, defendants do not provide any legitimate reason to omit this model instruction.  For example, defendants argue that the instruction is vague as to which "scheme" the instruction refers to, or what "offense" is being referenced.  This objection is frivolous, and this case only involves a single scheme and offenses committed in furtherance of that scheme.  Therefore, the government believes the Court should give this instruction.

COURT'S INSTRUCTION NO. ___

GOVERNMENT'S PROPOSED INSTRUCTION NO. 47

Each use of the mails to advance, or to further, or to carry out the scheme or plan to defraud may be a separate violation of the mail fraud statute.

Each transmission by wire, radio, or television communication in interstate commerce to advance, or to further, or to carry out the scheme or plan to defraud may be a separate violation of the wire fraud statute.

Sources:   O'Malley, Grenig & Lee, Federal Jury Practice and
Instructions, § 47.15 (6th ed. 2009) [Each use of the mails
and each transmission by wire communication in interstate
commerce – Defined]; see also United States v. Garlick, 240
F.3d 789, 792 (9th Cir. 2001); United States v. Ferreyro, CR
18-865-JFW (Dkt. 74 at 18) (proposed instruction above on
wire fraud given as instruction in wire fraud trial).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DEFENDANTS' PARTIAL OBJECTION TO
### GOVERNMENT'S PROPOSED INSTRUCTION NO. 47

Defendants object to this instruction because as written it suggests that any use of the mails/wire constitutes a "separate violation of the mail fraud statute" when in fact, the Government needs to prove the specific mailings/wires and facts described in the actual counts of the indictment.  Defendants propose that the Court add the following sentence to the end of the instruction to ensure that there is no juror confusion:  "However, I caution you:  the defendants are charged only with the counts of mail fraud and wire fraud that are reflected in the counts of the indictment that I have described to you, and you may not convict any defendant of mail fraud or wire fraud based on circumstances other than the specific instance that is described in the particular count that you are considering."

GOVERNMENT'S RESPONSE TO DEFENDANTS' PARTIAL OBJECTION TO

GOVERNMENT'S PROPOSED INSTRUCTION NO. 47

The government objects to defendants' proposed addition.  The jury is already instructed (in Joint Proposed Instruction No. 29) that they are only to determine whether the defendants are guilty of the crimes charged.  There is no reason to repeat that instruction here.

COURT'S INSTRUCTION NO. ___

DEFENDANTS' PROPOSED INSTRUCTION NO. 47.1

Good faith is a complete defense to the mail fraud and wire fraud charges of the indictment because good faith on the part of a defendant is, simply, inconsistent with a finding that the defendant had the specific intent to defraud alleged in the charges.

A person who acts, or causes another person to act, on a belief or an opinion honestly held is not punishable under these statutes merely because the belief or opinion turns out to be inaccurate, incorrect, or wrong. An honest mistake in judgment or an error in management does not rise to the level of criminal conduct. The law is written to subject to criminal punishment only those people who act with the particular unlawful intent required for each alleged offense.

In determining whether or not the government has proven that a defendant acted with the specific intent to commit the offenses alleged in the indictment or whether he acted in good faith, you must consider all of the evidence received in this case bearing on the defendant's state of mind.

The burden of proving good faith does not rest with the defendant because a defendant does not have any obligation to prove anything in this case. It is the government's burden to prove beyond a reasonable doubt that the defendant acted with the specific intent to commit the offenses charged. If the evidence in this case leaves you with a reasonable doubt as to whether a defendant acted with

criminal intent or in good faith, you must find the defendant not guilty.

Sources:  O'Malley, <u>Federal Jury Practice & Instructions-Criminal</u> § 19:06 (6th ed. Feb. 2021 update) (modified); <u>see</u> Sand, <u>Modern Federal Jury Instructions</u> ¶ 8.01 (Good Faith) (Matthew Bender ed. 2020); <u>United States v. Tarallo</u>, 380 F.3d 1174, 1191 (9th Cir. 2004) (endorsing good faith instruction); <u>United States v. Amlani</u>, 111 F.3d 705, 717-18 (9th Cir. 1997) (endorsing good faith instruction); United States v. Gering, 716 F.2d 615, 622 (9th Cir. 1983) (approving of instruction that "[i]f you find that a defendant in good faith believed that the representations which were being made by himself were true, the necessary intent did not exist and the defendant must be acquitted on all counts"); <u>United States v. Lin</u>, 3:11-cr-00393-TEH, Dkt. 102, Jury Instructions, at 42-44 (N.D. Cal. May 5, 2012) (instructing jury on good faith); <u>see also United States v.</u>

*Casperson*, 773 F.2d 216 (8th Cir. 1985) (trial court committed reversible error when it refused to instruct a jury on a good-faith defense, because, despite the trial judge giving instructions defining certain terms such as "willful" and "specific intent," the Eighth Circuit held that these instructions did not "direct[ ] the jury's attention to the defense of good faith with sufficient specificity to avoid error."); *United States v. Jimenez*, 513 F.3d 62, 75 (3rd Cir. 2008) (good faith instruction necessary to "accurately reflect[ ] the law" and instruction should "explicitly t[ell] the jury that good faith [is] a complete defense" because "good faith negate[s] the [required] element of intent to defraud," and so "the Government bore the burden of proving beyond a reasonable doubt that the defendants acted with the requisite intent to defraud, negating a good-faith defense.")

GOVERNMENT'S RESPONSE TO

DEFENDANTS' PROPOSED INSTRUCTION NO. 47.1

The government objects to this instruction.  In general, a defendant is not entitled to a separate good faith instruction. United States v. Smith, 831 F.3d 1207, 1219 (9th Cir. 2016) (citing United States v. Green, 745 f.2d 1205, 1209 (9th Cir. 1984); United States v. Shipsey, 363 F.3d 962, 967 (9th Cir. 2004) (stating that Ninth Circuit "case law is well settled that a criminal defendant has 'no right' to any good faith instruction when the jury has been adequately instructed with regard to the intent required to be found guilty of the crime charged[.]").  Specifically, a good faith instruction is not required when the court adequately instructs on the specific intent necessary to commit the offense.  See, e.g., United States v. Inzunza, 638 F.3d 1006,1020 (9th Cir. 2011) (extortion); United States v. Hickey, 580 F.3d 922, 931 (9th Cir. 2009) (securities and mail fraud); United States v. Duran, 59 F.3d 938, 941 (9th Cir. 1995) (drug trafficking); see also United States v. Irorere, 228 F.3d 816, 825-26 (9th Cir. 2000) (a defendant "is only entitled" to a theory-of-defense instruction "when his theory of defense is not already adequately captured by the proffered instructions").  Accordingly, the Court should reject this instruction.

1        DEFENDANTS' RESPONSE TO GOVERNMENT'S OBJECTION TO

2          DEFENDANTS' PROPOSED INSTRUCTION NO. 47.1

3

4        Defendants believe a good-faith instruction should be given,

5   especially because the Government's proposed instructions regarding

6   wire fraud and mail fraud do not themselves make clear that good-

7   faith is a complete defense.  Moreover, there is sufficient authority

8   in this Circuit for giving a good-faith instruction.  See, e.g.,

9   United States v. Tarallo, 380 F.3d 1174, 1191 (9th Cir. 2004)

10  (endorsing good faith instruction); United States v. Amlani, 111 F.3d

11  705, 717-18 (9th Cir. 1997) (endorsing good faith instruction);

12  United States v. Gering, 716 F.2d 615, 622 (9th Cir. 1983) (approving

13  of instruction that "[i]f you find that a defendant in good faith

14  believed that the representations which were being made by himself

15  were true, the necessary intent did not exist and the defendant must

16  be acquitted on all counts"); United States v. Lin, 3:11-cr-00393-

17  TEH, Dkt. 102, Jury Instructions, at 42-44 (N.D. Cal. May 5, 2012)

18  (instructing jury on good faith.)  Moreover, there is no prejudice

19  imposed on the Government's case by the giving of this legally-

20  accurate instruction and it can only benefit the cause of justice by

21  ensuring that the jury fully understands that good faith is a

22  complete defense, which they otherwise will be not be instructed.

23

24

25

26

27

28

1      COURT'S INSTRUCTION NO. ___

2      GOVERNMENT'S PROPOSED INSTRUCTION NO. 49

3

4          Defendant Julian Omidi is charged in Count Thirty-Two of the

5  First Superseding Indictment with aggravated identity theft in

6  violation of Section 1028A(a)(1) of Title 18 of the United States

7  Code.  In order for the defendant to be found guilty of that charge,

8  the government must prove each of the following elements beyond a

9  reasonable doubt:

10         <u>First</u>, the defendant knowingly transferred, possessed, or used

11 without legal authority a means of identification of another person,

12 namely the name of defendant Mirali Zarrabi;

13         <u>Second</u>, the defendant knew that the means of identification

14 belonged to a real person; and

15         <u>Third</u>, the defendant did so during and in relation to the crime

16 of mail fraud, in violation of Section 1341 of Title 18 of the United

17 States Code, as charged in Count Twenty-One of the First Superseding

18 Indictment.

19         The term "means of identification" means any name or number that

20 may be used, alone or in conjunction with any other information, to

21 identify a specific individual, including any name, date of birth, or

22 government issued identification number.

23 ///

24 ///

25 ///

26

27

28                                      60

1   "Use" requires that the use of the means of identification was

2 central to the specified felony and facilitated its commission.

3   The government need not establish that the means of

4 identification of another person was stolen.

22 Source: Ninth Circuit Model Instruction No. 8.83 [Fraud in

23     Connection With Identification Documents Aggravated

24     Identity Theft] (2010 ed.; approved 3/2021) (modified to

25     add "use" definition set forth in the comment and to

26     specify the person and means-of-identification charged).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OBJECTION TO

GOVERNMENT'S PROPOSED INSTRUCTION NO. 49

Defendants object only to the last sentence of this instruction which states that "the government need not establish that the means of identification of another person was stolen."  Defendants do not believe this sentence is necessary and that its inclusion is confusing, since the instruction otherwise states that the Government must prove that the defendant used "without legal authority" a means of identification of another person.  But, there is no explanation in the Government's instruction between what it means to use an ID "without legal authority," which the Government must prove beyond a reasonable doubt, and what it means to use a "stolen" ID, which the Government claims it does not need to prove.  As such, the jury has no way to evaluate whether the evidence at trial actually satisfies the elements of the offense.  Accordingly, Defendants contend that the final sentence of the instruction should not be given to the jury.

GOVERNMENT'S RESPONSE TO DEFENDANTS' OBJECTION TO

GOVERNMENT'S PROPOSED INSTRUCTION NO. 49

The government disagrees that the last sentence is confusing. It is in the Ninth Circuit model instruction and is supported by the law, which makes clear that "[w]ithout lawful authority" does not equal "stolen." United States v. Osuna-Alvarez, 788 F.3d 1183, 1185 (9th Cir. 2015) (permission of another to use his or her identity in an unlawful scheme is not "lawful authority" within the meaning of 18 U.S.C. § 1028A).

COURT'S INSTRUCTION NO. ___

GOVERNMENT'S PROPOSED INSTRUCTION NO. 53

[IF APPROPRIATE]


The intent of a person or the knowledge that a person possesses at any given time may not ordinarily be proved directly because there is no way of directly scrutinizing the workings of the human mind. Because direct proof of knowledge and fraudulent intent of what a person is thinking is almost never available, the state of mind of the defendant may be proved by circumstantial evidence. It can also be shown if the defendants acted with reckless indifference to the truth or falsity of their statements.

Sources:   1A O'Malley, Grenig, & Lee, Federal Jury Practice and Instructions, § 17.07 (6th ed. 2008) [Proof of Knowledge or Intent]; United States v. Dearing, 504 F.3d 897, 901-03 (9th Cir. 2007); United States v. Lloyd, 807 F.3d 1128, 1164 (9th Cir. 2015.

64

1                DEFENDANTS' PARTIAL OBJECTION TO

2          GOVERNMENT'S PROPOSED INSTRUCTION NO. 53

3

4      Defendants object only to the last sentence of this instruction

5 which states that intent to defraud "can also be shown if the

6 defendants acted with reckless indifference to the truth or falsity

7 of their statements."  This language does not derive from either the

8 Manual of Model Criminal Jury Instructions for the Ninth Circuit or

9 the O'Malley instruction cited by the government in support.

10 Furthermore, the "reckless indifference" language can, depending on

11 the Government's theory and how the evidence develops at trial, have

12 the unconstitutional effect of lessening the Government's burden of

13 proof on the "intent to defraud" element.  <u>United States v. U.S.</u>

14 <u>Gypsum Co.</u>, 438 U.S. 422, 444 (1978) ("[T]he concepts of recklessness

15 and negligence have no place" in discussing criminal liability).  For

16 example, the Second Circuit, in a wire fraud case, stated that it is

17 troubled by the use of the term "reckless," which it criticized as a

18 "technical and confusing" term. The Second Circuit observed that the

19 "distinction between recklessness and negligence is elusive enough

20 for even the most respected legal scholars. . . . It follows that to

21 the laymen on the jury, it might prove a significant source of

22 confusion."  <u>United States v. Hanlon</u>, 548 F.2d 1096, 1101-02 (2d Cir.

23 1977).  The Second Circuit stated that the term should be avoided

24 because it might tend to mislead the jury, and "urge[d] district

25 judges not to use the term 'reckless disregard' in similar cases in

26 the future."  <u>Id.</u>  Indeed, Defendants also object to this instruction

27 because it does not define the term "reckless indifference," and,

28

therefore, requires the jury to speculate as to its meaning. If such an instruction is given by the Court, reckless indifference should be defined in a way that makes clear that a showing of negligence or mistake is not sufficient.  See e.g. Ninth Circuit Model Criminal Jury Instruction No. 5.7 ("An act is done 'knowingly' if the defendant is aware of the act and does not act through ignorance, mistake, or accident.") (emphasis added).  Without a reckless indifference definition, the jury is likely to assume a standard that is far lower than what the government must prove in a criminal case, because the lay sense of recklessness – and even the dictionary sense – is a much lower standard than that required for criminal recklessness. Criminal recklessness requires conscious disregard of a known risk.  See Black's Law Dictionary ("conscious indifference"); Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("The criminal law, however, generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware.").  On the other hand, a lay person may equate recklessness with carelessness or negligence.  See, e.g., Oxford English Dictionary (online version) ("Heedless of or indifferent to the consequences of one's actions; lacking in prudence or caution; willing or liable to take risks; rash, foolhardy; irresponsible; careless").

GOVERNMENT'S RESPONSE TO DEFENDANTS' PARTIAL OBJECTION TO
GOVERNMENT'S PROPOSED INSTRUCTION NO. 53

This sentence is an accurate statement of the law, including in criminal cases.  See United States v. Dearing, 504 F.3d 897, 903 (9th Cir. 2007) ("We have repeatedly held that the intent to defraud may be proven through reckless indifference to the truth or falsity of statements."); United States v. Lloyd, 807 F.3d 1128, 1163 (9th Cir. 2015) (approving of instruction that "[a] statement or representation is 'false or fraudulent' for purposes of mail and wire fraud if known to be untrue, or made with reckless disregard as to its truth or falsity, and made or caused to be made with the intent to deceive").

This sentence is appropriately included here since the jury will not otherwise be instructed that reckless indifference can constitute intent to defraud.

COURT'S INSTRUCTION NO. ___

DEFENDANTS' PROPOSED INSTRUCTION NO. 53.1

In addition to all of the elements required for Counts 1-34 that I've described thus far, you must also consider the issue of venue; namely, whether any act in furtherance of the unlawful activity occurred within the Central District of California.  The Central District of California comprises the counties of Los Angeles, Orange County, Riverside, San Bernardino, San Luis Obispo, Santa Barbara and Ventura.

You must consider whether the Government has proven venue with respect to each particular count. If you find that the government has failed to prove the venue requirement with respect to a given count, then you must acquit the defendant you are considering on that count.

To prove venue, the government need not prove that the entirety of any of the charged crimes was committed in the Central District, or that the defendant you are considering was present here.  Instead, venue is proper if you find that:

First, the defendant intentionally or knowingly caused an act in furtherance of the offense to occur in the Central District; or

Second, it was foreseeable to the defendant that such an act would occur in the Central District.

///

///

///

68

1        I should note that on this issue, and this issue alone, the

2   government need not prove venue beyond a reasonable doubt, but only

3   by a mere preponderance of the evidence.

25  Source:   Adapted from L. Sand et al. Modern Fed. Jury Inst. – Crim.,

26            Inst. 3-11).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOVERNMENT'S OBJECTION TO

DEFENDANTS' PROPOSED INSTRUCTION NO. 53.1


The government objects to the inclusion of this instruction as unnecessary and unsupported by Ninth Circuit law.  And while it is the government's burden to prove venue, it is unlikely to be an issue in this case given that the locus of the charged events was here.

DEFENDANTS' RESPONSE TO GOVERNMENT'S OBJECTION TO
DEFENDANTS' PROPOSED INSTRUCTION NO. 53.1

Venue is a required element that the jury must be instructed on. The Government has not proposed any venue instruction or any alternative to Defendants' instruction.  The Court should adopt the instruction proposed by Defendants.

1
2

COURT'S INSTRUCTION NO. ___

GOVERNMENT'S PROPOSED INSTRUCTION NO. 54

3

4      Defendants Julian Omidi and Surgery Center Management, LLC are

5  charged in Count Thirty-Five of the First Superseding Indictment with

6  conspiring to commit money laundering, in violation of Section

7  1956(h) of Title 18 of the United States Code.  In order for the

8  defendant to be found guilty of that charge, the government must

9  prove each of the following elements beyond a reasonable doubt:

10

11      First, beginning in or about January 2011, and continuing to at

12  least in or about December 2015, there was an agreement between two

13  or more person to commit money laundering by conducting a financial

14  transaction to promote an unlawful activity, that is, the making of

15  false statements regarding health care matters, in violation of Title

16  18, United States Code, Section 1035.

17      Second, the defendant became a member of the conspiracy knowing

18  of its object and intending to help accomplish it.

19

20      A conspiracy is a kind of criminal partnership—an agreement of

21  two or more persons to commit one or more crimes, here, promotional

22  money laundering.  The crime of conspiracy is the agreement to do

23  something unlawful; it does not matter whether the crime agreed upon

24  was committed.

25      For a conspiracy to have existed, it is not necessary that the

26  conspirators made a formal agreement or that they agreed on every

27  detail of the conspiracy.  It is not enough, however, that they

28

72

simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another.  You must find that there was a plan to commit money laundering as alleged in the First Superseding Indictment as an object of the conspiracy.

One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the originators.  On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator.  Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

Sources:  Ninth Circuit Model Instruction No. 8.20 (2010 ed.; approved 1/2109) [Conspiracy-Elements] (modified for money laundering and single object); id. cmt. (stating that overt act element should be omitted in money laundering conspiracy cases).

1

2

DEFENDANTS' OBJECTION TO

GOVERNMENT'S PROPOSED INSTRUCTION NO. 54

3

4      Defendants object to this instruction insofar as Defendants

5 believe that the "second" element should be described as follows:

6

7      "Second, the defendant became a member of the conspiracy

8           knowing of its object, *to commit the unlawful activity*, and

9           intending to accomplish it."  (italicized words added).

10

11      Defendants believe it is important to explain to the jury that

12 the "object" of a conspiracy is the "unlawful activity" that the

13 conspirators have agreed to engage in, because "object" is a legal

14 term that will not be easily understood by the jury, as nowhere else

15 in the instructions is the jury ever told that the "object" of a

16 conspiracy is always the violation of the law that the conspirators

17 have purportedly agreed to violate.  Defendants believe that this

18 five word addition makes the instruction clearer and does not

19 prejudice the Government.

20

21      Defendants also believe that as a matter of clarity, the Court

22 should instruct the jury on the substantive offense first (here,

23 promotional money laundering) and then instruct the jury on the

24 elements of conspiracy.  In that order, the jurors understand, when

25 they are deliberating, what the elements of the "unlawful activity"

26 otherwise at issue in the conspiracy instruction is actually

27 referring to.  When the conspiracy instructions are put first, the

28

jury hears them in a vacuum, without the context of the offense that the conspirators are alleged to have agreed to commit.

1         GOVERNMENT'S RESPONSE TO DEFENDANTS' OBJECTION TO
2            GOVERNMENT'S PROPOSED INSTRUCTION NO. 54

3

4         The government's proposal tracks the Ninth Circuit model
5    instruction, and the defense offers no support for deviating from it
6    by unnecessarily defining the object of the conspiracy to the second
7    element.  That language both has not been approved by the Ninth
8    Circuit in the model instructions and is unnecessary given that the
9    first element already makes clear that the object of the conspiracy
10   was to commit promotional money laundering.
11        The government also believes that the Court should instruct the
12   jury on the conspiracy count before the following substantive money
13   laundering counts, given that the conspiracy crime is charged first
14   in the First Superseding Indictment.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COURT'S INSTRUCTION NO. ____

GOVERNMENT'S PROPOSED INSTRUCTION NO. 55

A conspiracy may continue for a long period of time and may include the performance of many transactions.  It is not necessary that all members of the conspiracy join it at the same time, and one may become a member of a conspiracy without full knowledge of all the details of the unlawful scheme or the names, identities, or locations of all of the other members.

Even though a defendant did not directly conspire with the other conspirators in the overall scheme, the defendant has, in effect, agreed to participate in the conspiracy if the government proves each of the following beyond a reasonable doubt:

First, that the defendant directly conspired with one or more conspirators to carry out at least one of the objects of the conspiracy;

Second, that the defendant knew or had reason to know that other conspirators were involved with those with whom the defendant directly conspired; and

Third, that the defendant had reason to believe that whatever benefits the defendant might get from the conspiracy were probably dependent upon the success of the entire venture.

///
///
///
///

1    It is not a defense that a person's participation in a

2    conspiracy was minor or for a short period of time.

25   Source:   Ninth Circuit Model Jury Instruction No. 8.23 (2010 ed.;

26             approved 4/2019) [Conspiracy—Knowledge of the Association

27             with Other Conspirators].

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OBJECTION TO

GOVERNMENT'S PROPOSED INSTRUCTION NO. 55

Defendants object to the inclusion of this instruction because the elements of conspiracy have already been set forth by the Court in other instructions and there is no reason to provide this instruction, which is different than those elements, and notably, does not speak to <u>mens rea</u>.  The inclusion of this instruction will only confuse the jury as to which instruction they are supposed to follow in ascertaining whether the Government has proved the element of the offense.  While the Government claims that this instruction is important because of the "length" of the alleged money laundering conspiracy, nothing in the Model Rules suggests that this is reason to give this instruction.  Should the jury send a question to the Court asking whether the length of time that someone participated in the conspiracy is relevant to the question of guilt, an instruction along these lines may be helpful.  But unless and until that question presents itself, Defendants do not agree that this instruction is warranted.

1        GOVERNMENT'S RESPONSE TO DEFENDANTS' OBJECTION TO

2           GOVERNMENT'S PROPOSED INSTRUCTION NO. 55

3

4        The government disagrees and believes the Court should give this

5   instruction.   This instruction is particularly appropriate in a case

6   like this, where there was a very long-running scheme with many

7   participants in many different roles.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    COURT'S INSTRUCTION NO. ___

2    GOVERNMENT'S PROPOSED INSTRUCTION NO. 56

3

4    Defendant Julian Omidi is charged in Counts Thirty-Six and

5    Thirty-Seven of the First Superseding Indictment with conducting

6    a financial transaction to promote an unlawful activity, namely false

7    statements regarding health care matters, in violation of Section

8    1956(a)(1)(A) of Title 18 of the United States Code, on or about the

9    dates set forth below as follows:

| COUNT | DATE | FINANCIAL TRANSACTION |
|-------|------|----------------------|
| THIRTY-SIX | 10/24/2012 | Issuance of check number 10141 drawn on the IMS Chase Bank Account and made payable to co-conspirator Sherwin Hong's wife in the amount of $1,290 |
| THIRTY-SEVEN | 10/9/2015 | Issuance of check number 1003 drawn on the Royalty Hanmi Account and made payable to defendant ZARRABI's medical corporation in the amount of $2,000 |

18   For the defendant to be found guilty of that charge, the

19   government must prove each of the following elements beyond a

20   reasonable doubt:

21

22   First, the defendant conducted a financial transaction involving

23   property that represented the proceeds of mail fraud or wire fraud;

24   Second, the defendant knew that the property represented the

25   proceeds of some form of unlawful activity; and

26   Third, the defendant acted with the intent to promote the

27   carrying on of false statements regarding health care matters.

28
                                    81

A financial transaction is a transaction involving the use of a financial institution that is engaged in, or the activities of which affect interstate or foreign commerce in any way.  The issuance of a check qualifies as a "financial transaction."

The phrase "knew that the property represented the proceeds of some form of unlawful activity" means that the defendant knew that the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony.  I instruct you that false statements regarding health care matters is a felony.

"Interstate commerce" means commerce between a state, territory or possession of the United States, including the District of Columbia, and another state, territory, or possession, or the District of Colombia.  It is not necessary that the defendant have intended or anticipated an effect on interstate commerce.

"Proceeds" means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including gross receipts of such activity.  The government is not required to prove that all of the funds involved in the charged transactions were the proceeds of the specified unlawful activity.  A financial transaction involves "proceeds" of a specified unlawful activity even when proceeds of a specified unlawful activity are commingled in an account with funds obtained from legitimate sources.  It is sufficient if the government proves beyond a reasonable doubt that at least part of the funds involved in a transaction represents such proceeds of specified unlawful activity.

1       The government must prove that the defendant knew that the
2  property represented the proceeds of a separate criminal activity but
3  need not prove that the defendant knew that the act of laundering the
4  proceeds was unlawful.

Sources:   Ninth Circuit Model Instruction Nos. 8.146 [Financial
           Transaction or Attempted Transaction to Promote Unlawful
           Activity] and 8.147 Laundering or Attempting to Launder
           Monetary Instruments] (second element) (2010 ed.; approved
           6/2021); 18 U.S.C. § 1956(a)(1) ("Whoever, knowing that the
           property involved in a financial transaction represents the
           proceeds of some form of unlawful activity . . ."); United
           States v. Akintobi, 159 F.3d 401, 405 (9th Cir. 1998)
           (issuance of a check qualifies as a "financial
           transaction"), abrogated on other grounds by United States
           v. Santos, 553 U.S. 507 (2008).

1                       DEFENDANTS' PARTIAL OBJECTION TO

2                 GOVERNMENT'S PROPOSED INSTRUCTION NO. 56

3

4      Defendants object to this instruction only to the extent that

5 Defendants believe it is incomplete.  Defendants propose the

6 following addition:  "It is not enough for the Government to prove

7 that the financial transaction had the effect of promoting wire fraud

8 or securities fraud; the Government must prove that the purpose of

9 the transaction was such promotion."  The parties do not dispute that

10 this is an accurate statement of the law; indeed, it is based on the

11 Fifth Circuit's holding in United States v. Trejo, 610 F.3d 308, 314–

12 15 (5th Cir. 2010), where the Fifth Circuit explained that the

13 "'specific intent to promote requirement' has been called the

14 'gravamen' of  a § 1956(a)(1)(A)(i) violation" and "to prove it, the

15 government must satisfy a stringent mens rea requirement.

16 Essentially, the government must show the transaction at issue was

17 conducted with the intent to promote the carrying on of a specified

18 unlawful activity.  It is not enough to show that a money launderer's

19 actions resulted in promoting the carrying on of specified unlawful

20 activity.  Nor may the government rest on proof that the defendant

21 engaged in 'knowing promotion' of the unlawful activity.  Instead,

22 there must be evidence of intentional promotion.  In other words, the

23 evidence must show that the defendant's conduct not only promoted a

24 specified unlawful activity but that he engaged in it "with the

25 intent to further the progress of that activity." (citations

26 omitted).  Given the importance of this element, Defendants believe

27

28

1  that their proposed instruction—which is correct as a matter of law—
2  should be given.

1           GOVERNMENT'S RESPONSE TO DEFENDANTS' PARTIAL OBJECTION TO

2              GOVERNMENT'S PROPOSED INSTRUCTION NO. 56

3

4     The government believes the additional language proposed by

5 defendants is unnecessary.

COURT'S INSTRUCTION NO. ___

DEFENDANTS' PROPOSED INSTRUCTION NO. 56.1

The Government must also prove venue with respect to the promotional money laundering alleged in Count 36 and Count 37 and the conspiracy to commit promotional money laundering alleged in Count 35.  In addition to the elements of those offenses, which I have already described for you, you must consider whether the Government has proven that venue is appropriate in the Central District of California.  The Central District of California comprises the counties of Los Angeles, Orange County, Riverside, San Bernardino, San Luis Obispo, Santa Barbara and Ventura.

You must consider whether the Government has proven venue with respect to each particular count.  With respect to Counts 35, 36, and 37, the Government must prove venue in one of three ways:

First, the Government may prove venue by establishing that the financial transaction you are considering with respect to a particular count was conducted in the Central District.

Second, the Government may prove venue by establishing both that a prosecution for one of the underlying specified unlawful activities, here mail fraud or wire fraud, could be brought in the Central District and that the defendant participated in transferring the proceeds of that specified unlawful activity to another district where the financial or monetary transaction was conducted.

Third, with respect to count 35 only, the Government may prove venue by establishing that an overt act in furtherance of the money laundering conspiracy took place in the Central District.  An overt

1    act is any step, action, or conduct taken to achieve, accomplish, or

2    further the goals of the conspiracy that is undertaken knowingly and

3    willfully by either the defendant or one of his alleged co-

4    conspirators.

5        If you find that the Government has failed to prove venue in the

6    Central District, then you must acquit on the count you are

7    considering.  In addition, the Government may only prosecute a

8    defendant in the Central District if his conduct in connection with

9    the alleged money laundering or money laundering conspiracy formed

10   substantial contacts with the Central District.  If you determine

11   that the defendant's conduct did not form substantial contacts with

12   the Central District, you must acquit on the count you are

13   considering.

14       Unlike the other elements of this offense, the Government must

15   prove that venue is proper by a preponderance of the evidence.  A

16   preponderance of the evidence means the greater weight of evidence,

17   both direct and circumstantial.  This means that you should consider

18   the quality and persuasiveness of the Government's evidence, not the

19   quantity of its evidence.  Again, I caution you that the

20   preponderance of the evidence standard applies only applies to venue.

21   The Government must prove every other element of Counts 35, 36 and 37

22   beyond a reasonable doubt.

23

24

25   Sources:  Adapted from 18 U.S.C. § 1956(i); United States v.

26            Saavedra, 223 F.3d 85, 93 (2d Cir. 2000) (holding

27            "substantial contacts" required between defendant's conduct

28            and venue of prosecution.).

88

GOVERNMENT'S OBJECTION TO

DEFENDANTS' PROPOSED INSTRUCTION NO. 56.1


The government objects to the inclusion of this instruction as unnecessary and unsupported by Ninth Circuit law.  And while it is the government's burden to prove venue, it is unlikely to be an issue in this case given that the locus of the charged events was here.

1              DEFENDANTS' RESPONSE TO GOVERNMENT'S OBJECTION TO

2                  DEFENDANTS' PROPOSED INSTRUCTION NO. 56.1

3

4        Venue is a required element that the jury must be instructed on.

5   The Government has not proposed any venue instruction or any

6   alternative to Defendants' instruction.   The Court should adopt the

7   instruction proposed by Defendants.

COURT'S INSTRUCTION NO. ___
DEFENDANTS' PROPOSED INSTRUCTION NO. 56.2

THEORY OF DEFENSE:  [*To be submitted at close of each Defendants' case*].

Sources:  Manual of Model Criminal Jury Instructions for the District
Courts of the Ninth Circuit at 105 (Introductory Comment)
(2010 ed., last updated 3/2021) ("A defendant is entitled
to have the jury instructed on his or her theory of
defense, as long as the theory has support in the law and
some foundation in the evidence."); United States v.
Perdomo-Espana, 522 F.3d 983, 986-87 (9th Cir. 2008)
(same); United States v. Sarno, 73 F.3d 1470, 1487-88 (9th
Cir. 1995) ("The quantum of evidence sufficient to support
a 'theory of the case' instruction is slight"); United
States v. Morton, 999 F.2d 435, 439 (9th Cir. 1993) ("[T]he
evidence supporting [defendant's theory of defense]
amounted to more than a scintilla, and the question of
[that theory] should have been given to the jury.").

GOVERNMENT'S OBJECTION TO

DEFENDANTS' PROPOSED INSTRUCTION NO. 56.2


    The government objects to the inclusion of a "defense theory" instruction.  That is only appropriate when there is a specific defense (e.g., entrapment) that needs to be explained to the jury. The defense is not entitled to an instruction summarizing the defense theory of the case.

1

2

3

4

5

6

7

8

DEFENDANTS' RESPONSE TO GOVERNMENT'S OBJECTION TO
DEFENDANTS' PROPOSED INSTRUCTION NO. 56.2

Defendants believe this instruction should be given.  As the Ninth Circuit said in United States v. Perdomo-Espana, 522 F.3d 983, 986-87 (9th Cir. 2008), "a defendant is entitled to have the jury instructed on his or her *theory of defense*, as long as the theory has support in the law and some foundation in the evidence."