UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

Page **1** of 12

| Case No. | CR 17-661-DMG | Date | September 16, 2021 |
|---|---|---|---|

| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE |
|---|---|
| Interpreter | N/A |

| Kane Tien | Not Reported | Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendant(s): | Present | Appt. | Ret. |
|---|---|---|---|---|---|---|---|
| 1) Julian Omidi | Not | | ✓ | Michael Schachter | Not | | ✓ |
| 3) Surgery Center Management, LLC | Not | | | Michael Devereux | Not | | ✓ |
| 4) Mirali Zarrabi, M.D. | Not | | ✓ | Thomas O'Brien | Not | | ✓ |

**Proceedings:** [IN CHAMBERS] ORDER RE GOVERNMENT'S MOTIONS *IN LIMINE*

### I. INTRODUCTION

On August 16, 2021, the parties filed 18 motions *in limine* ("MILs"). Opposition briefs were filed on August 30, 2021.[1] A hearing on the MILs was held on September 14, 2021. The Government filed the below five motions:

1. Government's MIL to Admit Certain Statements by Defendant Zarrabi [Doc. # 1192];
2. Government's MIL to Admit Summary Charts [Doc. # 1194];
3. Government's MIL to Admit Evidence as Inextricably Intertwined or, Alternatively, under Federal Rule of Evidence 404(b) [Doc. # 1199];
4. Government's MIL to Admit Business Records and Authenticate Records Pursuant to Federal Rules of Evidence 901 and 902(11) [Doc. # 1220]; and
5. Government's MIL to Exclude Defense Expert Charles Saldanha, M.D. [Doc. # 1226].

### II. DISCUSSION

**1. Government's MIL to Admit Certain Statements by Defendant Zarrabi [Doc. # 1192]**

The Government seeks to introduce certain statements made by Defendant Zarrabi to government agents on May 31, 2016 and December 7, 2016 ("Zarrabi Interview Excerpts") as admissions by a party opponent under Federal Rule of Evidence ("FRE") 801(d)(2)(A). In these statements, Defendant Zarrabi appears to acknowledge, among other things, that his job was to interpret sleep studies, that he did not

---

[1] The Court also permitted the Government to file a reply in support of its MIL to admit business records [Doc. # 1220], and permitted Defendants to file a sur-reply [Doc. ## 1353, 1354].

review underlying raw sleep study data and may not have even had access to it, and that it was not his job to check if GET THIN was doing an "honest job" and not committing fraud. The Government contends that Defendant Zarrabi's statements are admissible against him in the Government's case-in-chief, but acknowledges that they are not admissible against Defendants Omidi and SCM, and asks that the Court give a limiting instruction to this effect. [Doc. # 1192 at 22 (*citing inter alia Richardson v. Marsh*, 481 U.S. 200, 206-07 (1987).] The Government also represents that it "has no intention of arguing in closing or otherwise that ZARRABI's reference to 'they' in these select statements in fact refers to OMIDI" and that the Government "would stipulate to a proper limiting instruction to be provided to the jury" that Zarrabi's statements are admissible against Defendant Zarrabi but not admissible against Defendants Omidi and SCM. [Doc. # 1287 at 8 n.1[2].]

The Government also seeks to introduce text messages between Defendant Zarrabi and his brother, Michael Zarrabi, who was a former registered polysomnographic technician ("RPSGT") for the GET THIN sleep study program, for their effect on Defendant Zarrabi and to put Defendant Zarrabi's own statements in context. *Id.* (*citing United States v. Barragan*, 871 F.3d 689, 704-05 (9th Cir. 2017)). In these text messages, Michael Zarrabi states, among other things, to Defendant Zarrabi that "they" keep manipulating data and suggests that Defendant Zarrabi was not reviewing the sleep study reports as he was supposed to. The Government asks the Court to issue a limiting instruction that Michael Zarrabi's statements may only be considered for context and their effect on Defendant Zarrabi.

Defendants Omidi and Zarrabi have each filed oppositions. Defendant Omidi contends that Zarrabi's interview statements with government agents must be excluded under the Confrontation Clause of the Sixth Amendment and *Bruton v. United States*, 391 U.S. 123 (1968). Omidi contends, in the alternative, that if Defendant Zarrabi's statements are admitted, all statements by the government agents and any statements by Defendant Zarrabi that suggest that he is referring to Defendant Omidi must be redacted. [Doc. # 1295 at 11.]

Defendant Zarrabi joins in Omidi's opposition, and filed a separate opposition specifically addressing text messages between Defendant Zarrabi and his brother, Michael Zarrabi, contending that these messages constitute inadmissible hearsay (i.e., that sleep study data was being manipulated and that Defendant Zarrabi was not reading sleep studies) and cannot provide necessary context for Defendant Zarrabi's statements, particularly since Defendant Zarrabi does not make substantive responses or admissions requiring further context to understand them. Defendant Zarrabi also contends that these text message exchanges with Michael Zarrabi should be excluded under FRE 403.

The Court finds that the Zarrabi Interview Excerpts are admissible and that a limiting instruction, explaining that they are not admissible against Defendants Omidi and SCM, is appropriate. *See Richardson*, 481 U.S. at 201, 206-07 (Confrontation Clause not violated by admission of non-testifying codefendant's confession with a proper limiting instruction). Several of the Zarrabi Interview Excerpts refer only to *Zarrabi's* actions (or inaction) rather than any other party, so *Bruton* is not implicated at all. As for the excerpts where Zarrabi refers to "they" or "them" (and never refers to Defendants Omidi or

---

[2] Page references herein are to the page numbers inserted by the CM/ECF system.

SCM by name), *Bruton* is not implicated because the statements do not "expressly implicate" Defendant Omidi or SCM and are not "powerfully incriminating." *See Bruton*, 391 U.S. at 124. Rather, this situation is more akin to *Richardson*, where the Zarrabi Interview Excerpts are "not incriminating on [their] face, and bec[o]me so only when linked with evidence introduced later at trial." *Richardson*, 481 U.S. at 208; *see also United States v. Hoac*, 990 F.2d 1099, 1105 (9th Cir. 1993) ("a codefendant's statement that does not incriminate the defendant unless linked with other evidence introduced at trial does not violate the defendant's Sixth Amendment rights"). Nor is this case like *Gray v. Maryland*, 523 U.S. 185, 196 (1998), where the Supreme Court held that a redacted confession that expressly highlighted deletions implicated *Bruton*, because the confession to "who was in the group that beat [victim]" was "me, *deleted, deleted*, and a few other guys." Gray, 523 U.S. at 196 (emphasis added). The Supreme Court noted that "me and a few other guys" would have been appropriate. *See id.* Here, Defendant Zarrabi's statements referring to "they" are similar to the latter, approved statements. The Court further declines Defendant Omidi's request to redact statements made by Defendant Zarrabi that potentially refer to Defendant Omidi, as doing so (i.e., redacting "them" or "they"), may have the *opposite* intended effect (i.e., a juror could believe that the redaction referred expressly to Co-Defendant Omidi).[3]

The Court finds that the Government's excerpted text message exchanges between Defendant Zarrabi and Michael Zarrabi ("Michael Zarrabi Text Message Excerpts") are inadmissible. The Government contends that the messages are admissible to provide context and show their effect on Defendant Zarrabi. Context statements are admissible where they make defendant's statements "intelligible to the jury and recognizable as admissions." *United States v. Wills*, 346 F.3d 476, 490 (4th Cir. 2003) (*quoting United States v. Lemonakis*, 485 F.2d 941, 948 (D.C. Cir. 1973)). The Michael Zarrabi Text Message Excerpts, however, do not help put Defendant Zarrabi's statements into context at all. Defendant Zarrabi's statements are generally ambiguous and nonresponsive to Michael Zarrabi's text messages, and it is unclear whether Defendant Zarrabi was responding directly to Michael Zarrabi's texts. Moreover, as Defendant Zarrabi points out, there are other non-excerpted text messages in this exchange (i.e., Defendant Zarrabi stating that he will talk to Michael in person because "I am still in hospital" and Michael Zarrabi later clarifying, after the excerpted text exchange, that he was having a payment dispute with Charles Klasky), which make it unclear whether Michael Zarrabi was even putting Defendant Zarrabi on notice of alleged fraud or whether he was simply complaining about aspects of his own work and pay. [*See* Doc. # 1293-3 (VanCannon Decl.), Exh. 2 (additional text excerpts) at 3.] Furthermore, the fact that Defendant Zarrabi indicates that he is at work at the hospital at the time of the text message exchanges makes it unclear whether he fully understood what Michael Zarrabi stated in his text messages regarding alleged manipulated data.[4] Without the benefit of Defendant Zarrabi or Michael Zarrabi's testimony,

---

[3] Defendant Zarrabi's statement that "what they did was not right and I was a part of it. I realize that and I want to try to make it up if I can help" is admissible against him under FRE 801(d)(2)(A). Although this statement references others ("they"), it does not implicate *Bruton* for the reasons already mentioned above. To the extent Defendant Zarrabi disputes the accuracy of the transcription of the recordings (i.e., he asserts that he stated that "I was ***not*** part of it" or merely "***on*** part of it" (i.e., connected with it, but did not knowingly participate) [Doc. # 1293 at 13 n.2], he may address this issue in cross-examination. It is the Court's practice to give a limiting instruction regarding the use of transcripts of an audio recording.

[4] At the September 14, 2021 hearing, the Government specifically requested that the Court reconsider or reserve ruling on the admissibility of a text exchange where Michael Zarrabi states to Defendant Zarrabi: "At least read the studies. You are responsible too as the medical director[,]" to which Defendant Zarrabi responds "I never signed thew [sic] conteact

these text messages are ambiguous at best regarding their effect on Defendant Zarrabi. Even if Michael Zarrabi's texts were not hearsay, their probative value is outweighed by the danger of unfair prejudice under FRE 403, given the risk that the jury will consider Michael Zarrabi's statements (regarding manipulation of data and Defendant Zarrabi not reviewing sleep studies) for their truth.

For the foregoing reasons, the Government's MIL to Admit Certain Statements by Defendant Zarrabi and Defendant Omidi's related Motion to Exclude Testimonial Statements of Defendant Zarrabi are each **GRANTED IN PART and DENIED IN PART** as set forth above. The parties shall meet and confer as to any additional excerpts from the recordings that Defendants wish to add for completeness, as well as the wording of the limiting instructions to be read during the playing of the audio recordings.

2. **Government's MIL to Admit Evidence as Inextricably Intertwined or, Alternatively, under FRE 404(b) [Doc # 1199]**

The Government seeks to introduce seven categories of evidence at trial:

1. the scheduling, conduct, and billing of sleep studies and related policies and incentives;
2. use of falsified sleep study results and Epworth Sleepiness Scale scores in seeking approval for lap band surgery and to generate prescriptions and referrals for continuous positive airway pressure ("CPAP") devices;
3. demands for payment for the signing of CPAP prescriptions;
4. attempts to cover up the sleep study fraud;
5. falsification of information such as patients' heights, weights, and body mass indices ("BMIs") on materials attached to the letters of medical necessity ("LOMNs") seeking insurance approval for Lap-Band surgery;
6. use of forged or unauthorized signatures of dieticians on nutrition summary letters attached to the LOMNs; and
7. submission of LOMNs created from cloned language not specific to and often inaccurate regarding patients' conditions, some of which were not even reviewed by physicians listed on them.

[Doc. # 1199 at 8-9.] The Government states that the aforementioned evidence would be used to prove the existence and nature of the scheme, and would not be limited to the patients and claims specifically identified in the FSI. *Id.* at 9. The Government contends that the evidence is admissible because it is "inextricably intertwined" with the criminal conduct alleged in the FSI (as both part of the transactions that serve as the basis for criminal charges, and necessary for the government to present a coherent theory of its case) or, in the alternative, as proof of Defendants' intent, knowledge, opportunity, and absence of mistake under FRE 404(b).

---

[sic] for medical directorship[.]" [Doc. # 1293-2 at 4 (lines 361-62).] Although here, Defendant Zarrabi *does* respond, in part, to the substance of Michael Zarrabi's text, his response remains ambiguous. It is unclear whether Defendant Zarrabi's response is a *non-sequitur* or whether it evinces, as the Government suggests, his knowledge or willful blindness regarding alleged manipulation of the sleep studies.

Defendants Omidi and Zarrabi contend that, as an initial matter, the Government's motion must be denied as premature and/or overbroad, since it only generally references categories of evidence it seeks to introduce, and has failed to identify any specific evidence. [Doc. # 1296 at 6 (*citing inter alia United States v. Alpine Land & Reservoir Co.,* 887 F.2d 207, 214 (9th Cir. 1989) ("courts should not render advisory opinions upon issues which are not pressed before the court, precisely framed and necessary for decision.").  To the extent that it would be possible to render a decision on the admissibility of the Government's generally-described evidence, Defendants contend the MIL should be denied as the categories of evidence are not inextricably intertwined with the alleged criminal conduct and are inadmissible under FRE 404(b).  Defendant Zarrabi also filed a separate opposition specifically addressing one category of evidence that the Government seeks to introduce, involving Defendant Zarrabi allegedly demanding payment for signing CPAP and APAP (automatic positive airway pressure) prescriptions.  Defendant Zarrabi contends the Government has not alleged that this unexecuted payment arrangement forms the basis of any of these allegedly false statements to insurers and accordingly, is not inextricably intertwined with the charged offenses, fails to meet the FRE 404(b) standard, and instead is being introduced to show Defendant Zarrabi's alleged propensity to commit a crime. [Doc. # 1294.]

The Government is correct that, as a general matter, it may introduce broader evidence relating to an overall alleged fraud scheme.  *See United States v. Loftis*, 843 F.3d 1173, 1177 (9th Cir. 2016) ("[T]he commission of . . . a mail fraud or wire fraud offense necessarily includes a fraudulent scheme as a whole . . ., including additional executions of the scheme that were not specifically charged."); *United States v. Serang*, 156 F.3d 910, 915 (9th Cir. 1998) (government not precluded from introducing evidence relevant to entire conspiracy or scheme simply because defendant is indicted for less than all of their actions).  While some of the categories of evidence referenced in the Government's MIL may be admissible as inextricably intertwined, the Court is unable to render a decision at this time given the Government's failure to identify any specific evidence (or even an exemplar thereof) that it seeks to introduce relating to the seven categories of evidence it has referenced.  *See Alpine Land & Reservoir Co.,* 887 F.2d at 214.  Accordingly, the Court reserves ruling on the Government's MIL as it is premature.

To the extent that the Government appears to have not specifically listed or identified proposed evidence given the volume of exhibits, and in order to provide guidance to the parties and streamline the issues to be discussed at trial, the Court notes that it is inclined to admit evidence from Category 1 to the extent the Court understands it (which appears to serve, at least in part, as a basis for Defendant Omidi's MILs regarding advertising, commissions, and billing, which the Court has denied in a separate order).  Such evidence would be admissible to offer a coherent and comprehensible story regarding the commission of the alleged widespread fraud scheme.  *See United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995) (evidence concerning other acts that are inextricably intertwined with the charged acts may be admitted to, *inter alia,* permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime).  Similarly, and subject to the Court's consideration of the *specific* evidence that the Government intends to introduce at trial, evidence from Categories 2, 4, 5, 6, and 7, which all appear to relate to alleged falsification of documents submitted to TriCare and private insurance companies (or alleged attempts to cover up such fraud), would be admissible for the same reasons.  To the extent that such specific evidence is relevant to show either Defendant Omidi or Zarrabi's role in the scheme, such evidence may also be admissible.  *See Soliman,* 813 F.2d at 279 ("To prove the mail fraud counts, the Government had to show the existence of a scheme of mail fraud activity and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

*Soliman's connection* to that scheme.") (emphasis added).  The Court notes, without deciding at this juncture, that it is unclear how the evidence relating to Defendant Zarrabi's alleged demands for payment for the signing of CPAP and APAP prescriptions will help the Government present a coherent and comprehensible story regarding the commission of the alleged widespread fraud scheme, given that the Government does not appear to allege that this unexecuted payment arrangement forms the basis of any of the allegedly false statements to TriCare and private insurance companies.

For the foregoing reasons, the Court **RESERVES RULING** on the Government's MIL to admit evidence as inextricably intertwined or under FRE 404(b), as set forth above.

> 3. **Government's MIL to Admit Business Records and Authenticate Records Pursuant to Rules 901 and 902(11) [Doc. # 1220]**

The Government seeks to introduce certain business records at trial pursuant to the self-authentication provisions of FRE 902(11), based on certifications from the custodians of record for various third-party businesses and government entities, such as California Employment Development Department ("EDD"), City National Bank, Blue Shield of California, and others.  [*See* Doc. # 1220-1, Exh. A (list of entities with FRE 902(11) certifications).]  The Government also seeks to authenticate records produced by Defendant SCM and emails from Google, AOL, and Yahoo, that were produced with custodian declarations demonstrating that they are what they purport to be.[5]  As to this latter set of records, the Government notes that some may qualify as business records under FRE 803(6), but its theory of admission varies for others, in part because some of the records will not be offered for the truth of the matter asserted, but instead to demonstrate that the records contain false statements or are admissible under FRE 801.

Defendants Omidi and Zarrabi have each filed oppositions.  As an initial matter, Defendant Omidi agrees that for the first set of records (various third-party businesses and government entities), because the Government "has valid business records certifications for these documents, the Government does not need to call a witness at trial to testify as [to] the authenticity of the documents that begin with the Bates-prefixes listed in" Exhibit A to its motion.  [Doc. # 1302 at 6.]  Defendant Omidi also acknowledges that "it is highly likely that, during trial, the defense and the Government will reach agreement on the admissibility of a number of these documents, and they can be admitted without any fanfare."  *Id.* at 5.  Defendant Omidi distinguishes between authenticity and admissibility, and contends that it is improper for the Government to seek to "batch admit" hundreds of documents that it has not yet presented to the Court.  Defendant Omidi also notes that many of the Bates-prefixes listed on Exhibit A (i.e., GT_Aetna, and GT_CIGNA, and GT_UFCW) are not on the Government's exhibit list, so it is unclear what documents, if any, the Government is asking the Court to admit.  [Doc. # 1302 at 8.]

As a general matter, the Court agrees that, to the extent the Government has FRE 902(11) business record certifications for the entities listed in its Exhibit A and for which there is no dispute from

---

[5] The Government initially moved to authenticate documents produced by Defendant Zarrabi on behalf of his medical corporation.  At the September 14, 2021 hearing, the Government withdrew this request and it is accordingly not discussed herein.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

Page  7 of 12

Defendants, those documents would be considered properly authenticated. [*See* # 1220-1, Exh. A (list of entities with Rule 902(11) certifications).] The Court is unable at this juncture to admit any unspecified documents given that, even if authenticated, the Government must lay a foundation through a witness for their relevance before seeking their admission (absent a stipulation between the parties for admission of the documents without such foundational testimony). The Court will accordingly reserve ruling on the admissibility of any self-authenticated documents from the Government's Exhibit A until such time as a witness provides some foundational testimony as to their relevance or the parties stipulate to their admission.

As for the AOL and Yahoo emails, the Court agrees that these emails are properly authenticated with a declaration from the appropriate custodian of records for those companies. [*See* Doc. # 1346-1 (Williams Decl.), Exh. H (AOL custodian declaration); Exh. I (Yahoo custodian declaration).][6]

With regard to the documents produced by SCM, the Court finds that they are authenticated. SCM assumed responsibility for producing documents in response to the Government's subpoenas to SCM and related GET THIN entities. [*See* Williams Decl., Exh. B (Mar. 26, 2012 Letter from former SCM counsel (Sheppard Mullin) to Government counsel stating, *inter alia*, that they "confirm that Surgery Center Management, LLC (through this firm) will take overall responsibility for the production of documents" in response to government subpoenas for itself and 75 other GET THIN related entities).] Records in response to the Government subpoenas were provided by SCM's then counsel. *See, e.g.*, Exh. C (sample letters from SCM former counsel re subpoena production). Monica Porter, who worked for Forward Business Solutions, LLC, which was in turn managed by SCM [Doc. # 1128 (Porter Decl. in support of Defendant Omidi's First Suppression Motion) ¶ 1], appeared to testify before a grand jury in 2013 and 2015, accompanied by SCM's former counsel, as the custodian of records for the document productions in response to the government subpoenas. Williams Decl., Exh. E, F, G (grand jury testimony).[7] Porter testified, among other things, that her role was "to review the records that were produced in the subpoena, so I'm the custodian of those records to verify that those records are correct and complete." Exh. D at 16. Notably, Porter recently submitted a declaration dated July 17, 2021 in support of Defendant Omidi's motion to suppress attesting:

> I executed Custodian of Records Declaration on behalf of many of the doctors who worked for Independent Medical Services, Inc., and who had received subpoenas. I received permission from Mr. [Julian] Omidi or his attorneys to access and copy the subpoenaed records. Each time I needed to obtain the records for the doctor subpoenas, I requested permission and authorization to act as the Custodian of Records for that doctor. In previous proceedings I testified many times that I was the Custodian of Records for the various

---

[6] The Government has not submitted a Google custodian declaration but represents that it "intends to introduce those emails from other sources, primarily SCM's productions." [Doc. # 1346-1 at 8 n.3.] With respect to the AOL certification, the custodian declaration is from "Oath, Inc.," which appears to be the new name for AOL.

[7] The Court notes that the title page on the April 25, 2013 grand jury testimony refers to a "Maria Porter." Upon reviewing the context of the transcript, it appears that this is a typographical error and the witness is Monica Porter, which was not contested by any party at the September 14, 2021 hearing. [*See* Williams Decl., Exh. E.]

doctors because Mr. Omidi provided me access to the records on behalf of Surgery Center Management.

Porter Decl. ¶ 9. Although Defendant Omidi now attempts to disavow that Porter was an appropriate custodian of records for SCM such that the SCM-produced documents cannot be authenticated, this recent reversal is contradicted by the record, reflected above, that SCM held Porter out as the custodian of records on multiple occasions and that she was given authority to make statements relating to her status as SCM's custodian of records. *See* Fed. R. Evid. 801(d)(2)(C) (statement offered against opposing party and made by person whom the party authorized to make statement on subject is not hearsay).

For the foregoing reasons, the Government's MIL to authenticate and admit business records is **GRANTED IN PART.** The entities listed in its Exhibit A (and for Yahoo and AOL) for which the Government has custodian certifications, are authenticated. The Court reserves ruling on their admissibility pending consideration of the foundational evidence to be presented at trial.[8] The Court further **GRANTS** the Government's request to authenticate SCM records produced in response to government subpoenas and for which Monica Porter was presented as SCM's custodian of records.

4. **Government's Motion to Admit Summary Charts [Doc. # 1194]**

The Government seeks to introduce several summary charts through three witnesses – proposed expert witness Michael Petron (Exhibits 910-918); SA Sarine Tooma of the Defense Criminal Investigative Service ("DCIS"), who helped organize some of the data upon which Petron relied to create his summaries; and FDA-OCI contractor David Nichols (Exhibits 919-935).[9]

Defendants Omidi and Zarrabi have filed separate oppositions and have joined in each other's briefs. Defendants contend that Government Exhibits 910-918, created by Michael Petron, should not be admitted because Petron should not be permitted to testify as an expert witness (which is the subject of Defendants' separate MIL), and even if he could testify, these summaries are based on unauthenticated documents provided by Michael Zarrabi. Defendants also seek to exclude Government Exhibits 919-935, created by David Nichols, a financial crimes consultant for FDA-OCI, which summarize bank transactions and tracing of payments, on the ground that they do not constitute neutral summaries, but are argumentative in nature. Defendant Zarrabi also contends that Exhibits 926-27 and 931-35 should be excluded as cumulative in nature, as they present the same payments made to Defendant Zarrabi in multiple slides.

---

[8] In the interests of time and efficiency, the Court gives Defendants advance notice that, once a foundation has been laid for the relevance of these authenticated business records at trial, the Court will not force the Government to move for their admission one by one. To the extent Defendants have advance notice regarding the documents falling within a category of documents, it will be incumbent upon them to demonstrate why any one or more of these documents is inadmissible for a reason other than relevance, something which they have not done at this juncture.

[9] The Government also initially moved to admit summary charts prepared by SA Zeva Pettigrew of the Food and Drug Administration, Office of Criminal Investigations ("FDA-OCI") (Exhibits 900-909). At the September 14, 2021 hearing, the Government withdrew this request and it is accordingly not discussed herein.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

Page **9** of **12**

The Court finds that the summary charts from Michael Petron (Government Exhibits 910-918) are admissible, as they seek to summarize information from voluminous sleep study records, which the Court has found that Petron may testify about in its separate order on Defendants' MIL to exclude his testimony.[10]  The Court does not find that the Petron summaries are argumentative in nature.  To the extent that Defendants contend that there are perceived inaccuracies or inconsistencies contained therein, this goes to the weight given to the summaries, not their admissibility, and Defendants may raise these issues on cross-examination.  It also is the Court's practice to issue a limiting instruction as to the use of charts and summaries (i.e., "charts and summaries are only as good as the underlying supporting material").

The Court also concludes that the summaries offered by David Nichols (Exhibits 919-935) are admissible.  Nichols attests that he reviewed over 4,000 pages of bank records (including statements, check images, signature cards, and other documents) to summarize:  (1) bank account information (including account names and numbers, opening and closing dates, individuals with signing authority and other individuals) (Exhibit 925); (2) payments from certain bank accounts deposited into the bank account for Defendant Zarrabi's medical corporation (Exhibits 926-27, 931-35); (3) sleep study invoices for services allegedly provided by Defendant Zarrabi (Exhibit 930); (4) transfers from certain bank accounts to bank accounts affiliated with Defendant Omidi (Exhibits 928-29); and tracing sleep study payments from insurance payment checks to disbursements made to GET THIN employees or affiliated individuals, Daniel Carriedo, Sherwin Hong, his wife, Maria Hong, and Defendant Zarrabi (Exhibits 919-24).

Nichols' summaries would assist the jury in summarizing the voluminous underlying bank records, and are relevant to the money laundering charges and fraud allegations set forth in the FSI.  *See United States v. Johnson*, 594 F.2d 1253, 1255 (9th Cir. 1979) ("The purpose of Rule 1006 is to allow the use of summaries when the volume of documents being summarized is so large as to make their use impractical or impossible; summaries may also prove more meaningful to the judge and jury.").  The Court does not find that the Nichols summaries are argumentative in nature.  To the extent that Defendants contend that the Nichols summaries are cumulative (because some slides show the same payments to Defendant Zarrabi), again, this goes to the weight given to the summaries, not their admissibility, and Defendants may raise any perceived inaccuracies or inconsistencies on cross-examination.

For the foregoing reasons, the Court **GRANTS** the Government's MIL to admit the summary charts reflected in Exhibits 910-918 (Petron) and Exhibits 919-935 (Nichols).

---

[10] As discussed in its separate order on Defendants' MIL to exclude Petron, the Court finds that the terminology "intended loss" and "actual loss" should be amended to "amounts billed" and "amounts paid" and accordingly, Petron's summary charts should be so amended.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

Page **10** of **12**

5. **Government's Motion to Exclude Defense Expert Charles Saldanha, M.D., DFAPA[11] [Doc. # 1226]**

The Government seeks to exclude the testimony of Charles Saldanha, M.D., DFAPA. Defendants' proposed expert in the field of bipolar disorder and other mental health conditions. It is undisputed that one of the Government's key witnesses, Charles Klasky, has bipolar disorder, as does Michael Zarrabi, Defendant Zarrabi's brother and former GET THIN RPSGT. Dr. Saldanha intends to testify that, given their bipolar disorder diagnoses, Klasky and Michael Zarrabi may have experienced and continue to experience hypomanic and depressive episodes throughout their lives; may have experienced and continue to experience neurocognitive impairments; may experience difficulty forming and recalling memories; may have conditions that are deteriorating over time; and their prescribed medications are known to have possible side effects, including neurocognitive side effects. [Doc. # 1226-1, Exh. 1 (July 28, 2021 Saldanha disclosure letter).] The Government "recognizes that a witness's mental health issues can be relevant to credibility and that a defendant is entitled to cross-examine a witness about his mental health issues and medication and how they affect his perception and recall." [Doc. # 1226 at 3.] The Government contends, however, that Dr. Saldanha's anticipated testimony consists of generalized, speculative opinions not based upon his evaluation of Klasky or Michael Zarrabi or a comprehensive review of their medical records, and his testimony is being used as an end-run to attack their credibility, which falls squarely within the province of the jury. The Government further contends that Dr. Saldanha's testimony is unduly prejudicial under FRE 403.

Defendants respond that the Government concedes that Klasky's mental health is relevant to his credibility and thus, rather than having the jury utilize their own preconceived notions regarding bipolar disorder, Dr. Saldanha should be permitted to assist the jury in understanding aspects of the condition, rooted in science and the practice of medicine, and is accordingly admissible under FRE 702.

"Expert witnesses may testify if they are qualified and if their testimony will assist the trier of fact in understanding the evidence or determining a fact in issue." *United States v. Binder*, 769 F.2d 595, 602 (9th Cir. 1985), *overruled on other grounds by United States v. Morales*, 108 F.3d 1031 (9th Cir. 1997) (citation omitted). Determining credibility "is for the jury— the jury is the lie detector in the courtroom." *United States v. Barnard*, 490 F.2d 907, 912 (9th Cir. 1973) (trial court properly excluded psychiatric and psychological testimony as to credibility of co-defendant, who was a prosecution witness); *see also United States v. Rohrer*, 708 F.2d 429, 434 (9th Cir. 1983) ("Although the credibility of a witness, unlike his competency, is a question for the jury, admission of expert psychiatric testimony bearing on credibility lies in the judge's discretion.").

As an initial matter, Dr. Saldanha's testimony need not be excluded simply because he did not directly examine Klasky and Michael Zarrabi. *See United States v. Vallejo,* 237 F.3d 1008, 1021 (9th Cir. 2001), *opinion amended on denial of reh'g*, 246 F.3d 1150 (9th Cir. 2001) (failure to physically examine defendant "goes to the weight – not the admissibility – of the evidence" and may be raised on cross-examination). The Government does not contend, nor does the Court find, that Dr. Saldanha is unqualified

---

[11] This acronym stands for "Distinguished Fellow of the American Psychiatric Association."

to render his opinions regarding bipolar disorder. [*See* Doc. # 1226-1 (Saldanha CV).] Rather, the Court agrees with the Government that much of Dr. Saldanha's proposed testimony offers generalized opinions regarding individuals with bipolar disorder (i.e., that they may have difficulty forming and recalling memories, that they may have conditions that are deteriorating over time), which do not have "a valid connection to the pertinent inquiry[,]" *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013), but instead run the real risk of usurping the jury's role of determining Klasky's credibility, or lack thereof. *See Barnard*, 490 F.2d at 912–13 (affirming district court's rejection of psychiatric expert testimony because it invaded the province of the jury to determine credibility).[12]

The Court finds, however, that Dr. Saldanha is qualified to, and may, provide testimony on the narrow issue of potential side effects relating to the medications that Klasky was taking during the relevant time period. Such testimony is not "within the parameters of a layperson's common sense, but in actuality, is beyond their knowledge[,]" *United States v. Finley*, 301 F.3d 1000, 1013 (9th Cir. 2002), but would potentially assist a jury in their assessment of Klasky's credibility. Although it does not appear, based on the parties' briefing, that Michael Zarrabi will testify at trial, to the extent that he does testify, Dr. Saldanha is also permitted to offer expert testimony on the potential side effects of the medications which Michael Zarrabi was taking during the relevant time period.[13]

For the foregoing reasons, the Government's MIL to preclude Dr. Saldanha's testimony is **GRANTED IN PART and DENIED IN PART.**

### III. CONCLUSION

For the foregoing reasons, the Court rules as follows on the Government's motions:

1. The Government's MIL to Admit Certain Statements by Defendant Zarrabi [Doc. # 1192] is **GRANTED IN PART and DENIED IN PART**, and the parties shall meet and confer regarding any additional excerpts of the audio recordings to be played for completeness and the wording of the limiting instructions to be read at the time the audio recordings are played**;**

2. The Court **reserves ruling** on the Government's MIL to Admit Evidence as Inextricably Intertwined or, Alternatively, under Federal Rule of Evidence 404(b) [Doc. # 1199];

---

[12] Nor does the Court find that *United States v. Gonzalez-Maldonado*, 115 F.3d 9 (1st Cir. 1997), supports Defendants' position. There, the First Circuit appeared primarily concerned with the fact that the defense had already promised in opening statements that the expert would testify but was then barred from doing so. *See id.* at 14-15 (holding that exclusion of expert psychiatric testimony regarding witness' tendency to exaggerate was reversible error and explaining that "having obtained the assurance of the court that Dr. Fumero would be allowed to testify, defense counsel stated as much to the jury. When the court later changed its mind and ruled that the expert would not be permitted to testify, defendants were unable to produce the promised testimony" and "little is more damaging than to fail to produce important evidence that had been promised in an opening.").

[13] In *Rohrer*, 708 F.2d at 434, the Ninth Circuit held that the district court did not abuse its discretion in excluding expert testimony on a key witness's alleged illicit drug usage given that the prejudicial value of speculating on the effects of the witness's drug use outweighed its probative value. The Court finds *Rohrer* distinguishable to the extent that Dr. Saldanha may testify on the limited issue of potential side effects of Klasky's documented use of prescribed medication.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

Page   12 of 12

3.  The Government's MIL to Admit Business Records and Authenticate Records Pursuant to Rules 901 and 902(11) [Doc. # 1220] is **GRANTED IN PART** and the ruling is reserved in part;

4.  The Government's MIL to Admit Summary Charts [Doc. # 1194] is **GRANTED** as to Exhibits 910-918 (Petron), and Exhibits 919-935 (Nichols); and

5.  The Government's MIL to Exclude Defense Expert Charles Saldanha [Doc. # 1226] is **GRANTED IN PART and DENIED IN PART**.

   **IT IS SO ORDERED.**