UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

Page **1** of **8**

| Case No. | CR 17-661(A)-DMG | Date | September 17, 2021 |
|---|---|---|---|

| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE |
|---|---|
| Interpreter | N/A |

| Kane Tien | Not Reported | Not Present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendant(s): | Present | Appt. | Ret. |
|---|---|---|---|---|---|---|---|
| (1) Julian Omidi | Not | | x | Michael Schachter | Not | | ✓ |

**Proceedings:**   **[IN CHAMBERS] ORDER RE DEFENDANT OMIDI'S MOTION TO DISMISS OR SUPPRESS BASED ON GOVERNMENT INTERFERENCE AND FIFTH AND SIXTH AMENDMENT VIOLATIONS [1162]**

## I.   INTRODUCTION

On August 3, 2021, Defendant Julian Omidi filed a motion to dismiss the First Superseding Indictment or suppress evidence given the Government's alleged intrusion into Omidi's privileged attorney-client and work product communications in violation of the Fifth and Sixth Amendments. [Doc. ## 1162, 1179.]  On August 17, 2021, the Government filed its opposition [Doc. # 1239] and on August 24, 2021, Defendant Omidi filed his reply [Doc. # 1267].  On August 26, 2021, the Court ordered the parties to submit supplemental briefing to address some of the Court's questions [Doc. # 1278], which the parties filed on August 31, 2021 [Doc. ## 1313 (Omidi Response), 1314 (Government Response), 1315 (Amended Government Response)].  A videoconference hearing took place on September 1, 2021.  Pursuant to the Court's Order [Doc. # 1323], a representative from the Government's Filter/Taint Team filed a declaration on September 3, 2021 [Doc. # 1341] ("Fernandez Decl.") and Defendant Omidi filed a response on September 8, 2021.  [Doc. # 1344.]  The Filter/Team filed a second declaration on September 13, 2021 [Doc. # 1356] ("Second Fernandez Decl.") following a Court-ordered disclosure [Doc. # 1348].  The parties further addressed this motion at the September 14, 2021 pretrial conference.  Having carefully considered the arguments set forth in the parties' briefs and at the hearings on this motion, the Court **DENIES** Defendant Omidi's motion.

## II.   BACKGROUND

As discussed in prior orders [*see, e.g.*, Doc. # 1228], after the June 2014 seizure of documents and devices pursuant to several search warrants, the Government, Defendant Omidi, and various GET THIN entities became involved in a dispute over the procedure by which the Government would search the digital devices and documents seized pursuant to the warrants.  By July 22, 2014, the Government and attorneys representing GET THIN entities met with Stroz Freidberg, a consulting and technical services firm specializing in computer forensics and other matters, to assess the potential scope of Stroz Freidberg's work to cull and review the seized digital devices for, among other things, potential

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

Page **2** of **8**

privileges. [Doc. # 1104-6, Exh. 7 (Aquilina Decl.) ¶ 12.] The parties eventually stipulated to workflow agreements with Stroz Freidberg to process data from seized digital devices and assist in the scope and privilege review. [Doc. # 1104-6, Exhs. 6, 7.] The parties also agreed to have Hon. Dickran Tevrizian, retired United States District Judge, serve as a discovery referee to resolve disputes regarding whether any electronic data was privileged. *Id.* By all accounts, these arrangements fell apart and the Government was unable to access documents obtained from the seizure warrants for over a year while the statute of limitations continued to run. [*See* Doc. # 1114-8, 1114-9, Exh. G.] The Government eventually employed a Filter/Taint Team to facilitate its privilege review after Hon. Paul L. Abrams, United States Magistrate Judge, denied the Government's proposed order setting forth a privilege review protocol, declining to get involved in what he characterized as a private agreement that was no longer meeting expectations. [*See* Doc. # 1114-9, Exh. I (Oct. 15, 2015 Order).]

In its supplemental submission [Doc. # 1315] and the Filter/Taint Team declaration submitted by AUSA Elisa Fernandez [Doc. # 1341], the Government explains that during the course of its privilege review process, the Government utilized a Relativity database consisting of both a "clean" database and "taint" database wherein the Prosecution Team could only access the former. Fernandez Decl. ¶ 8. Once the Filter/Taint Team reviewed items for privilege, it requested a third party vendor, Litigation Technology Service Center ("LTSC"), to migrate designated documents from the taint database to the clean database. *Id.* ¶ 9. The last migration occurred on January 30, 2019. *Id.* Approximately 645,815 documents were migrated by LTSC from the taint database to the clean database and remain accessible to the Prosecution Team. *Id.* ¶ 16.[1]

At the request of the Prosecution Team, the Filter/Taint Team ceased reviewing documents in the Relativity taint database on or about July 11, 2019. *Id.* ¶ 11. To help protect against the inadvertent disclosure of potentially privileged materials, the Filter/Taint Team has the ability to "lock" the Prosecution Team out of viewing or accessing documents on the clean database. If, while reviewing a document, a Prosecution Team member came across a document that may contain privileged information, the Prosecution Team would immediately close the document and request that the Filter Team conduct a second review. *Id.* ¶ 10. The Filter Team would then request LTSC to lock the Prosecution Team out of the document as well as the documents in the family, and at times, the entire data set in which the document was located. *Id.* The Filter Team received approximately 20 requests from the Prosecution Team to conduct a second review of documents that had been migrated to the clean database. *Id.* ¶ 11. The 20 requests for secondary Filter review resulted in 20 documents being locked, as well as associated families of documents (totaling 4,892 documents). Of those 4,892 locked documents, only 110 locked documents had been viewed by a member of the Prosecution Team. *Id.* Of the 110 locked documents, a secondary Filter review determined that two documents were potentially privileged, 71 were not privileged, and 37 needed additional information to determine potential privilege. *Id.* The Filter Team submitted for the Court's *in camera* review the two potentially privileged documents that were inadvertently migrated to the clean database and briefly made available to the Prosecution Team. *See id.* ¶ 12 (generally describing the two documents). The Court ordered the

---

[1] Elsewhere in her declaration, AUSA Fernandez attests that 692,265 documents were migrated from the taint database to the clean database. *Id.* ¶ 11. AUSA Fernandez clarified at the September 14, 2021 hearing that the 645,815 documents reflects the relevant figure.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES—GENERAL**

Page **3** of **8**

Filter Team to produce the 37 documents and the two potentially privileged documents to Defendant Omidi's counsel forthwith. [Doc. # 1348.]

The Filter/Taint Team did not review all seized materials (as some information could not be accessed, or due to the Filter/Taint Team's time and resource limitations). Fernandez Decl. ¶ 3[2]. The Government indicates that it returned ten digital devices (four mobile phones and six flash drives) to Defendant Omidi's former counsel in July 2020. [*See* Doc. # 1315, Exh. B (Chart).] The Government returned to Defendant Omidi forensic images of the contents of seven other devices seized pursuant to the Home Warrant, and forensic images for Omidi's Gmail account seized pursuant to the Google Warrant. *See id.* Returned material included materials reviewed and withheld by the Filter/Taint Team as well as unreviewed material. Fernandez Decl. ¶ 4. The Government retained the actual/physical seven aforementioned digital devices pursuant to the Home Warrant as instrumentalities of the offense, and retained the Gmail materials [*see id.*] as an email provider production it was authorized to retain, in sealed form. [Doc. # 1315 at 7-8.][3] The devices seized pursuant to the Home Warrant remain sealed in the FBI's Evidence Control Center ("ECC"). *See id.* at 5. The physical evidence corresponding to the Gmail materials remains sealed in evidence storage facilities within the custody of the FDA. *See id.*

After the Court ordered the Filter/Taint Team to file a notification with the Court regarding the 39 above-referenced documents that, upon second Filter review, were deemed potentially privileged or required additional information [Doc. # 1348], the Filter/Team did so on September 13, 2021 [Doc. # 1356]. The Filter/Taint Team represents that eight of those documents were previously produced to Defendant Omidi, and 31 of those documents (including *in camera* Exhibits 1 and 2) were made available to Defendant Omidi on September 12, 2021. Second Fernandez Decl. ¶¶ 4-5.

### III.   DISCUSSION

"[M]ere government intrusion into the attorney-client relationship, although not condoned by the court, is not of itself violative of the Sixth Amendment right to counsel. Rather, the right is only violated when the intrusion substantially prejudices the defendant." *United States v. Irwin*, 612 F.2d 1182, 1186-87 (9th Cir. 1980); *see also United States v. Kowalczyk*, 805 F.3d 847, 856 n.2 (9th Cir. 2015) ("[G]overnment intrusion into the attorney-client relationship is not *per se* violative of the Sixth Amendment unless the defendant is substantially prejudiced by such actions.") (*citing Irwin*, 612 F.2d at 1186-87). Examples of such prejudice may include: instances where "evidence gained through the interference is used against the defendant at trial[,]" "the prosecution's use of confidential information pertaining to the defense plans and strategy," "government influence which destroys the defendant's confidence in his attorney, and from other actions designed to give the prosecution an unfair advantage

---

[2] As to this point, Fernandez attests that "some devices were not reviewed for taint either because of an inability to access the devices or limited resources given the voluminous discovery (approximately 9 million records in the Relativity database)." Fernandez Decl. ¶ 3. AUSA Fernandez represented at the September 14, 2021 hearing that approximately 8 million documents were unreviewed by the Filter/Taint Team from the Relativity database.

[3] To date, Defendant Omidi still has not specified *which* of the seized digital devices allegedly belong to him. In its supplemental briefing summarizing the status of retained devices, the Government indicates that it has taken a cautious, and potentially overinclusive, approach regarding which devices belong to Defendant Omidi. [*See* Doc. # 1315 at 3-4.]

at trial." *Id.* at 1187; *see also Weatherford v. Bursey*, 429 U.S. 545, 558 (1977) (no Sixth Amendment violation where undercover agent became privy to defense strategy but did not communicate anything to prosecution team, as there was "no tainted evidence in this case, no communication of defense strategy to the prosecution, and no purposeful intrusion by [the undercover agent].").

If a Sixth Amendment violation is found, dismissal of the indictment is not appropriate if less drastic remedies would preserve defendant's ability to receive a fair trial. *United States v. Rogers*, 751 F.2d 1074, 1078–79 (9th Cir. 1985); *see also United States v. Haynes,* 216 F.3d 789, 796, 797 (9th Cir. 2000), *amended on denial of reh'g* (Aug. 15, 2000) (remedy for outrageous government conduct where government obtains evidence in violation of Fifth or Sixth Amendment traditionally is "dismissal of the indictment, which is drastic, disfavored, and thus used only in the most egregious cases" or "suppression at trial of evidence improperly obtained.") (citation omitted).

The Ninth Circuit has carved out an exception to the aforementioned general rule that there is no Sixth Amendment violation unless the defendant shows substantial prejudice by the government intrusion. In *United States v. Danielson*, 325 F.3d 1054 (9th Cir. 2003), the Ninth Circuit set forth a two-part, burden shifting framework. "First, the defendant must make a *prima facie* showing of prejudice, which involves demonstrating that 'the government . . . acted affirmatively to intrude into the attorney-client relationship and thereby to obtain [ ] privileged information.' The burden then shifts to the government to show 'by a preponderance of the evidence that it did not use this privileged information. Specifically, it must show that all of the evidence it introduced at trial was derived from independent sources, and that all of its pre-trial and trial strategy was based on independent sources.'" *United States v. Ramos,* No. CR 13-403-CAS, 2014 WL 8817652, at *4 (C.D. Cal. Sept. 17, 2014), *aff'd in part*, 717 F. App'x 693 (9th Cir. 2017) (*quoting Danielson*, 325 F.3d at 1071, 1074); *see also United States v. Renzi,* 722 F. Supp. 2d 1100, 1114 (D. Ariz. 2010) (discussing *Danielson* burden-shifting framework).

The Government's handling of the privilege review process in this case has been circuitous and, by all accounts, has not run smoothly, with a stipulated workflow agreement followed by a Government Filter/Taint Team review when the original arrangement fell apart.[4] The privilege review process has also been complicated by several different parties objecting to aspects of the workflow agreement, payment, and other issues [*see* Doc. # 1114-9, Exhs. H-K (correspondence regarding workflow disputes and alleged breaches of agreement)] and the turnover of numerous defense counsel. In the Filter/Taint Team declaration, AUSA Fernandez acknowledges that two documents deemed potentially privileged were initially migrated to the Relativity clean database and made accessible to the Prosecution Team for a brief period in September and October 2016. The record indicates that Prosecution Team members

---

[4] As for the Court's question regarding why the Google Warrant (14-1029M) was omitted from the stipulated proposed orders presented to Magistrate Judge Chooljian, the Government states that it "has been unable to determine why this warrant was not specifically listed in the proposed order presented to Magistrate Judge Chooljian[.]" [Doc. # 1315 at 7.] The Government notes that the order concerned the appointment of retired District Judge Tevrizian as discovery referee, not the imposition of a particular privilege review protocol, and that the materials from the Google Warrant were in fact provided to Stroz Freidberg to be handled in a manner consistent with the parties' workflow agreement.

immediately flagged the documents for secondary Filter Team review, such that the Prosecution Team was subsequently locked out and unable to access them. Fernandez Decl. ¶ 12.

The Court has reviewed the two documents *in camera* – the first document is unsigned and undated, and appears to be an internal memorandum or notes containing potential attorney work product relating to another case. It does not appear to reflect any trial strategy or other privileged communications directly at issue in this case. The second document appears to contain attorney-client communications relating to the administrative task of transmitting documents, reveals no confidential information, and does not appear to be pertinent to any issues in this case. Under the circumstances presented, even if a Prosecution Team member briefly viewed either of the two aforementioned documents, the Court does not find that the Government *deliberately* intruded into Defendant Omidi's attorney-client relationship or that he suffered substantial prejudice warranting the requested relief. *See Irwin*, 612 F.2d at 1186-87. As for the 37 documents that required additional information to determine potential privilege and which were viewed at some point by the Prosecution Team, the Court further finds that Defendant Omidi fails to establish substantial prejudice resulting from their brief, inadvertent disclosure. While the Court might otherwise be inclined to suppress any use of the aforementioned 39 documents at trial, since the Prosecution Team does not have access to them given that they are locked out of accessing the documents in the Relativity database, the suppression of those documents at trial is a moot point.

Nor does the Court find that the Government's actions amounted to a Fifth Amendment violation. Government interference with a defendant's relationship with his attorney may violate his Fifth Amendment right to due process of law. *United States v. Stringer*, 535 F.3d 929, 941 (9th Cir. 2008) (*quoting Irwin*, 612 F.2d at 1185). "'[A] claim of outrageous government conduct premised upon deliberate intrusion into the attorney-client relationship will be cognizable where the defendant can point to actual and substantial prejudice.'" *Id.* (*quoting Haynes*, 216 F.3d at 797). Here, as noted above, Defendant Omidi has not established actual and substantial prejudice. Accordingly, his Fifth Amendment claim also fails.

As for those documents that the Filter/Taint Team did *not* review, the Court finds that Defendant Omidi has not established that he has suffered substantial prejudice given that no one from the Government (either the Prosecution Team or the Filter/Taint Team) has viewed any of that information. *See Irwin*, 612 F.2d at 1186-87. To the extent that Defendant Omidi contends that the Government's failure to review those documents amounts to a *Brady* violation, the Court disagrees. To establish a *Brady* violation, a defendant is "required to demonstrate that the government suppressed material, favorable information and that this suppression prejudiced him." *Danielson*, 325 F.3d at 1074; *see also United States v. Ciccone,* 219 F.3d 1078, 1085 (9th Cir. 2000) ("[t]here are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.") (*quoting Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). Defendant Omidi has not cited any express authority, nor is the Court aware of any, that a *Brady* violation occurs wherever the Government fails to review all of the documents in its

possession but nevertheless turns over copies of those documents to defendants.[5] Here, Defendant Omidi has not established that *any prejudice* ensued by the Government's failure to review all documents in its possession for potential *Brady* material. *See, e.g.*, *Ciccone*, 219 F.3d at 1085 (prejudice is required component of *Brady* violation).[6]

Defendant relies heavily on *Danielson*, *supra*, to argue that the Government bears the "heavy burden" of showing non-use of any privileged information that it has obtained. The Court finds that *Danielson* is distinguishable and that the burden-shifting framework referenced therein does not apply here, but that the general framework stated in *Irwin* and its progeny instead controls. *See Irwin*, 612 F.2d at 1186-87. Here, unlike in *Danielson*, the Prosecution Team inadvertently, and briefly, accessed a handful of documents not directly appearing to implicate trial strategy in this case and then immediately notified the Filter Team to conduct a second review.

Nor is there an indication that the Government's use of the Filter/Taint Team violated prior court orders. Magistrate Judge Chooljian's orders approved stipulations to have retired District Judge Tevrizian act as discovery referee, and Magistrate Judge Abrams' order declined to get involved in, or modify, the parties' stipulated arrangement after it fell apart. The orders did not, as Defendant Omidi contends, ban or otherwise foreclose the Government from using a Filter/Taint Team.[7] Although this Court does not endorse the Government's practice of using the Filter/Taint Team in a case involving such a huge volume of documents, and while the Government could have (and probably should have) sought *further* judicial approval to amend the privilege review protocol, this does not mean that the

---

[5] Defendant Omidi cites *United States v. Pederson*, No. 3:12-CR-00431-HA, 2014 WL 3871197 (D. Or. Aug. 6, 2014), for the proposition that a filter attorney has the same obligations under *Brady* and Rule 16 as a prosecutor. But *Pederson* did not hold that a *Brady* violation occurs wherever the Government fails to review all of the documents in its possession but nevertheless turns over copies of those documents to defendants. Rather, the decision was an "Amended Supervisory Opinion" highlighting disturbing governmental conduct in a capital case, where defendants' eventual plea agreements required them to withdraw their requests for a finding of governmental bad faith. The Court nevertheless issued its Amended Supervisory Opinion pursuant to its supervisory powers to address some of the issues raised by the government's conduct. Among other things, for example, a state police detective (and member of the prosecution team) "was directly responsible for destroying and withholding *Brady* material, failing to catalog and turn over discovery, backdating evidence reports, lying to the USAO regarding this conduct, intercepting and listening to privileged defense communications, and filing a false declaration with this court." *Id.* at *2. Law enforcement members of the prosecution team also actively interfered with attorney-client privilege, by listening in on phone calls and intercepting legal mail (between defendant, who was incarcerated, and his attorneys), without defense counsel or the court's knowledge. *See id.* at ** 13-14, 19, 26. While the court did fault the government for reviewing "so little discovery that it was largely unaware of what had and had not been produced[,]" it also "acknowledge[d] that review of *all* discovery is infeasible in every case and a line-by-line review of discovery in this case likely was infeasible." *Id.* at *23 (emphasis in original).

[6] At the September 14, 2021 hearing, Defendant Omidi referenced approximately 4,500 documents that still have not been turned over to the defense. To the extent Defendant Omidi contends that *he* has not received these records, this Order is without prejudice to Defendant Omidi later moving for relief based on substantial prejudice arising from the delayed production of those records.

[7] Magistrate Judge Chooljian's orders noted that the parties had hired Stroz Freidberg, but did not include language appointing Stroz Freidberg as a special master. The orders included language appointing Judge Tevrizian as discovery referee subject to the terms of the stipulated workflow agreement and subject to, among other things, Judge Tevrizian serving for as long as he was willing and able to do so. [*See, e.g.*, Doc. # 1179 at 2154-56.]

Government's use of the Filter/Taint Team in itself amounted to a constitutional violation. Under these challenging circumstances, the Government appears to have taken the most cautious approach available to it prior to the filing of the indictment to ensure a functional process by which potentially privileged materials could be reviewed outside the purview of the Prosecution Team. *See In re Grand Jury Subpoenas*, *04-124-03 & 04-124-05,* 454 F.3d 511, 522-23 (6th Cir. 2006) (although being generally critical of the use of filter/taint teams, noting that "government taint teams seem to be used primarily in limited, exigent circumstances in which government officials have already obtained the physical control of potentially-privileged documents through the exercise of a search warrant. In such cases, the potentially-privileged documents are already in the government's possession, and so the use of the taint team to sift the wheat from the chaff constitutes an action respectful of, rather than injurious to, the protection of privilege.").[8]

The circumstances of this case are easily distinguishable from *Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593 (5th Cir. 2021), which involved a Rule 41(g) return of property motion where the government's filter team transferred "a significant number" (thousands) of privileged documents to the government's civil and criminal investigators and the government conceded the basis of the privilege for many of those. *Id.* at 600. The Fifth Circuit explained the different context of that case to the one presented here. *See id.* at 600 ("[S]uppression motions vindicate an interest entirely different from Rule 41(g) motions. Suppression merely prevents the government from using certain materials as evidence in a judicial proceeding—suppression does not force the government to return those materials to the criminal defendant"). Here, as referenced above, the Government *has* returned copies of seized materials to Defendant Omidi and there is no indication that the Government has used any privileged documents to its advantage.

With respect to the retention of digital devices, the Government represents that it retained those devices pursuant to the provisions set forth in the respective warrants, permitting retention of those items as instrumentalities of the offense or as an email provider production that the Government may retain in sealed form. [*See* Doc. # 1114-3, Exh. B (Home Warrant) III.6.h. (stating in relevant part that "[t]he government may retain a digital device itself until further order of the Court or one year after the conclusion of the criminal investigation or case (whichever is latest), only if the device is determined to be an instrumentality of an offense under investigation . . . ."); *see also* Doc. # 1104-3 (Google Warrant) I.7. ("once the search team has completed its review of the content records and created copies of the items seized pursuant to the warrant, the original production from the PROVIDERS will be sealed and preserved by the search team for authenticity and chain of custody purposes -- until further order of the Court. Thereafter, the search team will not access the data from the sealed original production which fell

---

[8] The Ninth Circuit has not expressly ruled on the propriety of the use of filter/taint teams. *See In re Grand Jury Subpoena, JK-15-029*, 828 F.3d 1083, 1094 (9th Cir. 2016) ("We [] do not address whether the district court's adoption of the 'taint/filter' team protocol was appropriate for the limited purpose for which it was imposed."); *see also Danielson*, 325 F.3d at 1072-73, *supra* (noting, with approval, screening process used for potentially privileged tapes in other case). Some courts have approved of the use of filter/taint teams, *see, e.g.*, *In re Search of 5444 Westheimer Road Suite 1570*, No. H-06-238, 2006 WL 1881370 (S.D. Tex. July 6, 2006); *United States v. Grant*, No. 04 CR 207BSJ, 2004 WL 1171258 (S.D.N.Y. May 25, 2004), while others have expressed skepticism about their use. *See United States v. SDI Future Health, Inc.,* 464 F. Supp. 2d, 1027, 1037 (D. Nev. 2006); *see also In re Grand Jury Subpoenas,* 454 F.3d at 523.

outside the scope of the items to be seized absent further order of the Court."). The Government represents that the retention of these materials is permissible to establish authenticity and chain of custody purposes at trial, or in further proceedings if necessary. [Doc. # 1315 at 8.] Moreover, considering the parties' lengthy dispute over the applicability of certain privileges (such as Defendant Omidi's contention that the Klasky recordings were privileged pursuant to a joint defense agreement, which was only resolved earlier this year, *see* Doc. # 943), it would not have been permissible for the Filter/Taint Team to return alleged privileged materials before the resolution of those privilege disputes.

The Court further concludes that the Filter/Taint Team's provision of a list of documents migrated from the taint database to the clean database and accessible to the Prosecution Team is sufficient to allow Defendant Omidi to see which documents were turned over to the Prosecution Team following the Filter/Taint Team's review.

In sum, Defendant Omidi has shown no prejudice, malfeasance, or violation of law resulting from the Government's retention of his alleged physical devices, nor has he shown substantial prejudice from the inadvertent, brief access to potentially privileged documents by the Prosecution Team, such that either dismissal of the indictment or suppression of evidence would be warranted. Notwithstanding that the privilege review underwent a tortured process in this case, Defendant Omidi has not established that the Government's use of a Filter/Taint Team gave rise to a constitutional violation.

### IV.     CONCLUSION

For the foregoing reasons, Defendant Omidi's motion to dismiss the First Superseding Indictment or suppress evidence is **DENIED.** This Order is without prejudice to Defendants later moving for relief based on substantial prejudice arising from the Government's delayed production of approximately 4,500 records referenced at the September 14, 2021 hearing.

**IT IS SO ORDERED.**