Michael S. Schachter** (NY 3910205)
Randall W. Jackson** (NY 5274048)
Casey E. Donnelly** (NY4936803)
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8102; Fax: (728) 728-8111
Email: *mschachter@willkie.com*

 *Attorneys for Defendant*,
 Julian Omidi

[Additional Counsel Continued On Next Page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, <br><br> Plaintiff, <br><br> v. <br><br> Julian Omidi, *et al.*, <br><br> Defendants. | Case No. CR No. 17-00661 (A) – DMG <br><br> [*Assigned to Hon. Dolly M. Gee, District Court Judge*] <br><br> **DEFENDANT JULIAN OMIDI'S MOTION FOR RECONSIDERATION CONCERNING THE PRIOR CONVICTIONS OF GOVERNMENT WITNESS CARAQUITA STEWARD** |

[Additional Counsel Continued From Previous Page]

Simona Agnolucci (SBN 246943)
**WILLKIE FARR & GALLAGHER LLP**
One Front Street
San Francisco, CA 94111
Tel: (415) 858-7447, Fax: (415) 858-7599
Email: *sagnolucci@willkie.com*

Bruce H. Searby* (SBN 183267)
Edmund W. Searby** (OH 067455)
**SEARBY LLP**
1627 Connecticut Ave, NW, Suite 4
Washington, D.C. 20009
Tel: (202) 750-6106, Fax: (202) 849-2122
Email: *bsearby@searby.law*

*Appearing specially  ** Appearing pro hac vice*

*Counsel for Defendant Julian Omidi*

DEFENDANT JULIAN OMIDI'S MOTION FOR RECONSIDERATION CONCERNING THE
PRIOR CONVICTIONS OF GOVERNMENT WITNESS CARAQUITA STEWARD
Case No.  CR No. 17-00661 (A) - DMG

# TABLE OF CONTENTS

Page

I.   BACKGROUND ................................................................................. 1

  A.   Caraquita Steward's Testimony ............................................... 1

  B.   Ms. Steward's Criminal Convictions and the Government's Oral
       Motion to Exclude Evidence Thereof ...................................... 4

II.  Argument ......................................................................................... 6

  A.   On Multiple Fronts, the Government Misstated the Law, Failed to
       Acknowledge Applicable Precedent, and Led the Court into Error. ....... 6

  B.   The Government Led The Court Into Error By Arguing That The
       Evidence Of Ms. Steward's Convictions Should Be Excluded on
       Rule 403 Grounds ................................................................. 10

    1.   The Government Misled The Court By Suggesting That The
         Evidence Should Be Excluded Based on the Possibility of a
         "Mini Trial" ................................................................. 10

    2.   Evidence of Ms. Steward's Convictions Is In No Way
         Unfairly Prejudicial........................................................ 11

III. The Government Failed to Correct the perjury that followed the court's
     ruling................................................................................................ 13

IV.  CONCLUSION ................................................................................. 16

i

DEFENDANT JULIAN OMIDI'S MOTION FOR RECONSIDERATION CONCERNING THE
PRIOR CONVICTIONS OF GOVERNMENT WITNESS CARAQUITA STEWARD
Case No.  CR No. 17-00661 (A) - DMG

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*EEOC v. Hight Speed Enterprise, Inc.,*
   No. 08-cv-1789, 2012 WL 12964791 (D. Ariz. Jan. 17, 2012) ........................ 10

*Fajardo v. Barr,*
   808 Fed. Appx. 413 (9th Cir. 2020) .................................................... 6

*Lopez v. Colvin,*
   No. 2:15-cv-02039-RFB-NJK, 2016 WL 5858712 (D. Nev. Apr. 25, 2016) ...... 6

*Morris v. Ylst,*
   447 F.3d 735 (9th Cir. 2006) ............................................................ 15

*People v. Smith,*
   227 Cal.App.4th 717 (2014) ............................................................. 5

*United States v. DiNapoli,*
   557 F.2d 962 (2d Cir.) .................................................................... 8

*United States v. Jackson,*
   863 F. Supp. 1462 (D. Kans. 1994) .................................................... 10

*United States v. Kohring,*
   637 F.3d 895 (9th Cir. 2011) ........................................................... 12

*United States v. LaPage,*
   231 F.3d488 (9th Cir. 2000) ........................................................... 15

*United States v. Moore,*
   556 F.2d 479 (10th Cir. 1977) .......................................................... 9

*United States v. Osazuwa,*
   564 F.3d 1169 (9th Cir. 2009) .......................................................... 11

*United States v. Potts,*
   528 F.2d 883 (9th Cir. 1975) ............................................................ 9

*United States v. Price,*
   566 F.3d 900 (9th Cir. 2009) ................................................... 13, 14, 15

DEFENDANT JULIAN OMIDI'S MOTION FOR RECONSIDERATION CONCERNING THE
PRIOR CONVICTIONS OF GOVERNMENT WITNESS CARAQUITA STEWARD
Case No.  CR No. 17-00661 (A) - DMG

*United States v. Roberts,*
   618 F.2d 530 (9th Cir. 1980) ................................................................6

*United States v. Tse,*
   375 F.3d 148 (1st Cir. 2004).............................................................12

*United States v. Wood,*
   943 F.2d. 1048 (9th Cir. 1991) .....................................................*passim*

**Statutes**

California Penal Code § 1203.6 .........................................................7, 8

Montana Code § 46-18-204.................................................................7

N.Y. Correction Law § 702.................................................................8

**Other Authorities**

Fed. R. Evid. 609(a)(1)(A) ...............................................................12

Fed. R. Evid. 609(a)(1)(B) ...............................................................12

Fed. R. Evid. 609(a)(2)...................................................................4, 11

Fed. R. Evid. Advisory Committee's Note (1990) ........................................12, 13

DEFENDANT JULIAN OMIDI'S MOTION FOR RECONSIDERATION CONCERNING THE
PRIOR CONVICTIONS OF GOVERNMENT WITNESS CARAQUITA STEWARD
Case No.  CR No. 17-00661 (A) - DMG

1
2
3
4
5
6
7
8
9
10

   **PLEASE TAKE NOTICE** that Defendant Julian Omidi ("Defendant"), by and through his counsel, will move and does hereby move this Court, pursuant to Local Rule 7-18(a), to reconsider the Court's September 23, 2021 decision to exclude evidence regarding prior convictions of government witness Caraquita Steward. While the defense is extremely reluctant to move for reconsideration in this trial, we respectfully submit that the government's multiple misstatements of applicable law, as well as the circumstances surrounding this evidence, warrant reconsideration in this situation. On September 26, 2021, counsel for Mr. Omidi met and conferred with counsel for the government, but the parties were unable to agree on a resolution of the issues raised herein.

11

## I.  BACKGROUND

12

### A.  Caraquita Steward's Testimony

13
14
15
16
17
18
19
20
21

   The government's first witness at trial was former Weight Loss Centers[1] patient Caraquita Steward. (9/22 Tr. at 1.)[2] During her testimony Ms. Steward made various claims that Weight Loss Centers' records regarding her treatment did not accurately capture information that she communicated to Weight Loss Centers. (9/22 Tr. at 13-15.) Ms. Steward further claimed that certain documents introduced in evidence by the government contained purported forgeries of her handwriting. (9/22 Tr. at 80.) As the government knows, this claim was a new invention. At ***no*** point over the course of years of investigation, in various meetings with the government, had Ms. Steward made such a claim with regard to purported forgery.

22
23
24
25
26
27

---

[1] For the sake of efficiency, Mr. Omidi assumes the court's familiarity with certain capitalized terms not defined herein.

[2] "9/22 Tr." refers to the rough transcript of Ms. Steward's testimony on September 22, 2021, attached as Exhibit 1, and "9/23 Tr." refers to the rough transcript of her testimony on September 23, 2021, attached as Exhibit 2.

28

1

DEFENDANT JULIAN OMIDI'S MOTION FOR RECONSIDERATION CONCERNING THE
PRIOR CONVICTIONS OF GOVERNMENT WITNESS CARAQUITA STEWARD
Case No.  CR No. 17-00661 (A) - DMG

Other aspects of Ms. Steward's testimony were patently incredible. On the first day of testimony, Ms. Steward claimed that she never snored, and that Weight Loss Centers' records reflecting that she had communicated to medical professionals that she did snore were fabricated. (9/22 Tr. at 20.)  The very next day, when Ms. Steward was confronted with government records reflecting that she admitted that she snored during meetings with government agents, she acknowledged that she had communicated that information to the government. (9/23 Tr. at 24-28.)  Ms. Steward then equivocated over whether she snored or not, suggesting that it would be impossible for her to know, among other attempted evasions. (9/23 Tr. at 28.)

As another example, Ms. Steward testified on direct examination that she had never experienced "clinical depression," a specific phrase that she and the prosecutor both made a point to use.  (9/22 Tr. at 3, 13).  In going through a letter sent by a Weight Loss Centers doctor that featured a reference to Ms. Steward's depression, the prosecutor notably asked, in leading fashion: "Q. It says depression. I know you mentioned that you were sad about your weight gain, ***but did you have clinical depression***? A. No." (9/22 Tr. at 13.)  The implication of the question and answer was that the letter from the Weight Loss Centers doctor had fabricated a diagnosis of depression. (GX 71 at 12 ("Patient's reported medical history includes morbid obesity and possible arthritis, depression, diabetes, gastro-esophageal reflux disease and sleep apnea related to her weight.").) The precise question posed to Ms. Steward was either a bit of sharp practice on the part of the prosecutor or negligence with regard to the review of the very exhibit that the government was reviewing with the witness, which included a document on which Ms. Steward acknowledged in writing that she was experiencing depression related to her weight at the time. (*Id.* at 53).

On that same document, Ms. Steward wrote in her own handwriting that she had made herself "vomit- 2 or 3 times total, not in recent years," which was relevant to the indication of gastroesophageal reflux disease reflected in the Weight Loss

Centers letter. (GX 71 at 53). On cross examination, Ms. Steward not only denied that she had gastroesophageal reflux and that she ever caused herself to vomit, but also made the incredible insistence that this notation—unlike the rest of the notations on the page—was not written in her handwriting, even though she had already testified that the form reflected her handwriting. (9/22 Tr. at 51, 80.) Ms. Steward also equivocated at that point on the question of whether she had written a portion of the form that indicated that she was "diabetic" and "need[ed] to get healthy." (*Id*.)

Ms. Steward also denied on direct examination that she had ever reported having sleep apnea to Weight Loss Centers, but the intake form for Ms. Steward in the very same exhibit introduced by the government indicated that she had reported various medicines she was taking to the doctor, as well as three conditions from which she suffered, including diabetes, depression and Obstructive Sleep Apnea. (GX 71 at 51).

The implications of Ms. Steward's testimony were clear and binary – either Ms. Steward was engaged in repeated, blatant perjury, or Weight Loss Centers had engaged in some of the most inexplicable and pointless forgery in the history of alleged health care fraud. To be more precise, Ms. Steward's testimony left no real question that she had provided multiple instances of false testimony, but it left open certain questions of whether there could be some truth to the portions of her testimony alleging that documents had been forged and otherwise falsified in her patient file. That Ms. Steward was the very first witness called in the case and that the government had literally structured its opening statement around the purported story of Ms. Steward's misfortune only amplified the significance of these questions. That the jury was exposed to an extraordinary display of emotion during her testimony, where the Court literally had to end the court day because Ms. Steward was crying so uncontrollably, amplified the significance of her testimony even more.

DEFENDANT JULIAN OMIDI'S MOTION FOR RECONSIDERATION CONCERNING THE
PRIOR CONVICTIONS OF GOVERNMENT WITNESS CARAQUITA STEWARD
Case No.  CR No. 17-00661 (A) - DMG

**B.**   **Ms. Steward's Criminal Convictions and the Government's Oral Motion to Exclude Evidence Thereof**

In 2002, Ms. Steward pled no contest to and was convicted of charges of forgery and obtaining money by false pretenses pursuant to California Penal Code 484F(A) and 532(A), respectively.   (Document marked as Defense Exhibit 3212, attached as Exhibit 3.)  In light of the critical importance of Ms. Steward's credibility, the day before Ms. Steward's second day of testimony, the defense provided notice to the government that it intended to cross examine Ms. Steward regarding these convictions.

The government failed to provide any notice that it intended to object to the introduction of this evidence or of the authorities on which it planned to rely until just before the Court initiated a conference with the parties on the morning of September 23, 2021.  At the conference, the government argued that the convictions should be precluded under Rule 609(b) because they were more than ten years old and under Rule 609(c) because they had been expunged pursuant to California Penal Code 1203.4. (9/23 Tr. at 6-7.)

The defense argued, first, that there is no question that Ms. Steward's convictions, both of which directly implicate her credibility, "must be admitted" under Rule 609(a)(2).  (*Id.* at 7-8.)  In response to the government's invocation of Rule 609(b) and the amount of time that has passed since Ms. Steward's convictions, the defense noted that "[t]he limitation [in 609(b)] on the evidence after ten years is not a hard limitation," but instead one "that essentially incorporates a 403 analysis into the equation." (*Id.*)

With respect to the expungement of Ms. Steward's record pursuant to Section 1203.4, the defense argued that the government's reliance on Rule 609(c) had been precluded by the Ninth Circuit's holding in *United States v. Wood*, 943 F.2d. 1048 (9th Cir. 1991) (finding that Rule 609(c) did not apply to statutory schemes that

afforded automatic expungement, even where such schemes were motivated by the concept of rehabilitation). (9/23 Tr. at 9-11.)

The government argued in response that introduction of evidence of Ms. Steward's convictions would necessitate a "mini trial where we have to get into the nature of what this conviction was for." (*Id.* at 11.) The government further argued that "California courts have repeatedly held that a 1203.4 [expungement] is … in essence, legislatively authorized certification of completed rehabilitation based on a prescribed showing of exemplary conduct during the entire period of probation." (*Id.* at 11-12.) Specifically, the government relied upon California Supreme Court case *People v. Smith*, 227 Cal.App.4th 717, 724 (2014). (*Id.* at 12.)

After initially indicating that the Court was inclined to admit the convictions, the Court briefly recessed and then excluded the convictions, noting that "People versus Smith specifically indicates the effect of the expungement," and that the Court believed the expungement had been the subject of a certificate of rehabilitation or other equivalent procedure based on a finding that the person has been rehabilitated under Rule 609(c). (*Id.* at 16-17)  The Court observed, "I stand corrected. I thought that it would be admissible based on 609(b) but I do think that 609 prohibits it from admission." (*Id.*)

The defense further argued *United States v. Wood* precludes the exclusion of this evidence, and the government responded that:

> *Wood* says, look to the Montana legislature's intent when deciding whether or not to allow this type of evidence.  Here, we have a clear California statute with clear California legislative intent that says [1203.4] expeungement is a certificate of rehabilitation.

(*Id.* at 20.) The defense pointed out that the government was misstating the holding of *Wood*, but with time expiring before the jury needed to be brought in, the Court

1   ruled the evidence inadmissible, adopting also the government's argument that the
2   exclusion could be based on Rule 403, based on the government's argument that
3   introduction would trigger a "mini trial on Ms. Steward's various previous
4   convictions and whether and how she had [UI] and whether there was a finding of her
5   rehabilitation." (*Id.* at 21)

6   **II.   <u>ARGUMENT</u>**

7         **A.      <u>On Multiple Fronts, the Government Misstated the Law, Failed to**
8                 **Acknowledge Applicable Precedent, and Led the Court into Error.</u>**

9         While the defense deeply appreciates the considerable time and care that the
10  Court has applied in adjudicating this trial, it is simply impossible, given the time
11  constraints of any trial and the parties' greater familiarity with the evidence and the
12  legal issues specific to the case, for the Court to appropriately rule in instances where
13  the government misrepresents the law. As a fundamental matter, parties appearing in
14  this Circuit have a "duty of candor and the obligation to accurately cite authority and
15  evidence to the Court." *See, e.g. Fajardo v. Barr*, 808 Fed. Appx. 413, 414 (9th Cir.
16  2020) ("We take this opportunity to remind counsel that the duty of candor requires
17  counsel to bring relevant adverse authority to our attention and argue why that
18  authority does not control."); *Lopez v. Colvin*, No. 2:15-cv-02039-RFB-NJK, 2016
19  WL 5858712 at *1 (D. Nev. Apr. 25, 2016) (attorney was "entitled to make reasonable
20  arguments that Ninth Circuit authority is not controlling, but he is assuredly not
21  entitled to simply ignore contrary Ninth Circuit authority"). Any breach of this duty
22  of candor to the Court on the part of the government in a criminal case is even more
23  problematic because of the government's "special obligation" in a criminal case to
24  avoid "improper suggestions, insinuations, and especially assertions of personal
25  knowledge." *See United States v. Roberts*, 618 F.2d 530, 534 (9th Cir. 1980)
26  (discussing this principle in the context of improper prosecutorial vouching). Here,
27  the government unquestionably violated this obligation.

28

First, the government's response to applicable Ninth Circuit precedent regarding Rule 609(c) *literally* argued to the Court the *exact opposite* of the law in not only the Ninth Circuit, but in *every federal circuit* that has examined this issue. The government argued that the Ninth's Circuit's decision in

> *Wood* says, *look to the Montana legislature's intent* when deciding whether or not to allow this type of evidence. Here, we have a clear California statute with clear California legislative intent that says [1203.4] expungement is a certificate of rehabilitation.

(9/23 Tr. at 20.)

This was incorrect. What *Wood* actually said is that the "[r]ehabilitory motivation [of the legislature] alone, however, is insufficient to trigger Rule 609(c)," *i.e.*, the legislative intent of the State is *not* what the Court must examine when assessing whether Rule 609(c) applies. *Wood*, 943 F.2d at 1055. The Ninth Circuit observed that the legislative intent of the State was irrelevant. Rather, "the dispositive question" in determining whether a purported certificate of rehabilitation or "other equivalent procedure" is "whether the 'equivalent procedure' was 'based on a *finding* of the rehabilitation of the *person convicted*." *Id.* (emphasis in original) (quoting Fed. R. Evid. 609(c)). Thus, the Ninth Circuit observed, "courts have consistent upheld introduction of prior convictions under Rule 609 where the convictions were later expunged, even where the statute authorizing expungement was motivated by rehabilitation." *Id.* (citations omitted). For that reason, the Ninth Circuit rejected the appellant's argument that 609(c) precluded cross on his Montana convictions, which had been expunged on a statutory scheme identical in all relevant respects to the scheme at issue here. *Compare* Montana Code § 46-18-204 *with* California Penal Code § 1203.6.

DEFENDANT JULIAN OMIDI'S MOTION FOR RECONSIDERATION CONCERNING THE
PRIOR CONVICTIONS OF GOVERNMENT WITNESS CARAQUITA STEWARD
Case No.  CR No. 17-00661 (A) - DMG

Even if it can be accepted that all four attorneys on the prosecution team somehow read the holding of the key case on point on this issue *in reverse*, it strains credulity that they all missed the holdings of the Second, Fifth, Eighth, and Eleventh Circuits, which were explicitly highlighted in the Ninth Circuit's decision in *Wood*:

> *See e.g. Smith v. Tidewater Marine Towing, Inc.*, 927 F.2d 838, 840 (5th Cir.1991) (Louisiana Constitution's first-offender provision did not require showing of rehabilitation prior to invocation; thus, prior convictions set aside under this provision nonetheless admissible in federal court); *Wilson v. Attaway*, 757 F.2d 1227, 1244 (11th Cir.1985) (same, construing Georgia's first offender statute); *United States v. DiNapoli*, 557 F.2d 962, 966 (2d Cir.) (issuance of certificate of relief from disabilities does not take conviction out of Rule 609, even where "certificate should not issue unless the relief to be granted by the certificate is consistent with the rehabilitation of the first offender"). . . . *United States v. Felix*, 867 F.2d 1068, 1074 n.9 (8th Cir. 1989) ("Because there is nothing in the record giving the reasons for the expungement of the convictions at issue here, there is no basis for concluding that Rule 609(c) makes these convictions inadmissible.").

*Wood*, 943 F.2d at 1055. The government's neglect of the Second Circuit's decision in *DiNapoli*, on which the Ninth Circuit relied, is particularly inexplicable since, as indicated above, the *Wood* parenthetical made explicit reference to a statutorily granted "certificate" closely analogous to the California statutory scheme at issue. *Compare* N.Y. Correction Law § 702 *with* California Penal Code § 1203.6. The point of all of these cases is that the ***finding*** that is required is a judicial finding, not a

statutorily generated indication of rehabilitation, no matter the form and no matter the intent of the legislature.

Apparently realizing that it would be fruitless to focus the Court on any of the applicable federal law, the government instead chose to focus the Court on irrelevant California state law precedent delving into the irrelevant question of the California legislature's intent in crafting Section 1203.4, the expungement statute. (9/23 Tr. at 12). But it cannot even be accepted that the government did a cursory examination of the applicable federal law on Section 1203.4, because any such search would have revealed the Tenth Circuit's decision in *United States v. Moore*, 556 F.2d 479 (10th Cir. 1977), which closes the door entirely on the question of whether the federal courts recognize Section 1203.4 as triggering Rule 609(c).

In *United States v. Moore*, the defendant had benefited from a California Penal Code Section 1203.4 expungement a number of years prior to the trial at issue. *See id.* at 483 ("It is agreed that the defendant did in fact suffer a prior felony conviction in California . . . . However this conviction was later expunged under the provisions of Title 8, Section 1203.4 of the California Penal Code"). Analyzing the language of the statute, ***not the intent*** of the legislature, the Tenth Circuit observed that any argument that Section 1203.4 "absolutely erases" a conviction must be ***rejected***, given that the statute contains provisions that would allow the statute to be utilized in future criminal proceedings under some circumstances in California. *See id.* at 484 ("[T]he statute in question clearly states that the former conviction, though expunged, may be used in a subsequent criminal proceeding involving the same party. And such in our view has application in a subsequent criminal proceeding in federal court."). Relying on the analysis of the Ninth Circuit in *United States v. Potts*, 528 F.2d 883 (9th Cir. 1975), the Tenth Circuit concluded that this provision negated any argument that Section 1203.4 constituted the type of expungement recognized by Rule 609(c).

DEFENDANT JULIAN OMIDI'S MOTION FOR RECONSIDERATION CONCERNING THE PRIOR CONVICTIONS OF GOVERNMENT WITNESS CARAQUITA STEWARD
Case No.  CR No. 17-00661 (A) - DMG

At bottom, **no federal court** has ever held that an expungement under Section 1203.4, or any similar statutory scheme, constitutes a certificate of rehabilitation or "other equivalent procedure" that leads to the preclusion of impeachment under Rule 609(c). *See also EEOC v. Hight Speed Enterprise, Inc.*, No. 08-cv-1789, 2012 WL 12964791, at *2 (D. Ariz. Jan. 17, 2012) ("Here, however, there is no 'finding of the rehabilitation of the person convicted,' and '[r]ehabilitory motivation alone . . . is insufficient to trigger Rule 609(c).' *United States v. Wood*, 943 F.2d 1048, 1055 (9th Cir. 1991). 'Thus, courts have consistently upheld introduction of prior convictions under Rule 609 where the convictions were later expunged, even where the statute authorizing expungement was motivated by rehabilitation.'"); *United States v. Jackson*, 863 F. Supp. 1462, 1467 (D. Kans. 1994) ("A finding of rehabilitation or its equivalent is not implicit in Martinez receiving his automatic discharge and dismissal pursuant to Texas statute upon satisfactory completion of probation. This ruling is consistent with precedent. *See, e.g., United States v. Wood*, 943 F.2d 1048, 1055 (9th Cir. 1991)."). By obscuring the picture on the state of federal law, and by **literally stating that federal law was the opposite of what it is**, the government, in a fast-moving situation, improperly led the Court into error. This situation warrants revisiting the Court's ruling.

**B.** **The Government Led The Court Into Error By Arguing That The Evidence Of Ms. Steward's Convictions Should Be Excluded on Rule 403 Grounds**

**1.** **The Government Misled The Court By Suggesting That The Evidence Should Be Excluded Based on the Possibility of a "Mini Trial"**

Moreover, the Government's assertion that the introduction of the Steward convictions would lead to a "mini trial on Ms. Steward's various previous convictions," the circumstances of those convictions, and "whether there was a

DEFENDANT JULIAN OMIDI'S MOTION FOR RECONSIDERATION CONCERNING THE
PRIOR CONVICTIONS OF GOVERNMENT WITNESS CARAQUITA STEWARD
Case No.  CR No. 17-00661 (A) - DMG

finding of her rehabilitation" was simply false.  (9/23 Tr. at 6.) Rule 609 ***requires*** courts, subject to certain limitations, to permit impeachment by evidence of a criminal conviction "for any crime regardless of the punishment" if the court can readily determine that establishing the elements of the crime required proving – or the witness's admitting – a dishonest act or false statement." Fed. R. Evid. 609(a)(2).

As a result, the admission of the evidence would have required no "mini trial" whatsoever. It is black letter law that admission of a conviction for impeachment under Rule 609 requires no elaborate "mini trial," since the scope of what is admissible under Rule 609 is narrow and straightforward. *United States v. Osazuwa*, 564 F.3d 1169, 1175 (9th Cir. 2009) ("[E]vidence of a prior conviction admitted for impeachment purposes may not include collateral details and circumstances attendant upon the conviction. Generally, only the prior conviction, its general nature, and [nature of the punishment] are fair game for testing the defendant's credibility."). While the Government may have been permitted to submit mitigating evidence, the undisputed fact was that Ms. Steward was convicted of two crimes involving inherent dishonesty, the precise crimes with which Rule 609 directs that Courts must permit litigants to impeach witnesses, absent extraordinary circumstances.

Accordingly, the government's mini-trial argument, which has become such a repeated mantra of prosecutors confronted with inconvenient but entirely admissible evidence that it is at this point a nationwide cliché, was a particularly egregious violation of the Government's obligation not to lead the court into error.

## 2. Evidence of Ms. Steward's Convictions Is In No Way Unfairly Prejudicial

Given that the person to be impeached was a mere witness for the government, rather than a criminal defendant, and given that this witness accused the defendants of forgery in the face of substantial evidence that she perjured herself, the probative

DEFENDANT JULIAN OMIDI'S MOTION FOR RECONSIDERATION CONCERNING THE PRIOR CONVICTIONS OF GOVERNMENT WITNESS CARAQUITA STEWARD
Case No.  CR No. 17-00661 (A) - DMG

value of these convictions substantially outweighed its prejudicial effect. The government's suggestion to the contrary is baseless.

Rule 609 itself makes clear that the burden of a party seeking to preclude Rule 609 impeachment based on unfair prejudice is substantially higher where the person to be impeached is a *mere witness* and not the defendant himself. *Compare* Rule 609(a)(1)(A) to Rule 609(a)(1)(B). In fact, when Rule 609 was amended to extend the Rule 403 balancing test to the impeachment of witnesses for all litigants, the Advisory Committee expressly cautioned that:

> The probability that prior convictions of an ordinary government witness will be unduly prejudicial is low in most criminal cases. Since the behavior of the witness is not the issue in dispute in most cases, there is little chance that the trier of fact will misuse the convictions offered as impeachment evidence as propensity evidence. Thus, ***trial courts will be skeptical when the government objects to impeachment of its witnesses with prior convictions.*** Only when the government is able to point to a real danger of prejudice that is sufficient to outweigh substantially the probative value of the conviction for impeachment purposes will the conviction be excluded.

Fed. R. Evid. Advisory Committee's Note (1990) (emphasis added). For this reason, the First Circuit ruled in *United States v. Tse* that "while a court must weigh all potential 'prejudicial effect' to the defendant when deciding whether to admit a prior conviction of the accused, it must weigh only the kind of prejudice that can be deemed 'unfair' when deciding whether to admit the prior conviction of a government witness." 375 F.3d 148, 163 (1st Cir. 2004) (holding that district court's "failure to apply the different standards for exclusion was an error of law"); *Cf. United States v.*

DEFENDANT JULIAN OMIDI'S MOTION FOR RECONSIDERATION CONCERNING THE
PRIOR CONVICTIONS OF GOVERNMENT WITNESS CARAQUITA STEWARD
Case No.  CR No. 17-00661 (A) - DMG

*Kohring*, 637 F.3d 895 (9th Cir. 2011) (reversing district court's exclusion under Rule 403 of evidence of government witness's prior dishonesty because "[t]he evidence was certainly prejudicial, but not unfairly so").

Here, the government did not make any attempt to show, much less an actual showing, that there is "a real danger of prejudice that is sufficient to outweigh substantially the probative value of [Ms. Steward's] prior conviction for impeachment purposes." Fed. R. Evid. Advisory Committee's Note (1990). As such, the government's baseless and conclusory assertion that the evidence's "prejudicial value far exceeds its probative value" was misleading and, upon reconsideration, should be rejected. (9/23 Tr. at 11.)

## III.  <u>THE GOVERNMENT FAILED TO CORRECT THE PERJURY THAT FOLLOWED THE COURT'S RULING</u>

In addition to their misrepresentation of controlling law during oral argument, the prosecutors have separately failed in their "duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *United States v. Price*, 566 F.3d 900, 902 (9th Cir. 2009). Here, the prosecution team includes federal agents from at least three different agencies, including the FBI, the Department of Defense, and the FDA. Between these three agencies, information regarding Ms. Steward's criminal convictions was easily within their possession, but it was never disclosed to the defense. Rather, the defense had to discover such information on its own at the last minute, when the evidence of Ms. Steward's many lies became so obvious that further investigation was clearly necessary. As the Ninth Circuit has observed "[u]nder longstanding principles of constitutional due process, information in the possession of the prosecutor and his investigating officers that is helpful to the defendant, including evidence that might tend to impeach a government witness, must be disclosed to the defense prior to trial.

It is equally clear that a prosecutor cannot evade this duty simply by becoming or remaining ignorant of the fruits of his agents' investigations." *Id.*

That evasion, troublesome as it is, is not the core problem at this juncture, however. Rather, the core problem arose after the Court permitted the defense to ask two limited, simple questions of Ms. Steward regarding her prior falsification of documents and fraudulent conduct, which the defense fully expected Ms. Steward would answer in the affirmative, in light of her known criminal past.[3] Instead, Ms. Steward simply perjured herself, again. The following colloquy occurred during Ms. Steward's testimony:

> Q. Now, Ms. Steward, I want to ask you just a question that I don't need you elaborate any answer.  Just a 'yes' or 'no' question. Have you ever, outside of the circumstances of this case, under any circumstances, falsified any document?
>
> A. No.
>
> Q. Outside of the circumstances of this case.
>
> MR. MOGHADDES: Objection, Your Honor. Asked and answered.
>
> THE COURT: I don't know what the question is.
>
> BY MR. JACKSON:
>
> Q. Outside of the circumstances of this case have --
>
> MR. MOGHADDES: Ob --
>
> MR. JACKSON: I am just asking a question.
>
> BY MR. JACKSON:
>
> Q. Have you ever engaged in any fraudulent conduct?

---

[3] Indeed, given that Ms. Steward moved to expunge her own convictions only a few years ago, there is no plausibility to the notion that she has somehow forgotten about her convictions for forgery and fraud.

14

DEFENDANT JULIAN OMIDI'S MOTION FOR RECONSIDERATION CONCERNING THE PRIOR CONVICTIONS OF GOVERNMENT WITNESS CARAQUITA STEWARD
Case No.  CR No. 17-00661 (A) - DMG

MR. MOGHADDAS: Objection. Asked and answered

609, Your Honor, Your Honor. Move to strike the question.

THE COURT: Overruled.

THE WITNESS: Not that I can recall.

(9/23 Tr. at 24.) The Ninth Circuit has instructed that "[w]hen a prosecutor suspects perjury, the prosecutor must at least investigate" further, consistent with his "duty to correct what he knows[or suspects] to be false and elicit the truth." *Price*, 566 F.3d at 902 (citing *Morris v. Ylst*, 447 F.3d 735, 744 (9th Cir. 2006) (citing *Napue v. Illinois*, 360 U.S. 264, 270, (1959)). The Ninth Circuit further instructed in *Morris* that:

> Often it is clear that false evidence has been presented. . . .
> When a prosecutor suspects perjury, the prosecutor must at least investigate. The duty to act "is not discharged by attempting to finesse the problem by pressing ahead without a diligent and good faith attempt to resolve it. A prosecutor cannot avoid this obligation by refusing to search for the truth and remaining willfully ignorant of the facts."

*Morris*, 447 F.3d at 744 (quoting *N. Mariana Islands v. Bowie*, 243 F.3d 1109, 1118 (9th Cir. 2001). "No lawyer, whether prosecutor or defense counsel, civil or criminal, may knowingly present lies to a jury and then sit idly by while opposing counsel struggles to contain this pollution of a trial." *United States v. LaPage*, 231 F.3d 488, 492 (9th Cir. 2000) (reversing conviction due to prosecution's "failure to correct prosecutorial testimony known to be false").

Here, the prosecution has used a misstatement of federal law to shield an obviously perjurious witness from appropriate impeachment on the basis of her criminal convictions, and now is compounding that error by failing to correct the record where the witness has repeatedly perjured herself, and finished with a blatant

15

lie as it relates to the category of conduct that underlies her criminal convictions for forgery and fraud. It should not be lost in this matter that the credibility of Ms. Steward is a substantial matter bearing on Mr. Omidi's freedom.  His constitutional right to a fair trial has been undermined by the Government's actions with regard to Caraquita Steward.

All of these errors threaten the integrity of this trial and should be corrected. The Government has unnecessarily introduced reversible error into the record. We are not requesting that Ms. Steward be recalled. It would be sufficient to cure all of the Government's errors to simply introduce in evidence the record of Steward's criminal convictions. We respectfully submit that this is the only appropriate course of action at this juncture.

## IV.  <u>CONCLUSION</u>

The Court should admit Steward's prior convictions.

Dated:  September 26, 2021

Respectfully submitted,

**WILLKIE FARR & GALLAGHER LLP**

By: <u>s/ Randall W. Jackson</u>
    MICHAEL S. SCHACHTER
    RANDALL W. JACKSON
    CASEY E. DONNELLY
    SIMONA AGNOLUCCI

    ATTORNEYS FOR DEFENDANT
    JULIAN OMIDI

DEFENDANT JULIAN OMIDI'S MOTION FOR RECONSIDERATION CONCERNING THE PRIOR CONVICTIONS OF GOVERNMENT WITNESS CARAQUITA STEWARD
Case No.  CR No. 17-00661 (A) - DMG