<a>
</a>

1  Michael S. Schachter** (NY 3910205)
2  Randall W. Jackson** (NY 5274048)
   Casey E. Donnelly** (NY4936803)
3  **WILLKIE FARR & GALLAGHER LLP**
4  787 Seventh Avenue
   New York, New York 10019
5  Tel: (212) 728-8102; Fax: (728) 728-8111
   Email: *mschachter@willkie.com*
6

7  *Attorneys for Defendant*,
    Julian Omidi
8

9  [Additional Counsel Continued On Next Page]

10

11              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
12

13
   United States of America,                | Case No. CR No. 17-00661 (A) – DMG
14
                                             | [*Assigned to Hon. Dolly M. Gee, District
15                          Plaintiff,       | Court Judge*]
16       v.                                  |
                                             | **DEFENDANT JULIAN OMIDI'S
17                                           | TRIAL MEMORANDUM
18 Julian Omidi, *et al.*,                   | CONCERNING A CURATIVE
                            Defendants.      | INSTRUCTION REGARDING
19                                           | CUSTOMER SERVICE EVIDENCE**
20

~TITLE-TOC~

[Additional Counsel Continued From Previous Page]

Simona Agnolucci (SBN 246943)
**WILLKIE FARR & GALLAGHER LLP**
One Front Street
San Francisco, CA 94111
Tel: (415) 858-7447, Fax: (415) 858-7599
Email: *sagnolucci@willkie.com*

Bruce H. Searby* (SBN 183267)
Edmund W. Searby** (OH 067455)
**SEARBY LLP**
1627 Connecticut Ave, NW, Suite 4
Washington, D.C. 20009
Tel: (202) 750-6106, Fax: (202) 849-2122
Email: *bsearby@searby.law*

*Appearing specially   ** Appearing pro hac vice*

*Counsel for Defendant Julian Omidi*

~TITLE-TOC~

This Court's standing criminal trial order states that "short briefs" concerning any "evidentiary issues" that may arise are "welcome," as the Court discourages sidebars to discuss issues that could have been raised outside the presence of the jury. Defendant Julian Omidi, by and through his counsel of record, respectfully submits this brief trial memorandum seeking a curative instruction to reduce the prejudice to Defendants resulting from the Government's repeated introduction of "customer service" evidence during the first week of trial.

## I. A CURATIVE INSTRUCTION IS APPROPRIATE.

When the Government introduces evidence that does not relate to any of the elements of the crime and that evidence is capable of inflaming the jury against the defendant, a curative instruction is appropriate and necessary. *See United States v. Sanchez*, 659 F.3d 1252, 1259 (9th Cir. 2011) (specific curative instruction necessary where prosecutor's statement to jury "was not logically connected. . .to the elements of [the charged offense]"); *United States v. Weatherspoon*, 410 F.3d 1142, 1150 (9th Cir. 2005) (where prosecutors offer statements and evidence that is improperly inflammatory and "designed to encourage the jury to enter a verdict on the basis of emotion rather than fact," a "trial judge should be alert to deviations from proper argument and take prompt corrective action," even where defense counsel does not specifically ask for a curative instruction).

As discussed at the end of the trial day on Friday, September 24, 2021, the defense believes that a curative instruction is necessary, given the inflammatory evidence elicited by the Government regarding unspecified patient complaints about various customer service issues at Get Thin that are entirely irrelevant to the issues that the jury must decide in this case. For example, among other improper evidence, the Government elicited the following irrelevant and inflammatory evidence:

- That patients complained about "receiving too many calls" from Get

Thin employees, *see* Ex. A (Tr. 9/23 at p. 120) at p. 10[1];

- That Get Thin's practices with respect to reaching out to patients "can be compared to the practices of a credit card collections agency;" *see* Ex. A (Tr. 9/23 at p. 121) at p. 11;
- That Get Thin employees "kept. . .giving [Ms. Steward] the runaround," sometimes didn't return her phone calls in a timely manner, and didn't send her the "entire file" but rather only "six pages" of her medical chart, *see* Ex. A (Tr. 9/22) pp. 3, 5; Ex. A (Tr. 9/23 at pp. 76-77) at pp. 8-9;
- That there was an overwhelming number of patient complaints, including about the "bedside manner of the lap band surgeon or the nurses" at Get Thin; *see* Ex. A (Tr. 9/23 at p. 143) at p. 12; Ex. A (Tr. 9/24 at p. 156) at p. 17;
- That patients "fe[lt] like they were treated like cattle," and that the initial informational seminar regarding lap band surgery was frequently overcrowded and "hardly ever a good experience to those who attended," *see* Ex. A (Tr. 9/23 at pp. 144-146) at pp. 13-15;
- That Ms. Caraquita Steward "felt like cattle" during her interactions with Get Thin employees, *see* Ex. A (Tr. 9/22) at p. 6;
- That patients complained that the sleep study "facilities" didn't open "on time;" *see* Ex. A (Tr. 9/23 at p. 143) at p. 12;
- That patients complained that the sleep study rooms "st[u]nk" and "smell[ed] bad," *see* Ex. A (Tr. 9/23 at p. 143) at p. 12;
- That patients complained that the "bedding stinks" in the sleep study rooms, that it "smell[ed] sweaty" or had "human fluids" on it and that

---

[1] The court reporter has not yet finalized the transcripts of last week's testimony but has provided "rough" transcripts to Mr. Omidi's counsel. Attached as Ex. A is a compilation of the pages from the "rough" transcripts that reflect the cited testimony.

DEFENDANT JULIAN OMIDI'S TRIAL MEMORANDUM CONCERNING A CURATIVE
INSTRUCTION REGARDING CUSTOMER SERVICE EVIDENCE
Case No.  CR No. 17-00661 (A) - DMG

> Mr. Omidi's response to those complaints was an instruction to "Febreeze the fabrics;" *see* Ex. A (Tr. 9/24 at pp. 158-159) at pp. 19-20.

- That Ms. Steward, on the evening when she had her sleep study, was woken up "at like 3 or 4:00 o'clock in the morning" and Get Thin employees "were like, 'okay, you're done, get out,'" *see* Ex. A (Tr. 9/22) at p.2; and

- That if Ms. Steward "had stayed with 1-800-GET-THIN" to get her bariatric surgery, she believes she "wouldn't be here" today, *see* Ex. A (Tr. 9/22) at pp. 3-4.

*All* of this evidence is entirely irrelevant to the elements of the charges that are at issue in this case. The effect of this evidence—which was extensive—can only have been to inflame and disgust the jury, to the detriment of defendants, whose very liberty is at stake in this proceeding. Given the high probability that this evidence has already improperly affected the jury, the defense respectfully asks the Court to give the following curative instruction:

> During the first week of trial, the Government elicited evidence from its witnesses regarding customer service type issues at Get Thin. During cross-examination of those witnesses, the defense attempted to introduce evidence of responsiveness to patient complaints and attempts at Get Thin to improve customer service. Given the amount of testimony on these customer service issues, I feel the obligation to remind you that this case is not about customer service and the Government cannot meet its burden on the charges that are at issue here through evidence concerning whether or not Get Thin had good or bad customer service.

As I instructed you at the beginning of this case, the Government has charged defendants Julian Omidi and Mirali Zarrabi with making false statements in a matter involving a health care benefit program, and all the defendants with mail fraud and wire fraud against certain insurance companies.  The Government has also alleged that defendants Julian Omidi and Surgery Center Management LLC engaged in a conspiracy to commit money laundering and Mr. Omidi is also charged with money laundering and aggravated identity theft.  Specifically, the Government alleges that, from approximately May 2010 to March 2016, defendants Omidi, Surgery Center Management, Dr. Zarrabi, and others participated in a scheme to defraud insurance companies by using fraudulent billings for sleep studies and Lap-Band surgeries.  The defendants deny all of these allegations and are presumed innocent unless and until the government proves that defendant guilty beyond a reasonable doubt.  Those are the only charges that you will be asked to decide in this case.

## II.  CONCLUSION

The Court should give the requested curative instruction.

Dated:  September 27, 2021

Respectfully submitted,

**WILLKIE FARR & GALLAGHER LLP**

By: s/ Casey E. Donnelly
    MICHAEL S. SCHACHTER
    RANDALL W. JACKSON
    CASEY E. DONNELLY
    SIMONA AGNOLUCCI

~TITLE-TOC~

ATTORNEYS FOR DEFENDANT
JULIAN OMIDI

DEFENDANT JULIAN OMIDI'S TRIAL MEMORANDUM CONCERNING A CURATIVE
INSTRUCTION REGARDING CUSTOMER SERVICE EVIDENCE
Case No.  CR No. 17-00661 (A) - DMG