Michael S. Schachter** (NY 3910205)
Randall W. Jackson** (NY 5274048)
Casey E. Donnelly** (NY4936803)
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8102; Fax: (728) 728-8111
Email: *mschachter@willkie.com*

 *Attorneys for Defendant*,
 Julian Omidi

[Additional Counsel Continued On Next Page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>    v.<br><br>Julian Omidi, *et al.*,<br><br>                    Defendants. | Case No. CR No. 17-00661 (A) – DMG<br><br>[*Assigned to Hon. Dolly M. Gee, District Court Judge*]<br><br>**DEFENDANT JULIAN OMIDI'S MOTION TO EXCLUDE TESTIMONY OF GOVERNMENT WITNESS REGAN CARRINGTON** |

[Additional Counsel Continued From Previous Page]

Simona Agnolucci (SBN 246943)
**WILLKIE FARR & GALLAGHER LLP**
One Front Street
San Francisco, CA 94111
Tel: (415) 858-7447, Fax: (415) 858-7599
Email: *sagnolucci@willkie.com*

Bruce H. Searby* (SBN 183267)
Edmund W. Searby** (OH 067455)
**SEARBY LLP**
1627 Connecticut Ave, NW, Suite 4
Washington, D.C. 20009
Tel: (202) 750-6106, Fax: (202) 849-2122
Email: *bsearby@searby.law*

*Appearing specially  ** Appearing pro hac vice*

*Counsel for Defendant Julian Omidi*

This Court's standing criminal trial order states that "short briefs" concerning any "evidentiary issues" that may arise are "welcome," as the Court discourages sidebars to discuss issues that could have been raised outside the presence of the jury. Defendant Julian Omidi, by and through his counsel, respectfully submits this short trial memorandum, addressing our objection to the testimony of potential government witness, Regan Carrington.

## I.   PRELIMINARY STATEMENT

The government's forthcoming witness, Regan Carrington is incapable of offering any testimony that is relevant non-hearsay. The government has disclosed extensive reports and notes of her interviews with the government, and almost the entirety of these documents is consumed with rumors, hearsay, and Ms. Carrington's unsubstantiated opinions based upon rumors and hearsay gossip. None of this is inadmissible in a criminal trial. The government should not be permitted to call a witness merely to testify, at length, about matters which she did not personally witness and which she only heard about through the employee "rumor mill" at Get Thin.  Ms. Carrington, based on these hearsay conversations, has developed a series of improper opinions about Weight Loss Center's ("WLC") business practices, none of which constitute actual relevant evidence worthy of the jury's consideration. We have pressed the government for a proffer of her admissible testimony in order to avoid the need for a motion, but from our conversations with the prosecutors we have been unable to discern what appropriate testimony this witness might offer. The Court should exclude her testimony.

## II.   MOST, IF NOT ALL, OF MS. CARRINGTON'S TESTIMONY IS INADMISIBLE.

Ms. Carrington worked as an administrative assistant at Weight Loss Centers for approximately nine months between May 2011 and February 2012.  When first hired, in 2011, she served as one of several administrative assistants to Armando

Petrikowski,[1] where her responsibilities were limited to "maintaining [Petrikowski's] schedule," working on "seating charts," keeping track of "employees' vacation and sick time leave requests," revising, at Petrikowski's direction, the "Patient Care training manual," and maintaining a log of "when patients were last contacted, and where they were at in their process." (3505-01 at 2). At some point near the end of her nine-month stint at Weight Loss Centers, Ms. Carrington was re-assigned to serve as the administrative assistant for Janelle Gleason, who worked in Quality Control.

The Government's disclosures have revealed plainly inadmissible testimony that the Government apparently intends to elicit from Ms. Carrington, including:

- An opinion that the individual who hired her "was not honest with her about the job" and "knew all 'this stuff' GET-THIN were doing," *see* 3505-01 at 1;

- An opinion from Ms. Carrington that "appeal[ing]" an insurance company's coverage decision is pointless because insurance companies will "never" cover Lap Band surgery, unless a patient's insurance plan specifically requires bariatric surgery to be covered, *see* 3505-01 at 6;

- An opinion from Ms. Carrington that Weight Loss Centers was "ripping people off" because insurance would never cover Lap Band surgery for a patient lacking out-of-network benefits, *see* 3505-01 at 7;

- An opinion that, although "she does not know exactly what was going on, [Ms. Carrington] felt there was a lot of dissention within the company, especially with Petrikowski," *see* 3505-01 at 2;

- An opinion that "GET-THIN continued to collect on patient appointments" and was "blatantly like not doing people right," *see* 3505-01 at 2;

---

[1] Mr. Petrikowski testified on September 23-24, 2021.

DEFENDANT JULIAN OMIDI'S MOTION TO EXCLUDE THE TESTIMONY OF
GOVERNMENT WITNESS REGAN CARRINGTON
Case No. CR No. 17-00661 (A) - DMG

- An opinion from Ms. Carrington that Patient Advocacy Law Group (PALG), which handled appeals of insurance coverage determinations, was a "fake entity," *see* 3505-01 at 1;

- A claim that Ms. Carrington knew "what PALG was doing because she became good friends with Lauren Schilling who worked for the legal department on the 5th floor" who "told Carrington about a lot of stuff that was happening there," *see* 3505-01 at 3;

- An opinion from Ms. Carrington that the psychological evaluation offered to patients by Weight Loss Centers was "laughable," because she heard from other employees that it only took "15 minutes over the phone," *see* 3505-01 at 3;

- A recollection from Ms. Carrington that in 2011 an unspecified "lawsuit" was filed against Get Thin, and that, on Ms. Carrington's next-to-last-day, "she heard" from other, unnamed employees, that "Julian Omidi" had "told employees 'give me your papers, give me your papers!,'" *see* 3505-01 at 4;

- A claim from Ms. Carrington that Mr. Omidi, accompanied by legal counsel, Robert Silverman, "had everyone give them papers" and by the next day, "everything that had to do with patients. . . was all gone," *see id.*;

- A recollection from Ms. Carrington that a "receptionist" who worked on the "5th Floor," where the legal department was, "told her" that lawyers were throwing away documents and "shredding a bunch of stuff," *see* 3505-01 at 4;

- A suspicion from Ms. Carrington that patients' insurance companies were being charged for services not performed, even though Carrington has never seen proof of any billing of insurance companies for services not rendered, *see* 3505-01 at 5;

DEFENDANT JULIAN OMIDI'S MOTION TO EXCLUDE THE TESTIMONY OF
GOVERNMENT WITNESS REGAN CARRINGTON
Case No.  CR No. 17-00661 (A) - DMG

- A claim by Ms. Carrington that surgery centers were probably receiving "kickbacks," although she "does not know for sure," *see* 3505-01 at 8;

- Various statements by Ms. Carrington regarding the corporate structure employed by Weight Loss Centers and its related entities, *see* 3505-01 at 8; and

- A hearsay claim that patients "were desperate and they would cry to Carrington on the phone informing her that the Lap-Band is going to save their life and they've been waiting for years and when is it going to happen," *see* 3505-01 at 6.

## III.   THE FEDERAL RULES OF EVIDENCE DO NOT PERMIT THE GOVERNMENT TO ADMIT INTO EVIDENCE GOSSIP AND IMPROPER LAY OPINION

Under Federal Rule of Evidence 602, "a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.  As an initial matter, while aspects of Ms. Carrington's role working as an administrative assistant arguably have minimal relevance, the portions of her testimony that are even arguably relevant are simply cumulative of information already in the record, from Mr. Petrikowski himself.

The bulk of the "information" that Ms. Carrington has relayed to the prosecutors can be more properly characterized as workplace rumor, improper opinion testimony, and unreliable hearsay.  *NLRB v. Haddock-Engineers, Ltd*., 215 F.2d 734, 736 (9th Cir. 1954) ("Mere uncorroborated hearsay or rumor does not constitute substantial evidence.'" )  The Court should not permit Ms. Carrington to testify to anything beyond those facts she knows from her personal knowledge and should not permit Ms. Carrington to offer her personal "opinions" at all, since she is a lay witness, not an expert witness.  *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, No. CV 05-2200 MMM (MCx), 2008 U.S. Dist. LEXIS 71761, at *36 (C.D. Cal. Mar. 17, 2008) ("speculative opinion testimony by lay witnesses—

i.e., testimony not based upon the witness's perception—is generally inadmissible"). For example, although Ms. Carrington only worked at Weight Loss Centers for nine months, and her job—working on seating charts and keeping track of employee sick days—did not involve communication or negotiation with insurance companies, Ms. Carrington apparently intends to share with the jury her "view" that "appeal[ing]" an insurance company's coverage decision was fruitless because, according to Ms. Carrington, insurance companies will "never" cover Lap Band surgery, unless a patient's insurance plan specifically requires bariatric surgery to be covered. Given that Ms. Carrington's factual basis for this (incorrect and improper) lay opinion is based on nothing other than random hearsay gossip that she picked up at the employee water cooler, and random notes that she might have happened to see in a patient's chart while working on an unrelated task, the Court should not permit the Government to elicit testimony from Ms. Carrington regarding her views on whether, and how often, insurance companies approve bariatric surgery for patients without out-of-network benefits. Likewise, Ms. Carrington's personal opinion—which is based on her incorrect assumptions about insurance coverage—that Weight Loss Centers was probably "ripping people off" —is inadmissible opinion testimony that has no place in a federal criminal trial.

Also inadmissible is Ms. Carrington's personal opinion that the psychological evaluation offered by Weight Loss Centers was "laughable" because it only took "15 minutes over the phone." Ms. Carrington never participated or observed a single psychological evaluation and her opinion is based entirely on what she heard from unspecified other people. As such, her personal opinion that the psychological evaluation was "laughable" is entirely baseless, as well as irrelevant to the issues that the jury must decide in this case.

For similar reasons, Ms. Carrington's claim that that PALG, which handled appeals of insurance coverage determinations, was a "fake entity" is entirely inadmissible. Ms. Carrington did not work for, or with, PALG. Her only information

about PALG comes from rumors and gossip she heard from other employees, *see* 3505-01 at 3, and as a result, her personal and incorrect assumption that PALG must be a "fake entity" is not a fact admissible in a criminal trial.

The Government also apparently intends to improperly elicit from Ms. Carrington the fact that in 2011, an unspecified "lawsuit" was filed against Weight Loss Center, and that, on Ms. Carrington's next-to-last-day, "she heard" from other, unnamed employees, that "Julian Omidi" had "told [unnamed] employees 'give me your papers, give me your papers!'" (35050-01 at 04.) According to Ms. Carrington, Mr. Omidi, accompanied by legal counsel, Robert Silverman, then "had everyone give them papers" and by the next day, "everything that had to do with patients. . . was all gone." *Id.* Ms. Carrington also claims that a receptionist who worked on the "5th Floor," where the legal department was, "told her" that lawyers were throwing away documents and "shredding a bunch of stuff," *see* 3505-01 at 4.

None of this testimony is admissible. First, the fact that Ms. Carrington remembers a random "lawsuit" (which she apparently cannot identify with any more specificity than that) is not relevant to any element of the charges at issue. A lawsuit, even if specific, is at best evidence of mere allegations. The only purpose for introducing evidence of an unidentified "lawsuit" is to unfairly prejudice the jury with the specter of unsubstantiated complaints. Second, Ms. Carrington cannot testify, in a court of law, about the workplace gossip that she heard where some employee told her that Mr. Omidi went around saying "Give me your papers!" to employees. Ms. Carrington did not personally hear Mr. Omidi say that, so she cannot testify about it. Nor can Ms. Carrington testify that some receptionist (whom the Government does not intend to call as a witness) "told" her the gossip that unspecified "papers" were being "shredded" by lawyers on the "5th Floor." This too is nothing but workplace rumor, and since Ms. Carrington did not personally observe these events, she cannot testify about them. Moreover, introduction of any of this evidence raises complicated issues involving legal privilege, since to rebut the implication that this "collection"

and "shredding" of "papers" was somehow improper or unlawful, Mr. Omidi will need to call legal counsel to testify about what the lawyers were *actually* doing. Given that there is no allegation at issue in this case that Mr. Omidi or Get Thin's legal counsel destroyed relevant hard copy patient files, testimony on this issue is entirely irrelevant to the jury's assessment of the elements of the charges and does not justify putting Mr. Omidi in a position where he has basically no choice but to waive attorney client privilege to respond to Ms. Carrington's unsubstantiated *gossip*. Moreover, if such gossip *is* admitted into evidence, the jury will then need to sit through an entire mini trial regarding whether any "papers" were actually collected and "shredded," and what those "papers" might have been, and the justification for any collection and shredding that might have occurred. Moreover, it is unclear what portions of Ms. Carrington's hearsay testimony, much of which she attributes to legal department employee Lauren Schilling, are derived from privileged conversations. Given the length of the trial, and the fact that this testimony is not probative *of a single element* of the offenses at issue, the Court should not permit Ms. Carrington to testify on this subject.[2]

Ms. Carrington's baseless accusation that patients' insurance companies were being charged for services not performed is also inadmissible, as even Ms. Carrington acknowledges that she "has never seen proof of Get Thin billing insurance companies for services not rendered," and only "suspects it occurred" because "it's kind of 'up their alley' with what they were doing at Get Thin." Ms. Carrington admits "she does not [know] anything about the billing" at Weight Loss Centers but claims that "a few people" called her and said, "I was billed for this and I didn't have that." (3505-01 at

---

[2] During meet and confer conversations with the Government, the Government suggested that it might not introduce some of this evidence, but did believe that some of it was admissible. Given that it was unclear to defense counsel where the Government was drawing the line, defense counsel wished to make clear its objection to all of this evidence.

5.)  To the extent that anyone said that to Ms. Carrington, those statements are hearsay and since Ms. Carrington otherwise admits that she has no knowledge about what was billed or not, there is no basis for Ms. Carrington to share her personal, unsubstantiated suspicions with the jury.  Similarly, Ms. Carrington's claim that surgery centers were receiving "kickbacks" is inadmissible given that Ms. Carrington herself has told the Government that she "does not know for sure," and can offer the Government no proof to substantiate her claim.  (3505-01 at 8.)

Finally, Ms. Carrington should not be permitted to testify regarding the corporate structure of Weight Loss Centers.  Ms. Carrington told investigators that she "does not know any factual information about the corporations."  (3505-01 at 8.) Thus, as Ms. Carrington readily admits, the corporate structure is well beyond Ms. Carrington's personal knowledge and she should not be permitted to testify about it.

## IV.   MS. CARRINGTON'S TESTIMONY IS UNFAIRLY PREJUDICIAL.

Even if the topics of testimony discussed above were relevant and appropriate testimony for Ms. Carrington to offer—which they are not—the Court should nonetheless exclude such testimony under Rule 403 as "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury. . . [or] wasting time."  *See* Fed. R. Evid. 403; *United States v. Rincon*, 28 F.3d 921, 925 (9th Cir. 1994).  In fact, Ms. Carrington has already warned the government that she will get "emotional" during her testimony, specifically because of her perceived mistreatment as an employee.  In an insurance fraud trial, where one Government witness has already subjected the jury to a prolonged emotional outburst, it would be particularly unfair to call yet another witness who has previewed her intention to cry before the jury, with no apparent basis for this level of emotional response. Ms. Carrington complains that she worked at Weight Loss Centers "in the middle of the recession" and that she "was taken advantage of as an employee," because she was originally offered "$16 [per hour] but paid. . .$12 [per hour]."  (3505-06 at 1.)  Ms. Carrington inexplicably states that she "didn't have

money to buy food," so she "lost 60 pounds working" at Weight Loss Centers. *Id.* She described other grievances with the company, such as that it felt like "Big-Brother watching, *see* 3505-03 at 2, that the company suspended her computer privileges once she began using the company computer to search for other jobs, *see* 3505-08 at 4, and that she "knew there was something wrong on the first day of her employment at Get Thin." (3505-09 at 1). In describing the defendant and his family, Ms. Carrington told the government "[t]hese guys were scumbags." (3505-06 at 1.) She said to investigators, with no basis, that she did not feel like she would be safe testifying because Mr. Omidi and his family have "no morals or ethics." *Id.* She has boasted to investigators that "Karma is coming back to [the Omidis] and I want to see them go down." (3505-05 at 1). None of this is rooted in any logical understanding of her limited experience working at Weight Loss Centers.

Even if Ms. Carrington's testimony about her personal grievances as an employee had probative value—which it does not—there is a substantial risk that allowing these kinds of inflammatory statements will only prejudice the jury and cause confusion about what this case is actually about: an alleged scheme to submit falsified sleep studies to insurance carriers. None of this proposed testimony is relevant to the question of whether falsified sleep studies were submitted to insurance companies. The Court has already determined that certain questioning of witnesses in this case has at times veered too far into the irrelevant, and permitting a witness whose testimony is both low in probative value and highly prejudicial will only further confuse and improperly prejudice the jury.

## V.  **CONCLUSION**

For the foregoing reasons, Regan Carrington's testimony should be excluded as it has no probative value and is highly prejudicial and inflammatory.


Dated:  September 29, 2021                    Respectfully submitted,

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WILLKIE FARR & GALLAGHER LLP**

By: s/Randall W. Jackson
      MICHAEL S. SCHACHTER
      RANDALL W. JACKSON
      CASEY E. DONNELLY
      SIMONA AGNOLUCCI

      ATTORNEYS FOR DEFENDANT
      JULIAN OMIDI