TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KRISTEN A. WILLIAMS (Cal. Bar No. 263594)
Deputy Chief, Major Frauds Section
ALI MOGHADDAS (Cal. Bar No. 305654)
DAVID CHAO (Cal. Bar No. 273953)
DAVID C. LACHMAN (Cal. Bar No. 261711)
Assistant United States Attorneys
Major Frauds/General Crimes Sections
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2400
    Facsimile: (213) 894-6269
    E-mail:    Kristen.Williams@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>           v.<br><br>JULIAN OMIDI,<br>  aka "Combiz Omidi,"<br>  aka "Combiz Julian Omidi,"<br>  aka "Kambiz Omidi,"<br>  aka "Kambiz Beniamia Omidi,"<br>  aka "Ben Omidi,"<br>SURGERY CENTER MANAGEMENT, LLC,<br>and<br>MIRALI ZARRABI, M.D.,<br>  aka "Mirali Akba Ghandchi<br>     Zarrabi,"<br>  aka "M.A. Ghandchi Zarrabi,"<br><br>       Defendants. | No. CR 17-661(A)-DMG<br><br>GOVERNMENT'S SUPPLEMENTAL TRIAL MEMORANDUM REGARDING ADMISSION OF EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 104 |

    Plaintiff United States of America, by and through its counsel

of record, the Acting United States Attorney for the Central District

1  of California and Assistant United States Attorneys Kristen A.

2  Williams, Ali Moghaddas, David Chao, and David C. Lachman, hereby

3  files a supplemental trial memorandum regarding the admission of

4  evidence under Federal Rule of Evidence 104.

5      This supplement is based upon the attached memorandum of points

6  and authorities, the files and records in this case, and such further

7  evidence and argument as the Court may permit.

8  Dated: October 4, 2021        Respectfully submitted,

9                                                 TRACY L. WILKISON

10                                                Acting United States Attorney

11                                              SCOTT M. GARRINGER
      Assistant United States Attorney
12    Chief, Criminal Division

13    _____

14    KRISTEN A. WILLIAMS
      ALI MOGHADDAS
15    DAVID CHAO
      DAVID C. LACHMAN
16    Assistant United States Attorneys

17    Attorneys for Plaintiff
      UNITED STATES OF AMERICA

18

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.   INTRODUCTION**

3         The government is seeking to admit at trial certain sleep study

4  reports (the "GT_MZ Reports")[1] obtained from a hard drive voluntarily

5  provided to agents[2] by Michael Zarrabi, GET THIN's sole registered

6  polysomnographic technician ("RPSGT") contracted to score GET THIN's

7  sleep studies during most of the charged scheme.  Defendants sought

8  to exclude these materials pre-trial, based on claims concerning the

9  trustworthiness and reliability of the materials (Dkt. 1207), but the

10 Court denied that motion, recognizing that the evidence could be

11 authenticated under Federal Rule of Evidence 901(a) through the

12 testimony of agents who obtained the hard drive, and would be

13 admissible non-hearsay as a statement of a party opponent under Rule

14 801(d)(2)(C) or as a business record under Rule 803(6).  (Dkt. 1370

15 ("Order") at 8.)  On September 29, 2021, the government again raised

16 the conditional admission of these documents, and the Court indicated

17 it was likely to admit them based on evidence that Michael Zarrabi

18 provided these materials to agents.[3]  While the government is

19 prepared to introduce such basic foundational evidence by taking

20

21         [1] Specifically, these reports are found on the government's

22 exhibit list bearing the Bates prefix "GT_MZ" at Exhibits 121-122,
   124-138, 159, 346, 700-701, 704, 707, 709-710, 713, 716, 718-19, 723,

23 725-26, 729, 734, 737-38, 744, 749-50, 755, 757, 759, 763-64, 767-68,
   772-73, 784, 786, 789, 791.  The arguments herein would also apply to

24 any additional exhibits falling within that same category if
   subsequently added.

25         [2] Referenced as the "Personal Hard Drive" in the Court's Order.

26 (Dkt. 1370 at 8.)

         [3] In responding to the government's arguments, counsel for
27 defendant OMIDI referenced the government's withdrawal of its motion
   to authenticate documents produced by defendant ZARRABI; to be clear,

28 those ZARRABI-prefixed documents (and the issues concerning their
   authentication) are different from the GT_MZ Reports at issue here.

witnesses out of order, that process is inefficient, given that these witnesses are anticipated to testify later at trial on broader subjects.  Nor is it clear to the government that the defense <u>actually</u> disputes the agent's receipt of these materials or that the GT_MZ-prefixed exhibits are what they purport to be:  namely, sleep study reports obtained from Michael Zarrabi, GET THIN's RPSGT contracted to score its sleep studies, that were provided close in time to the underlying sleep studies to others associated with GET THIN, including former GET THIN employees involved in the fraudulent fabrication of sleep study reports.  Instead, it appears that the defense may intend to hold a mini-trial before the jury on matters that, at best, go to the weight of these materials rather than their admissibility.  The Court should reject that approach.  The Court can and should conditionally admit the GT_MZ Reports at this time.

## II.  LEGAL STANDARDS

Rule 104 provides that "the court must decide any preliminary question about whether . . . evidence is admissible."  Fed. R. Evid. 104(a).  In deciding that question, "the court is not bound by evidence rules."  <u>Id.</u>  Where the relevance of evidence depends on another fact, the court may admit the proposed evidence on condition that the proof sufficient to support a finding that the fact exists be introduced later.  <u>Id.</u> 104(b).  When later determining whether the party has introduced sufficient evidence to meet Rule 104(b), "the trial court neither weighs credibility nor makes a finding that the [party] has provided the conditional fact by a preponderance of the evidence."  <u>Huddleston v. United States</u>, 485 U.S. 681, 690 (1988).  Instead, the court "simply examines all the evidence in the case and

1  decides whether the jury could reasonably find the conditional fact .
2  . . by a preponderance of the evidence." Id.

3  Under Rule 901, evidence may be authenticated based on the
4  production of evidence "sufficient to support a finding that the item
5  is what the proponent claims it to be." Fed. R. Evid. 901(a). Such
6  evidence can include the testimony of a witness with knowledge and
7  distinctive characteristics. Id. 901(b)(1), (4).

8  **III. THE COURT SHOULD CONDITIONALLY ADMIT THE GT_MZ REPORTS AT THIS**
   **TIME**
9

10  As the jury has already heard, Michael Zarrabi worked for the
11  GET THIN sleep study program and was scoring its sleep study reports
12  as of approximately June 2010, scoring a number of them in a manner
13  consistent with Dr. Neil Kline's scoring of the same raw sleep data.
14  (See, e.g., 9/27/21 RT 770-72, 788-89, 792, 794-95, 799.)

15  With respect to how the GT_MZ files were obtained, United States
16  Food and Drug Administration, Office of Criminal Investigations
17  ("FDA-OCI") Special Agent ("SA") Zeva Pettigrew is anticipated to
18  testify that Michael Zarrabi voluntarily produced a hard drive (the
19  "Personal Hard Drive") to her on December 8, 2015, and gave her
20  consent to search the device. (See Govt Tr. Ex. 346.) FDA-OCI SA
21  Cindy Niu is anticipated to testify that she received that device in
22  evidence, obtained files from it, and created a spreadsheet listing
23  the files obtained. (See Govt Tr. Ex. 139.) SA Pettigrew is
24  anticipated to testify that the GT_MZ Reports contained on the
25  government's exhibit list were files obtained from the Personal Hard
26  Drive with a Bates number with the prefix GT_MZ added for
27  identification purposes. Defense Criminal Investigative Service SA
28  Sarine Tooma is anticipated to testify that (1) the GT_MZ Reports

3

typically have saved and modified dates contemporaneous with the sleep study dates, and (2) when she compared GT_MZ Reports with other sleep study reports gathered during the course of this investigation from other GET THIN employees who worked with Michael Zarrabi, the majority of the time she found identical or nearly identical reports with identical apnea hypopnea index ("AHI") scores appearing contemporaneously in materials obtained from other sources, including (a) reports already in evidence (Govt Tr. Ex. 372) that Dr. Neil Kline testified he received from GET THIN and understood to have been scored by Michael Zarrabi (see, e.g., 9/27/21 RT 770-72, 788); and (b) reports with the Bates prefix of GT_SH and CKSearch, which SA Pettigrew will testify she understands to correspond with materials obtained via subpoena from former GET THIN employee Sherwin Hong and materials obtained via a search of Charles Klasky's computer, respectively.  Thus, the evidence will show that the GT_MZ Reports are what the government purports them to be: sleep study reports received from Michael Zarrabi that were created and provided to others working at and with GET THIN close in time to the studies. This evidence is sufficient to authenticate the evidence under Rule 901(a) and at least conditionally admit it at this time under Rule 104, as the Court already indicated it was inclined to do based on such a showing.  (See Order at 8 ("Evidence from Michael Zarrabi's Work Computer and Personal Hard Drive is admissible under FRE 901(a) through the testimony of agents who directly obtained the devices from Michael Zarrabi."); 9/29/21 RT 1137-38.)

Significantly, it is not clear to the government that this evidence is even in dispute; defendants have refused to answer the government's inquiries on that point and their recent trial brief

does not dispute the issue.  Instead, it appears defendants intend to try to turn this process into a far more cumbersome, lengthy, and disruptive one aimed at conflating weight with admissibility.  The Court should reject that approach and decide the matter under Rules 901 and 104, as it has indicated it was inclined to do.

To the extent the reports' relevance depends on the government's later showing that these reports were scored by Michael Zarrabi based on the raw data from the patient's sleep studies (in contrast to the anticipated evidence that many of the reports in GET THIN's patient files and sent to insurance in connection with sleep study and CPAP claims and Lap-Band approval requests were fabricated using algorithms designed to increase the severity of the purported obstructive sleep apnea), the government anticipates there will be ample evidence on that point.  For example, Michael Zarrabi was the only RPSGT contracted to manually score studies for GET THIN during most of the fraud period (Govt Tr. Ex. 19), the GT_MZ Reports themselves often indicate that they were scored by an RPSGT using the templates used by GET THIN for its sleep study reports (see, e.g., Govt Tr. Exs. 131, 551, 755),[4] and contemporaneous emails reference Michael Zarrabi's scoring (see, e.g., Govt Tr. Exs. 232, 244).  There will also be testimony from various witnesses testifying in the upcoming weeks that Michael Zarrabi was scoring sleep studies based on the raw sleep data and that co-conspirators recognize, obtained, and worked with the GT_MZ Reports.

---

[4] These templates use the phrasing "Moderate Severe" on the first line diagnosis and have an Epworth score (often 16 or 17) already included.  (See Govt Tr. Ex. 551.)

1    Additionally, there has already been evidence that Michael

2    Zarrabi's studies, including studies provided to Dr. Neil Kline and

3    also found within the GT_MZ reports, were often arriving at the same

4    or substantially the same score as other studies independently scored

5    by others based on the same raw data.  Dr. Kline, for example,

6    testified about multiple instances in which his score was consistent

7    with Michael Zarrabi's score.  (See, e.g., 9/27/21 RT 788-89, 792,

8    794-95, 799.)  In fact, of the 36 studies Dr. Kline was able to

9    score, his score was substantially consistent with, if not identical

10   to, Michael Zarrabi's on approximately 31 occasions (86%).  Although

11   OMIDI claims that the government's sleep expert Dr. Norman only

12   agreed with the scoring on Michael Zarrabi's reports on one occasion

13   (OMIDI Tr. Brief at 10, Dkt. 1403), in fact, the government

14   anticipates that Dr. Norman will testify that his score was

15   substantially similar to Michael Zarrabi's the vast majority of those

16   he was able to score.  This further corroborates that the GT_MZ

17   Reports were accurately scored by Michael Zarrabi based on the raw

18   data from the patient's sleep studies.

19   Under Rule 104(b), the Court can conditionally admit these

20   materials now subject to the government's later introduction of proof

21   as to their relevancy.  For the defense to attempt to require the

22   various witnesses who would testify to these documents out of order

23   in a limited fashion now regarding the documents' relevancy is not

24   what Rule 104 requires and will make for a highly inefficient trial

25   far outside the customary practice in this district.  Nor is it clear

26   how such a process would work, given that defendants apparently

27   object to the government's showing these reports to the multiple

28   witnesses who would be able to testify as to their relevancy before

that ultimate relevance is demonstrated.  Finally, seeing these GT_MZ Reports now will not be surprising to the jury or unfairly prejudicial to the defendants.  The jury has already heard in opening, including from defendants, that they will see different versions of sleep study reports.  (See 9/22/21 RT 270.)

Moreover, defendants' arguments thus far concerning these reports largely appear to go to the weight that should be given to the GT_MZ Reports, rather than their admissibility, and should not bar their conditional admission at this point.  For example, the Court has already found that defendants' arguments concerning the reliability of the reports and potential that they were manipulated "bear on the weight of the evidence, not its admissibility." (See Order at 9.)  Defendants will have ample opportunity to explore these issues through cross-examination of SAs Pettigrew, Niu, and Tooma (and others) when they testify, and have already noticed experts they intend to introduce in their cases regarding this issue.

Defendant OMIDI has also contended that the GT_MZ Reports may represent versions never sent to the insurance companies.  (See, e.g., 9/22/21 RT 270.)  This, of course, is precisely the government's point:  GET THIN often did not send the reports of its sole scoring technician to the insurance company, but instead sent falsified ones created by co-conspirators.  Defendant OMIDI has further argued that Michael Zarrabi's reports were the result of unreliable auto- rather than manual-scoring or that OMIDI believed that any rescoring of these reports was legitimate.  (See, e.g., 9/22/21 RT 257-58, 270.)  Like the arguments above, all of those arguments implicate, if anything, the weight the jury should give the evidence, rather than its admissibility.

7

1    Finally, any conditional admission the Court permits will of

2    course be subject to the government's later ability to introduce

3    sufficient proof concerning their relevancy.  If the government fails

4    to introduce evidence from which a jury could reasonably find the

5    conditional fact by a preponderance, the Court can then decline to

6    admit the evidence.  <u>Huddleston</u>, 485 U.S. at 690.

7    **IV.  CONCLUSION**

8    For the foregoing reasons, the government respectfully requests

9    that this Court conditionally admit at this time the GT_MZ Reports

10   contained at Exhibits 121-122, 124-138, 159, 346, 700-701, 704, 707,

11   709-710, 713, 716, 718-19, 723, 725-26, 729, 734, 737-38, 744, 749-

12   50, 755, 757, 759, 763-64, 767-68, 772-73, 784, 786, 789, 791.