Michael S. Schachter** (NY 3910205)
Randall W. Jackson** (NY 5274048)
Casey E. Donnelly** (NY4936803)
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8102; Fax: (728) 728-8111
Email: *mschachter@willkie.com*

*Attorneys for Defendant*,
 Julian Omidi

[Additional Counsel Continued On Next Page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| United States of America,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>Julian Omidi, *et al.*,<br><br>　　　　　　　　Defendants. | Case No. CR No. 17-00661 (A) – DMG<br><br>[*Assigned to Hon. Dolly M. Gee, District Court Judge*]<br><br>**DEFENDANT OMIDI'S RESPONSE TO THE GOVERNMENT'S TRIAL MEMORANDUM REGARDING ADMISSION OF EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 104 (DKT. 1406)** |

[Additional Counsel Continued From Previous Page]

Simona Agnolucci (SBN 246943)
**WILLKIE FARR & GALLAGHER LLP**
One Front Street
San Francisco, CA 94111
Tel: (415) 858-7447, Fax: (415) 858-7599
Email: *sagnolucci@willkie.com*

*\*\* Appearing pro hac vice*

*Counsel for Defendant Julian Omidi*

Defendant Julian Omidi, by and through his counsel, respectfully submits this short supplemental response in further support of his Trial Memorandum Concerning the Authenticity Requirements of Federal Rule of Evidence 901 and the Materials Prefixed as GT_MZ, filed at Dkt. 1403, and in opposition to the Government's Supplemental Trial Memorandum Regarding Admission of Evidence Under Federal Rule of Evidence 104, filed at Dkt. 1406.

## I. COMPLIANCE WITH THE FEDERAL RULES OF EVIDENCE IS REQUIRED, EVEN WHEN "INCONVENIENT" FOR PROSECUTORS.

In every court in this country, prosecutors (and defense attorneys) recognize and adhere to the principle that evidence must be authenticated and admitted into evidence *before* it can be used in a criminal trial. The Government's brief identifies no rational justification permitting an exemption from this rule, and especially not given that the Government's reason is simply its arbitrary preference with respect to witness order. Specifically, the Government is improperly seeking to call multiple cooperating witnesses, and several experts, to testify to the jury about certain, highly-contested documents *before* the Government establishes a foundation for the admission of those documents. The potential error that this course of conduct would introduce into this trial cannot be overstated—should the Court ultimately find these documents inadmissible, the Government will have obtained the benefit of the evidence and its exclusion will have no practical effect on the Government's case. This would be an exceedingly unfair outcome and one that substantially violates Defendants' Constitutional rights. The Government's preference regarding its witnesses' order of appearance does *not* trump Defendants' right to due process and a fair trial administered consistent with the Federal Rules of Evidence.[1] No prejudice

---

[1] The Government's brief seems to suggest that the Court does not need to consider the rules of evidence in making rulings under Rule 104(a), see Gov't Memo at 2, but there can be no dispute that it is the rules of evidence, and in particular, the

**DEFENDANT OMIDI'S RESPONSE TO THE GOVERNMENT'S TRIAL MEMORANDUM REGARDING ADMISSION OF EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 104**
Case No. CR No. 17-00661 (A) - DMG

will inure to the Government if the Court requires it to authenticate and admit its evidence *before* using it in front of the jury. This obligation is imposed on prosecutors in this country every single day and there is no reason why the Government in this case should not be held to the same standard.

Indeed, the Trial Memorandum filed by the Government only underscores how complicated and involved the admissibility question is with respect to the GT_MZ materials. Although the Government does not even attempt to distinguish the cases cited in Mr. Omid's Trial Memorandum, including *United States v. Jackson*, 636 F.3d 687 (5th Cir. 2011), and instead takes as a given that it will be able to authenticate and admit the GT_MZ materials, through the testimony of its case agents, it is worth noting that even the Government admits that it will take the testimony of three different Government agents—SA Pettigrew, SA Niu, and SA Tooma—to even attempt to establish those facts that the Government believes will justify a finding of authenticity and admissibility as to these documents. In other words, the defense's insistence that the Government be required to satisfy the strictures of Rule 901 is not frivolous bluster, but is consistent with the reality that *both parties* recognize: that is, that the factual record concerning the GT_MZ materials is complicated and the rulings that the Court will be called upon to make will not be simple. *See United States v. Perlmuter*, 693 F.2d 1290, 1293 (9th Cir. 1982) ("This Circuit requires strict compliance with the authenticity rules."); *see also United States v. Jimenez Lopez*, 873 F.2d 769, 773 (5th Cir. 1989) (acknowledging that the "Ninth Circuit appears to require exceedingly strict compliance with the authenticity rules."). For this reason

---

authentication requirements under Rule 901 that govern the present dispute regarding whether the Government can prove that the GT_MZ materials are what the Government purports them to be, that is, "accurate" sleep study reports, reflecting the manual scoring of Michael Zarrabi, prior to any alleged fraudulent "re-scoring" by Charles Klasky.

**DEFENDANT OMIDI'S RESPONSE TO THE GOVERNMENT'S TRIAL MEMORANDUM REGARDING ADMISSION OF EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 104**
Case No. CR No. 17-00661 (A) - DMG

too, permitting the GT_MZ documents to be utilized by multiple Government witnesses before the Court has heard any testimony as to their authenticity or admissibility is inappropriate.

II. **THE GOVERNMENT'S TRIAL MEMORANDUM CONTAINS MULTIPLE DISPUTED ISSUES OF FACT, WHICH ONLY UNDERSCORES WHY THE COURT SHOULD REFUSE TO PERMIT THE GOVERNMET TO USE HIGHLY CONTESTED EVIDENCE ON THE "PROMISE" THAT SUCH EVIDENCE WILL BE AUTHENTICATED AND ADMITTED AT SOME LATER TIME.**

As the defense explained in its Trial Memorandum, *see* Dkt. 1403, at Part III, the defense is skeptical that the Government can actually satisfy its burden of proving authenticity under Rule 901, especially given the conflicting evidentiary record concerning the GT_MZ materials. While the Government's Memorandum makes an effort at responding to some of the issues described by the defense, it actually raises more questions than answers.

For example, the Government contends that Dr. Neil Kline's testimony, last week, proves that the documents marked as GT_MZ are "accurate" sleep reports reflecting the manual scoring of Michael Zarrabi. (*See* Gov. Mem. at 6.) There are more than 10,000 different documents marked with the prefix GT_MZ. Dr. Kline was provided 226 raw sleep study files and Dr. Kline testified that he was able to score **only** "36 studies." (*Id*.) Of these 36, the Government claims that Dr. Kline came to a "substantially consistent" score as a GT_MZ report in 31 instances.[1] (*Id*.) This assertion appears inconsistent with the trial testimony: Dr. Kline told the jury that he strongly disagreed with many of the scores in the GT_MZ reports and

---

[1] Indeed, if one considers the appropriate data set to be the 10,000 documents found on the Hard Drive, Dr. Kline was able to vouch for the scoring on only a *a fraction of 1%* of the reports.

**DEFENDANT OMIDI'S RESPONSE TO THE GOVERNMENT'S TRIAL MEMORANDUM REGARDING ADMISSION OF EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 104**
Case No. CR No. 17-00661 (A) - DMG

repeatedly testified that Michael Zarrabi missed significant findings of sleep apnea. (Tr. 868:17-869:23, 873:7-21.) But, even if one accepts the Government's assertion regarding consistencies between Michael Zarrabi's scoring and that of Dr. Kline, the Government has its metrics confused. As Dr. Kline testified, he **<u>could not score</u>** between 183 and 195 of the 219 reports (between 83% to 89%) that he was given by the Government, because the raw data was so corrupted or incomplete that it was impossible to determine a score. (Tr. 867:2-870:11.) Yet, there is a corresponding report marked with the GT_MZ prefix for each one of these patients whose data was unreadable and every single one **<u>contains a score</u>**. In other words, the GT_MZ reports apparently achieved the impossible, accurately scoring the very same raw sleep study data which Dr. Kline determined were **<u>incapable of being scored</u>**. The defense does not understand how the Government can maintain that the GT_MZ reports contain "accurate" scoring when its own witness, Dr. Kline, has testified that there was not enough data to even *determine* a score for the vast majority of the raw sleep study files he examined. From the defense's perspective, this is conclusive proof that the scores on the GT_MZ report cannot possibly be "accurate," as the Government purports, and, therefore, clearly inadmissible.

Likewise, it appears that the defense and the Government disagree with respect to the number of instances in which Government expert Dr. Norman came to the same conclusion as that expressed on one of the GT_MZ reports. *Compare* Omidi Memo at 10 (out of 30 different examples, Dr. Norman came to the same score as a GT_MZ report in only one (1) instance) *with* Gov't Memo at 6 (claiming that "Dr. Normal will testify that his score was substantially similar" to a GT_MZ report in the "vast majority of those [Dr. Norman] was able to score."). But, even putting aside that disagreement, the Government is overlooking the most compelling evidence demonstrating the *inaccuracy* of the scores on the GT_MZ reports. When the Government retained Dr. Norman, he was sent raw data from 22 different patients

**DEFENDANT OMIDI'S RESPONSE TO THE GOVERNMENT'S TRIAL MEMORANDUM REGARDING ADMISSION OF EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 104**
Case No. CR No. 17-00661 (A) - DMG

and was asked to score that data. (Ex. A.) Dr. Norman, however, came back to the Government and confirmed that for 12 of the patients that he was asked to score, the raw data was so incomplete that it was impossible to determine any "score." (*Id.*) Yet again, same as with Dr. Kline, for each of these 12 patients where no scoring was possible, there is a GT_MZ report that bears a score. *See* Ex. B; Ex. C. Again, the defense does not understand how the Government can maintain that the GT_MZ reports contain "accurate" scoring when its own *expert* has concluded that there was not enough data to even *determine* a score. This too appears to the defense to be conclusive proof that the GT_MZ reports cannot possibly be the "accurate" sleep study reports that the Government purports them to be. For this reason too, the defense remains skeptical that the Government can satisfy Rule 901's requirement that the Government prove, through a witness with personal knowledge, that these documents are what the Government claims they are.

Finally, the defense wishes to briefly address the Government's claim that the defense may not "actually dispute[]" the authenticity of the GT_MZ materials. *See* Gov. Memo at 2. This is false. The defense *does* dispute the authenticity of these materials and intends to hold the Government to its burden. This is a criminal trial. The Government holds the burden of not only proving each of the elements of the offense, beyond a reasonable doubt, but also proving the admissibility of the evidence it purports to use to establish those elements. The Court should not permit the Government to satisfy any lesser standard than what the law demands.

### III. CONCLUSION

For the foregoing reasons, the Court should require the Government to satisfy the authenticity requirements of Rule 901.

Dated: October 4, 2021                    Respectfully submitted,

**WILLKIE FARR & GALLAGHER LLP**

**DEFENDANT OMIDI'S RESPONSE TO THE GOVERNMENT'S TRIAL MEMORANDUM REGARDING ADMISSION OF EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 104**
Case No. CR No. 17-00661 (A) - DMG

By: s/Randall W. Jackson
MICHAEL S. SCHACHTER
RANDALL W. JACKSON
CASEY E. DONNELLY
SIMONA AGNOLUCCI

ATTORNEYS FOR DEFENDANT
JULIAN OMIDI