Michael S. Schachter** (NY 3910205)
Randall W. Jackson** (NY 5274048)
Casey E. Donnelly** (NY4936803)
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8102; Fax: (728) 728-8111
Email: *mschachter@willkie.com*

Simona Agnolucci (SBN 246943)
**WILLKIE FARR & GALLAGHER LLP**
One Front Street
San Francisco, CA 94111
Tel: (415) 858-7447, Fax: (415) 858-7599
Email: *sagnolucci@willkie.com*

Bruce H. Searby* (SBN 183267)
Edmund W. Searby** (OH 067455)
**SEARBY LLP**
1627 Connecticut Ave, NW, Suite 4
Washington, D.C. 20009
Tel: (202) 750-6106, Fax: (202) 849-2122
Email: *bsearby@searby.law*
*Appearing specially  ** Appearing pro hac vice*
*Counsel for Defendant Julian Omidi*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Julian Omidi, *et al.,*<br><br>　　　　Defendants. | CR No. 17-00661 (A) – DMG<br><br>**DEFENDANT JULIAN OMIDI'S TRIAL MEMORANDUM TO PRECLUDE THE TESTIMONY OF JESSICA MEYLE**<br><br>[No Hearing Set] |

Defendant Julian Omidi ("Omidi"), by and through his counsel, Willkie Farr and Gallagher LLP, hereby submits this trial memorandum seeking to preclude the testimony of Government witness Jessica Meyle, on the basis that her testimony is constitutionally tainted, given the Prosecution Team's review of Mr. Omidi's privileged communications concerning Ms. Meyle's claims.  Mr. Omidi appreciates the timetable set forth by the Court during the conference on the morning of October 7, 2021 and hereby requests an opportunity to file a brief reply, if necessary, responding to the Government's opposition to this motion.  Given the importance of the Sixth Amendment right at stake, Mr. Omidi believes that the Court would benefit from a full round of briefing.

## INTRODUCTION

The Government has indicated its intention to call Jessica Meyle, a former dietician who worked at Weight Loss Centers, as a witness to testify against Mr. Omidi.  Mr. Omidi now moves to preclude Ms. Meyle's testimony, on the basis that the Government has reviewed privileged communications which outline and describe Mr. Omidi's defense strategy with respect to Ms. Meyle's expected testimony.  Last month, the Taint Team disclosed, for the first time, that a 2012 memorandum prepared by Mr. Omidi's attorney, Konrad Trope, regarding claims made by Ms. Meyle against Mr. Omidi was not only *released* to the Prosecution Team but was indisputably *reviewed* by Prosecution Team attorneys.  The Taint Team also disclosed, on the eve of trial, that the Prosecution Team was not only given access to, but also *reviewed*, a confidential Mediation Brief that was authored by Mr. Omidi's attorneys and which described the rebuttal evidence and arguments that Mr. Omidi possesses with respect to Ms. Meyle's claims.  The defenses and legal strategy described in the Trope Memorandum and the Mediation Brief concern the *exact* same complaints that Ms. Meyle is expected to testify about in this criminal trial.  Given the substantial advantage obtained by the Government as a result of reviewing Mr. Omidi's defense strategy with respect to Ms. Meyle, it would be inappropriate for Ms. Meyle to testify.  The Government has been given a fulsome preview into the defense's cross-examination of this witness, thus permitting Ms. Meyle

1  to be carefully prepped against the most useful lines of Mr. Omidi's cross-
2  examination.  The prejudice to Mr. Omidi is obvious.  The Sixth Amendment guards
3  against the Government's use of a defendant's privileged communications and demands
4  that Ms. Meyle's testimony be precluded.

5  ## FACTUAL BACKGROUND

6          In the final weeks leading up to the commencement of trial, the Taint Team, in
7  response to several Orders from the Court, disclosed a number of important facts
8  regarding the Government's document review in this case that had not previously been
9  communicated to Defendants.  First, the Taint Team disclosed the fact that on September
10 21, 2016, AUSA Kristen Williams "advised" the Taint Team "that a member of the
11 [P]rosecution [T]eam" had reviewed a document that might be privileged.  *See* Dkt. 1341
12 (Declaration of Elisa Fernandez) at § 12(a).  According to the Taint Team's disclosure,
13 later that "same" day, Ms. Williams asked the Taint Team "to confirm that the
14 document. . .[was] not privileged." *Id.*  Although the Taint Team thereafter reviewed the
15 document, it "failed to mark the document" as privileged on the Government's document
16 review platform and the document remained accessible to the Prosecution Team.  *Id*.  The
17 Taint Team's disclosure also admitted that because the document remained accessible to
18 the Prosecution Team, "approximately" one week after AUSA Williams originally
19 advised the Taint Team about the document, a paralegal on the Prosecution Team again
20 "accessed" the document.  *Id*.  It was not until four days after the Prosecution Team
21 paralegal "accessed" the document that it was finally removed from the Prosecution
22 Team's review platform.  *Id*.  The document at issue was filed *in camera* as Exhibit 1 to
23 the Taint Team's September 3, 2021 Declaration.  (Dkt. 1341.)  No information has been
24 provided to the Court or the defense regarding whether the document was printed,
25 downloaded, or otherwise retained by the Prosecution Team, including through any
26 indirect means, such as memorialization via notes made by the reviewing Prosecution
27 Team attorney or paralegal.  It is clear that AUSA Williams was given some information
28 about Exhibit 1, as she was the person who raised the issue with the Taint Team, but the

**DEFENDANT JULIAN OMIDI'S MOTION TO PRECLUDE THE TESTIMONY OF JESSICA MEYLE**

CASE NO. 17-00661 (A) - DMG

extent of what AUSA Williams was told, or otherwise learned, about the content of Exhibit 1 has not been disclosed.  After being ordered to do so by the Court, the Taint Team turned over Exhibit 1 to the defense.

Second, the Taint Team also disclosed that over the course of the investigation, the Prosecution Team, on "approximately twenty" different occasions, contacted the Taint Team to explain that potentially privileged material had been permitted to "migrate" to the Prosecution Team's database.  *See* Dkt. 1341 (Declaration of Elisa Fernandez) at § 11.  In response, the Taint Team "locked" 4,892 documents that had previously been accessible to the Prosecution Team.  The Court ordered the Prosecution Team to produce all of these materials to Mr. Omidi's counsel, so that counsel could determine whether any of the materials that were made available to the Prosecution Team were privileged.   The Taint Team disclosed that 110 of these 4,892 documents were indisputably viewed by the Prosecution Team, as demonstrated by the electronic records of the Prosection Team's document database, and of those 110 documents that were indisputably viewed by the Prosecution Team, there were 37 that the Taint Team thought might very well be privileged.  *Id*.  No information has been provided to the Court or the defense regarding whether any of these documents were printed, downloaded, or otherwise retained by the Prosecution Team, including through any indirect means, such as memorialization via notes made by the reviewing Prosecution Team attorney(s).

While the defense's review of the documents produced by the Taint Team is ongoing, two documents have already been found that the defense believes merit this request to preclude the upcoming testimony of Government witness Jessica Meyle, a former dietician at Weight Loss Centers.[1]

---

[1] Given Ms. Meyle's upcoming testimony and the substantial prejudice that will inure to Mr. Omidi if Ms. Meyle is permitted to testify, Mr. Omidi decided to file the present Motion.  When Mr. Omidi completes his review of the Taint Team's production, Mr. Omidi may need to file an additional motion with the Court describing other instances of privileged communications being made available to the Prosecution Team.

First, there is no question that the document filed *in camera* as Exhibit 1 to the September 3, 2021 Taint Team Declaration, and bates-stamped GT_SW_00001612, is privileged. This is an October 6, 2012 memorandum exchanged between Julian Omidi, his brother Michael Omidi, and defense attorney Konrad Trope, who represented both Omidis. *See* Ex. A (the "Trope Memorandum").[2] Several months prior to the exchange of the Trope Memorandum, in June of 2012, Mr. Omidi, as well as his brother, was named as a defendant in a civil "Whistleblower Complaint" filed by Ms. Meyle, alleging violations of California Health and Safety Code ¶ 1278.5 (the "Meyle Lawsuit"). *See* Ex. B (Copy of Complaint in Meyle Lawsuit). The allegations in the Meyle Lawsuit mirror, to a significant degree, the Government's allegations in the present case, including that (i) Mr. Omidi was obsessed with the "show rate" and scheduling as many patient procedures as possible; *see* Ex. B at ¶¶ 6-7, 39; (ii) Mr. Omidi did not want patients to be told that their health insurance did not include bariatric coverage, *see* Ex. B at ¶ 10; and that (iii) Meyle's electronic signature had been placed on nutritional consultation paperwork that was submitted to insurance companies for two patients that she had not actually treated, *see id.* at ¶ 37 (page 17).

---

[2] Although the Taint Team produced the document to the Court and the defense as a stand-alone document, it was originally an attachment to an October 6, 2012 email sent by Konrad L. Trope to Mr. Omidi and Michael Omidi (whose email address is 4approvals@gmail.com). Also copied on the email was Mr. Trope's co-worker and fellow attorney, Maureen Jaroscak. At the time Mr. Trope and Ms. Jaroscak were both working for Centurion Law Group. In addition, at this time, Ms. Jaroscak's husband, Brian Oxman, was also employed by Centurion and he too was copied on the email vis his Centurion Law Group email address While Mr. Oxman was disbarred in July 2012, the Ninth Circuit has found that the work-product privilege is not waived unless the work-product is disclosed to an adversary. Disclosure to non-lawyers, like Mr. Oxman, does not waive work product protection, and especially not when the non-lawyer is working for the same firm as the attorney preparing the work-product. *See United States v. Sanmina Corp.*, 968 F.3d 1107, 1120-21 (9th Cir. 2020) ("Thus, consistent with our sister circuits as well as precedent on the unique purposes for the work-product doctrine, we hold that disclosure of work product to a third party does not waive the protection unless such disclosure is made to an adversary in litigation or has substantially increased the opportunities for potential adversaries to obtain the information.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19    It addition to the Trope Memorandum, a confidential mediation brief drafted in

20    connection with the Meyle Lawsuit (the "Meyle Mediation Brief") was found among 37

21    documents that the Taint Team acknowledged were *indisputably* viewed by a member of

22    the Prosecution Team.  *See* Ex. C (Meyle Mediation Brief).[3]

23

24

25

26

27    [3]

28

**DEFENDANT JULIAN OMIDI'S MOTION TO PRECLUDE THE TESTIMONY OF JESSICA MEYLE**
CASE NO. 17-00661 (A) - DMG

1

2

3 ████ it remains privileged and should not have been disclosed or viewed by the

4 Prosecution Team because both the Federal Rules of Evidence and California state law

5 recognize a mediation privilege.  *See Belden v. Cty. of San Bernardino*, No.

6 EDCV19900RGKKKX, 2020 WL 3129208, at *5 (C.D. Cal. June 12, 2020) (courts in the

7 Ninth Circuit have adopted a federal mediation privilege under Federal Rule of Evidence

8 501 "applicable to all communications made in conjunction with a formal mediation" and

9 collecting cases); *Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d

10 1164, 1180 (C.D. Cal. 1998), *aff'd*, 216 F.3d 1082 (9th Cir. 2000) (same); Cal. Evid. Code

11 § 1119 (codifying mediation privilege).

12

13

14 **I.    MR. OMIDI WILL BE SUBSTANTIALLY PREJUDICED IF MEYLE IS**

15 **PERMITTED TO TESTIFY, GIVEN THE GOVERNMENT'S REVIEW**

16 **OF PRIVILEGED DOCUMENTS CONCERNING MR. OMIDI'S**

17 **DEFENSE TO MS. MEYLE'S CLAIMS.**

18      The right to the assistance of legal counsel "'can only be safely and readily availed

19 of when free from the consequences or the apprehension of disclosure.'" *Upjohn Co. v.*

20 *United States*, 449 U.S. 383, 389 (1991); *Demassa v. Nunez*, 770 F.2d 1505, 1507 (9th

21 Cir. 1985). A lawyer must be able to "work with a certain degree of privacy, free from

22 unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329

23 U.S. 495, 510 (1947).  As Mr. Omidi has described in previous motions, the Ninth Circuit

24 has instructed that "once the government has improperly interfered with the attorney-

25 client relationship and thereby obtained privileged trial strategy information, the

26 prosecutor has the 'heavy burden' of showing non-use." *See United States v. Danielson*,

27 325 F. 3d 1054, 1072-74 (9th Cir. 2003).  Applying *Kastigar v. United States*, 406 U.S.

28 441 (1972), the Ninth Circuit requires that the government must present evidence, and

**DEFENDANT JULIAN OMIDI'S MOTION TO PRECLUDE THE TESTIMONY OF JESSICA MEYLE**
CASE NO. 17-00661 (A) - DMG

must show by a preponderance of that evidence that 'all of the evidence it proposes to use, and all its trial strategy were derived from legitimate independent sources.'" *Danielson*, 325 F.3d at 1072 (*quoting Kastigar*, 406 U.S. at 462); *see id.* at 1074 ("The Government must introduce evidence and must show by a preponderance of that evidence that it did not use this privileged information.").

Mr. Omidi recognizes that the Court disagrees that *Danielson* is the operative authority and has informed counsel that it is Mr. Omidi's burden to demonstrate prejudice from the Government's review of privileged material.  *See* Tr. (9/14/21) at 41-42.  While Mr. Omidi respectfully disagrees that the burden rests with the defendant, there can be no dispute that Mr. Omidi will suffer substantial prejudice should Ms. Meyle be permitted to testify against Mr. Omidi.  *United States v. Fernandez*, 388 F.3d 1199, 1240 (9th Cir. 2005) (because district court precluded government witness from testifying at the defendant's trial about any of the matters that were detailed in the defendant's privileged communications, defendant was not substantially prejudiced and the Sixth Amendment's right to counsel was not violated).

The Government has obtained a significant advantage with respect to Ms. Meyle's testimony by reviewing both the Trope Memorandum and the Meyle Mediation Brief, which detail Mr. Omidi's defense strategy with respect to Ms. Meyle.  Having seen this roadmap to Ms. Meyle's cross-examination, the Government will structure Ms. Meyle's direct to "draw the sting" from the lines of examination that it *knows* will be coming on cross-examination.[4]  It will be able to prepare Ms. Meyle specifically for the lines of questioning that it knows she will face from Mr. Omidi's counsel.  The Government is thus able to *ensure* that Mr. Omidi's cross-examination will lack the force that it otherwise would have.

---

[4] Although Mr. Omidi does not have the full record with respect to the circumstances in which the Prosecution Team reviewed these materials, it is clear that they were reviewed. In analogous circumstances, knowledge by one law partner of an adverse party's confidential communication is imputed to the entire firm.  *In re Airport Car Rental Antitrust Litig.*, 470 F. Supp. 495, 505 (N.D. Cal. 1979) (noting the general rule that "the knowledge of one attorney in a firm is generally imputed to other members of the firm").

**DEFENDANT JULIAN OMIDI'S MOTION TO PRECLUDE THE TESTIMONY OF JESSICA MEYLE**
CASE NO. 17-00661 (A) - DMG

Indeed, the fact that the Government has even chosen to *call* Ms. Meyle to the witness stand may very well be a function of having reviewed these protected communications.  When calling any witness, the Government must assess, for itself, not only how the witness will come across during direct, but what sort of injury can be imposed upon the Government's case when the witness is cross-examined by the defense.  Ordinarily, that is a calculation that the Government must make based on its own investigation and its own assessment of the witness's credibility as the Government does not know what lines of examination the defense will pursue or what rebuttal or impeachment evidence the defense may possess.   Here, however, the Government had access in advance to the lines of cross-examination that Ms. Meyle is likely to face, via the privileged communications, and thus, was substantially aided in its calculation regarding whether to call Ms. Meyle as witness.  Given that Mr. Omidi's very liberty is at stake in this proceeding, there can be no question that the testimony of Ms. Meyle will cause substantial prejudice to Mr. Omidi. *See United States v. Marshank*, 777 F. Supp. 1507, 1521 (N.D. Cal. 1991) ("prejudice" resulting from the Government's review of priviledged communications is manifested in a "number of way" including whenever the prosecution gains "an unfair advantage at trial."); *see also* Eric D. McArthur, THE SEARCH AND SEIZURE OF PRIVILEGED ATTORNEY-CLIENT COMMUNICATIONS," 72 U. Chi. L. Rev. 729, 739 (2005) ("A party whose trial strategy had been disclosed would be at a substantial disadvantage" in any criminal trial).

In addition, the present circumstance is a direct consequence of the Government's own actions, as it chose to employ a Taint Team, without seeking prior judicial approval and over Mr. Omidi's strident objection.  Mr. Omidi's multiple objections were based on the very real possibility that privileged documents would leak to the Prosecution Team, and, as the Taint Team's belated disclosures reveal, Mr. Omidi's fears were well-

founded.[5] *See* Tr. (Sept. 14, 2021) at 82 (Court: "Let me say that I'm not at all happy that this is happening. This should not be happening on the eve of trial. I don't like taint teams being used in cases. Hopefully this case is an example of why you shouldn't like them either.").

Given the Sixth Amendment right at stake, the Court should preclude Ms. Meyle from testifying. At a very minimum, the Court should follow the course of action approved by the Ninth Circuit in *Fernandez* and not permit Ms. Meyle to testify about any of the claims that are discussed in the Trope Memorandum and Meyle Mediation brief, including the purportedly unauthorized use of Ms. Meyle's electronic signature on nutritional consults.

Dated:  October 7, 2021

Respectfully submitted,

**WILLKIE FARR & GALLAGHER LLP**

By: s/ Michael S. Schachter

MICHAEL S. SCHACHTER
RANDALL W. JACKSON
CASEY E. DONNELLY
SIMONA AGNOLUCCI

ATTORNEYS FOR DEFENDANT
JULIAN OMIDI

---

[5] The fact that neither the Taint Team nor the Prosecution Team ever alerted Mr. Omidi (or the Court) to the fact that on *twenty* different occasions the Prosecution Team alerted the Taint Team that privileged documents had been released to the Prosecution Team's database suggests that the Government was well aware that its document review process was seriously flawed, but made an affirmative decision to conceal that fact from Mr. Omidi, even though it was Mr. Omidi's privilege and Constitutional Sixth Amendment right at stake.

**DEFENDANT JULIAN OMIDI'S MOTION TO PRECLUDE THE TESTIMONY OF JESSICA MEYLE**
CASE NO. 17-00661 (A) - DMG