TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KRISTEN A. WILLIAMS (Cal. Bar No. 263594)
Deputy Chief, Major Frauds Section
ALI MOGHADDAS (Cal. Bar No. 305654)
DAVID H. CHAO (Cal. Bar No. 273953)
DAVID C. LACHMAN (Cal. Bar No. 261711)
Assistant United States Attorneys
Major Frauds/General Crimes Sections
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2400
     Facsimile: (213) 894-6269
     E-mail:    Kristen.Williams@usdoj.gov
                Alex.Wyman@usdoj.gov
                Ali.Moghaddas@usdoj.gov
                David.Chao@usdoj.gov
                David.Lachman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>JULIAN OMIDI,<br>   aka "Combiz Omidi,"<br>   aka "Combiz Julian Omidi,"<br>   aka "Kambiz Omidi,"<br>   aka "Kambiz Beniamia Omidi,"<br>   aka "Ben Omidi,"<br>SURGERY CENTER MANAGEMENT, LLC,<br>and<br>MIRALI ZARRABI, M.D.,<br>   aka "Mirali Akba Ghandchi<br>        Zarrabi,"<br>   aka "M.A. Ghandchi Zarrabi,"<br><br>          Defendants. | No. CR 17-661(A)-DMG<br><br>GOVERNMENT'S SUPPLEMENTAL TRIAL MEMORANDUM REGARDING ADMISSION OF FALSE PATIENT FILE MATERIALS<br><br>Trial Date:  September 21, 2021<br>Time:        9:00AM<br>Location:    Courtroom of the<br>             Hon. Dolly M. Gee |

1       Plaintiff United States of America, by and through its counsel

2  of record, the Acting United States Attorney for the Central District

3  of California and Assistant United States Attorneys Kristen A.

4  Williams, Ali Moghaddas, David H. Chao, and David C. Lachman, hereby

5  files a supplemental trial memorandum regarding the admission of

6  false patient file documents.

7       The government respectfully requests leave to file additional

8  memoranda as may become appropriate during the course of trial.

9   Dated: October 11, 2021          Respectfully submitted,

10                                   TRACY L. WILKISON
                                     Acting United States Attorney
11
                                     SCOTT M. GARRINGER
12                                   Assistant United States Attorney
                                     Chief, Criminal Division
13

14                                        /s/
                                     _____
15                                   KRISTEN A. WILLIAMS
                                     ALI MOGHADDAS
16                                   DAVID H. CHAO
                                     DAVID C. LACHMAN
17                                   Assistant United States Attorneys

18                                   Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA
19

20

21

22

23

24

25

26

27

28

1
<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2
**I.   INTRODUCTION**

3      Before the testimony of patient Toya Simpson on October 6, 2021,

4 defendant JULIAN OMIDI ("OMIDI") objected to the admission of a

5 letter of medical necessity ("LOMN") on behalf of Ms. Simpson on the

6 ground that it was not apparent whether the letter was sent to an

7 insurance company.  (RT 10/6/2021 at 1992.)  The government explained

8 that regardless of whether the letter was sent to the insurance

9 company, the fact that the LOMN was generated at all and the

10 falsehoods contained therein constitute evidence relevant to prove

11 the charged scheme.  (RT 10/6/2021 at 1994-95.)  The Court sustained

12 the objection, but invited the government to provide additional

13 briefing supporting the admissibility of such evidence.  As explained

14 below, the government submits that fraudulent patient file materials,

15 including LOMNs found in the patient records produced by and obtained

16 from GET THIN, are relevant and admissible whether or not they were

17 sent to an insurance company because their creation is inextricably

18 intertwined with the charged scheme and they constitute evidence of

19 defendants' knowledge and intent, highly disputed elements the

20 government must prove in any fraud trial, including this one.

21 Alternatively, these materials are admissible under Federal Rule of

22 Evidence 404(b) as evidence of defendants' knowledge, intent,

23 opportunity, and absence of mistake.

24
**II.   RELEVANT FACTUAL BACKGROUND**

25      As one facet of the alleged scheme, the First Superseding

26 Indictment ("FSI") alleges that GET THIN employees acting at

27 defendant OMIDI's direction or with his knowledge and approval,

28
3

falsified information that was included in the LOMNs in an effort to make the patients more likely to receive insurance pre-approval for Lap-Band surgery.  (FSI ¶ 38(k).)  Defendant OMIDI at times directed GET THIN employees, whom he knew were not medical professionals, to revise the LOMNs, including to reflect falsified sleep study results and Epworth Sleepiness scores.  (Id. ¶ 38(l).)  These LOMNs were created from templates with cloned language not specific to patients' conditions.  (Id.)  To the extent the LOMNs were reviewed by physicians (which was not always the case), those physicians had often never seen or examined the patients and were asked to review the LOMNs based only on select (and often fraudulent) supporting documentation provided to them by other GET THIN employees or without receiving any supporting documentation at all.  (Id.)

**III.  THE COURT SHOULD ADMIT EVIDENCE OF FALSE PATIENT FILE MATERIALS, INCLUDING LETTERS OF MEDICAL NECESSITY**

       1.   Legal Standard

Under well-established Ninth Circuit authority, "[t]wo general categories of other act evidence may be 'inextricably intertwined' with a charged crime and thus exempted from the requirements of [Federal Rule of Evidence] 404(b)."  United States v. Dorsey, 677 F.3d 944, 951 (9th Cir. 2012), cert. denied, 133 S. Ct. 2850 (2013).  "First, other act evidence may 'constitute[ ] a part of the transaction that serves as the basis for the criminal charge.'"  Id. (quoting United States v. Vizcarra-Martinez, 66 F.3d 1006, 1012 (9th Cir. 1995) (alteration in original)).  "Second, admission of other act evidence may be 'necessary . . . to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'"  Id. (quoting Vizcarra-Martinez, 66 F.3d at 1012-13

4

(alteration in original)); see also United States v. Daly, 974 F.2d 1215, 1217 (9th Cir. 1992) (noting that "evidence concerning other acts that are inextricably intertwined with the charged acts may be admitted" to "put [defendant's] illegal conduct into context and to rebut his [defense]").

Evidence that is deemed to be "inextricably intertwined" with the charged conduct is admissible without regard to the requirements of Federal Rule of Evidence 404(b). See United States v. DeGeorge, 380 F.3d 1203, 1220 (9th Cir. 2004); United States v. Soliman, 813 F.2d 277, 279 (9th Cir. 1987) ("Evidence should not be treated as 'other crimes' evidence when 'the evidence concerning the ['other'] act and the evidence concerning the crime charged are inextricably intertwined.'" (alteration in original)). "In illustrating a broad scheme to the jury, the Government is permitted to present "the circumstances and background of the criminal charge." United States v. Babichenko, --- F. Supp. 3d ---, 2021 WL 2419523, at *7 (D. Idaho June 14, 2021).

### 2. The Evidence of False Patient File Materials is Inextricably Intertwined with the Charged Scheme

OMIDI's involvement (and by extension SURGERY CENTER MANAGEMENT, LLC's ("SCM")) in the creation and revision of LOMNs is a part of the charged scheme and evidences the foreseeability to them of the actions of co-schemers. The jury has already seen and heard evidence regarding OMIDI's involvement in that revision process (see, e.g., RT 9/23/2021 at 506-507; Gov't Tr. Ex. 480A), and is anticipated to hear more such evidence. For example, Armando Petrikowski testified that the processing department "works very closely with Julian Omidi" and described their role as follows:

> Their job is to go to Nextech, our internal
> server, and find the scanned documentation from
> the remote office – right? – and from there,
> prepare a chart.  And using a template of a
> letter of medical necessity, which is basically
> the main – or one of the most important documents
> that go at the front of the chart that is going
> to be sent to the insurance company, and just
> basically grab all that data to present it to
> Julian's review, Julian Omidi's review.

(RT 9/23/2021 at 506-507.)  Petrikowski further testified that he saw

defendant OMIDI reviewing those charts "almost every day when he was

there."  (Id. at 507.)  Moreover, the instances in which the

government has already introduced such evidence, intended to

introduce it for patient Toya Simpson, and intends to introduce it

where appropriate for patients going forward, are instances not

merely of drafts, but drafts containing false information.  (See RT

9/22/2021 at 283, Ex. 71 (Caraquita Steward); RT 9/29/2021 at 1253-

54, Ex. 108 (Veronica Coronado).)[1]  Thus, even where these LOMNs did

not go (or cannot be definitively shown to have gone) to insurance,

they are relevant to the existence of the scheme to defraud the

insurance companies and the participation of defendants OMIDI and SCM

in it.  See Soliman, 813 F.2d at 279 ("To prove the mail fraud

counts, the Government had to show the existence of a scheme of mail

fraud activity and Soliman's connection to that scheme.")  In proving

the existence of the scheme, for example, the government is not

---

[1] While the government has at times objected to defendants'
questioning of insurance agents regarding patient files when they
have sought to do so with the implication that these documents
evidence a physician's determination of the existence of certain
medical conditions (see, e.g., RT 9/30/2021 (Munson) at 1363-64; RT
10/5/2021 (Richer) at 1828) -- something the government also
anticipates the jury will hear was not always true -- that is quite
different from seeking to admit a patient's files that were
indisputably drafted with the goal of being presented to insurance
and that contain affirmative misrepresentations.

constrained to evidence regarding the specific executions it has

charged.  See United States v. Serang, 156 F.3d 910, 915 (9th Cir.

1998) (government not precluded from introducing evidence relevant to

entire conspiracy or scheme simply because defendant is indicted for

less than all of their actions).  For these reasons, evidence of such

LOMNs is inextricably intertwined with the charged scheme.

Additionally, in order to prove the mail and wire fraud charges

contained in counts one through 31 the FSI, the government must

establish, among other things, that the defendants acted with the

intent to defraud -- that is, the intent to deceive and cheat.  Ninth

Cir. Model Crim. Jury Instr. 8.121.  In order to prove the false

statements charges contained in counts 33 and 34 of the FSI, the

government must prove that defendants OMIDI and MIRALI ZARRABI, MD

("ZARRABI") acted with knowledge that the statement or representation

was untrue and acted willfully.  An act is done "knowingly" if the

defendant is aware of the act and does not act through ignorance,

mistake, or accident, and the jury may consider evidence of the

defendant's words, acts, or omissions, along with all the other

evidence, in deciding whether the defendant acted knowingly.  Ninth

Cir. Model Crim. Jury Instr. 5.7.

Evidence related to knowledge and intent is not limited to

evidence communicated to others or finalized.  In fact, a defendant's

intent is often proven through internal documents (such as internal

memoranda, emails, and drafts), or other circumstantial evidence.

See United States v. Sullivan, 522 F.3d 967, 974 (9th Cir. 2008)

("[I]ntent to defraud may be established by circumstantial

evidence").  Cf. United States v. Curtin, 489 F.3d 935, 948 (9th Cir.

2007) (defendant's personal possession of stories involving sexual contact with minors "illuminated [defendant's] thoughts and his subjective intent"). Furthermore, "the scheme itself may be probative circumstantial evidence of an intent to defraud." Sullivan, 522 F.3d at 974 (citing United States v. Plache, 913 F.2d 1375, 1381 (9th Cir. 1990) ("[T]his intention is shown by examining the scheme itself.")).

Here, the fact that the LOMN drafting process at GET THIN involved the creation of drafts that were not merely incomplete, but which contained affirmatively false statements, particularly when combined with other evidence regarding OMIDI's involvement in that patient file review and LOMN revision process, is circumstantial evidence of defendants' knowledge and intent that such statements would be ultimately conveyed to insurance companies, or, at a minimum, that defendants acted with reckless disregard as to whether they would be.

While the above indicates the connection between the evidence offered and the crimes charged, the evidence is also "necessary . . . to permit the [government] to offer a coherent and comprehensible story regarding the commission of the crime." Dorsey, 677 F.3d at 951; see also United States v. King, 200 F.3d 1207, 1215 (9th Cir. 1999) (admitting testimony regarding the general nature of defendant's business activity as inextricably intertwined); United States v. Ramirez-Jiminez, 967 F.2d 1321, 1327 (9th Cir. 1992) (evidence "used to flesh out the circumstances surrounding the crime with which the defendant has been charged" allows the jury to "make sense of the testimony in its proper context").

Finally, while evidence of the drafting process of LOMNs (including OMIDI's involvement in their revision) is a part of the charged scheme, it would also be admissible under Federal Rule of Evidence 404(b) as evidence that demonstrates defendants' intent, knowledge, opportunity, and absence of mistake with respect to the false LOMNs that were sent to the insurance companies.  These LOMNs go to a material and highly disputed point (defendants' knowledge and intent), appear reasonably close in time, are proven with evidence sufficient to show the act was committed (because these documents are found in the patient files produced by and obtained from GET THIN), and are similar to the offense charged.  United States v. Beckman, 298 F.3d 788, 794 (9th Cir. 2002).  As is apparent from those LOMNs introduced thus far, this evidence will not cause undue delay or unfairly prejudice the defendants.  Curtin, 489 F.3d at 944.

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court admit false patient file materials, including LOMNs, even where it cannot be demonstrated that they were sent to insurance companies.