Michael S. Schachter** (NY 3910205)
Randall W. Jackson** (NY 5274048)
Casey E. Donnelly** (NY4936803)
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8102; Fax: (728) 728-8111
Email: *mschachter@willkie.com*

Simona Agnolucci (SBN 246943)
**WILLKIE FARR & GALLAGHER LLP**
One Front Street
San Francisco, CA 94111
Tel: (415) 858-7447, Fax: (415) 858-7599
Email: *sagnolucci@willkie.com*

Bruce H. Searby* (SBN 183267)
Edmund W. Searby** (OH 067455)
**SEARBY LLP**
1627 Connecticut Ave, NW, Suite 4
Washington, D.C. 20009
Tel: (202) 750-6106, Fax: (202) 849-2122
Email: *bsearby@searby.law*
*Appearing specially  ** Appearing pro hac vice
*Counsel for Defendant Julian Omidi*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Julian Omidi, *et al.,*<br><br>Defendants. | CR No. 17-00661 (A) – DMG<br><br>**DEFENDANT JULIAN OMIDI'S TRIAL MEMORANDUM TO PRECLUDE THE TESTIMONY OF JAMI LITTLE**<br><br>[No Hearing Set] |

Defendant Julian Omidi ("Omidi"), by and through his counsel, Willkie Farr and Gallagher LLP, hereby submits this trial memorandum seeking to preclude the testimony of Government witness Jami Little.

## INTRODUCTION

The Government intends to call Jami Little to testify about the materiality of certain statements made to TRICARE. Ms. Little is a Health Care Fraud Specialist employed by the Office of the Assistant Secretary of Defense Health Affairs ("DHA"). She does not have any experience in processing healthcare claims to TRICARE for sleep studies, CPAP devices, or Lap-Band surgeries, nor does she have any personal knowledge concerning the factors that TRICARE considers important in deciding whether to approve or deny such claims. Indeed, it appears that TRICARE does not review claims at all. Rather, during the relevant period, claims were reviewed by a separate corporation called the TriWest Healthcare Alliance ("Triwest"), for which Ms. Little does not work. The Court should preclude Ms. Little's testimony.

## FACTUAL BACKGROUND

TRICARE is a healthcare program for members of the military and their families. Throughout the relevant period—from approximately 2011 through 2013—Get-Thin submitted claims to TRICARE for medical services provided to TRICARE members. "TRICARE does not process their own claims and contracts the claims processing to third party insurance companies and their subcontractors." (Ex. 1, DX 3521-01 at 3). Prior to April 1, 2013, TRICARE West had contracted with a company called Triwest to process and administer claims. (*Id.*).

Jami Little is a Health Care Fraud Specialist employed by DHA. (Ex. 2, Jami Little CV). She has been employed in that capacity since only January of 2019. (*Id.*). Ms. Little is not, and has never been, employed by TRICARE West or Triwest. (*Id.*). Prior to 2019, Ms. Little had not been employed by the federal government in any capacity. (*Id.*).

As part of her job responsibilities at DHA, Ms. Little, among other things, "provide[s] thorough and accurate responses, analysis, and collaboration to all requests

related to fraud or abuse allegations on behalf of the TRICARE Health System" and "participate[s] in any and all requested prosecutorial support on active cases being pursued by federal law enforcement including the Department of Justice and the Department of Criminal Investigative Services." (*Id.*).

There is no indication that Ms. Little has any experience in processing healthcare claims to TRICARE or has any knowledge concerning the factors that TRICARE considers important in deciding whether to approve or deny such claims. There is certainly no indication that Ms. Little has any prior personal knowledge concerning TRICARE's policies on sleep studies, CPAPs, or Lap-Band procedures.

Yet, the Government indicated that Ms. Little will testify at trial that:

(1) If TRICARE had known that a sleep study had not been ordered by a TRICARE authorized provider practicing within the scope of his/her license, TRICARE would not have paid a claim for that sleep study.
(2) If TRICARE had known that a sleep study had not been interpreted by a licensed physician who is a TRICARE authorized provider, TRICARE would not have paid a claim for that sleep study.
(3) If TRICARE had known that the sleep study submitted with a sleep study claim contained false information about the test results, diagnosis, and/or who interpreted the sleep study, TRICARE would not have paid the claim.
(4) If TRICARE had known that an initial sleep study had not been done, had resulted in normal findings, or had shown that the patient did not have sleep apnea, TRICARE would not have paid a claim for a CPAP/titration sleep study because it was not medically necessary.
(5) If TRICARE had known that an LOMN submitted in order to obtain authorization for Lap-Band surgery contained false information regarding the single comorbidity listed, such as that the patient had moderate or severe sleep apnea, TRICARE would not have authorized the Lap-Band surgery.
(6) If TRICARE had known that a CPAP device had not been prescribed by a physician and was not medically necessary, TRICARE would have denied a claim for the CPAP device.
(7) If TRICARE had known that a patient's sleep study had resulted in normal findings, TRICARE would have denied a claim for a CPAP device based on that sleep study because the CPAP device was not medically necessary.
(8) If TRICARE had known that a patient's sleep study contained false information about the test results, diagnosis, and/or who interpreted the sleep study, TRICARE would have denied a claim for a CPAP device based on that sleep

>study because the supporting information was false and the CPAP device was not medically necessary.

(Ex. 3, 2020.06.17 Insurance Representatives Disclosure Letter at 9-10).

## I.　THE COURT SHOULD PRECLUDE MS. LITTLE'S TESTIMONY.

The Government has repeatedly taken the position that the insurance company witnesses are not experts. *Id.* at 1-2 ("the government does not believe that these individuals are 'expert' witnesses"); Ex. 4, September 26, 2021 Email from A. Moghaddas ("the insurance representative witnesses are not 'expert' witnesses"). As the Court is aware, a lay-witness's testimony must be based on personal knowledge. *United States v. Whittemore*, 776 F.3d 1074, 1082 (9th Cir. 2015) ("[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.") (quoting Fed. R. Evid. 602). Rule 602 requires any witness to have sufficient memory of the events such that she is not forced to "fill[ ] the gaps in her memory with hearsay or speculation." *Id.* Witnesses are not "permitted to speculate, guess, or voice suspicions." *Id.*

Ms. Little appears to have no prior personal knowledge concerning her proffered testimony. According to the interview memorandum prepared by Special Agent Sarine Tooma, on June 11, 2020, when Ms. Little was first asked questions about the materiality of statements made in sleep study, CPAP, and Lap-Band claims sent to TRICARE, Ms. Little stated that she "would require additional time to provide answers to [the government's] questions in order to research the criteria as it was outlined in procedures and policies during the relevant time period." (Ex. 1 at 3). It was not until five days later that Ms. Little was able to provide answers to the Government's questions "after reviewing requirements and policies relevant to the time period in question" (which was, of course, well before Ms. Little was even employed by the DHA). (*Id.*). More specifically, on June 16, 2020, Ms. Little's colleague, Alison Coleman, "provided the following policies, amongst others, that were used, in part, to **research** and provide the

responses to the questions posed by [the Government]: Part 199.2 (Definitions) dated Dec 10, 2008; Part 199.6 (Tricare Authorized Providers) dated Oct 24, 2005; Tricare Policy Manual 6010.57-M, Ch. 4 Section 13.2; Ch. 1 Section 5.1; Ch. 11 Section 1.1, Ch. 7 Section 19., Chapter 9, Section 2.1, dated February 1, 2008; 199.4 (Basic Program Benefits) (Attachment 1-4)." (*Id.* at 5 (emphasis added)).

As is made clear from this exchange, prior to being interviewed by the government, Ms. Little clearly had no personal knowledge of how, why, or under what circumstances TRICARE pays claims for sleep studies, CPAPs, or Lap-Band surgeries.  There is no indication that Ms. Little had ever *read* these policies prior to Ms. Coleman looking them up and providing them to the government.  This is perhaps unsurprising given that the policies that would have been in effect during the relevant time period predated her employment by the DHA by more than five years.

Ms. Little plainly does not have sufficient personal knowledge to testify regarding whether particular statements made to TRICARE as part of the claims process "had natural tendency to influence, or were capable of influencing, [TRICARE] to part with money or property." Ninth Cir. Model Crim. Jury Instr. 8.121.  Because Ms. Little has no personal knowledge of how, why, or under what circumstances TRICARE (or Triwest) paid claims for sleep studies, CPAPs, or Lap-Band surgeries during the relevant time period, her proffered testimony is pure speculation.

The Court should preclude Ms. Little's testimony.

Dated:  October 13, 2021

Respectfully submitted,

**WILLKIE FARR & GALLAGHER LLP**

By: s/ Michael S. Schachter
MICHAEL S. SCHACHTER
RANDALL W. JACKSON
CASEY E. DONNELLY
SIMONA AGNOLUCCI

ATTORNEYS FOR DEFENDANT
JULIAN OMIDI