Michael S. Schachter** (NY 3910205)
Randall W. Jackson** (NY 5274048)
Casey E. Donnelly** (NY4936803)
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8102; Fax: (728) 728-8111
Email: *mschachter@willkie.com*

*Attorneys for Defendant*,
 Julian Omidi

[Additional Counsel Continued On Next Page]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>Julian Omidi, *et al.*,<br>　　　　　　　　Defendants. | Case No. CR No. 17-00661 (A) – DMG<br><br>[*Assigned to Hon. Dolly M. Gee, District Court Judge*]<br><br>**DEFENDANT JULIAN OMIDI'S TRIAL MEMORANDUM CONCERNING EXCULPATORY EVIDENCE THAT DIRECTLY CONTRADICTS THE GOVERNMENT'S ALLEGATIONS** |

DEFENDANT JULIAN OMIDI'S TRIAL MEMORANDUM CONCERNING EXCULPATORY
EVIDENCE THAT DIRECTLY CONTRADICTS THE GOVERNMENT'S ALLEGATIONS

Case No.  CR No. 17-00661 (A) - DMG

~TITLE-TOC~

[Additional Counsel Continued From Previous Page]

Simona Agnolucci (SBN 246943)
**WILLKIE FARR & GALLAGHER LLP**
One Front Street
San Francisco, CA 94111
Tel: (415) 858-7447, Fax: (415) 858-7599
Email: *sagnolucci@willkie.com*

*\*\* Appearing pro hac vice*

*Counsel for Defendant Julian Omidi*

Defendant Julian Omidi, by and through his counsel of record, respectfully submits this brief trial memorandum, addressing objections from the Government to evidence offered by the defense that is exculpatory and directly relevant to contradicting the Government's claims.

### I. IT IS IMPROPER TO PREVENT A DEFENDANT FROM OFFERING EXCULPATORY EVIDENCE THAT DIRECTLY COUNTERS THE EVIDENCE AND ALLEGATIONS MADE BY THE GOVERNMENT.

During cross-examination of the last Government cooperator, Sherwin Hong, the Government made a belated objection to the admission of evidence by the defense concerning Registered Dietician Anne Stone, who worked at Weight Loss Centers from 2008 to 2010, and argued that the defense should not be permitted to offer evidence of "lawful actions" or "prior legitimate acts" and that any evidence offered by the defense that can be characterized as this "type" of evidence should be "excluded." *See* Tr. 4146-47.  In fact, because Mr. Hong had testified at length during his direct examination that there was "no" Registered Dietician working at Weight Loss Centers in 2009 or 2010, until Jessica Meyle was hired, and that Dr. Zarif was the "only" professional in the nutritional department at that time, *see* Tr. 3661, the evidence offered by the defense—proof that Mr. Hong had *multiple* interactions with Ms. Stone, in 2009, and knew perfectly well that she was offering nutritional evaluations to patients—was classic impeachment evidence and the Court correctly admitted the evidence.  *See* Tr. 4125-4139.

The defense is concerned, however, that the Government will continue to raise meritless objections to the introduction of defense evidence.  The Government has previously claimed—without citing a *single* case from this Circuit, at the appellate *or* the district court level—that any evidence of "legitimate acts" should be inadmissible in this criminal trial because the fact that "a defendant acted lawfully on other occasions" is not evidence that proves "he acted lawfully on the occasion[s] alleged in the indictment."  *See* Dkt. 1359, at 25-26 (citing *United States*

~TITLE-TOC~

*v. Reese*, 666 F.3d 1007, 1020 (7th Cir. 2012). The Government is misconstruing the law and the defense submits this short trial memorandum to correct the record.

As an initial matter, the defense does not disagree that a defendant cannot offer evidence of lawful actions that have no bearing on the allegations at issue, in order to make a general argument that his lawful actions prove that he did not act as alleged in the indictment. This general premise is reflected in the cases cited by the Government. Thus, for example, in a prosecution for insider trading of a certain security, the defendant cannot seek to admit evidence of the thousands of *other* stocks that he has traded over the years, where he did not insider trade, as probative evidence that he did not wrongfully trade the security at issue in the indictment. Similarly, a defendant accused of arson cannot offer evidence of all the homes he did *not* set fire to and which remain standing, as probative evidence that he did not commit the arson he is accused of.

But, when the Government alleges—and has its witnesses testify before the jury—that a defendant issued purported "directions" to his employees to act a certain way, *e.g.,* to falsify information, or to lie to patients, it is *entirely appropriate* for the defense to introduce *contrary* evidence that is inconsistent with the Government's claims. Indeed, even the Seventh Circuit, which the Government was forced to turn to due to the dearth of any Ninth Circuit law in support of its position, has made clear that where evidence "cast[s] doubt on the government's theory" of a defendant's crime, the defense *must* be permitted to present that evidence and it is "improper" for a court to "prevent" a defendant "from countering possibly false testimony [that was] favorable" to the Government's case. *See United States v. Santos*, 201 F.3d 953, 962-63 (7th Cir. 2000).

Your Honor has consistently recognized this principle throughout the trial, as reflected in the Court's correct rulings over the past four weeks. For example, the Government has alleged and attempted to introduce evidence in this case that Mr.

Omidi instructed the staff at Weight Loss Centers to falsify patient weights.  Tr. 3170-71, 3771, 3783; 3788, 3790-91.  In response, and to contradict this (false) testimony, the defense has admitted into evidence actual, contemporaneous "minutes" from meetings with employees that describe the instructions that were actually imparted to Weight Loss Centers employees, including numerous directives to report patient weights *accurately*.  *See* DX4714.  The Court correctly permitted this rebuttal evidence because, although the Government is entitled to try its case, the defense is *equally* entitled to offer evidence that is inconsistent with the Government's allegations.  It is the jury's job to evaluate all the evidence presented and decide what the facts are.

The Government's theory of criminality in this case is not narrow.  Rather, its allegations are virtually all-encompassing.  Indeed, the Government's theory, as it has described it repeatedly to the Court, is that Get Thin was "permeated with fraud" and that Mr. Omidi was the director behind all of this wrongdoing.  *See* Dkt. 1101 at 8, 11, 24-26.  The Government's presentation to the jury has been undisputedly broad and the Government has introduced to the jury, as purportedly relevant evidence of Mr. Omidi's guilt, a huge number of disparate allegations, including but not limited to:

(i) that patients were purposefully misled about whether their insurance would cover bariatric surgery, *see, e.g.*, Tr. 1389-90, 1404-08;

(ii) that non-medical personnel were inappropriately dressed in a manner— white coats—meant to deceive patients into believing they were medically trained, and that these personnel were (wrongfully) permitted to provide test results to patients, *see* Tr. 1396;

(ii) that Mr. Omidi knew about, and did not object to, false information about patients' medical history and complaints being recorded in letters of medical necessity sent to insurance companies, *see, e.g.*, Tr. 3791, 3795;

(iii) that Mr. Omidi instructed the Weight Loss Centers' staff to falsify weight and height information and/or that Mr. Omidi encouraged the staff to encourage patients to lie about their weight or height, *see, e.g.*, Tr. 3170-71, 3771, 3783; 3788, 3790-91;

(iv) that Mr. Omidi knew about, and did not object to, false information being communicated to insurance companies about the number of nutritional consults that patients had undergone, *see, e.g.*, Tr. 3167-68, 3675-76;

(v) that Mr. Omidi insisted that the staff use "templates" that reflected information that could not be true for every patient, *see, e.g.*, Tr. 3432, 3437-38, 3502;

(vii) that Mr. Omidi demanded that patients be scheduled for medically unnecessary procedures, *see, e.g.*,Tr. 1398-99, 3158, 3171-72; 1389-91, 4663, and

(vi) that Mr. Omidi instructed staff to falsify sleep study results, *see, e.g.*, Tr. 4669, 4754-4757.

Ninth Circuit precedent makes clear that Mr. Omidi must be permitted to introduce evidence that is inconsistent with, or otherwise casts doubt upon, these allegations. *See, e.g., United States v. Stever*, 603 F. 3d 747, 754-756 (reversible error to prevent defendant from "counter[ing] the circumstantial inferences that the Government asked the jury to draw" with "evidence of other, logically relevant circumstances from which obverse inferences to those sought by the Government could be drawn"); *United States v. Evans*, 728 F.3d 953, 959 (9th Cir. 2013) (reversing criminal conviction and explaining that "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. This right includes the right to present the defendant's version of the facts and to put before a jury evidence that might influence the determination of guilt.") (internal citations omitted).

To the extent that the Government makes any additional efforts to prevent the defense from presenting exculpatory evidence that casts doubt on the Government's theory of wrongdoing, the Court should overrule those objections.

## II. CONCLUSION

The Court should reject efforts by the Government to preclude the defense from introducing evidence that rebuts the Government's allegations and impeaches the Government's witnesses.

Dated: November 4, 2021

Respectfully submitted,

**WILLKIE FARR & GALLAGHER LLP**

By: s/ Casey E. Donnelly
    MICHAEL S. SCHACHTER
    RANDALL W. JACKSON
    CASEY E. DONNELLY

    ATTORNEYS FOR DEFENDANT
    JULIAN OMIDI