Michael S. Schachter** (NY 3910205)
Randall W. Jackson** (NY 5274048)
Casey E. Donnelly** (NY4936803)
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8102; Fax: (728) 728-8111
Email: *mschachter@willkie.com*

Simona Agnolucci (SBN 246943)
**WILLKIE FARR & GALLAGHER LLP**
One Front Street
San Francisco, CA 94111
Tel: (415) 858-7447, Fax: (415) 858-7599
Email: *sagnolucci@willkie.com*

** *Appearing pro hac vice*
*Counsel for Defendant Julian Omidi*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>          v.<br><br>Julian Omidi, *et al.,*<br><br>                    Defendants. | CR No. 17-00661 (A) – DMG<br><br>**DEFENDANT JULIAN OMIDI'S TRIAL MEMORANDUM TO LIMIT THE TESTIMONY OF TOM JOHNSON AND TO PRECLUDE, AS CUMULATIVE, THE TESTIMONY OF BARBARA BALCOM**<br><br>[No Hearing Set] |

Defendant Julian Omidi ("Mr. Omidi"), by and through his counsel, Willkie Farr & Gallagher LLP, respectfully submits this trial memorandum to limit the testimony of Government witness Tom Johnson ("Johnson") and to preclude, as cumulative, the testimony of Barbara Balcom ("Balcom").

Prior to trial, Mr. Omidi moved to preclude the testimony of Johnson and Balcom regarding Weight Loss Centers' ("WLC") "general billing practices." (Dkt. No. 1223). Your Honor denied this motion, but ruled that testimony by these witnesses "must be tethered to the Government's theory of the case." (Dkt. No. 1370 at 13). The government now seeks to elicit testimony on two issues that are wholly untethered from its theory of the case: what the Government calls "double-billing" and "over-billing." The government has indicated its intention to elicit testimony from Johnson regarding these two issues, despite the fact that neither is alleged in the Indictment nor properly noticed pursuant to Rule 404(B). Additionally, the government intends to elicit wholly cumulative testimony from Balcom.[1] For the reasons below, the Court should preclude such testimony.

## I.   BACKGROUND

Tom Johnson was the owner of The Business Office ("TBO"), which contracted with WLC between 2011 and 2014 to provide medical billing consulting services. During meetings with the prosecutors and agents, Johnson has made claims that WLC was "double-billing" insurance companies for sleep studies, *see* Ex. 1 at 3, 4/26/2017 Government Interview of Tom Johnson, and billing above "industry norm" for those sleep studies. (Ex. 2 at 3, 2/25/2021 Government Interview of Tom Johnson.) However, both the Indictment and the 404(B) Notice served on Defendants are devoid of any such allegations. (*See generally* FSI; Ex. 3, 404(B) Notice).

---

[1] In addition to significantly prejudicing the defense, eliciting testimony regarding double-billing and over-billing—issues that are not alleged in the Indictment and were not noticed pursuant to Rule 404(B)—also may constitute a constructive amendment or prejudicial variance. *See United States v. Ward*, 747 F.3d 1184, 1189 (9th Cir. 2014).

**DEFENDANT JULIAN OMIDI'S TRIAL MEMORANDUM TO LIMIT THE TESTIMONY OF TOM JOHNSON AND PRECLUDE, AS CUMULATIVE, THE TESTIMONY OF BARBARA BALCOM**

Defense counsel raised this issue with the government in an effort to meet and confer regarding appropriate subjects of Johnson's testimony. In response, the government asserted that Paragraph 31 of the Indictment alleges that WLC was engaged in double billing. (Ex. 4, 11/14/2021 Email from D. Lachman to M. Schachter.) This is incorrect: Paragraph 31 of the Indictment does not suggest that the Grand Jury charged Defendants with double billing. It reads: "GET THIN Providers submitted sleep study claims for professional services [] or facility fees [], or sometimes both." (FSI ¶31.) Far from an allegation of wrongdoing, Paragraph 31 is a statement of fact which notably appears *before* Section B, "THE FRAUDULENT SCHEME," and is found only in the factual background section of the Indictment. In other words, the Indictment plainly does not allege that the alleged scheme involved improperly billing insurance companies twice for the same procedure. And there is good reason that the Indictment contains no such allegation because, as explained by the government's own witness Carl Reinhardt ("Reinhardt"), it is standard practice for providers to issue separate bills for professional fees and facility fees. (Trial Tr. 1100:12-19 ("Q. Right. And let's explain that to the jury. So there are two portions of a bill for a lot of medical services. There is a provider bill, and that would be for the work of a doctor. A. Professional. Right. Professional site. Q. Professional. And then there would be the facility charge, and that is a bill to cover the cost of the facility where the service takes place? A. The brick and mortar.")) Nor did the government make any disclosure that it intended to introduce evidence of so-called double billing pursuant to Rule 404(b)—presumably because what the government is now calling "double billing" is actually the submission of bills for two different components of service. (Ex. 3.)

In response to defense counsel's query regarding the lack of any allegation in the Indictment regarding over-charging, the government pointed to Paragraph 40 of the Indictment. (Ex. 4.) But, here again, the actual words of the Indictment demonstrate that the Grand Jury never made such an allegation. Paragraph 40 references the amount WLC billed for sleep studies, but plainly does *not* compare the billed amounts to market average

or otherwise make any allegation that the amounts billed were too high.  It states:  "GET THIN Providers, including defendant IMS, also billed TriCare and the Insurance Companies between approximately $14,000 and $18,000 each for sleep studies" and states that "GET THIN Providers, including defendant IMS, also billed TriCare and the Insurance Companies between approximately $14,000 and $18,000 each for titration sleep studies []."  (FSI ¶40.)  And once again, there is good reason that the Indictment makes no allegation of overbilling because, as explained by government witness Reinhardt, an insurance company is going to pay the amount it deems appropriate regardless of what amount a provider bills.  (Trial Tr. 1038:10-13 ("Q. Providers can kind of bill -- they can bill whatever they want to. Anthem is going to pay what Anthem thinks is procedure; is that correct? A. Correct."))[2]  Finally, the government does not point to any portion of the 404(b) Notice which references over-billing.  (Ex. 4.)

The government also intends to call Balcom.  Like Johnson, Balcom worked at TBO during the time it provided billing consulting services to WLC, and whose testimony regarding double-billing and over-billing is similarly irrelevant.  In addition, the government offered no argument as to what non-cumulative evidence Balcom offers.

## II.  LEGAL STANDARD

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. Under the Federal

---

[2] Mr. Reinhardt's trial testimony also constitutes a second reason why the more general ruling issued in connection with Mr. Omidi's motion *in limine* should not necessarily be read as expressly permitting the two *specific* topics of testimony that the defense now challenges.  "As explained by the United States Supreme Court in *Luce*, any pretrial ruling on a motion *in limine* 'is subject to change' because new evidence may come in during trial necessitating a change in the ruling."  *Marten v. Montana*, No. CV 17-31-H-CCL, 2019 WL 4753249, at *1 (D. Mont. Sept. 30, 2019) (*quoting Luce v. United States*, 469 U.S. 38, 41 (1984); *see also* Trial Tr. 1182:15-1183:5 ("I just wanted to remind the parties that I have previously ruled on motions in limine. […] So hopefully, unless there is some new evidence or case law that wasn't presented at the time I ruled, I am not going to have to revisit rulings that I've already made.").  The Government's own insurance witness has now made clear that the two practices at issue—billing separately for provider fees and facility fees, and charging above-market rates for particular services—are not problematic.  This evidence, which was not available to the Court at the motion *in limine* stage, demonstrates that the jury does not need to hear testimony about what is clearly irrelevant (and uncharged) conduct.

DEFENDANT JULIAN OMIDI'S TRIAL MEMORANDUM TO LIMIT THE TESTIMONY OF TOM JOHNSON AND PRECLUDE, AS CUMULATIVE, THE TESTIMONY OF BARBARA BALCOM

CASE NO. 17-00661 (A) - DMG

Rules of Evidence, evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. The party seeking to introduce the evidence bears the burden of establishing relevance. *See, e.g.*, *Arakelian v. Mercedes-Benz USA, LLC*, No. CV1809420DSFFFMX, 2020 WL 1969255, at *1 (C.D. Cal. Feb. 25, 2020). Even if evidence is both relevant and otherwise admissible, courts may nonetheless exclude such evidence if its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see United States v. Clyne*, 752 F. App'x 436, 438 (9th Cir. 2018).

Indeed, it is an abuse of discretion to admit evidence of "very slight (if any) probative value" where "there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury." *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992). "Unfair prejudice is measured by the degree to which a jury responds negatively to some aspect of the evidence unrelated to its tendency to make a fact in issue more or less probable, *e.g.*, that aspect of the evidence which makes conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *United States v. Johnson*, 820 F.2d 1065, 1069 (9th Cir. 1987).

Evidence is cumulative if it "replicates other admitted evidence." *United States v. Ovist*, 608 F. App'x 485, 486 (9th Cir. 2015). The district court has "considerable latitude" to exclude relevant evidence if it is cumulative. *United States v. Larkin*, 779 F. App'x 435, 438 (9th Cir. 2019) *citing Hamling v. United States*, 418 U.S. 87, 127, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

Federal Rule of Evidence 404(B) limits the use of evidence regarding other crimes, wrongs, or acts. Fed. R. Evid. 404(B). In a criminal case, a prosecutor seeking to introduce such "other acts" evidence must "provide reasonable notice of any such

evidence that the prosecutor intends to offer at trial so that the defendant has a fair opportunity to meet it." *Id.* "Failure to provide notice or obtain an excuse from the district court, renders the other acts evidence inadmissible, whether the evidence is used in the prosecution's case-in-chief or for impeachment." *United States v. Vega*, 188 F.3d 1150, 1153 (9th Cir. 1999) (vacating judgment and remanding to the district court where the court permitted evidence not previously noticed under 404(B)).

### III.   DOUBLE-BILLING AND OVER-BILLING IS NOT ALLEGED IN THE INDICTMENT AND THEREFORE SUCH TESTIMONY MUST BE EXCLUDED AS IRRELEVANT.

Nowhere in the 42 pages of the Indictment is any allegation that WLC double-billed or over-billed for services. Despite this, the government now intends to elicit from Johnson testimony regarding both double-billing and over-billing.

First, this testimony is irrelevant. For evidence to be relevant, it must "logically advance a material aspect of the party's case." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019). The Indictment does not include any allegations that WLC was double-billing or over-billing, let alone charge that these errors were criminal. As such, there is no "relation between [this evidence] and a matter properly provable in the case." *Stevenson v. Holland*, 504 F. Supp. 3d 1107, 1115 (E.D. Cal. 2020).

Even if the Court finds that this evidence is of some minimal relevance—which it is not—it should still be excluded because the probative value of any such evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues," or the possibility of "mislead[ing] the jury." *Boyd v. City and County of San Francisco*, 576 F.3d 938, 948 (9th Cir. 2009); *see also United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992) ("Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury."). Here, the testimony of Johnson that WLC was billing insurance companies for the same procedure twice, sometimes being paid twice, and that WLC was

charging insurance companies more than the market rate for services would no doubt confuse the jury regarding the actual charges in the Indictment.

### IV. THE GOVERNMENT FAILED TO PROVIDE ADEQUATE NOTICE REGARDING DOUBLE-BILLING AND OVER-BILLING EVIDENCE AND THEREFORE THIS EVIDENCE MUST BE EXCLUDED UNDER RULE 404(B).

Evidence of double-billing and over-billing is plainly other acts evidence for which the government was required, but failed, to provide notice; as such, this evidence must be excluded pursuant to Rule 404(B). Indeed, the government does not even attempt to construe the 404(b) notice as including double- and over-billing.

On June 3, 2020, the government provided its 404(B) Notice regarding evidence of other acts that it would seek to offer at trial. (Ex. 4.) The government has never supplemented this Notice. (*See generally id.*) The government's 404(B) Notice includes notice of various acts, none of which are, or could be reasonably construed to be, notice of evidence of double-billing or over-billing. (*Id.*) Now, more than halfway through trial, the defense is without "adequate opportunity to assess the evidence, the purpose for which it is offered, and whether the requirements of Rule 403 have been satisfied." Fed. R. Evid. 404 (2020 Amendments). Accordingly, this other acts evidence should be precluded.

### V. BARBARA BALCOM'S TESTIMONY IS CUMULATIVE AND THEREFORE SHOULD BE PRECLUDED.

The jurors have already been sitting for eight weeks of testimony in the government's case in chief and the government has at least 17 witnesses left to call. Calling Balcom to reiterate testimony already given by Johnson would constitute an unnecessary and cumulative waste of time under Rule 403. *See, e.g.*, *United States v. Larkin*, 779 F. App'x 435, 438 (9th Cir. 2019) (affirming district court's preclusion of cumulative testimony). Both Johnson and Balcom worked with WLC in their positions as executives of TBO and are presented by the government to testify to their experience with, and impressions of,

**DEFENDANT JULIAN OMIDI'S TRIAL MEMORANDUM TO LIMIT THE TESTIMONY OF TOM JOHNSON AND PRECLUDE, AS CUMULATIVE, THE TESTIMONY OF BARBARA BALCOM**

CASE NO. 17-00661 (A) - DMG

WLC's billing practices and problems.  The government has not disclosed any testimony that Balcom will offer which is different than the testimony it will offer through Johnson.

## VI.    CONCLUSION

For the foregoing reasons, the Court should preclude the government from (1) eliciting testimony from Johnson regarding double-billing and over-billing and (2) calling Balcom to testify.

Dated:  November 17, 2021

Respectfully submitted,

**WILLKIE FARR & GALLAGHER LLP**

By:  s/ Michael S. Schachter
_____
MICHAEL S. SCHACHTER
RANDALL W. JACKSON
CASEY E. DONNELLY
SIMONA AGNOLUCCI

ATTORNEYS FOR DEFENDANT
JULIAN OMIDI

**DEFENDANT JULIAN OMIDI'S TRIAL MEMORANDUM TO LIMIT THE TESTIMONY OF TOM JOHNSON AND PRECLUDE, AS CUMULATIVE, THE TESTIMONY OF BARBARA BALCOM**

CASE NO. 17-00661 (A) - DMG