Michael S. Schachter** (NY 3910205)
Randall W. Jackson** (NY 5274048)
Casey E. Donnelly** (NY4936803)
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8102; Fax: (728) 728-8111
Email: *mschachter@willkie.com*

*Attorneys for Defendant*,
Julian Omidi

[Additional Counsel Continued On Next Page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>*vs*.<br><br>JULIAN OMIDI, INDEPENDENT MEDICAL SERVICES INC., a professional corporation, SURGERY CENTER MANAGEMENT, LLC, and MIRALI ZARABI, M.D.,<br><br>Defendants.<br><br>. | Case No. CR 17-00661(A)-DMG<br><br>[*Assigned to Hon. Dolly M. Gee, District Court Judge*]<br><br>MR. OMIDI'S RENEWED APPLICATION SEEKING ADDITIONAL FUNDS FROM THE SEIZED *RES* TO PAY FOR DEFENSE COSTS |

[Additional Counsel Continued From Previous Page]

Simona Agnolucci (SBN 246943)
**WILLKIE FARR & GALLAGHER LLP**
One Front Street
San Francisco, CA 94111
Tel: (415) 858-7447, Fax: (415) 858-7599
Email: *sagnolucci@willkie.com*

*Appearing specially  ** Appearing pro hac vice*

*Counsel for Defendant Julian Omidi*

**TO THE CLERK OF THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

Julian Omidi, by counsel, hereby makes a renewed request that the Court release additional funds, for the payment of outstanding defense costs for September and October 2021, from the funds seized by the Government in 2014, in connection with the related Civil Forfeiture Action, which is pending in front of Your Honor at Case No. 18-CV-3855.

The parties have met and conferred regarding Mr. Omidi's request for additional funds but were unable to come to a mutual resolution.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities in support of this Motion, all matters which the Court may judicially notice, the documents and pleadings previously filed with this Court, including Mr. Omidi's prior requests for the release of additional funds, Dkts. 1150 and 1182, and upon such oral and documentary evidence that Mr. Omidi may present at the hearing of this Motion.

# TABLE OF CONTENTS

**Page**

I.   MR. OMIDI RESPECTFULLY REQUESTS THAT THE COURT
     RELEASE ADDITIONAL FUNDS TO PAY FOR MR. OMDI'S DEFENSE
     COSTS. ................................................................................................... 1

    A.   The Parties' Expectations At The Time of the October 8, 2020 Release
          Order Have Not Proved Accurate and the Reality Has Been
          Extraordinarily Expensive for the Defense. ..................................................... 2

    B.   There is Good Cause to Release Additional Funds for Mr. Omidi's
          Defense. ........................................................................................................ 5

II.  CONCLUSION ........................................................................................................ 9

Defendant Julian Omidi hereby submits this renewed motion requesting that this Court release additional funds, in the amount of $3,346,241.71, for payment of Mr. Omidi's outstanding defense fees and costs, for September and October 2021.  To avoid duplication, Mr. Omidi hereby incorporates by reference each of his prior filings related to the return of the seized funds, *i.e.*, Dkt. 1038, 1061, 1150 and 1182.

## I.   MR. OMIDI RESPECTFULLY REQUESTS THAT THE COURT RELEASE ADDITIONAL FUNDS TO PAY FOR MR. OMDI'S DEFENSE COSTS.

The Court's Order releasing a portion of the seized funds to pay for Mr. Omidi's defense, *see* CV 18-3855, Doc. #50 (the "Release Order"), explained that when the Order was entered on October 8, 2020, a further request for release of funds was not anticipated.  But the Order expressly contemplated the release of additional funds upon a showing of "good cause."  *Id*. at ¶ 13.  Although the Court wished the parties to meet and confer on whether good cause exists, the Court recognized that Mr. Omidi may be able to establish good cause, regardless of whether the Government assents to the request.  Mr. Omidi hereby submits that such good cause now exists, as the previously released funds have been extinguished, and defense counsel has not been paid for September's fees, or October's fees and costs.  As we hope the Court has observed over the past eight weeks, defense counsel has made enormous efforts to provide Mr. Omidi with a rigorous and well-prepared defense at this trial, working practically around the clock to assure that Mr. Omidi's constitutional right to a fair trial is protected in what is truly a sprawling and extraordinarily complex prosecution.  We respectfully submit that it is appropriate and fair for counsel to be paid for this work.

This case has been significantly more expensive than defense counsel anticipated.  Circumstances have changed dramatically since present counsel agreed to take on this engagement, in ways that were not anticipated and which significantly increased the costs associated with providing Mr. Omidi with a vigorous and zealous

1

defense. Most strikingly, at the time Willkie agreed to this representation, the Government had represented to the Court and the defense that its case-in-chief would last between *three and four weeks*, including reasonable cross examination. (Dkt. 137, at pg. 5 of 17). Based on present estimates, the trial has tripled in length, from one month to more than three months. At the time of Willkie's engagement, the trial was scheduled to commence on May 4, 2021. That date was appropriately adjourned, but with the delay came substantial additional costs. And, both the size of discovery, and the difficulties associated with its review, were far greater than represented.

We submit that defense counsel's efforts have substantially contributed to the truth-seeking process. Defense counsel has spent this year pouring over the *millions* of records that accompanied the Government's *ten year* investigation, and this work has enabled us to show flaws in the Government's theory of the case. Identifying, and properly marshalling, the exculpatory evidence that proves the deficiencies in the Government's theory is, of course, defense counsel's obligation, but it also is, indisputably, a time-consuming, intense, and *expensive* process.

It is for these reasons, and the others described below, the counsel believes "good cause" now exists for the release of additional funds, to pay Mr. Omidi's outstanding defense costs. At this time, Mr. Omidi's counsel is owed $1,068,634.23 for September fees, and an additional $2,277,607.48 for fees and costs incurred in October. Mr. Omidi respectfully requests that the Court release funds to pay counsel for its work.

**A.     The Parties' Expectations at The Time of the October 8, 2020 Release Order Have Not Proved Accurate and the Reality Has Been Extraordinarily Expensive for the Defense.**

The October 8 Release Order provided, in relevant part, that:

A further request for release of funds by Julian Omidi is not anticipated. However, if MW [McGuireWoods, LLP (Mr. Omidi's former counsel in this criminal proceeding)] or substitute counsel for Julian Omidi comes to

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

believe that such a request will be necessary, the Parties shall meet and confer on whether there is good cause for the release of additional funds. If the Parties cannot reach agreement, MW (or its successor) and Julian Omidi shall be allowed to move for the release of additional funds in CR 17-661(A) DMG, so long as all of the Substitute Claimants waive their respective rights to object to the release of any requested additional portion of the defendant *res*.

*See* CV 18-3855, Doc. #50 (the "Release Order') at ¶ 13.

It was reasonable for Mr. Omidi's counsel at McGuireWoods, LLP to believe, in October 2020, that $10 million would be a sum sufficient to bring this case to trial. At the time, the Government had represented to the Court and to the defense that its case-in-chief would last between three and four weeks, including reasonable cross examination. (Dkt. 137, at p.5 of 17). In addition, as of the fall of 2020, when the Stipulation was signed, defense counsel believed that discovery in this case—which was "complete" as of May 2020—was limited to the 940,000 documents that Discovery Coordinator Ellis had loaded onto the Goldfynch platform in the summer of 2020. Moreover, when the parties signed the Stipulation, it was understood that trial would commence on May 4, 2021—meaning that the $10 million in released funds would only need to cover defense expenses for seven months, or the period between October 2020 and May 2021. Still, the parties recognized that there might eventually be a need for additional defense funds, and for that reason, the parties' Stipulation—and the Release Order ultimately signed by the Court— provided that Mr. Omidi is permitted to petition the Court for additional fees, so long as Mr. Omidi can show "good cause" for doing so. *See* Release Order (CV 18-3855, Doc. #50) at ¶ 13.

When current defense counsel, Willkie Farr, was retained, in December 2020, the above expectations were imparted to counsel, including the Government's estimate that trial would last three to four weeks. (Ex. 1 (Declaration of Michael S. Schachter) at ¶ 2). Indeed, on January 22, 2021, the Government sent Mr. Schachter a draft stipulation for a continuance which stated, "The parties estimate that the trial in this matter will last

3

approximately four weeks." (*See* Ex. 2 (January 22, 2021 Email from A. Wyman to Defense Counsel, enclosing draft Stipulation); *see also* Dkt. 942 (January 25, 2021 Joint Stipulation Regarding Request for Continuance at p. 3 of 15 ("The government estimates that its presentation of evidence in this matter will last approximately two to three weeks. While defense counsel are still considering the defense case, counsel for OMIDI believe that OMIDI's defense case will be substantial and could take four weeks.").

Nearly all of the expectations held by the parties when negotiating the release of $10 million for defense fees have turned out to be incorrect—in ways that have consistently and invariably increased defense costs. For example, discovery in this case was not limited to the 940,000 documents that the defense anticipated, but actually involved upwards of *4 million documents*, almost all of which were produced without adequate metadata, meaning that it was virtually impossible for Mr. Omidi's counsel to find relevant and important documents using key words, or by searching by date, or by searching by document type. (Ex. 1 at ¶ 5.) Instead, defense counsel, which has a constitutional obligation to defend this case to the best of its ability, was required to manually review the productions, on a document by document basis, when searching for key evidence. Defense counsel submits that this was time well-spent; the defense would not have been able to cross-examine the Government's many witnesses as thoroughly as it has over the last two months if defense counsel had not done this important work. There can be no dispute, however, that the additional review increased defense costs exponentially and in a way that was unexpected when the Release Order was signed. For example, Mr. Omidi has spent more than $600,000 on third-party discovery vendors alone, in order to be able to simply review the materials produced by the Government in this case. (*Id.*)

**B.** **There is Good Cause to Release Additional Funds for Mr. Omidi's Defense.**

In the Court's prior Order, dated August 16, 2021, the Court explained that even though the Substitute Claimants had agreed that they had no objection to the release of additional funds for Mr. Omidi's defense costs, the Court would not yet release additional funds because Mr. Omidi had not yet demonstrated "good cause" to do so, as Mr. Omidi had not made a "concrete showing that [Mr. Omidi] is unable to reasonably mount a defense with the amount he has and that he has been a prudent steward of the amount that he had." (Dkt. 1190 at 4).

At the time of the last request, Mr. Omidi still had $4.5 million remaining of the $10 million that was released.  That has now changed.  The last of the released funds were used to pay disbursements (costs) in September 2021, including the cost of Mr. McLeod's trial services and court reporting for the first half of the trial.  Ex. 1 at ¶ 9.  However, there was not sufficient funds available for Mr. Omidi's attorney fees and counsel is still owed $1,068,634.23 in attorney fees for September.  *Id*.  With respect to October 2021, there are no longer any funds available to pay for either counsel's fees or the costs of this case, and the outstanding amount is an additional $2,277,607.48.  *Id*.  Although the funds released in October 2020 have been spent, Mr. Omidi's counsel has nonetheless been working, seven days a week, day and night, to provide Mr. Omidi with a vigorous defense at this criminal trial.  Mr. Omidi is unable to pay the cost of the outstanding invoices.  (Ex. 3 (Declaration of Julian Omidi)).

Defense counsel has not been profligate with the released monies.  From the outset of this case, Willkie Farr has discounted its rates by 15% and, in addition, has consistently written off significant amounts of attorney time, on each and every invoice, such that on average, Willkie has discounted its bills by 20-25%.  Ex. 1 at ¶ 4.  The fact is, however, that expenses and the attorney time required over the past year have been substantial.  For

5

example, prior defense counsel in this matter needed to be paid out of the $10 million released by the Court and those expenses were considerable:

- McGuire Woods LLP:  $404,464 (fees and expenses);
- Baker Hostetler LLP:  $480,153 (fees and expenses);
- CJA Counsel:  $389,088.59 (fees and expenses);

In other words, from the outset, defense counsel was working with less than $10 million to prepare for trial and to file all pretrial briefing, including multiple motions to dismiss, motions to suppress, and motions seeking additional discovery.  The parties, together, also filed seventeen motions *in limine*, which required significant attorney resources to draft and respond to.  Furthermore, as the Court is aware from the *in limine* briefing, the defense has been required to retain several expert witnesses, including a medical doctor specializing in sleep medicine, a psychiatrist specializing in bipolar disorder, an insurance claims expert, and a computer forensics expert.  *Id*. at ¶ 7.  The retention of such experts was necessary, given that the Government itself has retained multiple experts, including Dr. Norman, a sleep specialist, and Mr. Petron, a statistician, and also plans to call technical experts employed by, and trained by, the FBI—*e.g.*, SA Cindy Niu—to describe for the jury some of the very complicated data issues associated with this case.  In order to rebut the testimony of the Government's witnesses, it was both necessary and appropriate for Mr. Omidi to retain experts of his own, to ensure that the jury receives balanced information.  *Id*.  Indeed, in the case of this complexity, failure to identify and prepare responsive expert witnesses would have arguably constituted ineffective assistance of counsel.

In addition to these expenses, and as described above, multiple third-party vendors have had to be retained before defense counsel could even review the Government's productions, given the state in which the productions were produced.  While the Court has previously suggested that defense counsel did not need to review the entirety of the Government's productions, the defense respectfully submits that it could not have

6

effectively represented Mr. Omidi if it had simply relied on keyword searches, to find relevant documents, since most of the discovery is not sufficiently populated with metadata that would accurately or reliably respond to these types of targeted searches. *Id*. at ¶ 5. As described above, even before factoring in the time spent by attorneys at Willkie Farr to review the discovery, third party vendors cost Mr. Omidi more than $600,000. *Id*. In short, the defense submits that the expenses in this case, while significant, have been necessary, reasonable, and consistent with defense counsel's ethical and constitutional obligations to Mr. Omidi.

Furthermore, as the Court knows, it was newly discovered issues with the Government's productions in this case that necessitated a joint request by the parties, in late January 2020[1], to continue the trial to a date later than May 4, 2021, since it had become clear that Mr. Omidi was missing the majority of the Government's productions. (Dkt. 942.) While the Court ultimately denied that request, trial was nevertheless delayed to September of 2021, rather than May 2021, because of the ongoing COVID crisis. This extra time was essential, because defense counsel needed the additional months to review a discovery set that was *three times* the size expected, but it also contributed significantly to the cost of the defense. *Id*. at ¶ 5. And indeed, discovery issues continue to plague this case—as Your Honor knows, the Government "found" thousands of files of raw sleep study data *in the middle of trial* and defense counsel has had to retain an outside firm to process and review those materials, which, given the expedited time frame, has been and will continue to be, a meaningful expense. *Id*.

Finally, the length of the trial alone constitutes "good cause" for releasing additional funds. The Government represented that this case would take between three and four weeks. *See supra* at 2. Instead, this week—starting November 22—constitutes *Week Ten* and the Government has alerted the defense to the fact that it still has *at least* eight more witnesses that it plans to call. The Government's case-in-chief will extend to the week following Thanksgiving—which would be *Week Eleven*—if not later. Even if

7

the defense case is extremely efficient, the fact remains that, given the need for summations, jury instructions, and deliberations, this trial will last more than *three times as long* as the parties expected when they agreed to the release of $10 million. The length of trial is a significant factor in this request for additional funds because the expense of each trial day is considerable, as it involves not only the court time of four attorneys and a paralegal, but also the costs of various other members of the trial team, Mr. McLeod, the expenses associated with the documents and binders used for cross-examination, and the expense of court reporting services. *Id*. at ¶ 8.

It is perhaps also worth mentioning that should the Court be unwilling to release additional monies, Willkie Farr will have earned far less than the $10 million released, because, in addition to the costs paid out of that $10 million (which included $1.26 million paid to former defense attorneys), *all* costs from October 1, 2021 through the end of this representation, including lodging for a three-month trial, duplication services, court reporter services, additional fees spent on expert witness preparation, and the like will still need to be paid, and they will have to be paid out of Willkie Farr's own accounts, since defense counsel cannot simply withdraw, or otherwise reduce the vigor of its representation, in the middle of Mr. Omidi's criminal trial.

For these reasons, Mr. Omidi submits that a release of additional funds, to cover the outstanding defense costs of $3,346,241.71 for September and October 2021 is merited and appropriate.[1]

---

[1] The consent by the Claimants can be found at Dkt. 1061-4 (Declaration of William Welden, counsel to Current Claimants, affirming that they do not object to the Court's release of funds from the seized *res* to Mr. Omidi's attorneys, to pay for Mr. Omidi's legal fees in this case).

## II.     CONCLUSION

For the reasons described herein, Mr. Omidi respectfully requests that the Court release an additional $3,346,241.71 to pay for outstanding defense fees from September and October 2021.


DATED:  November 23, 2021

Respectfully submitted,

**WILLKIE FARR & GALLAGHER LLP**

By: s/ Michael S. Schachter
   MICHAEL S. SCHACHTER
   RANDALL W. JACKSON
   CASEY E. DONNELLY
   JOHN L. BRENNAN

   ATTORNEYS FOR DEFENDANT
   JULIAN OMIDI