Michael S. Schachter* (NY 3910205)
Randall W. Jackson* (NY 5274048)
Casey E. Donnelly* (NY4936803)
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8102; Fax: (728) 728-8111
Email: *mschachter@willkie.com*

Simona Agnolucci (SBN 246943)
**WILLKIE FARR & GALLAGHER LLP**
One Front Street
San Francisco, CA 94111
Tel: (415) 858-7447, Fax: (415) 858-7599
Email: *sagnolucci@willkie.com*

* *Appearing pro hac vice*

*Counsel for Defendant Julian Omidi*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>      v.<br><br>Julian Omidi, *et al.*,<br><br>                    Defendants. | Case No. CR No. 17-00661 (A) – DMG<br><br>**DEFENDANT JULIAN OMIDI'S *EX PARTE* APPLICATION TO STAY DEADLINE TO FILE POST-TRIAL MOTIONS PENDING RESOLUTION OF MR. OMIDI'S MOTION TO COMPEL**<br><br>Courtroom of the Hon. Dolly M. Gee |

**TO THE HONORABLE COURT, TO ALL PARTIES, AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant Julian Omidi, by and through his counsel of record, hereby files this ex parte application to stay the deadline to file post-trial motions pending the resolution of Mr. Omidi's forthcoming motion to compel, or in the alternative to continue the deadline to a reasonable date certain to provide Mr. Omidi the opportunity to review any additional discovery.   This Application is based on the declaration of Michael Schachter annexed hereto, the files and records in this case, and such further evidence and argument as the Court may permit.

## A.  The Government's Recent Post-Trial Disclosure of Relevant Materials

Since Mr. Omidi's last filing, he received confirmation that the government for years withheld documentation establishing (and reflecting the government's conclusion) that Brian Oxman did not make a threatening call to Charles Klasky on the morning of May 24, 2016, as Mr. Klasky claimed that same morning during his first proffer interview with the government.  As Mr. Omidi indicated in his prior application to extend the deadline for post-trial briefs, Mr. Omidi intends to file a motion for a new trial based on, among other grounds, the government's failure to disclose the details of its investigation of, and its presentation of false testimony regarding, Mr. Klasky's claim that he received a threatening phone call from Brian Oxman.  There is no question that this testimony was material.[1]  At the time of his prior application, Mr. Omidi had been requesting for nearly a month that the

---

[1] Indeed, the government asserted at trial that Klasky's testimony on this issue was "absolutely relevant with the pressure that is being placed on someone who could go to the government and reveal this fraud", and "absolutely goes to the issues of knowledge and intent in this case and of the desire to continue concealing the fraud." (Tr. at 4980.) The government relied on this testimony during closing arguments, and read from Mr. Klasky's false and misleading testimony at rebuttal.  (*Id.* at 8926-27). For the sake of efficiency, Mr. Omidi respectfully refers the Court to (and incorporates by reference) Mr. Omidi's January 21, 2022 *Ex Parte* Application, (ECF. No. 1640), for a more detailed explanation of these matters.

government provide documents and information regarding its investigation of this claim.[2]

On January 24, 2022, *after* the Court granted Mr. Omidi's request for a three-week extension of the deadline to submit post-trial motions, the government produced, for the first time, documentation of the government's investigation of Mr. Klasky's claim. This production included subscriber information for the phone numbers that had called Mr. Klasky on the morning he claimed he received a call from Mr. Oxman. The new discovery showed that Mr. Oxman had not called Mr. Klasky on May 24, 2016, as Mr. Klasky reported to the government during a proffer interview that *same* morning.[3] Notably, Mr. Omidi's counsel had made multiple specific requests for these records, but the government repeatedly claimed that it had not conducted any investigation into the identity of the subscribers for those phone numbers and that there was no outstanding discovery regarding these matters. As the government's subsequent disclosure demonstrated, these claims were not true.

**B. Mr. Omidi's Need for Further Discovery**

Since receiving these post-trial disclosures, Mr. Omidi's counsel have attempted in good faith to determine what, if any, additional relevant materials the

---

[2] As Mr. Omidi will argue in his intended post-trial motion, the government was required to produce these materials much earlier, both pursuant to the government's general *Brady* obligations and the Court's order that, in addition to disclosing exculpatory material as required by *Brady*, the government must "specifically identify *Brady* material of which it is aware … with reference to Bates number or any other information that may be used to reasonably facilitate identification" prior to trial. (ECF No. 1333 at 4.) The Court issued this order in response to Mr. Omidi's motion, ECF 1154, which specifically asked the government "to identify any communications relevant to [Mr. Klasky's] credibility and bias," *id*. at (ECF No. 1154 at 4.)

[3] In the government's recently filed response to a notice of breach filed by the Asset Management Irrevocable Trusts, the government stated that the subscribers reflected in these records have "no known connection to this case." (ECF No. 1652 at 1 (citing Williams Decl. ¶ 2).) This assertion ignores the fact that the records list Mr. Klasky's counsel, Richard Moss, as a potential subscriber to one of the numbers. (Schachter Decl. ¶ 6.) In any event, whether the subscribers had any "connection to this case" is beside the point. The newly disclosed records establish that the government attempted to corroborate Mr. Klasky's claim that Mr. Oxman made one of those calls, but instead found evidence that Mr. Klasky's claim was false.

government possesses.  As the Ninth Circuit observed in granting a new trial in *United States v. Shaffer*, 789 F.2d 682 (9th Cir.1986), the government's failure to disclose exculpatory materials could "'indicate[] the "tip of an iceberg" of evidence that should have been revealed under Brady.'" 789 F.2d 682, 690-91 (9th Cir.1986) (quoting *United States v. Griggs*, 713 F.2d 672, 674 (11th Cir.1983)).  Although the government's conduct to date gives rise to violations of the government's disclosure obligations under *Brady* as well as its responsibility not to present false testimony pursuant to *Napue v. Illinois*, 360 U.S. 264 (1959), the full extent of relevant materials the government has not disclosed is highly relevant to both the merits of the arguments in Mr. Omidi's post-trial motion and the appropriate remedy for these violations.

Unfortunately, the government has refused to engage further in response to Mr. Omidi's requests.  For example, the government has repeatedly stated that it has produced all "discoverable" documents and information in response to Mr. Omidi's requests, but it has notably refused to specify whether it is withholding any relevant materials that it deems not discoverable.  The government also has declined to provide details on the manner in which it searched for responsive documents.

Mr. Omidi intends to file a motion to compel, seeking an order requiring the government to search for and produce all materials and information it possesses that are responsive to Mr. Omidi's requests or, at the very least, to provide Mr. Omidi a log indicating what additional documents the government contends may be withheld from the defense as not discoverable.  As Mr. Omidi's motion to compel will make clear, there is precedent within the Ninth Circuit for such an order where, as here, there is evidence that the government has suppressed potential *Brady* material.  *See United States v. Blanco*, 392 F.3d 382, 394 (9th Cir. 2004) ("Given the government's suppression of the *Brady/Giglio* material pertaining to Rivera's immigration status, we believe that 'for prophylactic reasons,' *Bernal-Obeso,* 989 F.2d at 333, the district

court should order full disclosure by the government of any and all potential *Brady/Giglio* material, whether or not related to Rivera's immigration status.").[4]

An order requiring the government's full disclosure of these materials is particularly critical because the government inaccurately made the same proffer that no discovery is outstanding prior to its recent post-trial disclosure of the very documents the government had repeatedly claimed it did not have.  Because Mr. Klasky's claim about a threatening call he received from Mr. Oxman, the government's investigation of that claim, and the government's disclosure of documents regarding that investigation all are central to Mr. Omidi's intended post-trial motion, Mr. Omidi requires full disclosure of any relevant materials before he files that motion.  In light of the importance of these requested materials to Mr. Omidi's intended post-trial motion, he respectfully requests that the Court stay the deadline for filing post-trial motions until Mr. Omidi's motion to compel is resolved and he has the opportunity to review any additional documents the government produces.

On February 15, 2022, Mr. Omidi, through counsel, informed counsel for the government of Mr. Omidi's intention to file this Application.  The government's counsel responded that the government opposes any stay or further extension of the post-trial motion deadline and requests an opportunity to oppose this Application.

---

[4] *See also United States v. Mazzarella*, 784 F.3d 532, 539, 542 (9th Cir. 2015) (vacating the district court's denial of motions for a new trial and remanding for discovery and an evidentiary hearing on the *Brady* issue "on an open record"); *United States v. Alvarez*, 358 F.3d 1194, 1209 (9th Cir. 2004) ("In *United States v. Bernal–Obeso*, 989 F.2d 331 (9th Cir.1993), the court stated that '[b]ecause neither we nor the trial court know what it is we are attempting to review ... [t]he appropriate step is to vacate the defendant's conviction and remand to the district court for an evidentiary hearing' to determine whether the government had discharged its obligation to provide the defense with material exculpatory evidence, including impeachment evidence, within its possession regarding a confidential informant/witness.")

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  February 16, 2022

Respectfully submitted,

**WILLKIE FARR & GALLAGHER LLP**

By: s/ Michael S. Schachter
     MICHAEL S. SCHACHTER
     RANDALL W. JACKSON
     CASEY E. DONNELLY
     SIMONA AGNOLUCCI

     ATTORNEYS FOR DEFENDANT
     JULIAN OMIDI

## DECLARATION OF MICHAEL SCHACHTER

I, Michael Schachter, declare as follows:

1.     I am a partner at Willkie Farr & Gallagher LLP, counsel of record for Defendant Julian Omidi.  I am admitted to this Court *pro hac vice*.  I submit this declaration in support of Mr. Omidi's *Ex Parte* Application to stay the deadline for filing post-trial motions pending the resolution of Mr. Omidi's intended motion to compel.

2.     Mr. Omidi intends to move post-trial for relief, including for a new trial pursuant to Rule 33.  The Court ruled on December 16, 2021 that any post-trial motions would be due on January 31, 2022.  On January 24, 2022, the Court granted Mr. Omidi's request for a three-week extension of that deadline.  Post-trial motions are currently due on February 22, 2022.

3.     As set forth in Mr. Omidi's January 21, 2022 Application for a three-week extension of the deadline (ECF No. 1640), Mr. Omidi intends to move for a new trial on the basis that the government elicited from witness Charles Klasky testimony that the government knew or should have known was false and relied on that testimony during closing arguments.  Mr. Omidi also indicated in that Application his intent to argue that the government failed to fully disclose the results of its investigation into the subject of that testimony—Mr. Klasky's claim that he received a threatening phone call from Brian Oxman discouraging Mr. Klasky from cooperating with the government, prior to Mr. Klasky's May 24, 2016 proffer interview with the government.

4.     Prior to Mr. Omidi's January 21 Application, the government stated, in response to Mr. Omidi's counsel's requests for records relating to the government's investigation of Mr. Klasky's claim regarding the call he received from Mr. Oxman, that there was "no outstanding discovery" regarding Mr. Klasky's claim and that the government did not specifically investigate the phone numbers that had called Mr. Klasky on the morning of May 24, 2016 (when Mr. Klasky told the government he

received the call from Mr. Oxman).   The parties' correspondence regarding Mr. Omidi's requests for information regarding this matter is attached as Exhibit 1.

5.   At the time of Mr. Omidi's January 21 application, Mr. Omidi was awaiting the government's response to several follow-up questions sent to the government on January 18, 2022.  Specifically, although the government's counsel had claimed that it only obtained information about subscribers to the phone numbers that called Mr. Klasky on the day in question *after* Mr. Omidi's counsel raised this issue post-trial, Mr. Omidi's counsel noted that these same names appeared in the notes of the government's August 14, 2017 interview with Mr. Klasky, and asked, again, for any records of the government's investigation of this information prior to that interview.  (Ex. 1.)

6.   On January 24, 2022, after the Court granted Mr. Omidi's Application for an extension of time to file his post-trial motion, the government disclosed, for the first time, records of its investigation into Mr. Klasky's claim about the alleged threatening call he received from Mr. Oxman.  This production (which is subject to the protective order in this case) included reports the government obtained in November 2016 regarding the subscribers to the phone numbers that called Mr. Klasky on the morning of May 24, 2016, as well as documents and communications reflecting the government's efforts to corroborate Mr. Klasky's story in light of Mr. Klasky's phone records and the subscriber information the government obtained. Notably, the records of the subscriber search for one of the phone number indicate the phone number may have belonged to Mr. Klasky's counsel, Richard Moss—a fact that was never disclosed to the parties or reflected in any government reports or notes as being raised in any of the government's conversations with Mr. Klasky.

7.   Mr. Omidi's counsel requested—both via email and during a recent meet and confer call—that the government indicate whether or not it is withholding any additional relevant documents and information on the basis of privilege or work product.  The government has repeatedly responded only that there is no additional

"discoverable" material and has declined to specify whether the government is withholding additional documents and information that it deems not to be discoverable or to provide a log of any such documents.  The government also has declined to provide details as to how the government searched for documents and information responsive to Mr. Omidi's requests.  The government has also refused to engage with Mr. Omidi's counsel on certain other questions, including whether the government will acknowledge that Mr. Oxman did not call Mr. Klasky on the morning of May 24, 2016, as Mr. Klasky claimed when he met with the government that same day.

8.    Because the government has left open-ended the question of whether it possesses and is withholding any additional documents responsive to Mr. Omidi's requests, Mr. Omidi intends to file a motion to compel the government to search for and produce any such documents or, at least, to provide a log specifying what documents the government is withholding.  Because any such documents would necessarily be relevant to Mr. Omidi's intended post-trial motion, he respectfully requests that the Court stay the deadline for that motion pending the resolution of Mr. Omidi's motion to compel, so that Mr. Omidi may have the opportunity to review any additional materials before filing his post-trial motion.


Dated:      February 16, 2022


                                    _/s/ Michael S. Schachter_____
                                    Michael S. Schachter

# EXHIBIT 1

| | |
|---|---|
| **From:** | Moghaddas, Ali (USACAC) <Ali.Moghaddas@usdoj.gov> |
| **Sent:** | Tuesday, February 15, 2022 11:44 PM |
| **To:** | Schachter, Michael; Williams, Kristen (USACAC) 2 |
| **Cc:** | Chao, David (USACAC) 1; Lachman, David (USACAC); Jackson, Randall; Donnelly, Casey; Brennan, John L. |
| **Subject:** | RE: Question |

**\*\*\* EXTERNAL EMAIL \*\*\***

Mike,

Thanks for your email.  As we stated on our call, the government has produced all discoverable records relating to the issues you raise below.  As such, we oppose any stay or further extension of your post trial motion, which has already been extended twice now.  Please note the government's opposition in your ex parte application and our request for an opportunity to oppose.

Best,
Ali

From: Schachter, Michael <MSchachter@willkie.com>
Sent: Tuesday, February 15, 2022 5:29 PM
To: Williams, Kristen (USACAC) 2 <kwilliams2@usa.doj.gov>
Cc: Moghaddas, Ali (USACAC) <AMoghaddas@usa.doj.gov>; Chao, David (USACAC) 1 <DChao1@usa.doj.gov>; Lachman, David (USACAC) <DLachman@usa.doj.gov>; Jackson, Randall <RJackson@willkie.com>; Donnelly, Casey <CDonnelly@willkie.com>; Brennan, John L. <JBrennan@willkie.com>
Subject: [EXTERNAL] RE: Question

Kristen,

We appreciate you providing us the government's position, as I laid out in my email below.  But because the government's stated position left open-ended whether the government is withholding any additional relevant materials and/or information on the grounds that they are not discoverable (and did not specify how the government went about searching for relevant materials), we feel that, before we file our post-trial motion, we need to obtain a court order to compel the production of any responsive documents and information.  The need for this order is compounded by the government's post-trial disclosure of the spreadsheet, TLO reports and emails relating to Klasky's claim regarding the purported call he received from Oxman, and by the government's failure to address many of our questions relating to the call and the disclosure to us.

To that end, we will be filing a motion to compel.  In advance of that filing, we intend to make an ex parte request that the Court stay briefing on our post-trial motion pending the resolution of our motion to compel.  Will the government consent to the request to stay other briefing pending the resolution of our motion to compel?

Thank you.

Mike


**Michael S. Schachter**
**Willkie Farr & Gallagher LLP**

787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8102 | Mobile: +1 917 656 0464
mschachter@willkie.com | vCard | www.willkie.com bio

**From:** Schachter, Michael <MSchachter@willkie.com>
**Sent:** Friday, February 11, 2022 4:21 PM
**To:** Williams, Kristen (USACAC) 2 <Kristen.Williams@usdoj.gov>
**Cc:** Moghaddas, Ali (USACAC) <Ali.Moghaddas@usdoj.gov>; Chao, David (USACAC) 1 <David.Chao@usdoj.gov>;
Lachman, David (USACAC) <David.Lachman@usdoj.gov>; Jackson, Randall <RJackson@willkie.com>; Donnelly, Casey
<CDonnelly@willkie.com>; Brennan, John L. <JBrennan@willkie.com>
**Subject:** Re: Question

Kristen,

Thank you for taking the opportunity to speak with us earlier this week about our outstanding questions. For the sake of
ensuring clarity and avoiding any misunderstandings, we wanted to briefly memorialize below our understanding of the
government's positions on these issues:

- We asked if you could clarify the government's position regarding whether Klasky's claim in his May 24, 2016
proffer interview and his August 14, 2017 interview that the purported "gun to your head" call from Oxman
occurred on May 24, 2016 was true or false. You stated that you will not "get into answering that question," and
that you do not consider your or the government's belief as to the truth or falsity of Mr. Klasky's earlier statement
to be relevant.
- You confirmed that the prosecution team does not recall, and is not withholding documentation or evidence of,
any communications the government had with Klasky or his counsel leading up to or after his grand jury
testimony regarding the inconsistency between Klasky's initial claim that this call occurred on the morning of
May 24, 2016 and his grand jury testimony that it occurred in the late afternoon of May 23, 2016. You agree that,
to the extent any such communications occurred, they would be discoverable *Brady* material that you would have
disclosed.
- You confirmed that the prosecution team does not recall, and is not withholding documentation or evidence of,
any efforts by the government to determine who Vegan (or Savan) Shahnazari and Cheryl Nichols are, and what
their relationship to Klasky was.
- You confirmed that the prosecution team does not recall, and is not withholding documentation or evidence of,
any communications the government had with Klasky or his counsel between his grand jury testimony and his
trial testimony about the purported call with Oxman.
- With respect to the materials the government recently disclosed on January 24, 2022 regarding its investigation
of Mr. Klasky's phone records, the government is not aware of why it did not produce these materials prior to
trial.
- It is your position that the government has turned over all discoverable materials relating to Mr. Klasky's
purported call with Oxman and the government's efforts, if any, to investigate whether such a call occurred on
May 24, 2016. We asked whether the government is withholding as not discoverable any materials that are
otherwise responsive to our requests. You declined to provide an answer and would not confirm or deny that the
government additional materials relating to these topics that the government deems not discoverable.
- You identified the materials that were recently disclosed on January 24, 2022 and determined that there are no
additional discoverable materials relating to these topics by reviewing the government's case file. You would not
specify in more detail how the government performed this review or what searches, if any, the government
conducted to identify relevant materials.
- You stated that you do not recall any specific communications with Klasky about the building that Klasky
testified Oxman and Julian Omidi exited together prior to this call, and you did not know what specific building
you were referencing.

Mike

**Michael S. Schachter**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8102 | Mobile: +1 917 656 0464
mschachter@willkie.com | vCard | www.willkie.com bio

On Feb 4, 2022, at 7:42 PM, Williams, Kristen (USACAC) 2 <Kristen.Williams@usdoj.gov> wrote:

*** EXTERNAL EMAIL ***

Mike,
Over the last weeks, we've provided the responses we believe appropriate to your many questions on this issue.  To the extent you intend to address the same questions on a call, as we said in our email yesterday, we do not anticipate having any further response or information to provide.  If you would still like to have a call, we can be available at 11AM PST on Monday morning.
Thank you,
Kristen

Kristen A. Williams
Assistant United States Attorney
Deputy Chief, Major Frauds Section
U.S. Attorney's Office, Central District of California
1100 U.S. Courthouse | 312 N. Spring St. | Los Angeles, CA 90012
Office: (213) 894-0526 | Fax: (213) 894-6269

---

**From:** Schachter, Michael <MSchachter@willkie.com>
**Sent:** Friday, February 4, 2022 5:37 AM
**To:** Williams, Kristen (USACAC) 2 <kwilliams2@usa.doj.gov>
**Cc:** Moghaddas, Ali (USACAC) <AMoghaddas@usa.doj.gov>; Chao, David (USACAC) 1 <DChao1@usa.doj.gov>; Lachman, David (USACAC) <DLachman@usa.doj.gov>; Jackson, Randall <RJackson@willkie.com>; Donnelly, Casey <CDonnelly@willkie.com>; Brennan, John L. <JBrennan@willkie.com>
**Subject:** [EXTERNAL] Re: Question

Kristen,

Thank you for this but we remain unclear about your response to certain of our requests. Can you please let us know your availability for a meet and confer call today or tomorrow?

Thank you.

Mike

**Michael S. Schachter**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8102 | Mobile: +1 917 656 0464
mschachter@willkie.com | vCard | www.willkie.com bio

> On Feb 2, 2022, at 8:34 PM, Williams, Kristen (USACAC) 2
> <Kristen.Williams@usdoj.gov> wrote:

**\*\*\* EXTERNAL EMAIL \*\*\***

Mike,
The materials at GT_REPORTS_00126536 (agent work product) and
GT_REPORTS_00126538-99 (phone number search results) were prepared or
obtained by FDA SA Sam Kelley. They were not previously identified or
specifically withheld; we located and provided them in response to your
questions about the references to "Sharon Krichna" and "Savanazri" in the
August 14, 2017 interview notes, in the event that they may potentially be
related. We long ago produced Mr. Klasky's interview reports and phone
records. We do not specifically recall any other investigation into or
statements made regarding Mr. Klasky's contacts with Mr. Oxman prior to
the May 24, 2016 proffer and are not withholding any discovery regarding
that investigation and those statements. We have no further responses or
discoverable information to provide related to this matter.
Thank you,

Kristen A. Williams
Assistant United States Attorney
Deputy Chief, Major Frauds Section
U.S. Attorney's Office, Central District of California
1100 U.S. Courthouse | 312 N. Spring St. | Los Angeles, CA 90012
Office: (213) 894-0526 | Fax: (213) 894-6269

---

**From:** Schachter, Michael <MSchachter@willkie.com>
**Sent:** Wednesday, January 26, 2022 2:00 PM
**To:** Williams, Kristen (USACAC) 2 <kwilliams2@usa.doj.gov>
**Cc:** Moghaddas, Ali (USACAC) <AMoghaddas@usa.doj.gov>; Chao, David (USACAC) 1
<DChao1@usa.doj.gov>; Lachman, David (USACAC) <DLachman@usa.doj.gov>; Jackson,
Randall <RJackson@willkie.com>; Donnelly, Casey <CDonnelly@willkie.com>; Brennan,
John L. <JBrennan@willkie.com>
**Subject:** [EXTERNAL] RE: Question

Kristen,

Thank you for providing these materials. The information in these documents helps to
clarify things somewhat but raises some additional questions:

1. Could you please identify for us which individuals prepared, or assisted in the
   investigation and preparation of the new documents the government produced for
   the first time on January 24, 2022 (GT_REPORTS_00126536,

GT_REPORTS_00126587-00126599, and GT_REPORTS_00126538-00126586)?

2. Did the government mark these documents "do not produce" (or its equivalent) in its document management platform? If so, why were these documents so marked? If not, why were these documents not produced prior to trial, or even at trial?

3. Could the government please check its records and confirm whether there are any other undisclosed materials that relate to any attempts by the government to corroborate or investigate this or any other claims made by Klasky, and provide such records (including records of any meetings or communications with Klasky or his counsel that have not been disclosed) to us?

4. In particular, could the government please search for and produce any records relating to the change in Klasky's account of this call between the May 24, 2016 and August 14, 2017 interviews (during which he said that the call occurred on the morning of May 24, 2016 and that he could not hear whether Julian Omidi was with Brian Oxman during the call) and his grand jury testimony (at which he said the call occurred the day before and that he could hear Julian Omidi in the background). Was the government aware prior to Klasky's testimony that his account would change, and if so, is there any documentation of the way in which the government learned of the change in Klasky's account? Relatedly, you asked Klasky during his trial testimony about observing Oxman and Julian Omidi leaving "the building" together, but we do not see anything in the materials that have been disclosed about Klasky's account of where he observed this or what building he was talking about. Did you have any other conversations with Klasky or his counsel about this, and is there any documentation of those discussions?

5. Among the documents the government has disclosed, can you confirm whether there are any documents or communications that relate to this purported "gun to your head" call from Oxman to Klasky, other than the May 24, 2016 interview notes and report, the August 14, 2017 notes, and Klasky's August 16, 2017 grand jury testimony?

6. You stated that the government is "not waiving our right to object to producing other materials that do not fall within our discovery obligations, including the communications you request, should they exist." Please let us know if the government is withholding any materials that are responsive to our requests, and on what basis the government is withholding those materials (to include all notes, reports, memos, email and phone communications, and any other documents that relate to the subject matter).

7. The August 14, 2017 handwritten notes (GT_REPORTS_00104958) show that when the government mentioned the names of Nichols and Shahnazari, Klasky stated he "knows someone named Savan, but nothing." It is not clear to us from the notes what exactly was said here. Did Klasky elaborate at all on who "Savan" is, or did he just say, "but nothing?" Did the government attempt to investigate who Shahnazari or Nichols are and what their relationship to Klasky was?

8. It appears from the newly disclosed materials that the government obtained confirmation as early as November 2016 that the subscribers for the two phone numbers that called Klasky the morning of May 24, 2016 were not Brian Oxman. Did the government confront Mr. Klasky or his counsel with that information at any point before the August 14, 2017 interview? If so, did this occur before or after Mr. Klasky's June 12, 2017 plea agreement or his August 9, 2017 plea hearing?

9. Finally, you mentioned in your email that you already provided the government's response regarding the "basis for eliciting the testimony at issue." I'm not sure if that was intended as a response to the question in my January 18 email as to whether the government acknowledges that Brian Oxman did not call Klasky on

the morning of May 24, 2016?  To be clear, will the government acknowledge
the purported call did not happen that morning, or not?


Thank you again,
Mike



**Michael S. Schachter**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8102 | Mobile: +1 917 656 0464
mschachter@willkie.com | vCard | www.willkie.com bio

---

**From:** Williams, Kristen (USACAC) 2 <Kristen.Williams@usdoj.gov>
**Sent:** Tuesday, January 25, 2022 1:03 AM
**To:** Schachter, Michael <MSchachter@willkie.com>
**Cc:** Moghaddas, Ali (USACAC) <Ali.Moghaddas@usdoj.gov>; Chao, David (USACAC) 1
<David.Chao@usdoj.gov>; Lachman, David (USACAC) <David.Lachman@usdoj.gov>;
Jackson, Randall <RJackson@willkie.com>; Donnelly, Casey <CDonnelly@willkie.com>;
Brennan, John L. <JBrennan@willkie.com>; Williams, Kristen (USACAC) 2
<Kristen.Williams@usdoj.gov>
**Subject:** RE: Question

**\*\*\* EXTERNAL EMAIL \*\*\***

Mike,
Thank you for your patience as we looked into these issues.  We've already
provided our response with respect to our basis for eliciting the testimony at
issue.

Please find attached records relating to the ChoicePoint Clear phone result
details for (310) ███████ and (818) ███████.  They are produced pursuant
to the Court's protective order.  The checks performed on January 12, 2022
were not saved, but the attached at GT_REPORTS_00126529-34 represent
screenshots of the results of the same checks performed today (January 24,
2022) and, immediately following each, what prints if the "Print" button is
selected on the screen.  SA Coleman has advised that these results appear
visually identical to what he reviewed on January 12th.

Also, we were able to locate a spreadsheet concerning Mr. Klasky's telephone
records and have produced it and associated materials at
GT_REPORTS_00126535-99 (attached and also produced subject to the
Court's protective order).

Please see GT_VERIZON_00000001-585 for the records produced in relation
to Mr. Klasky's phone.

To the extent any of the above exceed our discovery obligations, we are not
waiving our right to object to producing other materials that do not fall

within our discovery obligations, including the communications you request, should they exist.
Thank you,
Kristen

Kristen A. Williams
Assistant United States Attorney
Deputy Chief, Major Frauds Section
U.S. Attorney's Office, Central District of California
1100 U.S. Courthouse | 312 N. Spring St. | Los Angeles, CA 90012
Office: (213) 894-0526 | Fax: (213) 894-6269

---

**From:** Schachter, Michael <MSchachter@willkie.com>
**Sent:** Tuesday, January 18, 2022 11:03 AM
**To:** Williams, Kristen (USACAC) 2 <kwilliams2@usa.doj.gov>
**Cc:** Moghaddas, Ali (USACAC) <AMoghaddas@usa.doj.gov>; Chao, David (USACAC) 1 <DChao1@usa.doj.gov>; Lachman, David (USACAC) <DLachman@usa.doj.gov>; Jackson, Randall <RJackson@willkie.com>; Donnelly, Casey <CDonnelly@willkie.com>; Brennan, John L. <JBrennan@willkie.com>
**Subject:** [EXTERNAL] RE: Question

Kristen,

Thank you again for your response.  While I appreciate your trying to get back to us on these issues, I'd ask again that the government consent to a short three-week extension of our filing deadline in light of the information you disclosed in your most recent email.  We do intend to seek relief relating to the government's investigation regarding Klasky's claim about this supposed call from Brian Oxman, and your responses to these questions are relevant to our motion.  Please let me know if you'd like to set up a call to discuss, as we may need to seek court intervention if we cannot agree on an appropriate extension of time.

Additionally, I want to make sure we understand clearly your responses below.  You noted that Brian Oxman's phone number is (562) ███████, a number that did not make a call to Klasky's cell phone the morning of the proffer, and that Klasky did not testify at trial that the call occurred the morning of the proffer.  Does the government acknowledge, then, that no such call between Oxman and Klasky occurred the morning of Klasky's proffer, as I understand the results of the CPClear search appears to confirm?

We appreciate your providing the recent results of the CPClear search, which showed that the two phone numbers that called Klasky the morning of May 24, 2016 are associated with Cheryl A. Nichols and Vegan Shahnazari.  And I understand your clarification that your earlier reference to a Google search of one of these numbers was a reference to a recent search that you performed, not a search that occurred in 2017.  I would note, however, that the government raised these names to Klasky during the August 14, 2017 meeting, as the notes from that meeting include phonetic spellings of the names Cheryl Nichols and Shahnazari (GT_REPORTS_00104958).  To be clear, are you representing that the government does not have any records or recollection as to how the government learned these names in August 2017?

Finally, could you please produce any materials not yet produced that relate to the government's investigation of this matter at any time to the present, including any internal government communications regarding Klasky's claim about the call, any communications with Klasky, his counsel, or anyone else regarding the same, any

communications, including with Verizon, regarding the subpoena for Klasky's phone records, the date of the government's receipt of Klasky's phone records from Verizon, and the results of any searches the government performed in CPClear or any similar program for the numbers in Klasky's phone records? Please let us know if the government is withholding any of this information pursuant to a claim of privilege or for any other reason.

Thank you,
Mike

**Michael S. Schachter**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8102 | Mobile: +1 917 656 0464
mschachter@willkie.com | vCard | www.willkie.com bio

---

**From:** Williams, Kristen (USACAC) 2 <Kristen.Williams@usdoj.gov>
**Sent:** Thursday, January 13, 2022 6:28 PM
**To:** Schachter, Michael <MSchachter@willkie.com>
**Cc:** Moghaddas, Ali (USACAC) <Ali.Moghaddas@usdoj.gov>; Chao, David (USACAC) 1 <David.Chao@usdoj.gov>; Lachman, David (USACAC) <David.Lachman@usdoj.gov>; Jackson, Randall <RJackson@willkie.com>; Donnelly, Casey <CDonnelly@willkie.com>; Brennan, John L. <JBrennan@willkie.com>; Williams, Kristen (USACAC) 2 <Kristen.Williams@usdoj.gov>
**Subject:** RE: Question

**\*\*\* EXTERNAL EMAIL \*\*\***

Mike,

1. The government did not specifically investigate whether Brian Oxman had a "310" number. There was some background information obtained on Mr. Oxman, which I've attached here (GT_REPORTS_00112393-450), provided subject to the Court's protective order. The multiple incoming calls I previously referenced are from phone number (562) ▮▮▮▮▮, which is identified elsewhere in discovery as a cell phone Brian Oxman uses. (*See, e.g.*, SCM1005825)

2. The notes do not specify the "310" number referenced, and we have no independent recollection. The phone records reviewed with Mr. Klasky during the interview were attached to and produced with those notes. (*See* GT_REPORTS_00105068-71)

3. Neither the question to Mr. Klasky at trial nor the answer he supplied specified that the call referenced occurred the morning of Mr. Klasky's May 24, 2016 meeting with the government. My question at trial asked him about a call he received from Brian Oxman before his May 24, 2016 meeting, and multiple such calls are present in Mr. Klasky's phone records from the "562" number above known to be associated with Mr. Oxman, as well as a "310" number coming from Santa Ana (310-▮▮▮▮▮). There was no specific investigation at the time into the 310-▮▮▮▮▮ number.

4. See above.  Mr. Klasky's testimony on this point at trial was also consistent with his grand jury testimony on this same issue.

5. Phone records were shown to Mr. Klasky and attached to the produced notes, as described above.  SA Coleman believes the notation to "get copy of phone records" was a reminder to himself to obtain the records shown to attach to his report, which he appears to have done and included in the attachment at GT_REPORTS_00105068-71.  The government did not subsequently obtain the subscriber information for any of the phone numbers reflected on GT_REPORTS_00105071; I have been informed that CPClear records obtained yesterday reflect that 310-███████ is associated with Cheryl A. Nichols and Cheryl Ann Enterprises, LLC and that 818-███████ is associated with Vegan Shahnazari.

6. There are no such records, nor am I certain that any such Google search even occurred.  I was only speculating based on my Google search at the time of my email to you.

7. The response stands for the prosecution team.

Our responses on this issue do not seem to justify a three-week extension of the time for your motions; please let me know if I'm misunderstanding something.
Thank you,
Kristen

Kristen A. Williams
Assistant United States Attorney
Deputy Chief, Major Frauds Section
U.S. Attorney's Office, Central District of California
1100 U.S. Courthouse | 312 N. Spring St. | Los Angeles, CA 90012
Office: (213) 894-0526 | Fax: (213) 894-6269

---

**From:** Williams, Kristen (USACAC) 2 <kwilliams2@usa.doj.gov>
**Sent:** Tuesday, January 11, 2022 2:41 PM
**To:** Schachter, Michael <MSchachter@willkie.com>
**Cc:** Moghaddas, Ali (USACAC) <AMoghaddas@usa.doj.gov>; Chao, David (USACAC) 1 <DChao1@usa.doj.gov>; Lachman, David (USACAC) <DLachman@usa.doj.gov>; Jackson, Randall <RJackson@willkie.com>; Donnelly, Casey <CDonnelly@willkie.com>; Brennan, John L. <JBrennan@willkie.com>; Williams, Kristen (USACAC) 2 <kwilliams2@usa.doj.gov>
**Subject:** RE: Question

Mike,
I should be able to respond by Thursday to your emails.
Thank you,
Kristen

Kristen A. Williams
Assistant United States Attorney
Deputy Chief, Major Frauds Section
U.S. Attorney's Office, Central District of California
1100 U.S. Courthouse | 312 N. Spring St. | Los Angeles, CA 90012
Office: (213) 894-0526 | Fax: (213) 894-6269

**From:** Schachter, Michael <MSchachter@willkie.com>
**Sent:** Tuesday, January 11, 2022 2:37 PM
**To:** Williams, Kristen (USACAC) 2 <kwilliams2@usa.doj.gov>
**Cc:** Moghaddas, Ali (USACAC) <AMoghaddas@usa.doj.gov>; Chao, David (USACAC) 1 <DChao1@usa.doj.gov>; Lachman, David (USACAC) <DLachman@usa.doj.gov>; Jackson, Randall <RJackson@willkie.com>; Donnelly, Casey <CDonnelly@willkie.com>; Brennan, John L. <JBrennan@willkie.com>
**Subject:** [EXTERNAL] RE: Question

Kristen,

I am writing to follow up on the below.  Can you please provide responses?  In addition, can you please provide us with any subpoenas to Verizon for the records discussed below, and any correspondence regarding the same?  Finally, to provide us with time to consider the relevance of the information you provide to any post-trial motions, please let us know if you have any objection to us receiving a 21-day extension of time to file our post-trial motions.

Thank you.

Mike

**Michael S. Schachter**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8102 | Mobile: +1 917 656 0464
mschachter@willkie.com | vCard | www.willkie.com bio

**From:** Schachter, Michael <MSchachter@willkie.com>
**Sent:** Monday, January 3, 2022 6:02 PM
**To:** 'Williams, Kristen (USACAC) 2' <Kristen.Williams@usdoj.gov>
**Cc:** Moghaddas, Ali (USACAC) <Ali.Moghaddas@usdoj.gov>; Chao, David (USACAC) 1 <David.Chao@usdoj.gov>; Lachman, David (USACAC) <David.Lachman@usdoj.gov>; Jackson, Randall <RJackson@willkie.com>; Donnelly, Casey <CDonnelly@willkie.com>; Brennan, John L. <JBrennan@willkie.com>
**Subject:** RE: Question

Thank you for your response, and wishing all of you a very happy new year.  We have a number of follow-up questions.  Can you please respond to each one individually?

1.     The August 14, 2017 interview notes reference a "(310) number."  GT_REPORTS_00104958. ("BO came from Santa Ana and BO also has a (310) number"; "timing of the '(310)' call").  The interview notes do not identify the "(310) number" or the "'(310)' call".  Did the government investigate if Brian Oxman had a "(310) number"?  In your December 31, 2021 email you reference "multiple incoming calls from Brian Oxman's cell phone."  What is the cell phone number that you are referencing?

2.     What is the "'(310)' call'" that was referred to in the interview and when did Klasky receive this call?  Did the government take any steps to investigate the subscriber ID of

the "'(310)' call" to Klasky, even with a Google search?  Was Klasky ever confronted with the subscriber ID of the "'(310)' call" to determine if Klasky knew the caller?

3.   What steps, if any, did the government take to determine whether phone records reflect any call from Brian Oxman to Mr. Klasky the morning of his interview, as he testified at trial?

4.   If the government did not take any steps to identify any calls from Oxman to Klasky the morning of May 24, 2016, how did the government get comfortable eliciting from Klasky that the call took place?

5.   Did the government obtain any subscriber information for any calls reflected in Klasky's phone records for May 24, 2016?  The notes state:  "Get copy of phone records."  Were any records obtained after the August 14, 2017 interview?  The August 14, 2017 interview notes state that "CK-reviewed phone records."   GT_REPORTS_00104958.  These records that Klasky reviewed are not attached or referenced in the August 14, 2017 interview notes.  What records, including phone records, did the government provide Klasky to review at the August 14, 2017 interview?  It appears that the government already possessed Klasky's phone records for May 24, 2016, but please confirm that fact.

6.   Are there any records reflecting the google search for the number 818-██████, which you noted returned results relating to individuals with the surname "Shahnazari"?  Were records of that google search produced?

7.   In your December 31, 2021 email you stated that you don't "specifically recall what the 2017 notes you reference relate to".  I have attached the relevant page of the August 14, 2017 interview notes for your review.  Please confirm if your initial response was solely your recollection and not that of the entire prosecution team, and that the entire prosecution team has investigated its records to address all of our questions.

Thank you.

Mike

**Michael S. Schachter**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8102 | Mobile: +1 917 656 0464
mschachter@willkie.com | vCard | www.willkie.com bio

---

**From:** Williams, Kristen (USACAC) 2 <Kristen.Williams@usdoj.gov>
**Sent:** Friday, December 31, 2021 6:20 PM
**To:** Schachter, Michael <MSchachter@willkie.com>
**Cc:** Moghaddas, Ali (USACAC) <Ali.Moghaddas@usdoj.gov>; Chao, David (USACAC) 1 <David.Chao@usdoj.gov>; Lachman, David (USACAC) <David.Lachman@usdoj.gov>; Jackson, Randall <RJackson@willkie.com>; Donnelly, Casey <CDonnelly@willkie.com>; Brennan, John L. <JBrennan@willkie.com>; Williams, Kristen (USACAC) 2 <Kristen.Williams@usdoj.gov>
**Subject:** RE: Question

**\*\*\* EXTERNAL EMAIL \*\*\***

Mike,
Hope you and yours are enjoying the holidays.

During trial, I asked Mr. Klasky about a call with Brian Oxman that took place before his May 24, 2016 meeting with the government. Please see GT_Verizon_00000532-585, produced long ago in discovery, for Mr. Klasky's toll records for the period leading up to that meeting, including multiple incoming calls from Brian Oxman's cell phone. I don't specifically recall what the 2017 notes you reference relate to, but can speculate they are associated with a Google search for the number 818-███, which returns results relating to individuals with the surname "Shahnazari." There is no outstanding discovery on this issue.

Thank you,
Kristen

Kristen A. Williams
Assistant United States Attorney
Deputy Chief, Major Frauds Section
U.S. Attorney's Office, Central District of California
1100 U.S. Courthouse | 312 N. Spring St. | Los Angeles, CA 90012
Office: (213) 894-0526 | Fax: (213) 894-6269

---

**From:** Schachter, Michael <MSchachter@willkie.com>
**Sent:** Thursday, December 23, 2021 12:27 PM
**To:** Williams, Kristen (USACAC) 2 <kwilliams2@usa.doj.gov>
**Cc:** Moghaddas, Ali (USACAC) <AMoghaddas@usa.doj.gov>; Chao, David (USACAC) 1 <DChao1@usa.doj.gov>; Lachman, David (USACAC) <DLachman@usa.doj.gov>; Jackson, Randall <RJackson@willkie.com>; Donnelly, Casey <CDonnelly@willkie.com>; Brennan, John L. <JBrennan@willkie.com>
**Subject:** [EXTERNAL] Question

Kristen,

I hope you are getting some time off during the holidays. I am sorry that I need to trouble you with this request, but we do feel there is some urgency given that this is a matter we may wish to raise in post-trial motions.

As you will recall, you elicited from Klasky that he received a call from Brian Oxman on the morning of his proffer. It appears that the government may have investigated whether that call in fact took place. Page 15 of the notes of Klasky's interview on August 14, 2017, GT_Reports_00104958, contain an asterisk next to the note, "Get copy of phone rec.", and suggests that you went over phone records from that morning with Klasky and asked him if he was able to identify a caller noted as "Shavan" and/or "Savanazari." It is unclear how the government came up with those names referenced in the notes. Are there subscriber records or other phone records that prompted the government to ask those questions? What exactly was done in the government's

investigation on this issue, what records were obtained and reviewed, and were all the records pertaining to the government's inquiry produced?

With respect to the government's apparent investigation into phone records and subscriber information regarding the morning of the proffer call as noted above, please also let us know the facts that investigation revealed which provided the government sufficient confidence in the accuracy of Klasky's testimony to elicit it.  Please also produce any records or reports relevant to the government's effort to determine whether Brian Oxman, Julian Omidi or anyone associated with Mr. Omidi in fact called Klasky on the morning of his proffer.

Thank you.

Mike

**Michael S. Schachter**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8102 | Mobile: +1 917 656 0464
mschachter@willkie.com | vCard | www.willkie.com bio

**Important Notice:**  This email message is intended to be received only by persons entitled to receive the confidential information it may contain.  Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged.  Please do not read, copy, forward or store this message unless you are an intended recipient of it.  If you have received this message in error, please forward it back.  Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:**  This email message is intended to be received only by persons entitled to receive the confidential information it may contain.  Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged.  Please do not read, copy, forward or store this message unless you are an intended recipient of it.  If you have received this message in error, please forward it back.  Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:**  This email message is intended to be received only by persons entitled to receive the confidential information it may contain.  Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged.  Please do not read, copy, forward or store this message unless you are an intended recipient of it.  If you have received this message in error, please forward it back.  Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:**  This email message is intended to be received only by persons entitled to receive the confidential information it may contain.  Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged.  Please do not read, copy, forward or store this message unless you are an intended recipient of it.  If you have received this message in error, please forward it back.  Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:**  This email message is intended to be received only by persons entitled to receive the confidential information it may contain.  Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged.  Please do not read, copy, forward or store this message unless you are an intended recipient of it.  If you have received this message in error, please forward it back.  Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:**  This email message is intended to be received only by persons entitled to receive the confidential information it may contain.  Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged.  Please do not read, copy, forward or store this message unless you are an intended recipient of it.  If you have received this message in error, please forward it back.  Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.