TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KRISTEN A. WILLIAMS (Cal. Bar No. 263594)
Deputy Chief, Major Frauds Section
ALI MOGHADDAS (Cal. Bar No. 305654)
DAVID H. CHAO (Cal. Bar No. 273953)
DAVID C. LACHMAN (Cal. Bar No. 261711)
Assistant United States Attorneys
Major Frauds/General Crimes Sections
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2400
     Facsimile: (213) 894-6269
     E-mail:    Kristen.Williams@usdoj.gov
                Ali.Moghaddas@usdoj.gov
                David.Chao@usdoj.gov
                David.Lachman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>             v.<br><br>JULIAN OMIDI,<br>  aka "Combiz Omidi,"<br>  aka "Combiz Julian Omidi,"<br>  aka "Kambiz Omidi,"<br>  aka "Kambiz Beniamia Omidi,"<br>  aka "Ben Omidi,"<br>SURGERY CENTER MANAGEMENT, LLC,<br>and<br>MIRALI ZARRABI, M.D.,<br>  aka "Mirali Akba Ghandchi<br>       Zarrabi,"<br>  aka "M.A. Ghandchi Zarrabi,"<br><br>        Defendants. | No. CR 17-00661(A)-DMG<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT JULIAN OMIDI'S *EX PARTE* APPLICATION TO STAY DEADLINE TO FILE POST-TRIAL MOTIONS PENDING RESOLUTION OF JULIAN OMIDI'S MOTION TO COMPEL |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Kristen A. Williams, Ali Moghaddas, David H. Chao, and David C. Lachman, hereby files its Opposition to defendant Julian Omidi's <u>Ex Parte</u> Application to Stay Deadline to File Post-Trial Motions Pending Resolution of Julian Omidi's Motion to Compel. (Dkt. 1653.)

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 18, 2022          Respectfully submitted,

                                  TRACY L. WILKISON
                                  United States Attorney

                                  SCOTT M. GARRINGER
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                        /s/
                                  KRISTEN A. WILLIAMS
                                  ALI MOGHADDAS
                                  DAVID H. CHAO
                                  DAVID C. LACHMAN
                                  Assistant United States Attorneys

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

After already requesting two extensions from this Court (one over the government's objection), and obtaining over 40 additional days to file his post-trial motion, defendant JULIAN OMIDI ("OMIDI") now seeks a third extension -- for an indefinite period, pending the resolution of his forthcoming motion to compel -- under the guise of a purported discovery violation.  However, OMIDI's newly manufactured grievance is not a violation at all.  At the crux of OMIDI's challenge is the timing of a telephone call from Brian Oxman to Charles Klasky during which Oxman told Klasky, among other things, that if Klasky met with the government, he might as well put a gun to his head.  Although Klasky previously testified that this call took place the day before his meeting with the government, agent notes reflect that Klasky had on other occasions stated such a call occurred while Oxman and OMIDI were in a car together on the morning of the interview, or that there was a call in which Oxman pressured Klasky not to meet with the government while in the car with OMIDI the previous day and another call where Oxman used the "gun-to-the-head" phrase the morning of the interview.

In response to post-trial inquiries from OMIDI's counsel about this purported inconsistency, the government produced an agent-created spreadsheet summarizing Klasky's previously produced telephone toll records.  Additionally, the government also produced potential subscriber information noted in that spreadsheet for two telephone numbers that called Klasky on the morning of his interview -- neither of which have any known connection to Oxman or this case.  Klasky's toll records, which OMIDI has had for years, make clear at

least that Oxman's telephone number did not call Klasky's telephone number on the morning of Klasky's interview with the government, but rather, the day before.  Moreover, OMIDI did not need the subscriber information for two unrelated telephone numbers to confirm whether either belonged to his long-time attorney, and later, "Litigation Coordinator".

Despite OMIDI's years'-long possession of Klasky's toll records, memoranda and agent notes of his prior interviews, and grand jury transcript -- which OMIDI's counsel made much use of at trial -- OMIDI strategically chose not to impeach Klasky with this purported inconsistency.  In fact, OMIDI chose not to address Oxman at all during Klasky's five-day cross examination.  But now, months after the trial has ended, and after OMIDI's more-than-fulsome opportunity to address this issue at trial, OMIDI alleges discovery violations that he claims justify a further extension of his post-trial motion, and presumably much more.  The Court should reject OMIDI's request for yet another extension.

**II.   ARGUMENT**

In an attempt to manufacture grounds for a further extension -- and soon, a new trial -- OMIDI alleges that the government "improperly elicited" from Klasky "testimony that the government knew or should have known was false" (Dkt. 1640 at 6, 1653 at 7), and "failed to fully disclose the results of its investigation into . . . Klasky's claim that he received a threatening phone call from Brian Oxman" (id.).  OMIDI is wrong.

As an initial matter, prior to trial, the government produced all discoverable evidence on this issue, including notes and reports from Klasky's interviews with the government, as well as Klasky's

2

prior testimony and telephone records.  Indeed, many of these materials were extensively used at trial by the defense to either refresh or impeach Klasky during his cross examination that spanned nearly two weeks.

According to these materials, including Klasky's prior testimony, he received at least one and possibly two calls from Oxman before his meeting with the government on May 24, 2016, during which Oxman pressured Klasky not to meet with the government and stated, among other things, that if Klasky met with the government and told the truth, he might as well put a gun to his head.  Klasky's description of the pressure he received from Oxman not to meet with the government has been materially consistent, and is consistent with pressure Oxman applied to Klasky's counsel and other former GET THIN employees.  However, although Klasky previously testified that the call in which Oxman used the particular "gun-to-the-head" phrase took place the day before his interview with the government, an agent's notes reflect Klasky stating on other occasions that the phrase was used by Oxman in a call on the morning of his interview.  Toll records produced to OMIDI years before trial demonstrate that a telephone number associated with Oxman indeed called Klasky multiple times on May 23, 2016, the day before his interview with the government, but not the day of the interview.

Despite possessing the foregoing materials, OMIDI's counsel did not attempt to impeach Klasky with the purported inconsistency during his days'-long cross examination.  In fact, OMIDI's counsel made a tactical decision to omit any reference to Oxman at all during his cross examination so as to preclude the government from re-raising the topic during its redirect examination.  See Tr. 6045-6046 ("We,

3

on cross-examination, did not return to the conversation between Mr. Oxman and Mr. Klasky, that Mr. Klasky testified about. And so we do not anticipate that the government intends to return to that on redirect because we did not touch it on cross. And so we certainly think that would be beyond the scope and inappropriate to return to that subject on redirect.").

After trial, OMIDI's counsel requested additional information related to any government investigation into when the call occurred. Nearly a month ago, on January 24, 2022, in response to counsel's various requests, the government produced an agent-created spreadsheet summarizing some of Klasky's call logs from various time periods and with various individuals, as well as potential subscriber information the agent referenced in that spreadsheet for two telephone numbers that called Klasky on the morning of his interview, neither of which listed Oxman as a potential subscriber. The government stated that to the extent such materials exceeded its discovery obligations, it was not waiving its right to object to producing other materials that do not fall within its discovery obligations.

After receipt of these materials, OMIDI now claims that the "new discovery showed that Mr. Oxman had not called Mr. Klasky on May 24, 2016," Dkt. 1653 at 3; however, this "new discovery" is hardly new at all, but rather, duplicative of Klasky's toll records and other discovery that OMIDI has had for years. Indeed, the agent-created spreadsheet contains nearly all the pertinent information the government received from Verizon Wireless and produced to OMIDI on February 28, 2018. (See GT_Verizon_00000585.) Moreover, OMIDI's dispute with the production of potential subscriber profiles for two

4

telephone numbers that called Klasky on the morning of his interview is a red herring.  OMIDI did not need such subscriber information to know whether or not these numbers were associated with his own agent, Oxman; in fact, OMIDI's January 21, 2022 filing -- days before this production -- confirms as much.  (See Dkt. 1640, Schachter Decl. ¶ 5 ("Mr. Klasky received phone calls from two phone numbers the morning of his proffer interview, neither of which is the phone number that the government knew to be associated with Brian Oxman.")).  Accordingly, OMIDI's latest attempt to invent a discovery violation must fail, and certainly does not justify any further extensions of his post-trial deadline.[1]

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court deny OMIDI's ex parte application.

---

[1] As the government will fully address in its opposition to OMIDI's impending motion to compel, it has complied with all of its discovery obligations in this case, and no further discoverable information exists on this issue.  OMIDI's baseless speculation that more exists is a fishing expedition that will only result in more needless litigation.  See United States v. Lucas, 841 F.3d 796, 809 (9th Cir. 2016) ("[T]o challenge the government's representation that it does not have Brady evidence, [a defendant] must do more than speculate that Brady material exists.").