Michael S. Schachter** (NY 3910205)
Randall W. Jackson** (NY 5274048)
Casey E. Donnelly** (NY4936803)
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8102; Fax: (728) 728-8111
Email: *mschachter@willkie.com*

*Attorneys for Defendant*,
Julian Omidi

[Additional Counsel Continued On Next Page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     *vs*.<br><br>JULIAN OMIDI, INDEPENDENT MEDICAL SERVICES INC., a professional corporation, SURGERY CENTER MANAGEMENT, LLC, and MIRALI ZARABI, M.D.,<br><br>          Defendants.<br><br>                    . | Case No. CR 17-00661(A)-DMG<br><br>[*Assigned to Hon. Dolly M. Gee, District Court Judge*]<br><br>**OMIDI'S POST TRIAL MOTION RENEWING HIS MOTION TO DISMISS BASED ON INTERFERENCE WITH FIFTH AND SIXTH AMENDMENT PRIVILEGE (Dkt. 1162) AND SUPPLEMENTING HIS "JDA" MOTION (Dkt. 770)** |

[Additional Counsel Continued From Previous Page]

Edmund W. Searby** (OH 067455)
**PORTER WRIGHT MORRIS & ARTHUR LLP**
950 Main Avenue, Suite 500
Cleveland, OH 44113
Tel: (216) 443-2545, Fax: (216) 443-9011
Email: *esearby@porterwright.com*

*Appearing specially  ** Appearing pro hac vice*

*Counsel for Defendant Julian Omidi*

# TABLE OF CONTENTS

I.    MR. OMIDI RESPECTFULLY RENEWS, POST TRIAL, HIS MOTION TO DISMISS BASED ON INTERFERENCE WITH FIFTH AND SIXTH AMENDMENT PRIVILEGE (Dkt. 1162).................................................................. 1

    A.    The Government Deliberately Sought Privileged Materials.......................... 3

    B.    Mr. Omidi Was Prejudiced............................................................... 8

    C.    This Court Should Grant An Evidentiary Hearing........................................ 12

II.   MR. OMIDI RESPECTFULLY SUPPLEMENTS HIS "JDA" MOTION (DKT. 770) ................................................................................. 12

III.  CONCLUSION........................................................................ 13

CASE NO. CR 17-00661(A)-DMG                     i

**OMIDI'S POST TRIAL MOTION RENEWING HIS
MOTION TO DISMISS BASED ON INTERFERENCE WITH FIFTH AND SIXTH AMENDMENT PRIVILEGE**

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Belden v. Cty. of San Bernardino,*
   No. EDCV19900RGKKKX, 2020 WL 3129208 (C.D. Cal. June 12, 2020).......4

*City of Colton v. American Promotional Events, Inc.,*
   2014 WL 12740639 (C.D.C.A. June 24, 2014)...................................................6

*Folb v. Motion Picture Indus. Pension & Health Plans,*
   16 F. Supp. 2d 1164 (C.D. Cal. 1998), *aff'd,* 216 F.3d 1082 (9th Cir. 2000).......4

*Gomez v. Vernon,*
   255 F.3d 1118 (9th Cir. 2001) ...............................................................5

*In re Grand Jury Proceedings,*
   814 F.2d 61 (1st Cir. 1987).....................................................................7

*Karubian v. Kaiser Ventures, LLC,*
   No. EDCV 17-597 PSG (EX), 2018 WL 10517183 (C.D. Cal. Oct. 17, 2018)...4

*Mayorga v. Ronaldo,*
   Case No. 2:19-cv-00168, Order .........................................................5, 6

*United States v. Danielson,*
   325 F. 3d 1054 (9th Cir. 2003) ..............................................................3

*United States v. Irwin,*
   612 F. 2d 1182 (9th Cir. 1980) .............................................................12

*United States v. Voight,*
   89 F. 3d 1050, 1066 (3d Cir. 1996) ......................................................12

*U.S. Ethernet Innovations LLC v. Acer Inc.,*
   2014 U.S. Dist. LEXIS 45682 (N.D. Cal. Mar. 31, 2014) ...............................6

*Vargas v. Quest Diagnostics,*
   No. CV198108DMGMRWX, 2021 WL 4642749 (C.D. Cal. Aug. 19, 2021) ....4

*Williams v. Los Angeles Sheriff's Dep't,*
   No. CV 17-05640-AB (EX), 2020 WL 8461520 (C.D. Cal. Sept. 25, 2020) ......4

**Other Authorities**

American Bar Association's Standards for Criminal Justice, 3-3.1(c) .....................7

CASE NO. CR 17-00661(A)-DMG                    ii

**OMIDI'S POST TRIAL MOTION RENEWING HIS**
**MOTION TO DISMISS BASED ON INTERFERENCE WITH FIFTH AND SIXTH AMENDMENT PRIVILEGE**

## I.  MR. OMIDI RESPECTFULLY RENEWS, POST TRIAL, HIS MOTION TO DISMISS BASED ON INTERFERENCE WITH FIFTH AND SIXTH AMENDMENT PRIVILEGE (Dkt. 1162)

Now that Mr. Omidi's trial has concluded, Mr. Omidi respectfully renews his Motion to Dismiss (Dkt. 1162) for intrusion into privileged attorney-client communications and attorney work product.  Following the denial of this Motion on September 17 (Dkt. 1376), the defense learned additional information which further supports the dysfunction of its taint team and the tainting of its Prosecution team, thus meriting the dismissal of the Indictment.

As the Court may recall, in the final weeks leading up to the commencement of trial, the Taint Team, in response to several Orders from the Court, disclosed a number of important facts regarding the Government's document review in this case that had not previously been communicated to Defendants.  As described in the Motion filed at Dkt. 1116, the Taint Team disclosed that over the course of the investigation, the Prosecution Team, on "approximately twenty" different occasions, contacted the Taint Team to explain that potentially privileged material had been permitted to "migrate" to the Prosecution Team's database.  *See* Dkt. 1341 (Declaration of Elisa Fernandez) at § 11.  In response, the Taint Team "locked" 4,892 documents that had previously been accessible to the Prosecution Team.  The Court ordered the Prosecution Team to produce all of these materials to Mr. Omidi's counsel, so that counsel could determine whether any of the

materials that were made available to the Prosecution Team were privileged.   As the Court likely recalls, privileged material was passed to the Prosecution Team. (Trial Tr. 2417:7 – 2418:14 ("The attorney-client privilege is extremely important. . .the whole point of having this taint team system is to prevent [privilege material from being passed to the Prosecution team].  And so I think there needs to be a consequence. . .).  The Court correctly limited the testimony of Government witness Jessica Meyle, given the disclosure to the Prosecution Team of privileged material concerning Mr. Omidi's defenses with respect to Ms. Meyle.   Notably, both the Taint Team and the Prosecution Team initially insisted to the Court "the Filter Team has not turned over privileged documents to the Prosecution Team," *see* Dkt. 1278, an assertion now known to be untrue.

In the middle of trial, defense counsel learned that the Taint Team released to the Prosecution Team hundreds of privileged mediation documents.  Although Mr. Omidi's defense team was extraordinary busy during the trial, counsel has now completed its review of the privileged materials produced to the Prosecutions Team and believes that these new facts warrant reconsideration of the Court's prior Order.   Because the Government has not, and we submit, cannot, discharge its burden to show non-use of the evidence disclosed to the Prosecution Team, we renew our Motion.

### A.     The Government Deliberately Sought Privileged Materials.

First, we respectfully contend that the Government should be required to demonstrate non-use under the burden shifting approach of *United States v. Danielson*, 325 F. 3d 1054 (9th Cir. 2003).  The *Danielson* burden shifting approach applies when the government deliberately obtains privileged information. *See Danielson*, 325 F. 3d at 1072 ("once the government has improperly interfered with the attorney-client relationship and thereby obtained privileged trial strategy information, the prosecutor has the 'heavy burden' of showing non-use.").

The Taint Team revealed to defense counsel in October that it had reviewed, and released to the Prosecution Team, a production of privileged mediation documents that were produced pursuant to a grand jury subpoena on Ms. Jessica Meyle's attorney, Mr. Robertson, that expressly sought all "settlement" communications concerning Ms. Meyle's civil lawsuit.  (Dkt. 1425-2 (June 11, 2013 Grand Jury Subpoena to A. Robertson seeking, in connection with the Meyle Civil Lawsuit, all "settlement agreement(s), drafts of any settlement agreement proposed by opposing counsel, and documents relating to communications between opposing counsel regarding settlement agreements").)

The Government's subpoena for mediation materials was inappropriate, given that there is a "blanket" mediation privilege in the Ninth Circuit that not only protects documents submitted by the parties to the mediator himself, but also

protects "all communications" submitted between the parties as part of the

mediation process, which would include every one of the mediation documents

that the Government sought via the subpoena to Mr. Robertson.  *Folb v. Motion*

*Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164, 1179-80 (C.D. Cal.

1998), *aff'd*, 216 F.3d 1082 (9th Cir. 2000) (affirming the existence of a federal

common law mediation privilege, adopted pursuant to Federal Rule 501, that

protects all mediation communications); *Vargas v. Quest Diagnostics*, No.

CV198108DMGMRWX, 2021 WL 4642749, at *3 n.4 (C.D. Cal. Aug. 19, 2021)

("the weight of authority persuasively suggests the existence of a federal

[mediation] privilege that would itself prevent the requested discovery."); *Belden*

*v. Cty. of San Bernardino*, No. EDCV19900RGKKKX, 2020 WL 3129208, at *5

(C.D. Cal. June 12, 2020) ("Courts in the Ninth Circuit have adopted a federal

mediation privilege under Federal Rule of Evidence 501, 'applicable to all

communications made in conjunction with a formal mediation.' "); *Williams v. Los*

*Angeles Sheriff's Dep't*, No. CV 17-05640-AB (EX), 2020 WL 8461520, at *11 n.9

(C.D. Cal. Sept. 25, 2020) (same); *Karubian v. Kaiser Ventures, LLC*, No. EDCV

17-597 PSG (EX), 2018 WL 10517183, at *4 (C.D. Cal. Oct. 17, 2018) ("the Court

finds that the emails and draft documents were exchanged in the course of or

pursuant to the mediation and are therefore protected, whether it be under the

Local Rule or a federal mediation privilege.").  In other words, given this authority,

CASE NO. CR 17-00661(A)-DMG                    4

**OMIDI'S POST TRIAL MOTION RENEWING HIS**
**MOTION TO DISMISS BASED ON INTERFERENCE WITH FIFTH AND SIXTH AMENDMENT PRIVILEGE**

it was wrong for the Government to intentionally seek, from Mr. Robertson, privileged mediation documents.  *Gomez v. Vernon*, 255 F.3d 1118 (9th Cir. 2001) (sanctions imposed upon Government for intentionally seeking privileged materials); *Mayorga v. Ronaldo*, Case No. 2:19-cv-00168, Order and Report and Recommendation, Dkt. 143, at *22 (D. Nev. October 6, 2021) (dismissing case where party sought and used the opposing side's privileged communications, without seeking a court ruling on whether the documents were in fact privileged). Nor is there any doubt that the Government knew that these were settlement materials; the cover letter from Mr. Robertson made that explicit.  (*See* Ex. 10; Ex. 13; Ex. 12).

Moreover, once the Government received the production from Mr. Robertson, two things should have occurred, which did not.  First, the Taint Team should have reviewed Mr. Robertson's production and marked each of these materials privileged, shielding them from review by the Prosecution Team.[1] Instead, these documents have apparently been available to the Prosecution Team for years.  Second, when the Government received the production from Robertson,

---

[1] Indeed, there is no question that the Taint Team knew that mediation document were privileged; the email correspondence between AUSA Williams and Taint Team AUSA Shim includes confirmation from Ms. Shim that she was marking materials that "seemed related to some settlement ligation" as privileged.  *See* Dkt. 1423-1.

which included the Confidential Settlement Agreement and General Release between Mr. Omidi and Ms. Meyle, the Government should have asked Mr. Robertson whether he had complied with its terms.  The Settlement Agreement between Ms. Meyle and Mr. Omidi (along with other mediation participants) provides that if Mr. Robertson were to receive a "subpoena" seeking any of the parties' settlement materials, Mr. Robertson was obligated to give "10 business days" written notice to Mr. Omidi, so that Mr. Omidi could challenge the subpoena in court, on the grounds that the documents sought were protected by the mediation privilege.  (Dkt. 1425-3 ("Confidential Settlement Agreement and General Release") at ¶ 7.3.)  Had Mr. Robertson given Mr. Omidi the required notice, Mr. Omidi would have moved to quash the subpoena and almost certainly would have won, meaning that these documents would never have made it into the Government's possession in the first place.   *See, e.g.*, *U.S. Ethernet Innovations LLC v. Acer Inc.,* 2014 U.S. Dist. LEXIS 45682, at *18-19 (N.D. Cal. Mar. 31, 2014) (quashing document request that sought mediation materials on the basis of the federal common law mediation privilege); *City of Colton v. American Promotional Events, Inc.*, 2014 WL 12740639, at *3-4 (C.D.C.A. June 24, 2014) (upholding mediation privilege and refusing to permit discovery of mediation-related communications).  Mr. Robertson, however, failed to give Mr. Omidi the required notice, meaning that Mr. Omidi had no opportunity to prevent his

CASE NO. CR 17-00661(A)-DMG                6

privileged materials from being produced to the Government.

Moreover, it appears that when the Government obtained the Settlement Agreement, it did not take any action to ensure that the "notice" provision set forth in Paragraph 7.3 of the Agreement was respected.  Instead, it did the *opposite*:  in a undated letter, the US Attorney's Office wrote to Mr. Robertson and expressly told him to refrain from informing Mr. Omidi (or anyone else) about the "documents [Mr. Robertson]…produced to investigators."  *See* Dkt. 1425-4 (Letter from AUSA Consuelo S. Woodhead to A. Robertson).  In other words, not only did the Government intentionally seek out materials that it knew were protected by privilege, but it also took affirmative steps to ensure that Mr. Omidi would *not* learn that these privileged communications had been produced to the Government. *In re Grand Jury Proceedings*, 814 F.2d 61 (1st Cir. 1987) (prosecutor's letter directing witness not to disclose existence of subpoena *duces tecum* for 90 days, was misconduct); American Bar Association's Standards for Criminal Justice, 3-3.1(c) ("A prosecutor should not advise any person or cause any person to be advised to decline to give to the defense information which such person has the right to give.").  The Government's actions further prevented Mr. Omidi from learning that his privileged communications had been produced to the Government and prevented him from filing a belated motion to quash the subpoena and for the documents to be destroyed.  Instead, the Prosecution Team was provided with the

strategic advantage of having years to review these materials in connection with putting together its case, as discussed in further detail below.

**B.    Mr. Omidi Was Prejudiced.**

Although we submit that it is the Government's burden to prove non-use , and not Mr. Omidi's burden to prove prejudice, Mr. Omidi was prejudiced by the release of these mediation materials.  As discussed herein, the Taint Team turned over a host of privileged mediation materials, including a confidential mediation brief drafted in connection with the Meyle Lawsuit (the "Meyle Mediation Brief") and attorney work product of Mr. Omidi's attorney, Konrad Trope (the "Trope Memorandum"), as well as numerous drafts of various statements from former Weight Loss Centers employees and doctors that disclaimed various facts and admitted to others.  *See, e.g.*, Ex. 1-5, 7-18 (privileged mediation materials)[2].

These materials gave the Government an insight that it should never have possessed.  As previously described by Mr. Omidi in connection with his motion to preclude Ms. Meyle's testimony, *see* Dkt. 1425, the Trope Memorandum includes Mr. Trope's analysis of the best way to respond to Ms. Meyle's allegation.

The fact that the Government chose to *call* Ms. Meyle to the witness stand may very well be a function of having reviewed the Trope Memorandum and other

---

[2] Exhibit 6 intentionally omitted.

mediation materials regarding Ms. Meyle's lawsuit.  (*See, e.g.,* Ex. 17).  When calling any witness, the Government must assess, for itself, not only how the witness will come across during direct, but what sort of injury can be imposed upon the Government's case when the witness is cross-examined by the defense. Ordinarily, that is a calculation that the Government must make based on its own investigation and its own assessment of the witness's credibility as the Government does not know what lines of examination the defense will pursue or what rebuttal or impeachment evidence the defense may possess.   Here, however, the Government had access in advance to the lines of cross-examination that Ms. Meyle was likely to face, via the privileged communications, including that found at Ex. 17, and thus, was substantially aided in its calculation regarding whether to call Ms. Meyle as a witness.

The privileged mediation material that were improperly produced to the Government also informed other aspects of the Government's trial strategy, to the detriment of Mr. Omidi.  For example, the Government very well may have called Dyanne Deuel, a surgical tech, to testify about her experience working at Get Thin, which she has previously claimed, publicly, as being a hostile work environment. However, after reading the privileged materials, the Government learned that Ms, Deuel was willing to admit that she never once raised that complaint while working at Get Thin and indeed, conceded that she left of her own accord, after

asking for leave for a family issue and then never sought to return to work.  (Ex. 3).  Likewise, the Government may very well have wanted to call Dr. Arman Karapetyan, potentially to say that patients underwent unnecessary medical procedures.  However, upon reading the privileged materials, the Government realized it could not say this, because Dr. Karapetyan would state that all of the medical procedures that he authorized, as the internist who gave clearance for the bariatric surgeries, were medically necessary. (Ex. 5).  Furthermore, the Government was able to make a far more educated decision than it otherwise would have been able to make with respect to patient Bridget Marie Sandoval, who conceded that she had no first hand information (*i.e.*, testimony that she could impart to the jury from the witness stand) regarding the height or weight information that was sent to her insurance company and moreover, would be willing to state on the witness stand that Julian Omidi had, to her knowledge, no involvement in, or responsibility for, her medical care.  (Ex. 15).  Similarly, Sandoval was unable to state that the entries in Get Thin's records concerning her weight and height were inaccurate—a concession that virtually guaranteed that the Government would not call her as a witness, knowing that she would be able to be cross-examined on this point.  (Ex. 18).

The privileged materials also include facts that would otherwise have taken the Government a substantial amount of time to ascertain.  For example, the

negotiations between the parties included a concession that there were approximately 20,000 persons who responded to a Get Thin advertisement and were billed for a medical procedure.  (Ex. 8).  That is a number that otherwise could have taken the FBI years to ascertain, had it not been able to bypass that step by just reviewing communications that should never have been available to the Government's Prosecution Team.  Furthermore, the Government had access to materials that foreclosed certain allegations that the Government might otherwise have pursued.  For example, the mediation materials make clear that the various doctors employed by Get Thin did not consider the creation of the "4-letter" companies to have involved any identity theft, and thus, the Government's identity theft allegations do not involve allegations concerning the "4-letter"companies, even though the Government has attempted, throughout this litigation, to suggest that there was something improper about the creation of these "4-letter" companies.  (Ex. 9; Ex. 11).   In short, the Prosecution Team has had access to privileged information which was used to its unfair advantage and Mr. Omidi's substantial prejudice.  Moreover, there can be no question that the Prosecution Team intentionally sought privileged communications during its investigation, which is striking evidence of a callous disregard for the Sixth Amendment's protections.  It is for this reason that we respectfully renew our Motion to Dismiss on the basis of interference with privilege.

CASE NO. CR 17-00661(A)-DMG                              11

**OMIDI'S POST TRIAL MOTION RENEWING HIS
MOTION TO DISMISS BASED ON INTERFERENCE WITH FIFTH AND SIXTH AMENDMENT PRIVILEGE**

### C.     This Court Should Grant An Evidentiary Hearing.

Mr. Omidi also renews his request for an evidentiary hearing.  (Dkt. 1162 at 12-13).  An evidentiary hearing is "required" if the motion raises "a material issue of fact." *United States v. Irwin*, 612 F. 2d 1182, 1187 (9th Cir. 1980); *see also United States v. Voight*, 89 F. 3d 1050, 1066 (3d Cir. 1996).  Here, Mr. Omidi is entitled to a hearing to address the Government's procedure for review of privileged information, including procedures regarding its Taint Team as well as the fact that the Government not only intentionally sought out materials that it knew were protected by privilege but also took affirmative steps to ensure that Mr. Omidi would not learn that these privileged communications had been produced to the Government.  Now considering the totality of evidence demonstrating the lack of regard for Fifth and Sixth Amendment rights, basic fairness and due process requires a hearing in this matter.

## II.     MR. OMIDI RESPECTFULLY SUPPLEMENTS HIS "JDA" MOTION (DKT. 770)

In reviewing the record, Mr. Omidi has observed that the exhibits accompanying the Declaration of Robert Rice, which was filed as Ex. E to Mr. Omidi's "JDA" motion (Dkt. 770) may have been inadvertently omitted when that motion was filed by Mr. Omidi's prior counsel, Peter Johnson.  The exhibits to that Declaration are attached here, as Ex. 19.

III.    **CONCLUSION**

Mr. Omidi respectfully requests that the Court dismiss the indictment on the basis of interference with Mr. Omidi's privilege under the Fifth and Sixth Amendments.

DATED:  March 30, 2022

Respectfully submitted,

**WILLKIE FARR & GALLAGHER LLP**

By: s/ Michael S. Schachter
    MICHAEL S. SCHACHTER
    RANDALL W. JACKSON
    CASEY E. DONNELLY
    JOHN L. BRENNAN

    ATTORNEYS FOR DEFENDANT
    JULIAN OMIDI