TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KRISTEN A. WILLIAMS (Cal. Bar No. 263594)
Deputy Chief, Major Frauds Section
ALI MOGHADDAS (Cal. Bar No. 305654)
DAVID H. CHAO (Cal. Bar No. 273953)
DAVID C. LACHMAN (Cal. Bar No. 261711)
Assistant United States Attorneys
Major Frauds/General Crimes Sections
       1100 United States Courthouse
       312 North Spring Street
       Los Angeles, California 90012
       Telephone: (213) 894-2400
       Facsimile: (213) 894-6269
       E-mail:     Kristen.Williams@usdoj.gov
                   Ali.Moghaddas@usdoj.gov
                   David.Chao@usdoj.gov
                   David.Lachman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 17-661(A)-DMG |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT JULIAN OMIDI'S MOTION FOR NEW TRIAL PURSUANT TO RULE 33; DECLARATION OF DAVID C. LACHMAN AND EXHIBIT |
| v. | |
| JULIAN OMIDI,<br>  aka "Combiz Omidi,"<br>  aka "Combiz Julian Omidi,"<br>  aka "Kambiz Omidi,"<br>  aka "Kambiz Beniamia Omidi,"<br>  aka "Ben Omidi," and<br>SURGERY CENTER MANAGEMENT, LLC, | Hearing Date: May 11, 2022<br>Hearing Time: 2:30PM<br>Location:     Courtroom of the<br>              Hon. Dolly M. Gee |
| Defendants. | |

     Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorneys Kristen A. Williams,

Ali Moghaddas, David H. Chao, and David C. Lachman, hereby files its

1   Opposition to defendant Julian Omidi's Motion for New Trial Pursuant

2   to Rule 33.  (Dkt. 1693.)

3       This Opposition is based upon the attached memorandum of points

4   and authorities, the attached Declaration of David C. Lachman and

5   exhibits thereto, the files and records in this case, and such

6   further evidence and argument as the Court may permit.

7   Dated: May 6, 2022              Respectfully submitted,

8                                   TRACY L. WILKISON
                                    United States Attorney
9
                                    SCOTT M. GARRINGER
10                                  Assistant United States Attorney
                                    Chief, Criminal Division
11

12                                  _____
                                    KRISTEN A. WILLIAMS
13                                  ALI MOGHADDAS
                                    DAVID H. CHAO
14                                  DAVID C. LACHMAN
                                    Assistant United States Attorneys
15
                                    Attorneys for Plaintiff
16                                  UNITED STATES OF AMERICA

17

18

19

20

21

22

23

24

25

26

27

28

                                    2

# TABLE OF CONTENTS

I.   INTRODUCTION..................................................................1

II.  LEGAL STANDARD FOR MOTIONS FOR NEW TRIAL.......................2

III. DEFENDANT'S MOTION SHOULD BE DENIED BECAUSE THERE WAS
     NEITHER A CONSTRUCTIVE AMENDMENT NOR A VARIANCE..............2

     A.   Legal Standard Regarding Constructive Amendment and
          Variance..............................................................3

     B.   There Was No Constructive Amendment.......................4

     C.   There Was No Variance......................................14

IV.  DEFENDANT'S MOTION SHOULD BE DENIED BECAUSE THE RECKLESS
     INDIFFERENCE INSTRUCTION WAS PROPER...........................17

V.   DEFENDANT'S MOTION SHOULD BE DENIED BECAUSE THE
     GOVERNMENT'S STATEMENTS IN CLOSING ARGUMENTS WERE NOT
     REVERSIBLE ERROR.............................................................20

     A.   Government Counsel's Rebuttal Remarks Do Not
          Constitute Reversible Error..............................20

     B.   A Single Errant Chat Message Displayed During Closing
          Argument Does Not Constitute Reversible Error...........25

VI.  THE GOVERNMENT DID NOT DISTORT THE COURT'S RULE 403
     DETERMINATION REGARDING KLASKY'S TESTIMONY....................28

VII. CONCLUSION..................................................................28

i

# TABLE OF AUTHORITIES

**Cases**

Fields v. Brown,
   503 F.3d 755 (9th Cir. 2007) ................................. 27

Gray v. Raines,
   662 F.2d 569 (9th Cir. 1981) ................................. 12

Jeffers v. United States,
   392 F.2d 749 (9th Cir. 1968) ................................. 13

McLean v. United States,
   No. CIV. 3:06CV293O3T, 2009 WL 2767122 (W.D.N.C. Aug. 27, 2009)  8

United States v. Abaji,
   820 F. App'x. 544, 546 (9th Cir. 2020) ....................... 6

United States v. Adamson,
   291 F.3d 606 (9th Cir. 2002) ................................. 15

United States v. Aguila,
   277 F. App'x 752 (9th Cir. 2008) ............................. 9

United States v. Alvarado,
   838 F.2d 311 (9th Cir. 1987) ................................. 27

United States v. Antonakeas,
   255 F.3d 714 (9th Cir. 2001) ................................. 4

United States v. Barrios-Siguenza,
   567 F. App'x 519 (9th Cir. 2014) ............................ 13

United States v. Cancelliere,
   69 F.3d 1116 (11th Cir. 1995) ............................... 12

United States v. Carlson,
   616 F.2d 446 (9th Cir. 1980) ................................. 13

United States v. Davis,
   854 F.3d 601 (9th Cir. 2017) ................................. 12

i

United States v. Dearing,

   504 F.3d 897 (9th Cir. 2007) .............................. 5, 18

United States v. Del Toro-Barboza,

   673 F.3d 1136 (9th Cir. 2012) ........................... 20, 22

United States v. Dipentino,

   242 F.3d 1090 (9th Cir. 2001) ................................ 13

United States v. Dixon,

   201 F.3d 1223 (9th Cir. 2000) ................................ 18

United States v. Gaines,

   8 F. App'x 635 (9th Cir. 2001) ............................... 9

United States v. Gay,

   967 F.2d 322 (9th Cir. 1992) ............................. 18, 19

United States v. Gibson,

   875 F.3d 179 (5th Cir. 2017) ................................. 7

United States v. Hartz,

   458 F.3d 1011 (9th Cir. 2006) ............................... 11

United States v. Hathaway,

   798 F.2d 902, 912 (6th Cir. 1986) ......................... 6, 7

United States v. Heredia,

   483 F.3d 913 (9th Cir. 2007) .............................. 5, 8

United States v. Holmes,

   413 F.3d 770 (8th Cir. 2005) ............................. 24, 25

United States v. Hui Hsiung,

   778 F.3d 738 (9th Cir. 2015) ................................. 3

United States v. Jewell,

   532 F.2d 697 (9th Cir. 1976) ................................. 5

United States v. Jimenez Recio,

   371 F.3d 1093 (9th Cir. 2004) ............................... 18

United States v. John,

   683 F. App'x 589 (9th Cir. 2017) .............................. 22

United States v. Kellington,

   217 F.3d 1084 (9th Cir. 2000) ................................. 2

United States v. Kojayan,

   8 F.3d 1315 (9th Cir. 1993) .................................. 27

United States v. Lester,

   749 F.2d 1288 (9th Cir. 1984) ................................ 20

United States v. Lincoln,

   630 F.2d 1313 (8th Cir. 1980) ................................. 2

United States v. Lloyd,

   807 F.3d 1128 (9th Cir. 2015) ............................. 6, 19

United States v. Lockhart,

   844 F.3d 501 (5th Cir. 2016) ................................ 12

United States v. Lopez-Alvarez,

   970 F.2d 583 (9th Cir. 1992) ............................. 20, 22

United States v. Love,

   535 F.2d 1152 (9th Cir. 1976) ................. 6, 7, 10, 11, 16

United States v. Mancuso,

   718 F.3d 780 (9th Cir. 2013) ................................. 3

United States v. McAllister,

   747 F.2d 1273 (9th Cir. 1984) ................................ 9

United States v. McCourty,

   562 F.3d 458 (2d Cir. 2009) .................................. 2

United States v. McLain,

   823 F.2d 1457 (11th Cir. 1987) .............................. 25

United States v. Mellor,

   373 F. App'x 656 (8th Cir. 2010) ............................. 7

United States v. Miller,

    471 U.S. 130 (1985) ................................... 3, 11, 12

United States v. Munoz,

    233 F.3d 1117 (9th Cir. 2000) ............................... 18

United States v. Navarro,

    608 F.3d 529 (9th Cir. 2010) ............................ 20, 22

United States v. Nobari,

    No. 1:03-CR-05453-OWW, 2006 WL 2535052 (E.D. Cal. Aug. 30, 2006)

    ........................................................ 18

United States v. Nosal,

    844 F.3d 1024 (9th Cir. 2016) ........................... 8, 14

United States v. Nwokedi,

    710 F. App'x 91 (3d Cir. 2017) ........................... 7, 8

United States v. Paiz,

    905 F.2d 1014 (7th Cir. 1990) ............................ 5, 6

United States v. ORS, Inc.,

    997 F.2d 628 (9th Cir. 1993) ................................. 9

United States v. Palomo,

    714 F. App'x 799 (9th Cir. 2018) ........................... 22

United States v. Parker,

    991 F.2d 1493 (9th Cir. 1993) ............................... 21

United States v. Pimentel,

    654 F.2d 538 (9th Cir. 1981) ................................. 2

United States v. Platter,

    514 F.3d 782 (8th Cir. 2008) ............................... 14

United States v. Rodrigues,

    159 F.3d 439 (9th Cir. 1998) ............................... 24

United States v. Rodriguez,
    880 F.3d 1151 (9th Cir. 2018) .................................. 19
United States v. Ruiz,
    710 F.3d 1077 (9th Cir. 2013) .................................. 22
United States v. Sanchez,
    176 F.3d 1214 (9th Cir. 1999) .............................. 23, 24
United States v. Sanchez-Soto,
    617 F. App'x 695 (9th Cir. 2015) .............................. 27
United States v. Sanders,
    996 F.3d 397 (5th Cir. 2020) .................................. 12
United States v. Shipsey,
    190 F.3d 1081 (9th Cir. 1999) .................................. 13
United States v. Starke,
    62 F.3d 1374 (11th Cir. 1995) ................................. 8
United States v. Thomas,
    893 F.2d 1066 (9th Cir. 1990) .................................. 12
United States v. Tirouda,
    394 F.3d 683 (9th Cir. 2005) .................................. 19
United States v. Tomsha-Miguel,
    766 F.3d 1041 (9th Cir. 2014) .................................. 22
United States v. Ward,
    747 F.3d 1184 (9th Cir. 2014) ...................... 3, 4, 11, 14
United States v. Wilbur,
    674 F.3d 1160 (9th Cir. 2012) ................................. 3
United States v. Williams,
    989 F.2d 1061 (9th Cir. 1993) .................................. 26
United States v. Young,
    470 U.S. 1 (1985) ............................................. 23

United States v. Zackery,

   494 F.3d 644 (8th Cir. 2007) ................................. 14

Williams v. Borg,

   139 F.3d 737 (9th Cir. 1998) ................................. 22

**Statutes**

18 U.S.C. § 1341 ............................................. 18

**Other**

Fed. R. Crim. P. 30 ......................................... 18

Fed. R. Crim. P. 33 .......................................... 2

Fed. R. Crim. P. 52 ......................................... 18

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.    INTRODUCTION**

3         Contrary to defendant JULIAN OMIDI's ("OMIDI") contentions, the

4 Court's jury instructions on the law of deliberate ignorance and

5 reckless indifference did not constructively amend the first

6 superseding indictment (the "indictment" or "FSI") or cause a fatal

7 variance.  (Dkt. 1693 ("Motion" or "Mot.".)  Far from rewriting the

8 indictment, these instructions merely provided a means of inferring

9 the elements of knowledge and intent through circumstantial evidence,

10 and OMIDI himself concedes that the government's proof at trial

11 conformed to the indictment.  (Dkt. 1533 ("OMIDI Trial Memorandum")

12 at 1-2.)  Moreover, OMIDI's protestation that he had no notice that

13 the government would seek these jury instructions is false.  The

14 government expressly informed OMIDI before trial that it intended to

15 request the instructions and believed the evidence would support

16 them.  The instructions were based on longstanding Ninth Circuit

17 authority, and their issuance could come as no surprise to OMIDI's

18 roster of sophisticated lawyers.

19         OMIDI's claims of prosecutorial misconduct fare no better.  A

20 single errant PowerPoint slide displayed momentarily in closing was

21 cumulative of abundant other evidence proving OMIDI's direction of

22 the fraudulent scheme, and government counsel's isolated comments in

23 rebuttal characterizing the defense's arguments as a "con job" were

24 aimed at critiquing the defense's rhetorical tactics, included the

25 repeated references to a government witness as a "con man," and at

26 refocusing the jury on the evidence.  Any potential prejudice was

27 neutralized by the Court's prompt and repeated curative instructions.

28 Viewing the three-month trial as a whole, and considering the wealth

1

1  of incriminating evidence, OMIDI cannot show that the government's

2  actions meet the standard for reversible error.

3    The motion should be denied.

4  **II.   LEGAL STANDARD FOR MOTIONS FOR NEW TRIAL**

5    Rule 33 provides that "upon the defendant's motion, a court may

6  vacate any judgement and grant a new trial if the interest of justice

7  so requires."  Fed. R. Crim. P. 33(a).  In ruling on a Rule 33

8  motion, a court's "authority should be exercised sparingly and with

9  caution."  United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir.

10 1980).  Because a jury's guilty verdict is presumptively valid, OMIDI

11 bears the burden of demonstrating that a new trial is warranted.  See

12 generally 3 Wright, King et. al., Federal Practice and Procedure,

13 § 551, at 456-56 (3d ed. 2004 & 2008 Supl.).  A new trial "should be

14 granted only in exceptional cases in which the evidence preponderates

15 heavily against the verdict."  United States v. Pimentel, 654 F.2d

16 538, 545 (9th Cir. 1981) (citation omitted); see also United States

17 v. Kellington, 217 F.3d 1084, 1097 (9th Cir. 2000) (new trial motion

18 should be granted only where "the evidence preponderates sufficiently

19 heavily against the verdict" such that "a serious miscarriage of

20 justice may have occurred") (citation omitted).  In other words, to

21 overturn a guilty verdict, there must be a "real concern that an

22 innocent person may have been convicted."  United States v. McCourty,

23 562 F.3d 458, 475 (2d Cir. 2009).

24
25 **III. DEFENDANT'S MOTION SHOULD BE DENIED BECAUSE THERE WAS NEITHER A**
   **CONSTRUCTIVE AMENDMENT NOR A VARIANCE**

26   The Court properly instructed the jury on the law of deliberate

27 ignorance and reckless indifference based on the evidence at trial.

28 The instructions did not alter the indictment or the proof, but

1  merely explained a means by which the jury could infer knowledge and

2  intent.  OMIDI's arguments regarding constructive amendment and

3  variance are therefore without merit and should be denied.

### A. Legal Standard Regarding Constructive Amendment and Variance

6  A constructive amendment occurs "when the defendant is charged

7  with one crime but, in effect, is tried for another crime."  United

8  States v. Mancuso, 718 F.3d 780, 792 (9th Cir. 2013) (quotation

9  omitted).  This occurs "where (1) there is a complex of facts

10 [presented at trial] distinctly different from those set forth in the

11 charging instrument, or (2) the crime charged [in the indictment] was

12 substantially altered at trial, so that it was impossible to know

13 whether the grand jury would have indicted for the crime actually

14 proved."  United States v. Hui Hsiung, 778 F.3d 738, 757-58 (9th Cir.

15 2015) (internal quotation marks omitted).  A variance, on the other

16 hand, occurs when the evidence at trial proves facts that are

17 materially different from those alleged in the indictment.  United

18 States v. Ward, 747 F.3d 1184, 1189 (9th Cir. 2014).

19 Further, constructive amendment only applies to the broadening,

20 rather than the narrowing, of indictments.  United States v. Wilbur,

21 674 F.3d 1160, 1178 (9th Cir. 2012).  For example, in United States

22 v. Miller, the Supreme Court found no constructive amendment where

23 the complaint was "not that the indictment failed to charge the

24 offense for which he was convicted, but that the indictment charged

25 more than was necessary."  471 U.S. 130, 140 (1985) (finding no

26 constructive amendment where defendant was charged with several

27 fraudulent acts constituting mail fraud, but the proof at trial only

28 concerned one of those fraudulent acts).  Thus, "[c]onvictions

1    generally have been sustained as long as the proof upon which they

2    are based corresponds to an offense that was clearly set out in the

3    indictment."  United States v. Antonakeas, 255 F.3d 714, 721 (9th

4    Cir. 2001).

5        **B.   There Was No Constructive Amendment**

6        OMIDI's claim that the Court constructively amended the

7    indictment by reciting the law of deliberate ignorance and reckless

8    indifference is meritless.  A constructive amendment occurs only

9    "when the charging terms of the indictment are altered, either

10   literally or in effect," such that "the defendant's conviction could

11   be based on conduct not charged in the indictment."  Ward, 747 F.3d

12   at 1190-91.  The deliberate ignorance and reckless indifference

13   instructions did not work such an alteration.  Rather, the indictment

14   sufficiently alleges that OMIDI acted knowingly with respect to every

15   count. (FSI ¶¶ 37, 44, 47, 49, 53, 57.)  Similarly, it is undisputed

16   that the jury instructions correctly listed the elements of each

17   count in conformity with the Ninth Circuit model instructions,

18   including that the government had to prove that OMIDI acted knowingly

19   with respect to every count. (See Dkt. 1563, Jury Instr. Nos. 25,

20   26, 31, 32, 35, 37.)  Far from rewriting the indictment, the

21   deliberate ignorance and reckless indifference instructions merely

22   provided a means of inferring the elements of knowledge and intent.

23   (Id., Jury Instr. No. 33 ("You may find that the defendant acted

24   knowingly if . . ."); Jury Instr. No. 34 ("[T]he state of mind of the

25   defendant may be proved by circumstantial evidence.  It can also be

26   shown if the defendants acted with reckless indifference to the truth

27   or falsity of their statements.")  Moreover, the Court's instructions

28   made clear that the government had to prove that defendant acted

4

knowingly and with intent to defraud, which meant the intent to deceive and cheat, (Id., Jury Instr. Nos. 25, 26), and specified that the disputed instructions were not a substitution of the knowledge element for some other mens rea. (Id., Jury Instr. No. 33 ("You may not find such knowledge . . . if you find that the defendant simply negligent, careless, or foolish.")) Thus, the Court did not rewrite the indictment.

Contrary to OMIDI's assertion, the deliberate ignorance and reckless indifference instructions did not inject "different elements" (Mot. at 6:28) or alternative "statutory grounds" of conviction (Mot. at 14:28). Rather, as the Ninth Circuit model instructions reflect, it is well settled that deliberate ignorance and reckless indifference are merely ways of proving knowledge and intent through circumstantial evidence. See United States v. Heredia, 483 F.3d 913, 918 (9th Cir. 2007) ("'[K]nowingly' in criminal statutes is not limited to positive knowledge, but includes the state of mind of one who does not possess positive knowledge only because he consciously avoided it.") (quotation omitted); United States v. Jewell, 532 F.2d 697, 700 (9th Cir. 1976) ("To act 'knowingly,' therefore, is not necessarily to act only with positive knowledge, but also to act with an awareness of the high probability of the existence of the fact in question. When such awareness is present, 'positive' knowledge is not required."); United States v. Dearing, 504 F.3d 897, 903 (9th Cir. 2007) (holding that "the intent to defraud may be proven through reckless indifference to the truth or falsity of statements"). Thus, OMIDI's claims that these instructions "broaden" or "dilute" the mens rea alleged (Mot. at 10:14, 15:27) are simply incorrect. See also United States v. Paiz,

5

1    905 F.2d 1014, 1022 (7th Cir. 1990), <u>abrogated on other grounds by</u>

2    <u>Gozlon-Peretz v. United States</u>, 498 U.S. 395 (1991) ("The ostrich

3    instruction does not add an element to an offense, nor does it take

4    one away. It simply informs the jury of the meaning of 'knowledge'

5    and of certain types of evidence that show its presence.").

6        OMIDI fails to identify a single case holding that the

7    deliberate ignorance or reckless indifference instructions caused a

8    constructive amendment or variance, because none exist.  Instead,

9    federal courts have uniformly rejected these arguments, starting with

10   the Ninth Circuit.  In <u>United States v. Love</u>, the defendant argued

11   that the Court "rewrote the indictment" when it instructed the jury

12   on reckless indifference, namely, that defendant made false and

13   fraudulent representations if he made them with reckless indifference

14   as to their truth or falsity.  535 F.2d 1152, 1157-58 (9th Cir.

15   1976).  The defendant contended that the instruction impermissibly

16   varied from the indictment, which contained an allegation that he

17   "well knew" the statements he made were misrepresentations.  <u>Id.</u> at

18   1158.  The Ninth Circuit rejected the argument, reasoning that "[o]ne

19   who acts with reckless indifference as to whether a representation is

20   true or false is chargeable as if he had knowledge of its falsity."

21   <u>Id.</u> (quotation omitted).  Four decades later, the Ninth Circuit

22   reached the same conclusion in <u>United States v. Lloyd</u>, 807 F.3d 1128

23   (9th Cir. 2015), holding that the district court did not

24   constructively amend mail and wire fraud charges by instructing the

25   jury on reckless indifference.  <u>Lloyd</u>, 807 F.3d 1128at 1164.  <u>See</u>

26   <u>also</u> <u>United States v. Abaji</u>, 820 F. App'x. 544, 546 (9th Cir. 2020)

27   (citing <u>Lloyd</u>, holding jury instruction on reckless indifference did

28   not cause constructive amendment); <u>United States v. Hathaway</u>, 798

F.2d 902, 912 (6th Cir. 1986) (citing <u>Love</u>, finding jury instruction on reckless indifference did not cause constructive amendment or material variance).

Other courts similarly have rejected the argument that the deliberate ignorance instruction constructively amends the indictment.  For example, in <u>United States v. Gibson</u>, 875 F.3d 179 (5th Cir. 2017), the Fifth Circuit rejected the argument that the deliberate ignorance instruction constructively amended the indictment.  <u>Id.</u> at 196-97.  The panel found persuasive the fact that the jury instruction tracked almost verbatim the Fifth Circuit Pattern Instruction, which the court "ha[s] affirmed time and again as a correct statement of law."  <u>Id.</u> at 197.  The panel further explained that its "repeated endorsement of deliberate ignorance instructions in fraud and conspiracy cases . . . squares with [its] conception of deliberate ignorance instructions as informing a jury that it may consider evidence of the defendant's charade of ignorance as circumstantial proof of guilty knowledge."  <u>Id.</u> (quotations and citations omitted).

Indeed, circuit courts across the nation are in accord.  <u>See</u> <u>United States v. Mellor</u>, 373 F. App'x 656, 657 (8th Cir. 2010) (willful blindness instruction did not constructively amend indictment because "[t]he jury instructions listed the elements of the false-claim offense, including that [defendant] must have known the claim was false, fictitious, or fraudulent; and the willful-blindness instruction merely provided a means of inferring that knowledge"); <u>United States v. Nwokedi</u>, 710 F. App'x 91, 94 (3d Cir. 2017) (the "willful blindness instruction did not constructively amend the indictment because it did not broaden[] the possible bases

for conviction," but "merely described an alternative to the knowledge element"); <u>United States v. Starke</u>, 62 F.3d 1374 (11th Cir. 1995) (deliberate ignorance instruction did not expand the money laundering charges in indictment); <u>McLean v. United States</u>, No. CIV. 3:06CV293O3T, 2009 WL 2767122, at *6 (W.D.N.C. Aug. 27, 2009) (willful blindness instruction "did not 'broaden' the charged offenses just because those words were not alleged in the indictment," and "the law does not require that the words 'willful blindness' appear in the charged offenses before the Court may instruct on how this legal doctrine might apply to the facts of this case").

Finally, even if the Court construes "deliberate ignorance" or "reckless indifference" as "lesser" types of knowledge (under <u>Heredia</u>, they are not), the Ninth Circuit has held that instructing the jury on such matters does not constructively amend the indictment.  In <u>United States v. Nosal</u>, 844 F.3d 1024 (9th Cir. 2016), the defendant argued that the district court constructively amended the indictment by instructing the jury that the government most prove that defendant "firmly believed" the information he stole were trade secrets, whereas the indictment alleged that defendant "knowingly" stole certain trade secrets.  <u>Id.</u> at 1044-45.  The panel concluded there was no constructive amendment, reasoning that "the grand jury necessarily considered whether Nosal 'knowingly' stole the source lists" when it indicted him for theft of trade secrets.  <u>Id.</u> Because "firmly believed" is a "lesser" standard, "a grand jury that indicted on this more inclusive 'knowing' standard would necessarily have indicted on this lesser standard."  <u>Id.</u> at 1045.  The same logic applies here: there was no constructive amendment because the grand

1    jury necessarily would have indicted on the alternative forms of

2    proving knowledge when it indicted defendant for knowingly

3    perpetrating the counts of conviction.

4         OMIDI's remaining arguments are distractions that do not change

5    the analysis.  First, OMIDI had fair notice of the charges against

6    him.  The indictment expressly alleges that OMIDI acted knowingly

7    with respect to every count.  (FSI ¶¶ 37, 44, 47, 49, 53, 57.)

8    Contrary to OMIDI's claim (Mot. at 10:25), there is no requirement

9    that "deliberate ignorance" or "reckless indifference" be alleged in

10   the indictment, and OMIDI fails to cite any case holding otherwise.

11   That is because the government in its indictment "need only allege

12   the 'essential facts necessary to apprise a defendant of the crime

13   charged' and not its theory of the case." United States v. ORS,

14   Inc., 997 F.2d 628, 629 (9th Cir. 1993).  As stated, the concepts of

15   deliberate ignorance and reckless indifference are not separate

16   elements of an offense, but a method of proving knowledge.  Indeed, a

17   deliberate ignorance instruction is not available unless the accused

18   claims a lack of guilty knowledge.  United States v. McAllister, 747

19   F.2d 1273, 1275 (9th Cir. 1984).  The government was not required to

20   preview for the grand jury every alternative manner of proving

21   knowledge in the indictment.  See, e.g., United States v. Aguila, 277

22   F. App'x 752, 754 (9th Cir. 2008) (government was not required to

23   allege "aiding and abetting" theory of liability in indictment,

24   because it was "a different means of committing a single crime, not a

25   separate offense itself"); United States v. Gaines, 8 F. App'x 635,

26   642 (9th Cir. 2001) (government was not required to allege Pinkerton

27   theory of liability in indictment).

28

                                       9

Moreover, the government informed OMIDI before trial, during the parties' meet-and-confer discussions regarding the jury instructions, that it intended to seek the deliberate ignorance and reckless indifference instructions and believed the evidence would support these instructions. (See Declaration of David Lachman ¶ 2, Ex. A at 108-109.)  This notice prompted defense counsel (1) to object to the reckless indifference instruction and (2) to conditionally stipulate to the deliberate ignorance instruction "if appropriate" based on the evidence presented at trial. (See Dkt. 1533-1 ("Donnelly Email") at 2 ("Looks to me like we have reached agreement on Government Proposed Instruction . . . 52 (agreement to include only as placeholder and revisit wording prior to submission to jury if predicate established)"), at 4-5 (objecting to Instr. No. 53 re: reckless indifference); Dkt. 1360 ("Joint Proposed Jury Instructions") at 59; Dkt. 1361 ("Disputed Proposed Jury Instructions") at 64).  As evidenced by his strategic response, OMIDI "had competent counsel who is chargeable with knowledge of the state of mind necessary to prove fraud under section 1341" and similar statutes. Love, 535 F.2d at 1158.  Finally, OMIDI's entire defense, as described in his opening statement, was that he lacked actual knowledge of the fraudulent sleep study reports and resulting claims. (Tr. 245, 248, 256, 257 ("You are going to see that there was no way for Julian Omidi or for those doctors, anyone who did not specialize in sleep medicine, to have any idea that Klasky was not acting completely appropriately.")) Given the government's pretrial notice and OMIDI's disavowal of knowledge at the outset of trial, it was no surprise that the government would continue to seek the deliberate ignorance and

reckless indifference instructions to demonstrate defendant's knowledge.

None of the cases cited by OMIDI suggest that the government failed to provide adequate notice to him.  United States v. Hartz, 458 F.3d 1011 (9th Cir. 2006), actually stands for the opposite point.  There, the Ninth Circuit held there was no constructive amendment or material variance where the indictment charged that defendant committed robbery using a .357 caliber revolver and 9mm pistol, but the jury instructions only referred to "a firearm."  Id. at 1020.  The court ruled that because the specific type of gun was surplusage, rather than an "essential element" of the crimes charged, this difference was minor and did not "risk blindsiding a defendant with an unforeseeable basis of liability or prosecution strategy." Id. at 1022-23.  Similarly here, the indictment clearly alleged that OMIDI "knowingly and with intent to defraud, devised, participated in" the scheme to defraud Tricare and insurance companies.  (FSI ¶ 37.)  Contrary to OMIDI's view, the more detailed allegations regarding OMIDI's actions were surplusage, rather than an "essential element" of the crimes charged.  Love, 535 F.2d at 1158 (the allegation in the indictment that defendant "well knew" the statements he made were misrepresentations was mere "surplusage," because it "does no more than reiterate the knowing state of mind implicit in other language of the indictment"); Ward, 747 F.3d at 1191 ("We have declined to find a constructive amendment, however, when the indictment simply contains superfluously specific language describing alleged conduct irrelevant to the defendant's culpability under the applicable statute."); Miller, 471 U.S. at 136 (any part of the indictment unnecessary to and independent of the allegations of

the offense is considered to be "a useless averment").  In any event, for the reasons discussed above, it was no surprise that the government would seek the deliberate ignorance and reckless indifference instructions, particularly given that OMIDI opened the door at the beginning of trial.[1]

Second, OMIDI's reliance on such cases as United States v. Davis, 854 F.3d 601 (9th Cir. 2017), United States v. Lockhart, 844 F.3d 501 (5th Cir. 2016), United States v. Sanders, 996 F.3d 397 (5th Cir. 2020), and United States v. Cancelliere, 69 F.3d 1116 (11th Cir. 1995), is misplaced because they are readily distinguishable.  Each of these cases involved unique facts, not present here, in which the jury instruction effectively nullified the mens rea requirement alleged in the indictment.  See Davis, 854 F.3d at 601 (instructing jury to convict without a finding of mens rea at all, if it found defendant had a "reasonable opportunity to observe" the victim, even though the indictment alleged defendant trafficked with knowledge or reckless disregard of the victims' age); Lockhart, 844 F.3d at 515-16 (same); Sanders, 996 F.3d at 407-408 (instructing jury that government did not have to prove defendant knew his victims were minors, but indictment alleged that defendant "knowingly" persuaded two minor females); Cancelliere, 69 F.3d at 1121 (changing requirement for money laundering from proof of "knowingly and willfully" to "knowingly").  Unlike in those cases, the Court's

---

[1] The other cases defendant cites are inapposite.  See Gray v. Raines, 662 F.2d 569, 571-72 (9th Cir. 1981) (state conviction of defendant for statutory rape violated due process when information only charged forcible rape); United States v. Thomas, 893 F.2d 1066, 1070 (9th Cir. 1990) (although count two of indictment charged only that defendant transported and mailed pornography, the indictment as a whole sufficiently stated that defendant could be convicted on count two only for an act done knowingly).

instructions on deliberate ignorance and reckless indifference did not nullify the "knowing" mens rea alleged in the indictment, but rather explained accepted legal methods from which to infer that knowledge.

Third, this case is also clearly distinguishable from the litany of decisions cited by OMIDI involving the scenario in which the indictment alleged that a specific act violated one prong of a statute, but the jury was erroneously instructed it could convict, and did convict, the defendant for a *different act* that violated a *different and uncharged* prong of the statute.[2] There is no credible argument here that defendant was convicted for violating a different and uncharged prong of the statutes of conviction. Even the most cursory review demonstrates that the jury instructions for each count track the charging language in the indictment. (Compare Dkt. 1563 with Dkt. 12.) OMIDI was charged with knowingly committing these crimes, and that is how the jury was instructed. Accordingly, the cases cited by OMIDI are unavailing.

---

[2] See United States v. Shipsey, 190 F.3d 1081, 1087 (9th Cir. 1999) (indictment alleged theft by fraudulent pretense, but instruction charged theft by unauthorized taking); United States v. Dipentino, 242 F.3d 1090, 1094-95 (9th Cir. 2001) (indictment alleged leaving asbestos out to dry, but instruction also charged not depositing asbestos at a proper waste disposal site); Jeffers v. United States, 392 F.2d 749, 750 (9th Cir. 1968) (fatal variance where indictment alleged fraudulent misrepresentation that donations would be used for religious purposes, and instead were used for betting, but government offered evidence that defendant represented the donations would be used for office supplies); United States v. Carlson, 616 F.2d 446, 447 (9th Cir. 1980) (indictment alleged misapplication of bank funds by giving oneself loans, but instruction also charged misapplication by issuing loans that were inadequately secured); United States v. Barrios-Siguenza, 567 F. App'x 519, 521 (9th Cir. 2014) (indictment alleged assault by striking, whereas instruction also charged assault by threats).

13

1    Fourth, the Court's passing remark concerning its reasons for

2    giving the instruction is irrelevant, since OMIDI's Motion does not

3    challenge whether the Court had an evidentiary basis for doing so.

4    It is also immaterial whether the grand jury was presented with

5    evidence specifically relating to OMIDI's willful blindness, because

6    it clearly indicted him for knowingly perpetrating every crime with

7    which he was charged and ultimately convicted. <u>Nosal</u>, 844 F.3d at

8    1045 ("[A] grand jury that indicted on this more inclusive 'knowing'

9    standard would necessarily have indicted on this lesser standard.");

10   <u>United States v. Platter</u>, 514 F.3d 782, 787 (8th Cir. 2008)

11   ("Generally, the government is free to prove a defendant's liability

12   for one criminal offense using multiple theories of guilt.").  And an

13   indictment does not have to make clear which theory of liability the

14   government will use to prove a particular element.  <u>United States v.</u>

15   <u>Zackery</u>, 494 F.3d 644, 649 (8th Cir. 2007) ("An indictment need not

16   plead the government's theory of liability.").  As stated, OMIDI

17   cites no authority (because there is none) for the proposition that

18   the government must present every alternative manner of proving

19   knowledge to the grand jury.

20       **C.   There Was No Variance**

21       OMIDI's "fatal variance" argument fails because there was no

22   variance in the first place.  "A variance involves a divergence

23   between the allegations set forth in the indictment and the proof

24   offered at trial."  <u>Ward</u>, 747 F.3d at 1189.  Here, OMIDI's argument

25   is belied by his own concession that the government's proof offered

26   at trial hewed to the allegations in the indictment.  OMIDI asserts

27   that the indictment alleges "in extraordinary detail that Mr. Omidi

28   devised the fraudulent scheme alleged in the indictment and committed

14

1  every single charged act with actual knowledge and with intent to

2  deceive the insurance companies." (Mot. at 2:14-17.)  At the same

3  time, he also concedes that "[c]onsistent with the FSI, in the

4  government's opening statement and for most of the trial the

5  government ... focus[ed] on the central claim of the FSI---that Mr.

6  Omidi devised, orchestrated, instructed and knew about all aspects of

7  the alleged scheme to submit false information to insurance

8  companies." (Mot. at 4:10-14.)  Indeed, in OMIDI's trial memorandum

9  regarding the deliberate ignorance instruction, he conceded, "[a]t

10  trial, the government has not strayed, even slightly, from this

11  theme." (Dkt. 1533 at 1-2.)  Thus, based on OMIDI's own words, there

12  was no divergence between the allegations in the indictment and the

13  proof offered at trial.  His argument fails for this reason alone.[3]

14      Unable to establish a variance in the proof at trial, OMIDI

15  attempts to manufacture one by mischaracterizing the government's

16  closing argument (which, in any event, is not evidence).  He

17  incorrectly asserts that "[i]n closing, the government argued to the

18  jury that Mr. Omidi should have been able to discover the fraud was

19  occurring, and *hardly even mentioned* the central FSI allegation that

20  Mr. Omidi was the originator, mastermind and director of the scheme."

21  (Mot. at 20:18-21 (emphasis added).)  That is false.  While it is

22  true that the government discussed the deliberate ignorance

23  instruction (Tr. 8648-49), OMIDI conveniently ignores the rest of the

24  closing argument, in which the government focuses on its chief

25

26  ───────────────

27      [3] Because there was no variance between the indictment and the
   proof, this case is distinguishable from United States v. Adamson,
   291 F.3d 606, 616 (9th Cir. 2002), in which the indictment alleged

28  defendant lied about the *fact* that he upgraded the servers, whereas
   the proof showed defendant lied about *how* he upgraded the servers.

1   argument that defendant had actual knowledge of his crimes (See,
2   e.g., Tr. 8652 ("Julian Omidi directed the falsification of
3   nutritional letters."); 8653 ("Julian Omidi directed the
4   falsification of patient weights and BMIs."); 8655 ("Julian Omidi was
5   directing the falsification of letters of medical necessity."); 8655
6   ("Julian Omidi also directed the falsification of sleep studies.").)
7   As these passages demonstrate, OMIDI's attempt to manufacture a
8   variance by cherry-picking from the transcript is futile.

9        Because there was no variance, OMIDI skips straight to
10  prejudice, but his argument fails there too.  He asserts in
11  conclusory terms that because he was "induced" into relying on the
12  indictment, his "defense strategy was focused on proving that he did
13  not know or intend the falsifications of the SSRs to occur," and the
14  strategy was "rendered ineffective" by the deliberate ignorance and
15  reckless indifference instructions.  (Mot. at 19:11-12, 21:20.)  As
16  previously stated, OMIDI's suggestion that the deliberate ignorance
17  and reckless indifference instructions caught his counsel by surprise
18  at the end of trial is disingenuous, because the government gave
19  notice before trial of its intent to seek these instructions.  Thus,
20  defense counsel was not "induced," but instead made a strategic
21  decision to focus on disproving actual knowledge, even though they
22  were fully aware that the government would attempt to marshal the
23  evidence to argue deliberate ignorance and reckless indifference as
24  well.  See Love, 535 F.2d at 1158 (finding no prejudice where
25  defendant "had competent counsel who is chargeable with knowledge of
26  the state of mind necessary to prove fraud" and "counsel had ample
27  time to prepare the defense").

28

Indeed, when the government offered evidence of "red flags" that put OMIDI on notice of fraud, his counsel's response on cross-examination was to either maintain OMIDI's lack of knowledge or attack Klasky's credibility.  For example, in response to evidence that Brianne Miley filed a whistleblower complaint against defendant and others, alleging falsification of sleep studies, defense counsel's cross-examination insinuated that Klasky lied to OMIDI so that he remained unaware of the fraud.  (Tr. 5576 ("What you are communicating here to Julian Omidi are the reasons why Brianne Miley's allegations against you are false?").)  Similarly, when Klasky testified that he tried to show OMIDI the spreadsheet used to falsify sleep study reports and defendant said he "didn't want to see it," defense counsel attempted to impeach Klasky's credibility using his grand jury testimony.  (Tr. 5721-22.)  This is not surprising, since circumstantial evidence of knowledge is no less inculpatory than direct knowledge; either way, defense counsel's approach was to deny there were any flags at all.

Because OMIDI has demonstrated neither that a variance occurred nor that he was prejudiced, this argument also fails.

Finally, OMIDI's puzzling accusation that the government's opposition to the bill of particulars was "motivated by bad faith" (Mot. at 22-23) is unsubstantiated, meritless, and ultimately irrelevant, given that defendant has failed to demonstrate there was any constructive amendment or variance.

## IV. DEFENDANT'S MOTION SHOULD BE DENIED BECAUSE THE RECKLESS INDIFFERENCE INSTRUCTION WAS PROPER

OMIDI's challenge to the "reckless indifference" instruction fares no better.  As a preliminary matter, OMIDI waived this

17

objection. Rule 30 requires that a defendant object with adequate specificity to "inform the court of the specific objection and the grounds for the objection. . . ." Fed. R. Crim. P. 30(d). OMIDI's now maintains that the Court's "reckless indifference" instruction failed to elaborate that recklessness means defendant disregards a risk of harm of which he is aware (Mot. at 25:14-24), but the grounds he proffered at trial were that the instruction was duplicative of the "deliberate ignorance" instruction and that reckless disregard was not a substitute for intent to defraud. (Tr. 8246.) Where, as here, a party fails to satisfy Rule 30, an allegedly erroneous jury instruction will be reviewed for plain error. See United States v. Jimenez Recio, 371 F.3d 1093, 1099 (9th Cir. 2004). Reversal under plain error is appropriate only if the error is so highly prejudicial that it affects a defendant's substantial right to a fair trial. See Fed. R. Crim. P. 52(b). See, e.g., United States v. Nobari, No. 1:03-CR-05453-OWW, 2006 WL 2535052, at *22 (E.D. Cal. Aug. 30, 2006) (applying Rule 30 to motion for new trial).

The Court did not err, plainly or otherwise. "In reviewing jury instructions, the relevant inquiry is whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation." United States v. Dixon, 201 F.3d 1223, 1230 (9th Cir. 2000). "A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Id. Courts in the Ninth Circuit have consistently approved the reckless indifference language in fraud cases. See, e.g., United States v. Dearing, 504 F.3d 897, 902 (9th Cir. 2007); United States v. Munoz, 233 F.3d 1117, 1135-36 (9th Cir. 2000), superseded by statute on other grounds, 18 U.S.C. § 1341; United States v. Gay, 967

18

1    F.2d 322, 326-27 (9th Cir. 1992) (collecting cases).  Moreover, this

2    Court's instructions, considered as a whole, made clear that the jury

3    had to find beyond a reasonable doubt that defendant acted with

4    intent to defraud, which meant the intent to deceive and cheat.  (See

5    Dkt. 1563, Jury Instr. Nos. 25, 26; Tr. 8608:24-8609:23; Tr. 8610:23-

6    8611:23.)

7         OMIDI's new argument that the Court should have further defined

8    "recklessness," is foreclosed by Lloyd, 807 F.3d at 1165.  There, the

9    defendant similarly argued that the district court erred by not

10   further instructing jurors that "reckless indifference" means the

11   defendant "consciously disregards a substantial and unjustifiable

12   risk that his statements are false or misleading."  Id. at 1164-65.

13   The Ninth Circuit rejected the argument and held that the instruction

14   given by the district court instruction was sufficient, reasoning

15   that "[r]ecklessness in this context is 'within the comprehension of

16   the average juror' and needs no special definition."  Id. at 1165;

17   see also United States v. Tirouda, 394 F.3d 683, 689 (9th Cir. 2005)

18   ("'[C]riminal recklessness under Alaska law relates essentially to

19   the common-sense definition of recklessness, which the average juror

20   could understand and apply without an instruction.'" (quoting Walker

21   v. Endell, 850 F.2d 470, 475 (9th Cir. 1987))).  Similarly, here, the

22   Court was not required to elaborate on the meaning of recklessness.[4]

23

24

25

26   _____

27        [4] This case is distinguishable from the cases cited by OMIDI, in
     which the district court affirmatively provided the jury with an
     incorrect definition of recklessness.  E.g., United States v.
28   Rodriguez, 880 F.3d 1151, 1159-60 (9th Cir. 2018).  This Court did
     not commit such error.

                                    19

**V.   DEFENDANT'S MOTION SHOULD BE DENIED BECAUSE THE GOVERNMENT'S STATEMENTS IN CLOSING ARGUMENTS WERE NOT REVERSIBLE ERROR**

Over the course of a three-month long trial, with more than 30 witnesses, OMIDI contends that two errors during the government's closing argument necessitate reversal.  But "improprieties in counsel's arguments to the jury do not constitute reversible error unless they are so gross as probably to prejudice the defendant, and the prejudice has not been neutralized by the trial judge." United States v. Navarro, 608 F.3d 529, 535-36 (9th Cir. 2010) (quotations and citations omitted); United States v. Del Toro-Barboza, 673 F.3d 1136, 1150 (9th Cir. 2012) ("A criminal conviction will not be overturned on the basis of a prosecutor's comments unless in context they affected the fundamental fairness of the trial.").  None of the errors asserted by OMIDI rise to that standard.

**A.   Government Counsel's Rebuttal Remarks Do Not Constitute Reversible Error**

The government's allegedly objectionable remarks in rebuttal were a brief, rhetorical retort to the repeated accusations made during OMIDI's closing that a government witness was a "con man," and were intended to refocus the jury on the relevant issues at hand. Prosecutors are allowed "reasonably wide latitude in making their closing arguments." United States v. Lester, 749 F.2d 1288, 1301 (9th Cir. 1984).  "In addition, the propriety of the prosecutor's remarks must be judged in relation to what would constitute a fair response to the remarks of defense counsel." United States v. Lopez-Alvarez, 970 F.2d 583, 597 (9th Cir. 1992).

Here, the government's comments in rebuttal responded directly to OMIDI's closing argument, which was almost entirely and expressly

premised on comparing the government's case to a "Choose Your Own Adventure" book titled "You Are a Con Man," telling the supposed story of the government's cooperating witness, Charles Klasky.  (Tr. 8798.)  During defendant's closing argument, which lasted approximately four hours, counsel referred to Klasky as a "con man" or committing a "con job" approximately 23 times.  (See Tr. 8798, 8799, 8800, 8813, 8817, 8818, 8831, 8832, 8864, 8867, 8875, 8884, 8905.)  Counsel even dedicated an entire "chapter" of this "book" to a drawn-out argument, lasting over 22 pages of the trial transcript, that "Klasky conned the *naïve prosecutors* into railroading" OMIDI. (Tr. 8880:18-19 (emphasis added); Tr. 8880-8901).

"[A] prosecutor may respond substantially to a defense counsel's attack in order to right the scale."  United States v. Parker, 991 F.2d 1493, 1498 n.1 (9th Cir. 1993) (internal quotation marks and citation omitted).  When the government's rebuttal remarks are placed in context, both within its own argument and the closing arguments as a whole, it is apparent that the government was responding to OMIDI's sharp and repeated accusations that the government's case was nothing more than the story of a "con man," and that the prosecutors themselves had been "conned."  By contrast, as this Court noted, the government counsel's comments were "brief" and "not dwelled upon," but were merely a rhetorical device "riffing off" of the theme that permeated defendant's closing argument.  (Tr. 8959.)  Specifically, the prosecutor's comments were designed to remind the jury to not be distracted by defense counsel's stories about his own childhood, family, or pets, but rather to refocus the jury's attention on the facts of the case.  As the Court noted, the words were not an attack on defense counsel (Tr. 8959), but merely intended to critique the

21

defense's tactics in closing argument.  "Criticizing defense tactics
is fair game during closing, and this type of argument is generally
considered "well 'within normal bounds of advocacy.'"  <u>United States
v. Tomsha-Miguel</u>, 766 F.3d 1041, 1047 (9th Cir. 2014) (quoting <u>Del
Toro-Barboza</u>, 673 F.3d at 1152) (no misconduct in rebuttal stating
that defense counsel was "trying to distract" and "trying to confuse"
the jury); <u>United States v. Palomo</u>, 714 F. App'x 799, 800 (9th Cir.
2018) (no misconduct in rebuttal describing defense tactic to hide
truth as "shell game"); <u>United States v. John</u>, 683 F. App'x 589, 595
(9th Cir. 2017) (no misconduct in rebuttal calling defense's theory a
"red herring"); <u>United States v. Ruiz</u>, 710 F.3d 1077, 1086 (9th Cir.
2013) (no misconduct in rebuttal describing defense case as "smoke
and mirrors"); <u>Williams v. Borg</u>, 139 F.3d 737, 744-45 (9th Cir. 1998)
(no misconduct in rebuttal calling defense arguments "trash,"
explaining that "[a] lawyer is entitled to characterize an argument
with an epithet as well as a rebuttal").

     Finally, even if the government's critique in rebuttal could
have been phrased more artfully, it is unlikely there was prejudice,
and any potential for prejudice was remedied by the Court.  <u>Navarro</u>,
608 F.3d at 535-36.  Here, the prosecutor's comments were brief and
focused on critiquing defense counsel's rhetorical tactics.  Such
passing remarks were not likely to have prejudiced the jury against
OMIDI, particularly in light of defense counsel's comparison of the
government witness to a "con man" over 20 times, and his prolonged
argument that the prosecutors had been "conned."  <u>See Lopez-Alvarez</u>,
970 F.2d at 598 (noting "the prosecutor's comments comparing defense
counsel to both a magician and a squid were not likely to have
prejudiced the jury against Lopez-Alvarez, particularly in light of

defense counsel's comparison of the prosecutor to the Wizard of Oz"). Any prejudice which might have resulted from the comments was "neutralized by the trial judge," id., when this Court instructed the jury *immediately* following rebuttal that "what the attorneys have said during argument is not evidence" and that the attorneys "outlined for you his or her interpretation as to what the evidence shows." (Tr. 8950:11-16.)  Moreover, the overwhelming evidence of OMIDI's guilt "eliminates any lingering doubt that the prosecutor's remarks unfairly prejudiced the jury's deliberations." United States v. Young, 470 U.S. 1, 19 (1985).

This case is a far cry from United States v. Sanchez, 176 F.3d 1214 (9th Cir. 1999).  There, the outcome of the case hinged on whether the jury believed defendant's testimony that he did not know the individuals he assisted were fugitives, versus the testimony of one of the fugitives, Denton, who testified that he told defendant he was fleeing.  Id. at 1218.  The jury's credibility assessment was critical because the other co-conspirators testified that they did not inform defendant that Denton was fleeing, nor could they recall hearing Denton or anyone else tell defendant that they were fugitives.  Id. at 1217.  In his misguided effort to impeach defendant's credibility, the government counsel committed at least *six* separate acts of misconduct spanning defendant's cross-examination, an officer's testimony, and closing argument, namely: (1) forcing defendant to call a U.S. Marshal a liar; (2) eliciting a U.S. Marshal's opinion that defendant was not truthful during an interview; (3) introducing inadmissible hearsay statements by defendant's wife, who refused to testify against him, during defendant's cross-examination; (4) disclosing to the jury that

1   defendant's wife declined to testify against him, while suggesting
2   that her testimony would contradict his story; (5) asking defendant
3   why he had a reputation as a drug dealer in violation of Rule 404;
4   (6) vouching for government witnesses, calling the defense a sham,
5   and telling the jury they "had a duty" to convict.  Id. at 1219-24.
6   Because defendant's credibility was "critically important to the
7   success of his defense," id. at 1218, the government's repeated
8   errors aimed at discrediting defendant struck to the heart of the
9   case and were left uncured by the judge.  It was the "cumulative
10  effect of these errors, when viewed in the context of the entire
11  trial," that persuaded the Ninth Circuit to reverse the conviction.
12  Id. at 1225.

13      Unlike the lengthy streak of misconduct in Sanchez, the
14  government's fleeting comments in rebuttal here were focused on
15  critiquing rhetorical tactics, as opposed to attempting to sway the
16  jury's view of a particular witness or other piece of evidence.  To
17  the extent there was any impropriety, the Court gave a curative
18  instruction the moment the prosecutor sat down.  (Tr. 8950:11-16.)
19  These facts, coupled with the overall strength of the government's
20  case, demonstrate that the government's remarks do not justify
21  reversal.[5]

22

23      [5] The remaining decisions cited by OMIDI were similarly premised
    on aggravating combinations of errors, which are simply not present
24  in this case.  United States v. Rodrigues, 159 F.3d 439, 444-45, 450-
    52 (9th Cir. 1998) (prosecutor's misstatement of the law regarding
25  bribery counts, nullifying intent requirement, was "compounded" by
    statements in rebuttal that defense counsel "has tried to deceive
26  [the jury] from the start in this case about what this case is really
    about" and his substantive arguments regarding bribery counts were
27  "flat out untrue"; no curative instruction was given; and evidence of
    corrupt intent for bribery counts was not strong); United States v.
28  Holmes, 413 F.3d 770, 775 (8th Cir. 2005) (reversal based on
                                              (footnote cont'd on next page)

**B.    A Single Errant Chat Message Displayed During Closing Argument Does Not Constitute Reversible Error**

Nor does the government's use of a single errant Yak chat message meet the standard of reversible error.  During the government's closing argument, the government displayed and discussed dozens of exhibits in evidence.  Contrary to OMIDI's assertion (Mot. at 34:10), the government presented a mountain of evidence, direct and circumstantial, that defendant instructed people to falsify nutritional letters, patient weights and BMIs, letters of medical necessity, and sleep study reports.  (<u>See, e.g.</u>, Tr. 8652-55.)[6]  In the midst of this presentation, the government inadvertently published and briefly recited from a slide showing a Yak chat regarding the manipulation of a patient's height.  (Tr. 8653.)  During a recess immediately thereafter, and before the conclusion of closing argument, the government admitted its inadvertent error.  (Tr. 8664-65.)  When the jury returned following the recess, the Court immediately instructed the jury as follows:

> It has come to my attention that earlier, during Ms. Williams's closing, there was displayed on her PowerPoint a YakChat between Jaffy Palacios and Jessica Suotmaa dated April 2, 2011, discussing the height to be used for a patient. That was improperly displayed because it was not

cumulative effects of the government's weak case, improper exclusion of witnesses offered by defense, and prosecutor's remarks in the case, including that defendant and his counsel "make sure that they get their stories straight," suggesting they conspired to fabricate testimony, for which no curative instruction was given); <u>United States v. McLain</u>, 823 F.2d 1457 (11th Cir. 1987) (reversal based on cumulative effects of judicial error in accelerating trial, which interfered with jury and counsels' performance, and prosecutor accusing defense counsel of misleading jurors and lying on nine separate occasions).

[6] OMIDI's assertion that "the government presented no evidence that Mr. Omidi ever instructed anyone to falsify patient records," (Mot. at 34:10-11), is also belied by the fact that defendant did not even file a renewed Rule 29 motion after trial arguing that there was insufficient evidence to sustain a conviction.

1              introduced or admitted as an exhibit at the
               trial.  So you are instructed to disregard it.
2

3   (Tr. 8670.)  The government then proceeded to deliver the rest of its

4   closing argument.  (Id.)

5        OMIDI cannot demonstrate any prejudice resulting from this

6   momentary error for two reasons.  First, the challenged slide was

7   cumulative of ample other evidence, admitted during the three-month

8   trial and summarized in closing arguments, demonstrating defendant's

9   instructions to Klasky, Hong, and others to falsify patient records,

10  as well as defendant's efforts to silence Klasky and Twersky.  For

11  example, immediately before the Yak chat, the government counsel

12  discussed an email in which Sherwin Hong wrote, "as per J.O., we can

13  only add five to ten pounds on the patient's weight," as well as

14  Hong's testimony that he followed that instruction from defendant.

15  (Tr. 8653:10-17; see also Tr. 3789-91.)  And immediately after the

16  Yak chat, the government counsel reviewed the multiple examples where

17  post-it notes scribbled by defendant prompted employees to reweigh

18  patients and record a higher weight.  (Tr. 8654:1-8655:1.)[7]  Given

19  the overwhelming evidence of defendant's guilt, defendant cannot

20  demonstrate that the challenged comments, "affected the jury's

21  ability to judge the evidence fairly."  United States v. Williams,

22  989 F.2d 1061, 1071-72 (9th Cir. 1993) (holding that "isolated"

23  improper comments, followed by curative instruction, were harmless).

24  _____

25       [7] Defendant's claim that the prosecutor misrepresented a post-it
    notes to state "Ask J.O. 238" is meritless.  Government counsel was
26  free to argue her interpretation of the evidence, and as the Court
    instructed repeatedly, the lawyers' interpretation was not evidence,
27  and the jury should rely on its own recollection of the evidence.
    (Tr. 8593:5-14, 8950:11-19.)  Given that the post-it note was
28  provided to the jury as Exhibit 81, the jury was free to draw its own
    conclusion.

1    Second, any prejudice resulting from the errant slide was

2    remedied because the Court "acted quickly, emphatically, and

3    appropriately to neutralize whatever prejudicial effect the

4    misstatement[] may have caused[,] by issuing the curative instruction

5    []." United States v. Alvarado, 838 F.2d 311, 317 (9th Cir. 1987).

6    Although the Court had already given the jury the standard

7    instruction that what lawyers "will say in their closing arguments

8    ... is not evidence" and the jury's "memory of [the facts] controls"

9    (Tr. 8593:9-10), it also issued a curative instruction at the recess

10   immediately following the slide, instructing the jurors that the

11   slide was "improperly displayed because it was not introduced or

12   admitted as an exhibit at the trial" and that they should disregard

13   it (Tr. 8670:8-15). The Court reminded the jurors again after

14   rebuttal that the attorney's arguments are not evidence. (Tr.

15   8950:11-16.) Jurors are presumed to follow the court's instructions.

16   Fields v. Brown, 503 F.3d 755, 781 (9th Cir. 2007).

17   Accordingly, this case bears no resemblance to the cases cited

18   by OMIDI. Cf. United States v. Kojayan, 8 F.3d 1315, 1322-25 (9th

19   Cir. 1993) (in a "close case," government misrepresented in closing

20   its ability to call a potential witness with whom it had a

21   cooperation agreement, failed to disclose cooperation agreement, and

22   repeatedly refused to take responsibility for the concealment);

23   United States v. Sanchez-Soto, 617 F. App'x 695, 698 (9th Cir. 2015)

24   (prosecutor "placed heavy weight during closing argument on the jail

25   calls," but his interpretation of the calls injected expert opinion

26   regarding drug trade practices and flatly misstated an inadmissible

27   hearsay comment by defendant's wife).

28

**VI.  THE GOVERNMENT DID NOT DISTORT THE COURT'S RULE 403
      DETERMINATION REGARDING KLASKY'S TESTIMONY**

OMIDI's final contention is that Klasky's testimony regarding Brian Oxman's "gun-to-the-head" phone call was "false and misleading," and therefore the government's alleged failure to disclose that fact to the Court at trial was reversible error.  For the reasons set forth in the government's oppositions to OMIDI's motion to compel (Dkt. 1661) and the concurrently filed opposition to OMIDI's motion to dismiss, defendant's underlying assumption that Klasky's testimony was false is incorrect.  Accordingly, there was no misconduct.

**VII. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny OMIDI's motion for new trial in its entirety.