# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 17-00661(A)-DMG |
| | ) |
| JULIAN OMIDI, | ) |
|     AKA "COMBIZ OMIDI" | ) |
|     AKA "COMBIZ JULIAN OMIDI" | ) |
|     AKA "KAMBIZ OMIDI" | ) |
|     AKA "KAMBIZ BENIAMIA OMIDI" | ) |
|     AKA "BEN OMIDI," | ) |
| A PROFESSIONAL CORPORATION, | ) |
| SURGERY CENTER MANAGEMENT, LCC, | ) |
| | ) |
| Defendants. | ) |

**3rd SUPPLEMENTAL EXPERT REPORT OF MICHAEL J. PETRON, CPA, CFE**

October 25, 2022

1. In anticipation of sentencing, I have been asked to prepare additional analyses. These analyses are a supplement to my Expert Report submitted on June 17, 2020, my Supplemental Expert Report submitted November 27, 2021 and my 2nd Supplemental Expert Report submitted December 5, 2021. All the changes I made in the 2nd Supplemental Expert Report are incorporated into the below analyses. I have summarized the additional analyses below.

   - First, Counsel asked me to provide alternate extrapolations for Scenarios K and L ("Second Alternate Scenario K" and "Second Alternate Scenario L").[1] In these alternate extrapolations, Counsel has asked that Column AC labeled "ALTERED AHI (Y/N)" from the Part 1 Review spreadsheet be used in determining intended loss and actual loss amounts. Intended loss is calculated from column AJ labeled "SS BILLED" and actual loss is calculated from column AK labeled "SS PAID", both from the Part 2 Review spreadsheet. Additionally, there are 11 specific studies that Counsel has asked for the amounts in column AJ labeled "SS BILLED" and column AK labeled "SS PAID" from the Part 2 Review spreadsheet be treated as $0 for purposes of the extrapolation.[2] The 11 studies are as follows:[3]

     1. GUARDADO, MIGUEL-AUTOPAP-SB-2-6-11-11.rtf
     2. GUARDADO, MIGUEL-PSG-SB-5-5-14-11.rtf
     3. SOLEDAD, ROMERO-AUTOPAP-SB-4-3-18-11.rtf
     4. MEZA, ANNA-PSG-SB-3-1-21-12-95810.rtf
     5. RODRIGUEZ, ADRIANNA-PSG-WH-1-8-14-11.rtf
     6. RENDON, REGINA-AUTOPAP-SJ-1-7-25-11.rtf
     7. FEITZ, TAMARA-AUTOPAP-LB-4-2-18-11.rtf
     8. HEREDIA, MARCO-PSG-FM-3-8-1-11.rtf
     9. COLLINS, DARLINDA-AUTOPAP-WH-3-8-21-11.rtf
     10. CALVIN, CALVIN-PSG-BF-1.rtf
     11. BROOKS, LISA-PSG-FM-1.rtf

---

[1] SVRS 1-250 Memo--SS Loss--FINAL 2022.10.13.pdf
[2] Counsel originally requested 13 studies removed, but two of these studies were already excluded as a result of changes from the 2nd Supplemental Expert Report.
[3] Sleep_Study_Spreadsheet--SVRS1-250_filtered--Part 2 Loss Analysis--FINAL 060520.xlsx

1

3rd SUPPLEMENTAL EXPERT REPORT OF
MICHAEL J. PETRON

- Second, Counsel asked me to provide alternate extrapolations for Scenarios O and P ("Alternate Scenario O" and "Alternate Scenario P").[4] In these alternate extrapolations, Counsel has asked that Column U labeled "CPAP AFTER NORMAL PSG (Y/N/NA)" from the Part 1 Review spreadsheet be used in determining intended loss and actual loss amounts. Additionally, Counsel has asked that Column AJ labeled "SS BILLED" be used to calculate intended loss and Column AK labeled "SS PAID" be used to calculate actual loss, both from the Part 2 Review spreadsheet.

2. The additional analyses are included in two exhibits that accompany this report. **Exhibit 9** and **Exhibit 10** show the Second Alternate Scenarios K & L and Alternate Scenarios O & P. All other aspects of my reports remained unchanged. The estimates derived from these scenarios are described below.

*Second Alternate Scenario K. Intended Loss for Altered Sleep Studies -*

- From the Part 1 Review spreadsheet provided, if column AC labeled "ALTERED AHI (Y/N)" contained "Y", "Y (PSG)", "Y (PSG to CPAP)" or "Y (CPAP to PSG)" then the value in column AJ labeled "SS BILLED" from the Part 2 Review spreadsheet provided was used as the intended loss; otherwise, a value of $0 was used. If the particular study fit the criteria and there were two numbers present for the intended loss, then the number that was not bolded was used as the intended loss as that represents both the facility and professional payments as they relate to the study. If the particular study fit the criteria and the value of "SS BILLED" contained "NA", "N/A", "?" or was blank, then intended loss was treated as $0. Then, these results were summed to the beneficiary level.

---

[4] SVRS 1-250 Memo--SS Loss--FINAL 2022.10.13.pdf

- There were 145 out of 250 (58%) total sample units that had an intended loss amount associated with Altered Sleep Studies greater than $0. Extrapolated to the sample frame, it results in an estimate for the total intended loss of $105,186,283. The lower limit of the 95% confidence interval is $92,068,045 and the upper limit of the 95% confidence interval is $118,304,520. This represents a margin of error of +/- 12.5%. The 12.5% margin of error can also be referred to as the precision of the estimate. One way to interpret the confidence interval is that there is a 95% probability that the calculated confidence interval from some future sample (taken under the same circumstances) will encompass the true amount of loss.

*Second Alternate Scenario L. Actual Loss for Altered Sleep Studies –*

- From the Part 1 Review spreadsheet provided, if column AC labeled "ALTERED AHI (Y/N)" contained "Y", "Y (PSG)", "Y (PSG to CPAP)" or "Y (CPAP to PSG)" then the value in column AK labeled "SS PAID" from the Part 2 Review spreadsheet provided was used as the actual loss; otherwise, a value of $0 was used. If the particular study fit the criteria and there were two numbers present for the actual loss, then the number that was not bolded was used as the actual loss as that represents both the facility and professional payments as they relate to the study. If the particular study fit the criteria and the value of "SS PAID" contained "NA", "N/A", "?" or was blank, then actual loss was treated as $0. Then, these results were summed to the beneficiary level.

- There were 61 out of 250 (24%) total sample units that had an actual loss amount associated with Altered Sleep Studies greater than $0.

- Extrapolated to the sample frame, it results in an estimate for the total actual loss of $12,453,756.

- The lower limit of the 95% confidence interval is $8,543,595 and the upper limit of the 95% confidence interval is $16,363,918. This represents a margin of error of +/- 31.4%. The 31.4% margin of error can also be referred to as the precision of the estimate. One way to interpret the confidence interval is that there is a 95% probability that the calculated confidence interval from some future sample (taken under the same circumstances) will encompass the true amount of loss.

*Alternate Scenario O. Intended Loss for CPAP After PSG*

- From the Part 1 Review spreadsheet provided, if column U labeled "CPAP AFTER NORMAL PSG (Y/N/NA)" contained "Y" then the value in column AJ labeled "SS BILLED" from the Part 2 Review spreadsheet provided was used as the intended loss; otherwise, a value of $0 was used. If the particular study fit the criteria and there were two numbers present for the intended loss, then the number that was not bolded was used as the intended loss as that represents both the facility and professional payments as they relate to the study. If the particular study fit the criteria and the value of "SS BILLED" contained "NA", "N/A", "?" or was blank, then intended loss was treated as $0. Then, these results were summed to the beneficiary level.

- There were 22 out of 250 (9%) total sample units that had an intended loss amount greater than $0 that corresponded to beneficiaries with a CPAP study after a normal PSG study.

- Extrapolated to the sample frame, it results in an estimate for the total intended loss of $11,486,820.

3rd SUPPLEMENTAL EXPERT REPORT OF
MICHAEL J. PETRON

4

- The lower limit of the 95% confidence interval is $6,833,218 and the upper limit of the 95% confidence interval is $16,140,422. This represents a margin of error of +/- 40.5%. The 40.5% margin of error can also be referred to as the precision of the estimate. One way to interpret the confidence interval is that there is a 95% probability that the calculated confidence interval from some future sample (taken under the same circumstances) will encompass the true amount of loss.

*Alternate Scenario P. Actual Loss for CPAP After PSG*

- From the Part 1 Review spreadsheet provided, if column U labeled "CPAP AFTER NORMAL PSG (Y/N/NA)" contained "Y" then the value in column AK labeled "SS PAID" from the Part 2 Review spreadsheet provided was used as the actual loss; otherwise, a value of $0 was used. If the particular study fit the criteria and there were two numbers present for the actual loss, then the number that was not bolded was used as the actual loss as that represents both the facility and professional payments as they relate to the study. If the particular study fit the criteria and the value of "SS PAID" contained "NA", "N/A", "?" or was blank, then actual loss was treated as $0. Then, these results were summed to the beneficiary level.

- There were 11 out of 250 (4%) total sample units that had an actual loss amount greater than $0 that corresponded to beneficiaries with a CPAP study after a normal PSG study.

- Extrapolated to the sample frame, it results in an estimate for the total actual loss of $1,853,003.

- The lower limit of the 95% confidence interval is $334,500 and the upper limit of the 95% confidence interval is $3,371,507. This represents a margin of error of +/- 82.0%.

The 82.0% margin of error can also be referred to as the precision of the estimate. One way to interpret the confidence interval is that there is a 95% probability that the calculated confidence interval from some future sample (taken under the same circumstances) will encompass the true amount of loss.

Respectfully submitted,

_____
Michael J. Petron                                      Date:   October 25, 2022